No. 23-13396

# UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

AMERICAN SECURITIES ASSOCIATION AND CITADEL SECURITIES, LLC,

*Petitioners*,

v.

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

*Respondent.*

Petition for Review of an Order of
the Securities and Exchange Commission
Release No. 34-98290; File No. 4-968

## PETITIONERS' OPPOSITION TO MOTIONS FOR LEAVE TO INTERVENE IN SUPPORT OF RESPONDENT

J. Michael Connolly
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
mike@consovoymccarthy.com

*Counsel for Petitioner American Securities Association*

Noel J. Francisco
Yaakov M. Roth
Brian C. Rabbitt
Brinton Lucas
Joshua T. Hoyt
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
(202) 879-3939
njfrancisco@jonesday.com

David Phillips
JONES DAY
4655 Executive Dr., Ste. 1500
San Diego, CA 92121

*Counsel for Petitioner Citadel Securities LLC*

*American Securities Association et al. v. United States Securities and Exchange Commission*, No. 23-13396

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

### AMENDED CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 26.1-1 through 26.1-3, Petitioners American Securities Association (ASA) and Citadel Securities LLC provide the following certificate of interested persons:

The undersigned counsel of record certify that the Certificates of Interested Persons set forth in the Intervenor-Applicants' briefs are complete, subject to the following additions:

1. **Barbero, Megan**, counsel for Respondent Securities and Exchange Commission.

2. **Conley, Michael A.**, counsel for Respondent Securities and Exchange Commission.

3. **Hardin, Tracey A.**, counsel for Respondent Securities and Exchange Commission.

4. **Kennedy, Jordan**, counsel for Respondent Securities and Exchange Commission.

Petitioners will file an amended certificate of interested persons should they become aware of a change in interests that would affect the disclosures as required by Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 26.1-4.

*American Securities Association et al. v. United States Securities and Exchange Commission*, No. 23-13396

Dated: December 1, 2023

<u>/s/ *J. Michael Connolly*</u>
J. Michael Connolly
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
mike@consovoymccarthy.com

*Counsel for Petitioner American Securities Association*

Respectfully submitted,

<u>/s/ *Noel J. Francisco*</u>
Noel J. Francisco
Yaakov M. Roth
Brian C. Rabbitt
Brinton Lucas
Joshua T. Hoyt
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
(202) 879-3939
njfrancisco@jonesday.com

David Phillips
JONES DAY
4655 Executive Dr., Ste. 1500
San Diego, CA 92121

*Counsel for Petitioner Citadel Securities LLC*

C-2

*American Securities Association et al. v. United States Securities and Exchange Commission*, No. 23-13396

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 26.1-2, the undersigned counsel hereby certify that no parent corporation, and no publicly held corporation has a 10% or greater ownership interest in the ASA.

Petitioner Citadel Securities LLC is a wholly owned, indirect subsidiary of Citadel Securities GP LLC. Counsel further certify that no publicly held corporation has a 10% or greater ownership interest in Citadel Securities GP LLC.

Dated: December 1, 2023

/s/ J. Michael Connolly
J. Michael Connolly
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
mike@consovoymccarthy.com

*Counsel for Petitioner American Securities Association*

Respectfully submitted,

/s/ Noel J. Francisco
Noel J. Francisco
Yaakov M. Roth
Brian C. Rabbitt
Brinton Lucas
Joshua T. Hoyt
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
(202) 879-3939
njfrancisco@jonesday.com

C-3

*American Securities Association et al. v. United States Securities and Exchange Commission*, No. 23-13396

> David Phillips
> JONES DAY
> 4655 Executive Dr., Ste. 1500
> San Diego, CA 92121
>
> *Counsel for Petitioner Citadel Securities LLC*

# TABLE OF CONTENTS

**Page**

AMENDED CERTIFICATE OF INTERESTED PERSONS............... C-1

CORPORATE DISCLOSURE STATEMENT ...................................... C-3

INTRODUCTION.................................................................................. 1

BACKGROUND ................................................................................... 3

ARGUMENT ......................................................................................... 7

I.      THE INTERVENTION MOTIONS SHOULD BE DENIED.......... 8

      A.     Movants Are Not Entitled To Mandatory Intervention Because Their Interests Are Adequately Represented. ........ 8

      B.     Permissive Intervention Is Not Warranted......................... 20

II.     THE EXCHANGES' MOTIONS ARE DOUBLY DEFECTIVE............................................................................... 22

CONCLUSION ................................................................................... 26

CERTIFICATE OF COMPLIANCE.......................................Certificate 1

CERTIFICATE OF ELECTRONIC SUBMISSION ..............Certificate 2

CERTIFICATE OF SERVICE...............................................Certificate 3

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ala. Env't Council v. EPA,*
    711 F.3d 1277 (11th Cir. 2009)..........................................................17

*Alameda Water & Sanitation Dist. v. Browner,*
    9 F.3d 88 (10th Cir. 1993)....................................................................15

*Alpine Secs. Corp. v. FINRA,*
    No. 23-5129 (D.C. Cir.) .......................................................................25

*Arney v. Finney,*
    967 F.2d 418 (10th Cir. 1992)............................................................22

