**No. 23-13396**

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

AMERICAN SECURITIES ASSOCIATION AND CITADEL SECURITIES LLC,
*Petitioners*,

v.

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,
*Respondent*.

---

On Petition for Review of September 6, 2023 Order of the
United States Securities and Exchange Commission

---

## REPLY IN SUPPORT OF MOTIONS FOR LEAVE TO INTERVENE BY THE CBOE EXCHANGES AND THE NYSE EXCHANGES

---

Paul E. Greenwalt III
Michael K. Molzberger
ARENTFOX SCHIFF LLP
233 S. Wacker Dr., Suite 7100
Chicago, IL 60606

*Counsel for Proposed Intervenors Cboe BYX Exchange, Inc., Cboe BZX Exchange, Inc., Cboe C2 Exchange, Inc., Cboe EDGA Exchange, Inc., Cboe EDGX Exchange, Inc., and Cboe Exchange, Inc.*

Jennifer G. Altman
PILLSBURY WINTHROP SHAW PITTMAN
  LLP
600 Brickell Avenue, Suite 3100
Miami, Florida 33131

*Counsel for Proposed Intervenors New York Stock Exchange LLC, NYSE American LLC, NYSE Arca, Inc., NYSE Chicago, Inc., and NYSE National, Inc.*

*American Securities Association et al. v. United States Securities and Exchange Commission*,
Case No. 23-13396

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel represents Proposed Intervenors Cboe BYX Exchange, Inc., Cboe BZX Exchange, Inc., Cboe C2 Exchange, Inc., Cboe EDGA Exchange, Inc., Cboe EDGX Exchange, Inc., and Cboe Exchange, Inc. (collectively, the "Cboe Exchanges") and New York Stock Exchange LLC, NYSE American LLC, NYSE Arca, Inc., NYSE Chicago, Inc., and NYSE National, Inc. (collectively, the "NYSE Exchanges").

Pursuant to Eleventh Circuit Rule 26.1-1 through 26.1-3 and Federal Rule of Appellate Procedure 26.1, the undersigned counsel hereby certifies that, to the best of their knowledge, the Certificate of Interested Persons set forth in the Cboe Exchanges' and NYSE Exchanges' Motions for Leave to Intervene in Support of Respondent and Petitioners' Opposition to Motions for Leave to Intervene in Support of Respondent are complete, subject to the following additions:

1. **Barbero, Megan**, counsel for Respondent United States Securities and Exchange Commission;

2. **Conley, Michael A.**, counsel for Respondent United States Securities and Exchange Commission;

3. **Hardin, Tracey A.**, counsel for Respondent United States Securities and Exchange Commission; and

4. **Kennedy, Jordan**, counsel for Respondent United States Securities and Exchange Commission.

*American Securities Association et al. v. United States Securities and Exchange Commission,*
Case No. 23-13396

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-3, counsel for the Cboe Exchanges hereby certifies that each of the Cboe Exchanges are direct or indirect wholly-owned subsidiaries of Cboe Global Markets, Inc. (CBOE), a public company. Cboe Global Markets, Inc. has no parent corporation.  A third party's review of public filings indicates that The Vanguard Group, Inc. owned 10% or more of Cboe Global Markets, Inc.'s common stock as of November 14, 2023.

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-3, counsel for the NYSE Exchanges hereby certifies that each of the NYSE Exchanges are indirect wholly-owned subsidiaries of Intercontinental Exchange, Inc., which is publicly traded under the stock symbol "ICE." ICE has no parent corporation and, as of the date hereof, no publicly held company owns 10% or more of its stock.

*American Securities Association et al. v. United States Securities and Exchange Commission,*
Case No. 23-13396

Dated: December 8, 2023

/s/ *Paul E. Greenwalt III*
Paul E. Greenwalt III
Michael K. Molzberger
ARENTFOX SCHIFF LLP
233 S. Wacker Dr., Suite 7100
Chicago, IL 60606
Phone: (312) 258-5500
paul.greenwalt@afslaw.com
michael.molzberger@afslaw.com

*Counsel for Proposed Intervenors Cboe BYX Exchange, Inc., Cboe BZX Exchange, Inc., Cboe C2 Exchange, Inc., Cboe EDGA Exchange, Inc., Cboe EDGX Exchange, Inc., and Cboe Exchange, Inc.*