*Assoc. Indus. of Ala., Inc. v. Train,*
    543 F.2d 1159 (5th Cir. 1976).......................................... 10, 14, 19, 25

*Athens Lumber Co. v. FEC,*
    690 F.2d 1364 (11th Cir. 1982)...................................... 10, 11, 13, 14

*Autauga Cnty. Emergency Mgmt. Commc'n Dist. v. FCC,*
    17 F.4th 88 (11th Cir. 2020) ...............................................................17

*Automobile Workers v. Scofield,*
    382 U.S. 205 (1965)................................................................................7

*Berger v. N.C. State Conf. of the NAACP,*
    142 S. Ct. 2191 (2022)................................................................ 11, 24

*Buckeye Partners, L.P. v. FERC,*
    No. 22-60100, 2022 WL 1528311 (5th Cir. May 13, 2022)................20

*Cboe Futures Exch., LLC v. SEC,*
    77 F.4th 971 (D.C. Cir. 2023)............................................................17

*Chiles v. Thornburgh,*
    865 F.2d 1197 (11th Cir. 1989)................................................22, 24

*Daggett v. Comm'n on Gov't Ethics & Election Prac.*,
172 F.3d 104 (1st Cir. 1999) ....................................................... 13, 20

*Dimond v. Dist. of Columbia*,
792 F.2d 179 (D.C. Cir. 1986) ............................................................ 14

*Fund For Animals, Inc. v. Norton*,
322 F.3d 728 (D.C. Cir. 2003) ............................................................ 11

*Georgia v. U.S. Army Corps of Eng'rs*,
302 F.3d 1242 (11th Cir. 2002) .......................................................... 16

*Huff v. Comm'r of IRS*,
743 F.3d 790 (11th Cir. 2014) ................................................. 13, 16, 19

*Isle of Dreams, LLC v. City of North Bay Village*,
No. 12-13402 (11th Cir.) ...................................................................... 8

*LULAC v. Clements*,
884 F.2d 185 (5th Cir. 1989) .............................................................. 20

*Meek v. Metro. Dade Cnty.*,
985 F.2d 1471 (11th Cir. 1993) .......................................................... 16

*Michigan v. EPA*,
576 U.S. 743 (2015) ........................................................................... 15

*San Francisco BayKeeper v. Whitman*,
297 F.3d 877 (9th Cir. 2002) .............................................................. 16

*SEC v. Chenery Corp.*,
332 U.S. 194 (1947) ................................................................... *passim*

*Sierra Club, Inc. v. EPA*,
358 F.3d 516 (7th Cir. 2004) ................................................................ 7

*Sierra Club, Inc. v. Leavitt*,
488 F.3d 904 (11th Cir. 2007) .................................................... *passim*

*Stone v. First Union Corp.*,
371 F.3d 1305 (11th Cir. 2004) ............................................. 18, 23, 24

*Tenneco Oil Co. v. EPA,*
 592 F.2d 897 (5th Cir. 1979)................................................................21

*Trbovich v. United Mine Workers of America,*
 404 U.S. 528 (1972)............................................................................11

*Tri-State Generation & Transmission Ass'n v. N.M. Pub.*
 *Regul. Comm'n,*
 787 F.3d 1068 (10th Cir. 2015)..........................................................10

*Worlds v. Fla. Dep't of Health & Rehab. Servs.,*
 929 F.2d 591 (11th Cir. 1991)............................................................20

**STATUTES**

15 U.S.C. § 78k-1 ...................................................................................3

28 U.S.C. § 2348 ..................................................................................17

**OTHER AUTHORITIES**

17 C.F.R. § 242.608 .......................................................................12, 19

17 C.F.R. § 242.613 .........................................................................4, 19

70 Fed. Reg. 37496 (2005) .....................................................................3

77 Fed. Reg. 45722 (2012) .....................................................................4

81 Fed. Reg. 30614 (2016) .....................................................................4

81 Fed. Reg. 84696 (2016) .....................................................................5

88 Fed. Reg. 17086 (2023) .....................................................................5

88 Fed. Reg. 62628 (2023) ............................................................ *passim*

11th Cir. R. 34-4 ..................................................................................21

Comments on Notice of Filing of Amendment to the National
 Market System Plan Governing the Consolidated Audit
 Trail, Release No. 34-97151..................................................................5

Fed. R. App. P. 15.................................................................................7

Fed. R. Civ. P. 24........................................................................ *passim*

iv

Chair Gary Gensler, SEC, *Statement on CAT Funding*
  (Sept. 6, 2023) ..................................................................................... 13

Letter from Brandon Becker to Vanessa Countryman
  (Mar. 13, 2023) ..................................................................................... 5

Letter from Brandon Becker to Vanessa Countryman
  (May 18, 2023) ..................................................................................... 6

## INTRODUCTION

Procedurally, this should be a straightforward case. Petitioners filed a timely petition for review challenging the recent adoption of an order by the Securities and Exchange Commission (SEC or Commission) implementing a funding mechanism for the consolidated audit trail (CAT)—a massive, unprecedented government surveillance system that will track every trade in the U.S. securities markets. 88 Fed. Reg. 62628 (2023). With the SEC having certified the record, the next step would ordinarily be the filing of three merits briefs and then oral argument.