/s/ *Jennifer G. Altman*
Jennifer G. Altman
Pillsbury Winthrop Shaw Pittman LLP
600 Brickell Avenue
Suite 3100
Miami, Florida 33131
Tel: 786-913-4831
jennifer.altman@pillsburylaw.com

*Counsel for Proposed Intervenors New York Stock Exchange LLC, NYSE American LLC, NYSE Arca, Inc., NYSE Chicago, Inc., and NYSE National, Inc.*

The Exchanges[1] demonstrated in their Motions for Leave to Intervene (ECF Nos. 29, 31) that they satisfy the requirements for mandatory intervention. Petitioners' Opposition's (ECF No. 41, "Opp.") sole argument to the contrary is that the Exchanges' interests are purportedly adequately represented by the Commission and, if granted leave to intervene, CAT LLC. Petitioners are incorrect.

Contrary to Petitioners' argument, the bar to show inadequacy of representation by the existing parties is minimal, and the Exchanges satisfy the requirement. Among other interests, the Exchanges each have a unique pecuniary interest in upholding the Order to preserve their ability to begin recouping on the hundreds of millions of dollars they have expended on the CAT and to ensure that CAT's future operations are not funded solely by the Exchanges. Those pecuniary interests are distinct from the interests of the SEC and CAT LLC, which are less concerned about the Exchanges' pecuniary interests than the Exchanges themselves. In addition, the resolution of this action will directly impact the Exchanges' ability to fulfill their regulatory obligations as self-regulatory organizations ("SROs").

---

[1] As used herein, "Exchanges" means the "Cboe Exchanges" (Cboe BYX Exchange, Inc., Cboe BZX Exchange, Inc., Cboe C2 Exchange, Inc., Cboe EDGA Exchange, Inc., Cboe EDGX Exchange, Inc., and Cboe Exchange, Inc.) and the "NYSE Exchanges" (New York Stock Exchange LLC, NYSE American LLC, NYSE Arca, Inc., NYSE Chicago, Inc., and NYSE National, Inc.).

Alternatively, the Exchanges demonstrated that permissive intervention is warranted. Petitioners argue that permissive intervention should be denied because of a hypothetical parade of procedural horribles. Petitioners speculate that if granted leave to intervene, the Exchanges will delay the case; attempt to transfer the case; file redundant merits briefs; and have a "parade of oral advocates" at argument. (Opp. 21-22.) Petitioners' hypotheticals lack any basis, and such hypotheticals could be asserted in any appeal involving multiple parties. Petitioners have not filed their merits briefs and cannot foresee what the Exchanges would argue in response—underscoring a fatal flaw with Petitioners' argument.

Fundamentally, Petitioners seek to deny the Exchanges an opportunity to be heard and participate as parties in a case that directly impacts and may impair their ability to recover hundreds of millions of dollars of historical costs, among other interests. Intervention in similar circumstances is routinely granted, and Petitioners' hyperbolic arguments to the contrary are misplaced. The Motions should be granted.

## I.    THE EXCHANGES SATISFY THE REQUIREMENTS FOR MANDATORY INTERVENTION.

The Supreme Court has recognized that proposed intervenors face "only a minimal challenge" to show that the existing parties do not adequately represent their interests. *Berger v. N. Carolina State Conference of the NAACP*, 142 S. Ct. 2191, 2203 (2022). Ignoring that precedent, Petitioners argue that there is a presumption that the SEC adequately represents the Exchanges' interests. But no presumption

applies because the Exchanges' interests are not "identical with[] that of one of the parties." *Id.* at 2204 ("Where 'the absentee's interest is similar to, but not identical with, that of one of the parties,' that normally is not enough to trigger a presumption of adequate representation." (*quoting* Wright & Miller Fed. Prac. & Proc. Civ. § 1909)). Even if such a presumption applied, it is a "weak" presumption that the Exchanges have rebutted because they have made at least "some" showing that their interests are not adequately represented. *Stone v. First Union Corp.*, 371 F.3d 1305, 1311 (11th Cir. 2004).

The Exchanges and the SEC do not have "identical" interests. A private party benefiting from an agency's action may have a "narrower interest" than the public itself, and therefore, representation of that narrow interest by the government agency is inadequate. *Trbovich v. United Mine Workers*, 404 U.S. 528, 539 (1972) (union member and the government both sought to overturn union election, but their interests were not identical because the government also had an "obligation to protect the vital public interest") (cleaned up). Indeed, this Court has recognized that a private entity's pecuniary interest is "qualitatively different" from the government's "sovereign interests." *Huff v. Comm'r of IRS*, 743 F.3d 790, 800 (11th Cir. 2014) (permitting taxpayers to intervene because, although the taxpayers had "taken the same litigation position" as a party, the taxpayers' interest "in their overall

3

tax liability is not the same as the [governmental entity's] interest in how the taxes are apportioned").