Four movants now seek to disrupt that orderly process. Consolidated Audit Trail LLC (CAT LLC), the entity that implemented the CAT and submitted the funding proposal, seeks to intervene to defend the SEC's order, which adopted that proposal wholesale. Further, three groups representing 17 of the 25 organizations that *own and operate* CAT LLC—the Cboe Exchanges, NYSE Exchanges, and Nasdaq Exchanges (the Exchanges)—seek to pile on and defend the SEC's order as well. And their basis for these requests is not a fear that the SEC will fail to mount a vigorous defense of its own order, but a mere desire to "offer[]" their "perspective" as a "supplement to" the SEC's efforts. Cboe Mot. 8.

1

This Court should deny all four motions. Movants have not and cannot demonstrate that the SEC is an inadequate representative of their asserted interests. Unlike the ordinary rulemaking in which an agency hears from a variety of stakeholders who may later seek to intervene for their own reasons, the funding proposal approved by the SEC order was literally drafted by CAT LLC, which is owned by the Exchanges. Consistent with their role in the administrative process, movants share the exact same objective as the SEC in this case—preserving that order in its entirety. Under such circumstances, this Court presumes adequate representation.

Movants have come nowhere close to overcoming that presumption. To do so, they would have to show that their asserted interests would cause them to advance a defense of the order that differs from the SEC's. But even that would go nowhere, for it is a "fundamental rule of administrative law" that a court reviewing an agency action "must judge the propriety of such action solely by the grounds invoked by the agency." *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). So even if movants' interests somehow diverged from the SEC's (they do not), they could not advance reasoning beyond what the Commission has already offered.

Granting intervention thus promises to effectively quintuple the procedural complexity of this litigation without any concomitant benefit to the Court. At best, intervention would allow movants to clutter the docket with five redundant response briefs and pack the podium with five separate advocates defending the SEC's order on the same grounds. At worst, movants could use their newfound party status to try to hijack this litigation and interfere with petitioners' choice of forum by seeking to transfer the case elsewhere. This Court should not allow an otherwise straightforward administrative challenge to be turned into a messy free-for-all. Rather, if movants wish to offer their allegedly unique perspectives, they are free to do so as *amici*—a course of action petitioners would not oppose.

## BACKGROUND

1.    In 1975, Congress directed the Commission to "facilitate the establishment of a national market system for securities." 15 U.S.C. § 78k-1(a)(2). Thirty years later, the SEC ordered self-regulatory organizations (SROs), including national securities exchanges, to jointly develop a national market system. 70 Fed. Reg. 37496 (2005).

In 2012, the SEC directed the SROs to propose a joint plan for the "creation, implementation, and maintenance of a consolidated audit trail and central repository" of trade information for the U.S. securities markets. 17 C.F.R. § 242.613(a)(1); *see* 77 Fed. Reg. 45722 (2012). This unprecedented audit trail would capture comprehensive data on all orders initiated or executed across all U.S. securities markets. 17 C.F.R. § 242.613(c).

2. The Commission, however, left the details of the audit trail system to the SROs to work out in the first instance, subject to the SEC's eventual approval. 17 C.F.R. § 242.613(a). In 2015, the SROs submitted a consolidated audit trail plan that proposed a mechanism to gather, consolidate, and transmit trading information to the SEC for surveillance purposes. 81 Fed. Reg. 30614, 30615-16 (2016).

In parallel, the SROs proposed the creation of a jointly-owned limited liability company, the CAT NMS, LLC, through which they would operate the CAT system. *Id.* at 30616. Each SRO would own an equal share of the newly-formed company and receive equal representation on the company's operating committee. *Id.*

4

The SEC approved both the audit trail plan and the establishment of the CAT company, which later became CAT LLC. 81 Fed. Reg. 84696 (2016). There are now 25 owners and operators of CAT LLC, including the 17 exchanges who seek to intervene. CAT LLC Mot. 2 n.1.

3.    The 2016 order approving the CAT plan did not, however, settle who would pay for it. 81 Fed. Reg. at 84794. The SEC chose instead to await a "separately filed" proposal addressing the CAT's funding. *Id.* In the meantime, costs associated with development and implementation of the CAT spiraled beyond all expectations. *See* 88 Fed. Reg. at 62655 (acknowledging that "the CAT operating budget … is now five times the amount estimated" in the 2016 order).

In March 2023, CAT LLC filed a proposed amendment to the audit trail plan "on behalf of" the exchanges who own and operate it "to implement a funding model." Letter from Brandon Becker to Vanessa Countryman, (Mar. 13, 2023), https://perma.cc/BY2C-PQM7. Although the SEC invited public comment on the proposal, 88 Fed. Reg. 17086 (2023), none of the Exchanges submitted individual comments, *see* Comments on Notice of Filing of Amendment to the National Market System Plan Governing the Consolidated Audit Trail, Release No. 34-

97151, https://perma.cc/7E87-2DBW. Rather, CAT LLC submitted multiple comments, which it claimed represented the "consensus" of its members, to defend its proposal. *E.g.* Letter from Brandon Becker to Vanessa Countryman 1-2 (May 18, 2023), https://perma.cc/8W89-RZ7T.