Similarly here, the Exchanges have unique interests in, for example, ensuring that they will finally be able to recoup the hundreds of millions of dollars they have spent developing CAT, whereas the SEC has a more generalized interest in ensuring that CAT is funded. *See Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 321 (D.C. Cir. 2015) (proposed intervenor, which had received benefit of favorable agency decision, "easily met the minimal burden of showing inadequacy of representation" and noting "we look skeptically on government entities serving as adequate advocates for private parties"); *Fund for Animals v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003) ("governmental entities do not adequately represent the interests of aspiring intervenors"); *Dimond v. District of Columbia*, 792 F.2d 179, 192–93 (D.C. Cir. 1986) ("A government entity . . . is charged by law with representing the public interest of its citizens.  [A private entity], on the other hand, is seeking to protect a more narrow and 'parochial' financial interest" that is not "subsumed" within the shared public interest.).

Likewise, if the Court allows CAT LLC to intervene and chooses to analyze whether CAT LLC adequately represents the Exchanges' interests, CAT LLC (a non-profit entity) is not an adequate representative for the Exchanges (for-profit entities).  The Exchanges' individualized pecuniary interests are fundamentally

different.  While the Exchanges have an interest in CAT LLC's success and its ability to finance its operations, the Exchanges have potentially conflicting interests with the participants in CAT LLC in how CAT LLC is funded and how soon the exchanges (which have been funding the development of CAT since 2016) will be able to recoup on the funds they have loaned to CAT LLC.  The historical funds at risk ultimately are the Exchanges', not CAT LLC's.

Further, CAT LLC is owned by 25 entities, many of which are competitors, and one of whom filed a comment letter objecting to the Order under review.  (ECF No. 38, at 2, citing Comment Letter of Marcia E. Asquith, Corporate Secretary, EVP, Board and External Relations, Financial Industry Regulatory Authority, Inc., Apr. 11, 2023.)  The Exchanges cannot unilaterally manage CAT LLC, and the arguments that CAT LLC might offer in this appeal could be driven by consensus or majority vote.  The Exchanges, in contrast, are entitled to determine individually which arguments they wish to make to protect their unique pecuniary and regulatory interests, without having to submit those arguments to the other participants in CAT LLC for their approval.

The Exchanges also are SROs under the Exchange Act and have their own regulatory obligations distinct from CAT LLC, which is not an SRO.  *See, e.g.*, 15 U.S.C. § 78f(b)(4) and (b)(6) (requiring that any fees assessed by exchanges be reasonable and equitably allocated among their members, issuers, and persons using

exchange facilities and that exchange rules provide for discipline of members for violating exchange rules and the federal securities laws). The Exchanges, unlike CAT LLC, will use the CAT to fulfill their regulatory responsibilities to surveil their members and enforce their unique rules—responsibilities that also differ from the SEC's responsibilities to enforce the federal securities laws. The Exchanges are entitled to assert different arguments than CAT LLC (and the SEC) based on their different interests and perspectives.

Petitioners argue that the Exchanges will be adequately represented by the SEC because there is a common objective to "defeat petitioner's challenge to the order." (Opp. 10.) But this Court has rejected that line of reasoning, holding that "agreement on that conclusion does not mean that the [parties] have identical positions or interests." *Georgia v. U.S. Army Corps of Engineers*, 302 F.3d 1242, 1259 (11th Cir. 2002); *see also Huff*, 743 F.3d at 800. In *Georgia*, the Court permitted intervention as of right, finding that while the proposed intervenor and respondent desired the same outcome, the proposed intervenor's interests were not adequately represented by the respondent because the parties had separate bases for desiring the same outcome. 302 F.3d at 1259. So too here. Among other diverging interests, the SEC seeks to protect its decision-making process, whereas the Exchanges seek to protect the ability to recoup the expenditures they have made in developing CAT. That the Exchanges (like the Petitioners) participated in the

6

rulemaking process does not make their interests "identical" to the SEC's. Petitioners' logic would read any right of intervention out of existence every time a movant supported the result found at the agency level. This is not the law, and the Exchanges have demonstrated that their interests diverge from the SEC (and CAT LLC) sufficient to warrant intervention.