After receiving comments, the SEC entered an order in September 2023 approving CAT LLC's funding proposal without substantive change. 88 Fed. Reg. at 62628. Ultimately, that order allows for 100% of the costs of running the CAT to be borne by broker-dealers like Citadel Securities, even though they play no role in managing or operating the CAT and derive no direct benefit from it. *See id.* at 62684 n.1135.

American Securities Association (ASA) and Citadel Securities timely petitioned this Court for review of the order on October 17. Dkt 1-1. On November 16, CAT LLC and three sets of its member exchanges—Nasdaq, NYSE, and Cboe—moved to intervene. Dkts. 28-31.

6

## ARGUMENT

Although Federal Rule of Appellate Procedure 15(d) sets forth the procedures for intervening in response to a petition for review, it "does not provide standards for intervention." *Sierra Club, Inc. v. EPA*, 358 F.3d 516, 517 (7th Cir. 2004). Accordingly, "appellate courts have turned to the rules governing intervention in the district courts under Fed. R. Civ. P. 24." *Id.* at 517-18; *see Automobile Workers v. Scofield*, 382 U.S. 205, 217 n.10 (1965). Rule 24(a) in turn provides for mandatory intervention if a movant shows, among other things, that its interest in the action "'will not be represented adequately by the existing parties.'" *Sierra Club, Inc. v. Leavitt*, 488 F.3d 904, 910 (11th Cir. 2007). Alternatively, Rule 24(b) directs that a court "may permit" intervention if the movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b).

Neither form of intervention is available here. The SEC will adequately represent movants' interests by defending its order, which adopted their funding proposal. Movants have not shown—really, cannot show—that any differences between them and the Commission will lead to distinct arguments on the merits. And since movants have nothing to

7

add, their participation will create only duplicative briefing, potential administrative delay, and opportunities for procedural mischief. That is especially true when it comes to the Exchanges, which would be adequately represented by both the Commission and CAT LLC. Under no circumstances should they be permitted to burden this Court with doubly duplicative briefs and oral advocacy.

## I.   THE INTERVENTION MOTIONS SHOULD BE DENIED.

### A.   Movants Are Not Entitled To Mandatory Intervention Because Their Interests Are Adequately Represented.

Movants are not entitled to intervene as of right because they have "'failed to demonstrate that they have an interest in this [case] that is not adequately represented.'" Order, *Isle of Dreams, LLC v. City of North Bay Village*, No. 12-13402 (11th Cir. Nov. 8, 2012); *see* Fed. R. Civ. P. 24(a)(2). This Court "'presume[s] adequate representation when an existing party seeks the same objectives as the would-be interveners,'" and "imposes upon the applicant for intervention 'the burden of coming forward with some evidence to the contrary.'" *Leavitt*, 488 F.3d at 910. Here, movants seek the same objective as the SEC—a decision upholding the order—and they have provided no reason to think the Commission will not adequately represent their interests.

8

### 1.　Adequate representation is presumed here.

Where the objective of both a government party and a would-be intervenor is to defend an agency action from challenge, this Court presumes the government will adequately protect the would-be intervenor's interests. In *Leavitt*, for example, this Court held that Florida's environmental agency had no right to intervene to defend the EPA's approval of the state agency's updated list of "impaired waters." 488 F.3d at 908. The presumption of adequate representation applied, the Court explained, because the "mutual interest" of the Florida agency and the EPA "in this case is to defend the legality of the EPA's approval of Florida's 2002 List." *Id.* at 911. That was so even though the EPA had *disapproved* other aspects of Florida's list. *See id.* at 908, 910 n.9. "While a proposed intervener and a party might, as a general matter, have different interests," this Court reasoned, "the relevant Rule 24(a)(2) inquiry is whether the party will represent the proposed intervener's interest *with respect to the subject matter of the action.*" *Id.* at 910 n.9. And the interests with respect to the action were the same—namely, "seeing that the EPA's approval of Florida's 2002 List is upheld." *Id.*

9

*Leavitt* is hardly an outlier. This Court has repeatedly looked to a movant's litigation objectives—as opposed to its general interests—in addressing adequacy. *See, e.g.*, *Athens Lumber Co. v. FEC*, 690 F.2d 1364, 1366 (11th Cir. 1982) (presuming adequate representation where union and FEC had "same objective" of seeing statute upheld); *Assoc. Indus. of Ala., Inc. v. Train*, 543 F.2d 1159, 1161 (5th Cir. 1976) (affirming denial of Alabama's intervention motion because state and EPA had "identical" litigation positions regarding the relevant challenge to EPA order). So have other circuits. *See, e.g.*, *Tri-State Generation & Transmission Ass'n v. N.M. Pub. Regul. Comm'n*, 787 F.3d 1068, 1072-73 (10th Cir. 2015) ("[E]ven though a party seeking intervention may have different ultimate motivations from the governmental agency, where its objectives are the same, we presume representation is adequate." (cleaned up)).