The opinion in *Chiles v. Thornburgh*, 865 F.2d 1197 (11th Cir. 1989) is instructive. There the Court permitted the detainees of a prison to intervene even though their interests were "similar to, but not identical with" the county defendant. *Id.* at 1214. The Court emphasized "[t]he fact that the interests are similar does not mean that approaches to litigation will be the same" and found that possibly divergent litigation strategies "sufficiently demonstrate[d] that the detainees' interests are not adequately represented." *Id.* at 1215.

Petitioners' reliance on *Sierra Club, Inc. v. Leavitt*, 488 F.3d 904 (11th Cir. 2007) is misplaced. In *Leavitt*, after the district court granted summary judgment, this Court reviewed the district court's decision to deny intervention to Florida's environmental agency when the federal EPA was a party. Even with the benefit of hindsight on appeal, the proposed intervenor was unable to state what it would have argued differently than the federal EPA and the proposed intervenor adopted the EPA's brief in its entirety. *Id.* at 910. Here, in contrast, there is no basis supporting Petitioners' speculation that the Exchanges' arguments will be "redundant" (Opp. 3)

of the SEC's arguments because Petitioners have yet to reveal their arguments. Further, unlike here, *Leavitt* involved a government agency that sought to intervene as a co-defendant with another governmental agency, and there were no private parties with unique interests.

Petitioners' other "redundancy" argument cases are distinguishable and outdated. In *Athens Lumber Co. v. Fed. Election Comm'n*, 690 F.2d 1364, 1366–67 (11th Cir. 1982), the Court denied intervention because the proposed intervenor's generalized interest "shared with all unions and all citizens" was legally insufficient to support intervention as of right. Petitioners have not claimed that the Exchanges' interest is as general and widely shared as that of the proposed intervenor in *Athens* or that the Exchanges are not "a real party in interest[.]" *Id.* at 1366. In fact, the position of the Exchanges aligns with how the court in *Athens* distinguished *Trbovich*, where the intervenor "bore an especially close relationship to the case." *Id.* at 1367. Moreover, unlike in *Athens*, where the government agency had already "vigorously presented" its interest "throughout the[] proceedings," *id.* at 1366, here, the merits briefs have not been filed. Further, this Court has since rejected the reasoning in *Athens* several times. *Huff*, 743 F.3d at 800; *Georgia*, 302 F.3d at 1259.[2]

---

[2] Similarly, Petitioners' reliance on *Associated Indus. of Alabama, Inc. v. Train*, 543 F.2d 1159 (5th Cir. 1976) is misplaced because the Exchanges are not government

Petitioners' reliance on *SEC v. Chenery Corp.*, 332 U.S. 194 (1947) is misplaced for several reasons. First, *Chenery* does not address intervention. Second, while a court reviewing agency action "must judge the propriety of such action solely by the grounds invoked by the agency," *id.* at 196, it does not follow that the Exchanges would be prohibited from advancing legal arguments that are different from the Commission's arguments. Petitioners' theory would mean no private party could ever intervene in a proceeding challenging an agency order. Instead, intervention is routinely granted because courts recognize that intervenors may make different arguments, present arguments differently, or highlight different aspects of the agency action under review. *See, e.g.*, *Fund for Animals*, 322 F.3d at 736–37 (permitting intervention where interests differed); *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 912 (D.C. Cir. 1977) (noting intervenor may "provide a very helpful supplement to the defense by the state authority").

In conclusion, there is no presumption of adequate representation—either by the SEC or by CAT LLC—because neither of their interests "overlap fully" with the Exchanges' interests. *Berger*, 142 S. Ct. at 2205. To the extent there is a presumption, the Exchanges have met their "minimal burden" to rebut it. *Id.* Because the existing parties may not adequately represent the Exchanges, and

---

agencies and have unique pecuniary interests. Petitioners' reliance upon *Alameda Water & Sanitation Dist. v. Browner*, 9 F.3d 88, 91 (10th Cir. 1993) is misplaced because that opinion did not address the adequacy requirement.

9

Petitioners do not dispute that the other requirements are satisfied, mandatory intervention is appropriate.

## II.   ALTERNATIVELY, PERMISSIVE INTERVENTION IS WARRANTED.

Petitioners also argue that permissive intervention is unwarranted, hypothesizing a parade of procedural horribles if the Exchanges are permitted to intervene.  (Opp. 1-3, 20-22.)