Here, regardless of any supposed divergence in interests "as a general matter," movants and the Commission share the same "objective in this litigation." *Leavitt*, 488 F.3d at 910 & n.9. Specifically, all of them want to defeat petitioners' challenge to the order. *See* CAT LLC Mot. 4-5; Cboe Mot 7; Nasdaq Mot. 6; NYSE Mot. 10.

10

Movants do not suggest that the SEC intends to do anything but zealously defend its order. Nor is there any reason to believe otherwise. After all, the Commission adopted CAT LLC's proposed funding scheme without substantive amendment and has championed the CAT as a "critical regulatory tool[]." 88 Fed. Reg. at 62657. So contrary to movants' suggestion (*e.g.*, CAT LLC Mot. 5-6), this is not a case like *Trbovich v. United Mine Workers of America*, 404 U.S. 528 (1972), where the government and the would-be intervenor did not have "the same objective" but instead sought different relief. *Athens Lumber*, 690 F.2d at 1367 (limiting *Trbovich* to those situations); *see Berger v. N.C. State Conf. of the NAACP*, 142 S. Ct. 2191, 2199 (2022) (permitting intervention when existing government defendant's "primary objective *wasn't* defending" the challenged law (cleaned up)); *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003) (permitting intervention when it is "not hard to imagine how the interests of the [movant] and those of the [government] might diverge during the course of litigation").

The interests of movants and the Commission are especially united here because of movants' role in crafting the order. Unlike in a typical rulemaking where an agency proposes a regulation, receives comments

11

from various groups, and then balances a set of competing interests to arrive at a final rule, the SEC permits SROs in this context to create and submit plan amendments directly to the Commission for approval. *See, e.g.,* 17 C.F.R. § 242.608(a). That is what happened here—the order approved an amendment literally written by CAT LLC itself. In CAT LLC's own words, it "is both the proponent and the subject of the SEC's order." CAT LLC Mot. 5. Much like the list in *Leavitt,* the order therefore represents not only the Commission's view of how the CAT should be funded, but *movants' own view* as well. If anything, this is an even easier case than *Leavitt* given that the SEC did not "disapprove[]" aspects of movants' proposal, 488 F.3d at 908, but "approve[d]" it without substantive change, 88 Fed. Reg. at 62628. Any theoretical divergence in interests between movants and the SEC is therefore not implicated in the dispute over the order's validity.

### 2.    Movants have not rebutted the presumption.

Movants nevertheless contend that the SEC will not adequately represent them for essentially three sets of reasons. None is persuasive.

a.    Movants principally maintain that as a general matter, the SEC's "sovereign interests" are distinct from their own "pecuniary

12

interest[s]." CAT LLC Mot. 6 (quoting *Huff v. Comm'r of IRS*, 743 F.3d 790, 800 (11th Cir. 2014)). That is a false dichotomy; their interests are both intertwined and aligned with the Commission's. As self-*regulatory* organizations (and their jointly-owned creation) tasked with assisting the SEC with its administration of the federal securities law, including by operating the CAT for the Commission's benefit, no movant can be described as a purely "private intervenor … seeking to protect a more narrow and parochial financial interest." CAT LLC Mot. 6 (cleaned up); *see* Chair Gary Gensler, SEC, *Statement on CAT Funding* (Sept. 6, 2023), https://perma.cc/T93D-XH9W (noting that the CAT will give "'us an unprecedented ability to effectively oversee the markets we regulate'"). Given their role in this regulatory scheme, movants are a far cry from private "[t]axpayers" whose only interest in a case is reducing "their overall tax liability." *Huff,* 743 F.3d at 800.

But even if movants' interests here were purely pecuniary, they still could not overcome the presumption. This Court and others have rejected the argument that "a public agency charged with protecting the public interest cannot represent adequately private interests." *Athens Lumber*, 690 F.2d at 1366; *see, e.g.*, *Daggett v. Comm'n on Gov't'l Ethics & Election*

13

*Prac.*, 172 F.3d 104, 112 (1st Cir. 1999) ("The general notion that the Attorney General represents 'broader' interests at some abstract level is not enough."). Instead, movants must show how the *general* differences in interests they identify would *specifically* affect the substance of this litigation. *See Leavitt*, 488 F.3d at 911 (upholding denial of intervention because "no claim or defense on behalf of Florida has been suggested which is not or will not be asserted by the EPA defendants" (cleaned up)); *Train*, 543 F.2d at 1161 (similar); *Athens Lumber,* 690 F.2d at 1367 ("[B]oth have precisely the same objective" as "[b]oth wish to uphold the constitutionality of section 441b."); *cf. Dimond v. Dist. of Columbia*, 792 F.2d 179, 193 (D.C. Cir. 1986) ("[T]his is not a case where, despite the difference in the interests of State Farm and the District, the District's representation of the general public interest would nonetheless lead the District to make the same legal arguments").

Movants, however, have not shown how their purportedly narrower pecuniary interests will result in defenses that will differ from the SEC's. And really, they *cannot* make that showing for two reasons. For one thing, this litigation does not implicate any difference in high-level interests between movants and the Commission because the order fully

14

adopts movants' *own* proposal. *See* 88 Fed. Reg. at 62628, 62686; *supra* at 6. It is therefore hard to see how a robust defense of this order by the SEC will not adequately protect movants' interests in preserving the funding scheme they themselves proposed.