First, Petitioners assume that the Exchanges will file separate, redundant merits briefs.  (*Id.* 3, 21.)  In reality, the Exchanges will coordinate with the other parties supporting the SEC's Order and determine if a consolidated merits brief is feasible or, at a minimum, work to avoid making repetitious arguments.

While Petitioners argue that additional merits briefs would render it difficult for this Court to adjudicate this appeal, Petitioners undermine their argument by conceding that they would not object to the Exchanges filing amicus briefs if intervention is denied.  Relegation to filing amicus briefs, however, deprives the Exchanges of the ability to adequately protect their interests, because the scope of amicus briefs is limited and amici may not have the ability to seek further review of a judgment entered by this Court.

Second, Petitioners speculate that five attorneys will present oral argument to defend the Order.  (*Id.* 3.)  The issue of who will present argument, however, will be addressed later in the case, and the parties will discuss how to divide oral argument

in accordance with this Court's rules and orders. That routine process is not novel to this appeal.

Third, Petitioners speculate that the Exchanges will attempt to transfer the case, while simultaneously arguing that such a request would be baseless. (*Id.* 20-21.) The Exchanges, however, do not presently envision seeking a transfer. Regardless, Petitioners cite no authority supporting the proposition that intervention should be denied based on whether an intervenor might have a right to request a transfer.

Fourth, while Petitioners prophesize that the Exchanges' participation as intervenors would lead to delay (*Id.* 20), this argument rings hollow given that Petitioners recently requested additional time to file their merits briefs (ECF No. 42-1). There also is no reason to assume that the Exchanges' intervention would result in delay.

In sum, contrary to Petitioners' claim that intervention will "effectively quintuple the procedural complexity of this litigation" (Opp. 3), this Court is equipped to handle whatever complexity arises as a result of intervention. *See Berger*, 142 S.Ct. at 2206 ("whatever additional burdens [allowing intervention] may pose, those burdens fall well within the bounds of everyday case management").

At bottom, Petitioners' hypothetical concerns are baseless and fail to show that undue prejudice or delay would result from permitting the Exchanges to intervene.

## CONCLUSION

The Exchanges respectfully request that the Court grant them leave to intervene.

Dated: December 8, 2023                    Respectfully submitted,

/s/ Paul E. Greenwalt III                   /s/ Jennifer G. Altman

Paul E. Greenwalt III                       Jennifer G. Altman
Michael K. Molzberger                       Pillsbury Winthrop Shaw Pittman LLP
ARENTFOX SCHIFF LLP                         600 Brickell Avenue
233 S. Wacker Dr., Suite 7100               Suite 3100
Chicago, IL 60606                           Miami, Florida 33131
Phone: (312) 258-5500                       Tel: 786-913-4831
paul.greenwalt@afslaw.com                   jennifer.altman@pillsburylaw.com
michael.molzberger@afslaw.com

*Counsel for Proposed Intervenors*          *Counsel for Proposed Intervenors New*
*Cboe BYX Exchange, Inc., Cboe BZX*         *York Stock Exchange LLC, NYSE*
*Exchange, Inc., Cboe C2 Exchange,*         *American LLC, NYSE Arca, Inc., NYSE*
*Inc., Cboe EDGA Exchange, Inc., Cboe*      *Chicago, Inc., and NYSE National, Inc.*
*EDGX Exchange, Inc., and Cboe*
*Exchange, Inc.*

12

**CERTIFICATE OF SERVICE**

I hereby certify that undersigned counsel served a true and correct copy of the foregoing to all parties of record through the Court's CM/ECF system.

/s/ Paul E. Greenwalt III
Paul E. Greenwalt III

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

Pursuant to Federal Rule of Appellate Procedure Rule 32(g)(1), I certify that this motion complies with the typeface requirements of Federal Rule of Appellate Procedure 27(d)(1) because this motion was prepared in 14-point Times New Roman, a proportionally-spaced typeface, using Microsoft Word 2016. *See also* Fed. R. App. P. 32(a)(5)–(6). This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2) because it contains 2,586 words, excluding the parts exempted under Rule 32(f). As permitted by Federal Rule of Appellate Procedure 32(g)(1), the undersigned has relied upon the word count feature of Microsoft Word 2016 in preparing this certificate.

I further certify that: (1) all required privacy redactions have been made, (2) the electronic submission is an exact copy of any corresponding paper document, and (3) the motion has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

Dated: December 8, 2023                    /s/ Paul E. Greenwalt III
                                           Paul E. Greenwalt III