For another, movants cannot translate any differences in interests into distinct defenses of the order because of the *Chenery* doctrine—"the foundational principle of administrative law that a court may uphold agency action only on the grounds that the agency invoked when it took the action." *Michigan v. EPA*, 576 U.S. 743, 758 (2015). So even if movants' supposedly unique interests might otherwise lead them to mount defenses beyond those contained in the order itself, this Court could not consider them. *See Alameda Water & Sanitation Dist. v. Browner*, 9 F.3d 88, 91 (10th Cir. 1993) (affirming denial of intervention because the movant's "additional reasons for upholding" an agency action "would be irrelevant" under *Chenery*). Perhaps recognizing this problem, only one of the movants claims that it will "present different arguments … than the SEC," and even it never explains how it could do so consistent with *Chenery*. Cboe Mot. 8.

15

That lurking *Chenery* problem is enough to distinguish the three decisions from this Court that movants invoke here. In each of those cases, the *Chenery* doctrine posed no obstacle to the intervenor's distinct interests leading to distinct defenses. One allowed a government entity to intervene to support a *plaintiff's* challenge to certain IRS deficiency notices. *Huff*, 743 F.3d at 794, 800-01. Another permitted intervention to defend against a claim under the Voting Rights Act—a defense the government party had decided not to pursue on appeal. *Meek v. Metro. Dade Cnty.*, 985 F.2d 1471, 1474, 1478 (11th Cir. 1993). And the third allowed the movants to intervene to defend against a challenge to agency *inaction*, which meant there was no agency record to review. *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1248 (11th Cir. 2002); *see San Francisco BayKeeper v. Whitman*, 297 F.3d 877, 886 (9th Cir. 2002) ("[W]hen a court considers a claim that an agency has *failed* to act in violation of a legal obligation, 'review is not limited to the record as it existed at any single point in time'"). In these cases, the intervenors had distinct interests, not otherwise represented by the existing parties, that they were legally free to raise.

16

**b.**    Movants also appeal to a smattering of examples where this Court and others granted intervention to private parties to defend agency actions. CAT LLC Mot. 5; Nasdaq Mot. 5 n.4. But the only cases movants can muster from this Court are plainly distinguishable. In one, this Court granted intervention to private parties seeking to defend an order issued by the FCC. *See Autauga Cnty. Emergency Mgmt. Commc'n Dist. v. FCC*, 17 F.4th 88, 98 (11th Cir. 2020). The movants there, however, invoked the specific statutory right to intervene in FCC cases for parties who participated in the agency proceeding, 28 U.S.C. § 2348, meaning adequate representation was not even at issue. *See* Motion, *Autaugua Cnty.*, 17 F.4th 88 (No. 19-15072); Fed. R. Civ. P. 24(a)(1) (intervention mandatory where movant "is given an unconditional right to intervene by a federal statute"). In the other, the motion to intervene was unopposed—a detail apparently shared by nearly all of the out-of-circuit intervention orders movants identify. *See* Notice, *Ala. Env't Council v. EPA*, 711 F.3d 1277 (11th Cir. 2009) (Nos. 08-16961, 11-11549); *see, e.g.*, Motion, *Cboe Futures Exch., LLC v. SEC*, 77 F.4th 971 (D.C. Cir. 2023) (No. 21-1038).

17

**c.**    Finally, CAT LLC insists that it is entitled to intervene on the premise that the Commission does not have the same "institutional knowledge" regarding CAT LLC's operations. CAT LLC Mot. 6 (quoting *Huff*, 743 F.3d at 800). That argument is triply flawed.

*First*, CAT LLC does not explain how its institutional knowledge could affect the substance of this litigation. And because the order must be evaluated based on its own reasoning and record under *Chenery*, CAT LLC's own knowledge is beside the point. *See supra* at 15-16.

*Second*, CAT LLC's tongue must be firmly planted in its cheek when it suggests the SEC lacks sufficient knowledge about the CAT. The Commission ordered the creation of the CAT in 2012, reviewed and approved the plan creating CAT LLC and crafting the CAT in 2016, and has now adopted a detailed plan for the surveillance system's funding. All the while, the Commission has overseen the development of the CAT and will be the primary beneficiary of the data it collects. *See supra* at 3-6. To say that the SEC is unfamiliar with a decade-old project it created, superintends, and will deploy as a regulatory tool strains credulity.

*Third*, any disparity in knowledge about CAT LLC's inner workings comes nowhere close to the sort this Court has previously recognized as

favoring intervention. In *Huff*, this Court reasoned that three individual taxpayer plaintiffs lacked the same institutional knowledge as the government of the Virgin Islands about "the interrelationship between the United States and Virgin Islands tax systems," as well as "access to the same information regarding the consequences of the IRS's … position." 743 F.3d at 800. The existing parties therefore had no relevant expertise, while the intervenor had all of it. Here, by contrast, the Commission oversees both CAT LLC and the Exchanges, and it is responsible for approving both the creation of and amendments to the CAT. *See* 17 C.F.R. §§ 242.613(a)(2), 242.608(a). The SEC thus has all the institutional knowledge this case requires.

Indeed, if the alleged difference in institutional knowledge here justified intervention, then *Leavitt* and *Train* would have come out the other way. Surely Florida and Alabama—whose agencies had proposed the standards the EPA evaluated—had at least *some* greater measure of knowledge about their own waters than the federal government. Intervention was inappropriate nonetheless. *See Leavitt*, 488 F.3d at 908-09, 911; *Train*, 543 F.2d at 1160-61.

19

### B.    Permissive Intervention Is Not Warranted.

Movants' alternative request for permissive intervention fares no better. Because "'it is wholly discretionary … whether to allow intervention under Rule 24(b),'" this Court is free to deny permissive intervention even when a movant establishes "'a common question of law or fact.'" *Worlds v. Fla. Dep't of Health & Rehab. Servs.*, 929 F.2d 591, 595 (11th Cir. 1991). In making this discretionary determination, "almost any factor rationally relevant" to the motion may be considered. *Daggett*, 172 F.3d at 113. Here, permissive intervention is unwarranted not only because the movants "are adequately represented by" the SEC, *LULAC v. Clements*, 884 F.2d 185, 189 (5th Cir. 1989), but also because allowing them in threatens to add needless complexity and delay to this proceeding without any corresponding benefit, *see* Fed. R. Civ. P. 24(b)(3) ("[T]he court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.").

The downsides to intervention are obvious. For one thing, it would allow movants to attempt to hijack this case and transfer it to a different circuit, thereby undermining petitioners' interest in litigating in their chosen forum. *See, e.g.*, *Buckeye Partners, L.P. v. FERC*, No. 22-60100,

20

2022 WL 1528311, at *3 (5th Cir. May 13, 2022). Although such a request would be baseless, *see Tenneco Oil Co. v. EPA*, 592 F.2d 897, 900 (5th Cir. 1979), it would force this Court to endure yet another round of unnecessary motions briefing on issues divorced from the merits.

Once that was over, movants would still burden this Court's docket with a total of seven merits briefs, at least five of which would say essentially the same thing using different words. Again, because *Chenery* would prevent movants from advancing any new defenses of the order, their briefing could not differ in substance from the Commission's, as movants themselves appear to recognize. *See, e.g.*, Cboe Mot. 8 (claiming the Cboe exchanges will "present arguments" in a "different manner"); Nasdaq Mot. 9 (noting "[t]he factual grounds and legal arguments that the Commission has raised … are common with Nasdaq's own understanding of the relevant issues"). And after this Court had waded through that morass, it would have to entertain a parade of oral advocates as each intervenor sought to provide its "unique" perspective at the podium. *E.g.*, Nasdaq Mot. 7; *see* 11th Cir. R. 34-4 (providing that "each party" is allowed up to "two counsel" to "be heard," with "the time allowed … apportioned between counsel at their discretion").

There is no need to "clutter the action unnecessarily." *Arney v. Finney*, 967 F.2d 418, 421 (10th Cir. 1992). Rather, this Court should deny intervention on the ground that "[t]he duplicative nature" of movants' arguments "makes it unlikely that any new light will be shed on the issues to be adjudicated." *Chiles v. Thornburgh*, 865 F.2d 1197, 1215 (11th Cir. 1989). That would still leave movants free to "supplement" the SEC's defense and offer their own "perspective[s]" as *amici*, Cboe Mot. 8—an approach petitioners would not oppose and which would be far less burdensome for the Court and the existing parties.

## II.    THE EXCHANGES' MOTIONS ARE DOUBLY DEFECTIVE.

Even if this Court is inclined to permit intervention by CAT LLC despite its clear alignment of interests with the SEC's, there is no reason to provide movants with a third, fourth, and fifth bite at the apple by allowing the Exchanges to intervene as well. CAT LLC plainly will adequately represent the interests of its constituent Exchanges, and the Exchanges' participation would add nothing to whatever CAT LLC may hypothetically have to offer beyond the Commission's own arguments. Thus, this Court certainly should not allow *both* CAT LLC and the Exchanges to intervene.

22

Because CAT LLC and the Exchanges that control it have the same "objective in this litigation" of upholding the order, the presumption that CAT LLC will adequately represent them applies. *Leavitt*, 488 F.3d at 910. And CAT LLC and the Exchanges have identical interests even at a higher level—unless the order succeeds in shifting CAT costs to broker-dealers like Citadel Securities and ASA's members, CAT LLC's only "source of funding" will be the "Exchanges." CAT LLC Mot. 4; *see, e.g.*, Nasdaq Mot. 5 (stating "CAT LLC proposed the [amendment] on behalf of Nasdaq and the other exchanges"). Perhaps for that reason, none of the Exchanges submitted individual comments to the SEC on CAT LLC's proposal, evidently preferring to rest on the efforts of their jointly-owned and jointly-controlled creation.

The Exchanges have not rebutted the presumption of adequate representation. Nasdaq, for instance, invokes *Stone v. First Union Corp.*, 371 F.3d 1305, 1312 (11th Cir. 2004), and contends that because it represents a "minority" in CAT LLC, it may "emphasize" different arguments. Nasdaq Mot. 8 n.5. But the reason why a different "emphasis" mattered in *Stone* was that the movants had suffered discrimination in distinct ways and hence did "not have sufficiently similar claims" as the

23

plaintiffs. 371 F.3d at 1307, 1312. The rule remains that movants must show that their interests would affect the substance of the litigation. And whatever differences movants hypothetically could show between their arguments and the SEC's (notwithstanding *Chenery*), there can and would be no daylight between CAT LLC's and its members'.

Perhaps recognizing that it is materially indistinguishable from CAT LLC for purposes of intervention, Nasdaq insists that it does not even have "to show that its interests differ from another intervening party" because Rule 24(a) refers to "*existing parties.*'" Nasdaq Mot. 8 n.5. That is not the law. When considering multiple intervention motions, courts are free to grant some of them and then consider whether the interests of "existing parties" have "come to overlap fully with the interests of any remaining proposed intervenor." *Berger*, 142 S. Ct. at 2205; *see Chiles*, 865 F.2d at 1201, 1215 (denying intervention because prior intervenor would adequately represent movant's interests). Such sequencing is wholly consistent with Rule 24(a): This Court could grant CAT LLC's motion—thereby rendering it an "existing party"—and *then* consider whether to grant the Exchanges' motions as well.

24

NYSE and Cboe, on the other hand, claim they have an interest distinct from CAT LLC in recouping their expenditures on the CAT. NYSE Mot. 11, Cboe Mot. 8 n.2. But this Court has already rejected the argument that representation is inadequate just because the pecuniary effects of a plaintiff's victory would fall more heavily on a movant. *See Leavitt*, 488 F.3d at 911; *Train*, 543 F.2d at 1160-61. Those differences do not matter unless they "reflect upon the vigor" of the party's defense, *Leavitt*, 488 F.3d at 911, and the Exchanges provide no reason to think CAT LLC would do anything but robustly defend the order it proposed and that would allow its members, including NYSE and Cboe, to recoup those costs at petitioners' expense. And while NYSE and Cboe also contend that they have distinct "regulatory interests," Cboe Mot. 8 n.2; *see* NYSE Mot. 11, any such interests are fully represented by *the SEC*—the entity primarily tasked with "enforc[ing] … federal securities laws," NYSE Mot. 11. Again, if the Exchanges wish to provide this Court with their perspectives on the CAT—"regulatory" or otherwise—they are perfectly capable of filing *amicus* briefs, which petitioners would not oppose. *See, e.g.*, Brief of *Amici Curiae* Securities Exchanges, *Alpine Secs. Corp. v. FINRA*, No. 23-5129 (D.C. Cir. Nov. 3, 2023), 2023 WL 7280153.

25

## CONCLUSION

The Court should deny the motions for leave to intervene. Alternatively, if the Court permits CAT LLC to intervene, it should deny the Exchanges' motions.

Dated: December 1, 2023

*/s/ J. Michael Connolly*
J. Michael Connolly
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
mike@consovoymccarthy.com

*Counsel for Petitioner American Securities Association*

Respectfully submitted,

*/s/ Noel J. Francisco*
Noel J. Francisco
Yaakov M. Roth
Brian C. Rabbitt
Brinton Lucas
Joshua T. Hoyt
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
(202) 879-3939
njfrancisco@jonesday.com

David Phillips
JONES DAY
4655 Executive Dr., Ste. 1500
San Diego, CA 92121

*Counsel for Petitioner Citadel Securities LLC*

26

## CERTIFICATE OF COMPLIANCE

I certify that this Response complies with (1) the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5016 words, excluding any parts exempted by Rule 27(a)(2)(B); and (2) the typeface and type-style requirements of Rule 27(d)(1)(E) because it has been prepared in 14-point Century Schoolbook Standard (a proportionally spaced typeface) using Microsoft Word.

Dated: December 1, 2023

*/s/ J. Michael Connolly*

*Counsel of Record for Petitioner American Securities Association*

Respectfully submitted,

*/s/ Noel J. Francisco*

*Counsel of Record for Petitioner Citadel Securities LLC*

Certificate 1

# CERTIFICATE OF ELECTRONIC SUBMISSION

I certify that: (1) any required privacy redactions have been made; (2) the electronic submission of this document is an exact copy of any corresponding paper document; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free from viruses.

Dated: December 1, 2023

*/s/ J. Michael Connolly*

*Counsel of Record for Petitioner American Securities Association*

Respectfully submitted,

*/s/ Noel J. Francisco*

*Counsel of Record for Petitioner Citadel Securities LLC*

Certificate 2

## CERTIFICATE OF SERVICE

I certify that on December 1, 2023, the foregoing Response was electronically filed with the United States Court of Appeals for the Eleventh Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: December 1, 2023

Respectfully submitted,

/s/ J. Michael Connolly

/s/ Noel J. Francisco

Counsel of Record for
Petitioner American
Securities Association

Counsel of Record for Petitioner
Citadel Securities LLC

Certificate 3