**No. 23-13396**

---

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

AMERICAN SECURITIES ASSOCIATION AND CITADEL SECURITIES LLC,
*Petitioners,*

v.

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,
*Respondent,*

THE NASDAQ STOCK MARKET, LLC, NASDAQ BX, INC., NASDAQ GEMX,
LLC, NASDAQ ISE, LLC, NASDAQ MRX, LLC, ET AL.,
*Intervenors.*

---

Petition for Review of an Order of the Securities and Exchange
Commission Release No. 34-98290; File No. 4-698

---

# BRIEF OF AMICUS CURIAE COMPETITIVE ENTERPRISE
# INSTITUTE SUPPORT OF PETITIONERS

---

Devin Watkins
Dan Greenberg
COMPETITIVE ENTERPRISE INSTITUTE
1310 L St. NW, 7th Floor
Washington, D.C. 20005
(202) 331-1010
Devin.Watkins@cei.org
Dan.Greenberg@cei.org

*American Securities Association et al. v. United States Securities and Exchange Commission*, No. 23-13396

## CERTIFICATE OF INTERESTED PARTIES

1.    **Altman, Jennifer G.**, Pillsbury Winthrop Shaw Pittman LLP, counsel for NYSE Intervenors.

2.    **American Securities Association**, Petitioner.

3.    **ArentFox Schiff LLP**, counsel for Intervenors Cboe BYX Exchange, Inc., Cboe BZX Exchange, Inc., Cboe EDGA Exchange, Inc., Cboe EDGX Exchange, Inc., Cboe C2 Exchange, Inc., and Cboe Exchange, Inc.

4.    **Barbero, Megan**, counsel for Respondent United States Securities and Exchange Commission.

5.    **Borse Dubai Limited**, owner of more than 10% of Nasdaq, Inc.'s shares.

6.    **BOX Exchange LLC**, member and participant of Consolidated Audit Trail, LLC.

7.    **Boyle, Gregory, Jenner & Block LLC**, counsel for Intervenor Consolidated Audit Trail, LLC.

8.    **Cboe BYX Exchange, Inc.,** Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

9.    **Cboe BZX Exchange, Inc**., Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

10.   **Cboe C2 Exchange, Inc.**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

11.   **Cboe EDGA Exchange, Inc.**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

12.   **Cboe EDGX Exchange, Inc.**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

13. **Cboe Exchange, Inc.**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

14. **Cboe Global Markets, Inc. (BATS: CBOE)**, direct or indirect parent company of Intervenors Cboe BYX Exchange, Inc., Cboe BZX Exchange, Inc., Cboe EDGA Exchange, Inc., Cboe EDGX Exchange, Inc., Cboe C2 Exchange, Inc., and Cboe Exchange, Inc.

15. **Citadel Securities GP LLC**, parent company of Petitioner Citadel Securities LLC.

16. **Citadel Securities LLC**, Petitioner.

17. **Conley, Michael A.**, counsel for Respondent United States Securities and Exchange Commission.

18. **Connolly, J. Michael**, Consovoy McCarthy PLLC, counsel for Petitioner American Securities Association.

19. **Consolidated Audit Trail**, LLC, Intervenor.

20. **Consovoy McCarthy PLLC**, counsel for Petitioner American Securities Association.

21. **Financial Industry Regulatory Authority, Inc.**, member and participant of Intervenor Consolidated Audit Trail, LLC.

22. **Francisco, Noel J.**, Jones Day, counsel for Petitioner Citadel Securities LLC.

23. **Gershengorn, Ian Heath, Jenner & Block LLP**, counsel for Intervenor Consolidated Audit Trail, LLC.

24. **Greenwalt III, Paul E.**, ArentFox Schiff LLP, counsel for Intervenors Cboe BYX Exchange, Inc., Cboe BZX Exchange, Inc., Cboe EDGA Exchange, Inc., Cboe EDGX Exchange, Inc., Cboe C2 Exchange, Inc., and Cboe Exchange, Inc.

*American Securities Association et al. v. United States Securities and Exchange Commission*, No. 23-13396

25.  **Hardin, Tracey A.**, counsel for Respondent United States Securities and Exchange Commission.

26.  **Hoyt, Joshua T.**, Jones Day, counsel for Petitioner Citadel Securities LLC.

27.  **Intercontinental Exchange, Inc. (NYSE: ICE)**, indirect parent of NYSE Intervenors.

28.  **International Securities Exchange Holdings, Inc.**, sole LLC member of Intervenors Nasdaq GEMX LLC, Nasdaq ISE LLC, and Nasdaq MRX LLC.

29.  **Investor AB (Nasdaq Stockholm: INVEB)**, owner of more than 10% of Nasdaq, Inc.'s shares.

30.  **Investors' Exchange, LLC**, member and participant of Intervenor Consolidated Audit Trail, LLC.

31.  **Jenner & Block LLP**, counsel for Intervenor Consolidated Audit Trail, LLC.

32.  **Jones Day**, counsel for Petitioner Citadel Securities LLC.

33.  **Kastenberg, Stephen J.,** Ballard Spahr LLP, counsel for Intervenors The Nasdaq Stock Market LLC, Nasdaq BX, Inc., Nasdaq GEMX, LLC, Nasdaq ISE, LLC, Nasdaq MRX, LLC, and Nasdaq PHLX LLC.

34.  **Katsiff, Timothy D.**, Ballard Spahr LLP, counsel for Intervenors The Nasdaq Stock Market LLC, Nasdaq BX, Inc., Nasdaq GEMX, LLC, Nasdaq ISE, LLC, Nasdaq MRX, LLC, and Nasdaq PHLX LLC.

35.  **Kennedy, Jordan**, counsel for Respondent United States Securities and Exchange Commission.

36.  **Lantieri III, Paul**, Ballard Spahr LLP, counsel for Intervenors The Nasdaq Stock Market LLC, Nasdaq BX, Inc., Nasdaq GEMX,

*American Securities Association et al. v. United States Securities and Exchange Commission*, No. 23-13396

LLC, Nasdaq ISE, LLC, Nasdaq MRX, LLC, and Nasdaq PHLX LLC.

37. **Long-Term Stock Exchange, Inc.**, member and participant of Intervenor Consolidated Audit Trail, LLC.

38. **Lucas, Brinton**, Jones Day, counsel for Petitioner Citadel Securities LLC.

39. **MacLean, Matthew J.**, Pillsbury Winthrop Shaw Pittman LLP, counsel for NYSE Intervenors.

40. **Matro, Daniel E.**, counsel for Respondent United States Securities and Exchange Commission.

41. **MEMX LLC**, member and participant of Intervenor Consolidated Audit Trail, LLC.

42. **Miami International Securities Exchange LLC**, member and participant of Intervenor Consolidated Audit Trail, LLC.

43. **MIAX Emerald, LLC**, member and participant of Intervenor Consolidated Audit Trail, LLC.

44. **MIAX PEARL, LLC**, member and participant of Intervenor Consolidated Audit Trail, LLC.

45. **Molzberger, Michael**, ArentFox Schiff LLP, counsel for Intervenors Cboe BYX Exchange, Inc., Cboe BZX Exchange, Inc., Cboe EDGA Exchange, Inc., Cboe EDGX Exchange, Inc., Cboe C2 Exchange, Inc., and Cboe Exchange, Inc.

46. **Nasdaq BX, Inc.**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

47. **Nasdaq GEMX, LLC**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

*American Securities Association et al. v. United States Securities and Exchange Commission*, No. 23-13396

48.  **Nasdaq, Inc. (Nasdaq: NDAQ)**, sole owner of LLC interest in The Nasdaq Stock Market LLC and Nasdaq PHLX LLC and parent company of Nasdaq BX, Inc.

49.  **Nasdaq ISE, LLC**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

50.  **Nasdaq MRX, LLC**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

51.  **Nasdaq PHLX LLC**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

52.  **New York Stock Exchange LLC**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

53.  **NYSE American LLC**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

54.  **NYSE Arca, Inc.**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

55.  **NYSE Chicago, Inc.**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

56.  **NYSE National, Inc.**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

57.  **Phillips, David**, Jones Day, counsel for Petitioner Citadel Securities LLC.

58.  **Pillsbury Winthrop Shaw Pittman LLP**, counsel for NYSE Intervenors.

59.  **Rabbitt, Brian C.**, Jones Day, counsel for Petitioner Citadel Securities LLC.

60.  **Roth, Yaakov M.**, Jones Day, counsel for Petitioner Citadel Securities LLC.

*American Securities Association et al. v. United States Securities and Exchange Commission*, No. 23-13396

61. **The Nasdaq Stock Market LLC**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

62. **The Vanguard Group, Inc.**, owned 10% or more of Cboe Global Markets, Inc.'s common stock as of June 30, 2023.

63. **Thoma Bravo UGP, LLC**, owner of more than 10% of Nasdaq, Inc.'s shares.

64. **Unikowsky, Adam G.**, Jenner & Block LLP, counsel for Intervenor Consolidated Audit Trail, LLC.

65. **United States Securities and Exchange Commission**, Respondent.


Dated: February 15, 2024        Respectfully submitted,

                                */s/ Devin Watkins*
                                Devin Watkins
                                Dan Greenberg
                                COMPETITIVE ENTERPRISE
                                    INSTITUTE
                                1310 L St. NW, 7th Floor
                                Washington, D.C. 20005
                                (202) 331-1010
                                devin.watkins@cei.org
                                *Attorneys for Amicus Curiae*

*American Securities Association et al. v. United States Securities and Exchange Commission*, No. 23-13396

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 26.1-2, the undersigned counsel hereby certify that no parent corporation, and no publicly held corporation has a 10% or greater ownership interest in the Competitive Enterprise Institute.

Dated: February 15, 2024

Respectfully submitted,

*/s/ Devin Watkins*
Devin Watkins
Dan Greenberg
COMPETITIVE ENTERPRISE
  INSTITUTE
1310 L St. NW, 7th Floor
Washington, D.C. 20005
(202) 331-1010
devin.watkins@cei.org
*Attorneys for Amicus Curiae*

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES.......................................C-1

CORPORATE DISCLOSURE STATEMENT.......................................C-7

TABLE OF CONTENTS ...................................................................i

TABLE OF AUTHORITIES..............................................................ii

INTEREST OF *AMICI CURIAE*.......................................................1

INTRODUCTION...........................................................................1

ARGUMENT .................................................................................1

   I.  Congress Authorized the SEC to Regulate Commerce, Not to Levy Taxes to Fund Enforcement Actions.....................................................1

   II. Participating Exchanges Are Acting as Agents of the SEC in Following Its Order to Create the CAT. ................................................6

   III. Congress Cannot Be Presumed to Have Implicitly Delegated This Massive Authority. ........................................................................8

CONCLUSION ............................................................................12

CERTIFICATE OF COMPLIANCE....................................................13

# TABLE OF AUTHORITIES

**Cases**

*All. for Fair Bd. Recruitment v. Sec. & Exch. Comm'n,*
  85 F.4th 226 (5th Cir. 2023) ...................................................7

*Bailey v. State of Alabama*, 219 U.S. 219 (1911) ....................................8

*Bernstein v. Lind-Waldock & Co.*, 738 F.2d 179 (7th Cir. 1984).............7

*Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n,*
  531 U.S. 288 (2001)...............................................................6

*D.L. Cromwell Invs., Inc. v. NASD Regulation, Inc.,*
  279 F.3d 155 (2d Cir. 2002) ...................................................7

*Epstein v. SEC*, 416 F. App'x 142 (3d Cir. 2010) ....................................7

*Jackson v. Metro. Edison Co.*, 419 U.S. 345 (1974) .................................6

*Jones v. SEC*, 115 F.3d 1173 (4th Cir. 1997)...........................................7

*Lebron v. Sec'y, Fla. Dep't of Child. & Fams.,*
  710 F.3d 1202 (11th Cir. 2013)...............................................8

*Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921 (2019)..........7

*McCulloch v. Maryland*, 17 U.S. 316 (1819)............................................9

*Roberts v. AT&T Mobility LLC*, 877 F.3d 833 (9th Cir. 2017) .................7

*Util. Air Regul. Grp. v. E.P.A.*, 573 U.S. 302 (2014).............................11

*W. Virginia v. Env't Prot. Agency*, 597 U.S. 697 (2022).........................11

**Statutes**

15 U.S.C. § 78ee.....................................................................................5

15 U.S.C. § 78f (b)(4) ........................................................................6

15 U.S.C. § 78f(b)(4) .........................................................................3

15 U.S.C. § 78k–1 .............................................................................1

15 U.S.C. § 78k–1(a) .........................................................................3

15 U.S.C. § 78k–1(a)(3)(B) ................................................................3

15 U.S.C. § 78k–1(b) .........................................................................2

15 U.S.C. § 78k–1(c) .........................................................................2

15 U.S.C. § 78k–1(c)(2) .....................................................................2

Petition of Right of 1628, 3 Car., c. 1, § 1 (Eng) ........................9

**Other Authorities**

Federalist No. 58 ..............................................................................9

Joe Biden, S. Rep. No. 104-5, at 27 (1995)...............................11

*Statement of Hester M. Peirce in Response to Release No. 34-88890*; File
    No. S7-13-19 9 (May 15, 2020) ..................................................4

**Rules**

Consolidated Audit Trail, 77 FR 45772 (Oct. 1, 2012) ............5

Joint Industry Plan; Order Approving an Amendment to the National
    Market System Plan Governing the Consolidated Audit Trail; Notice,
    88 FR 62628 (Sept. 12, 2023) ..................................................8

Joint Industry Plan; Order Approving the National Market System
    Plan Governing the Consolidated Audit Trail, 81 FR 84696, 84801
    (Nov. 23, 2016) ........................................................................11

Order Granting Conditional Exemptive Relief, Pursuant to Section
    36(a)(1) of the Securities Exchange Act of 1934 ('Exchange Act') and

Rule 608(e) of Regulation NMS Under the Exchange Act, From
Certain Requirements of the National Market System Plan Governing
the Consolidated Audit Trail, 88 FR 77128 (Nov. 8, 2023) ...................5

## Constitutional Provisions

Art. I § 7 cl. 1 .............................................................................................9

Art. I § 8 cl. 1 .............................................................................................9

Art. I § 8 cl. 3 .............................................................................................2

## INTEREST OF *AMICI CURIAE*[1]

The Competitive Enterprise Institute is a nonprofit organization headquartered in Washington, D.C., dedicated to promoting the principles of free markets and limited government. Since its founding in 1984, the institute has focused on raising public understanding of the problems of overregulation. It has done so through policy analysis, commentary, and litigation.

## INTRODUCTION

For years, the Securities and Exchange Commission (SEC) sought money from Congress to bolster its enforcement authority, but it did not secure all of its desired funding. Undeterred by the absence of congressional funding, the SEC now mandates broker-dealers to finance the creation of its enforcement tool, the Consolidated Audit Trail (CAT). However, only Congress holds the authority to levy taxes to fund such enforcement tools.

## ARGUMENT

### I. Congress Authorized the SEC to Regulate Commerce, Not to Levy Taxes to Fund Enforcement Actions.

By means of the statute the SEC relies upon—the Securities Exchange Act of 1934 and subsequent amendments codified at 15 U.S.C. § 78k–1—Congress sought to use its power to regulate commerce among

---

[1] *Amicus* affirms that no counsel for a party authored this brief in whole or in part, that no person other than *amicus* and its counsel made a monetary contribution to the preparation or submission of this brief, and that all parties consented to the submission of this *amicus* brief.

the states. That exercise of Congressional *regulatory* power is distinct from the exercise of Congress's powers of *taxation*. All of the authority and power that Congress delegated to the SEC derived from Congress's power "[t]o regulate Commerce with foreign Nations, and among the several States." U.S. Const. Art. I § 8 cl. 3. Nothing in the Act suggests that the SEC may compel private parties to raise funds to help build its own enforcement tools.

Every requirement enacted by Congress in that Act included explicit limitations that concern the "use of the mails or any means or instrumentality of interstate commerce": these limitations demonstrate Congress's delegation of authority under the Commerce Clause. The Act required registration of security information processors who "make use of the mails or any means or instrumentality of interstate commerce" to perform their functions. 15 U.S.C. § 78k–1(b). The Act allowed the SEC to regulate self-regulatory organizations and their members in their "use of the mails or any means or instrumentality of interstate commerce to collect, process, distribute, publish, or prepare for distribution or publication any information with respect to quotations for or transactions in any security." 15 U.S.C. § 78k–1(c). The Act allowed the SEC to require that any "purchase or sale of any qualified security by use of the mails or any means or instrumentality of interstate commerce" be properly reported. 15 U.S.C. § 78k–1(c)(2).

The statute's congressional findings about the purpose of this provision further reinforce that only regulatory power over commerce was being delegated. Congress found that advances in technology created opportunities for more efficient and effective market operations, and Congress wanted those opportunities to result in a regime of economically efficient transactions, fair competition, availability of information with respect to quotations for and transactions in securities, practicability of order execution, and electronic linkage of all securities markets. 15 U.S.C. § 78k–1(a). These authorized regulations fall under the Constitution's Commerce Clause. They do not require private parties to raise funds to assist in the creation of law enforcement tools such as the CAT, nor do they enlist the SEC in ordering private parties to carry out this effort.

The statute requires the exchanges to ensure the "equitable allocation of reasonable dues, fees, and other charges among its members and issuers and other persons using its facilities." 15 U.S.C. § 78f(b)(4). This provision functions as a limitation on the exchanges, not a grant of permission that empowers the SEC to require fees for the CAT. If the exchanges choose to create the CAT without an order from the SEC, they are free to do so—but they cannot discard their duty of equitable allocation of reasonable expenses.

The exchanges are allowed to act "jointly" as to a "national market system," 15 U.S.C. § 78k–1(a)(3)(B). The best reading of this provision is

3

that it represents an attempt to avoid antitrust problems that might arise under the Sherman Act. The § 78k–1(a)(3)(B) provision says nothing about the nature of a "national market system"; that phrase cannot properly be read to have any other denotation beyond that which attaches to its other occurrences in the Exchange Act. Of course there are many respects, and many kinds of regulations of commerce, under which the exchanges can act jointly, but the creation of enforcement tools falls outside of that category. The creation of tools of enforcement cannot be a part of the regulation of commerce as that concept has been historically understood: that is true essentially because, in the context of a "national market system" under the Exchange Act, there is no real ambiguity about whether the creation of enforcement tools could lie inside the regulation of commerce.

During the creation of the CAT, SEC Commissioner Hester Peirce described how the SEC "ordered the SROs to create a comprehensive surveillance database that will collect and store every equity and option trade and quote, from every account at every broker, by every investor." *Statement of Hester M. Peirce in Response to Release No. 34-88890*; File No. S7-13-19 9 (May 15, 2020). The claimed "value of the CAT's comprehensive, real-time database [is] as an enforcement tool." *Id.*

The SEC itself recognized a few months ago that "[t]he goal of Rule 613 was to create a modernized audit trail system that would provide regulators with timely access to a comprehensive set of trading data, thus

4

enabling regulators to more efficiently and effectively analyze and reconstruct market events, monitor market behavior, conduct market analysis to support regulatory decisions, and perform surveillance, investigation, and enforcement activities." Order Granting Conditional Exemptive Relief, Pursuant to Section 36(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 608(e) of Regulation NMS Under the Exchange Act, From Certain Requirements of the National Market System Plan Governing the Consolidated Audit Trail, 88 FR 77128 (Nov. 8, 2023). The SEC issued this order to produce information that would help regulators "more quickly initiate investigations, and more promptly take appropriate enforcement action." Consolidated Audit Trail, 77 FR 45772 (Oct. 1, 2012).

The SEC is authorized to "collect transaction fees and assessments that are designed to recover the costs to the Government of the annual appropriation to the Commission by Congress." 15 U.S.C. § 78ee. Notably, this authorization requires the SEC to be backstopped by Congress: Congress still specifies the annual appropriation, even though SEC collections are authorized to offset it. The SEC may not create new enforcement initiatives based on this power unless Congress previously appropriates money for them. But the power the SEC claims here goes far beyond that limit: instead, it allows the SEC to fund whatever projects it wishes without any further involvement of our federal legislature.

5

The SEC is certainly allowed to enforce its rules using the means that Congress has actually provided. However, Congress authorized the SEC to regulate the securities markets, not to levy taxes on broker-dealers to finance the enforcement of such regulations.

## II.    Participating Exchanges Are Acting as Agents of the SEC in Following Its Order to Create the CAT.

The exchange participants are private parties who are permitted to allocate reasonable and equitable dues, fees, and other charges among their members. *See* 15 U.S.C. § 78f (b)(4). However, the SEC lacks any discretionary authority to levy taxes on broker-dealers, as demonstrated above; furthermore, it lacks any authority to use any such tax revenues to fund its own operations. It is therefore crucial to distinguish (first) the private and independent sphere of actions and choices that the law allows exchange participants to carry out from (second) the impermissible and prohibited behavior of exchange participants when they behave as state actors or agents of the SEC. We therefore go into some detail about the criteria for state action just below.

"[S]tate action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

There are three circumstances in which a private entity, such as an exchange participant, is understood as a state actor: "(i) when the private entity performs a traditional, exclusive public function, (ii) when the government compels the private entity to take a particular action, or (iii) when the government acts jointly with the private entity." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019) (internal citations removed).

Because the exchange participants are self-regulatory organizations, it might at first appear that they are performing a traditional, exclusive public function, but they are not. Numerous courts have heard this argument, and all have rejected it. *D.L. Cromwell Invs., Inc. v. NASD Regulation, Inc.*, 279 F.3d 155, 162 (2d Cir. 2002); *Epstein v. SEC*, 416 F. App'x 142, 148 (3d Cir. 2010); *Jones v. SEC*, 115 F.3d 1173, 1183 (4th Cir. 1997); *All. for Fair Bd. Recruitment v. Sec. & Exch. Comm'n*, 85 F.4th 226, 239 (5th Cir. 2023); *Bernstein v. Lind-Waldock & Co.*, 738 F.2d 179, 186 (7th Cir. 1984); *Roberts v. AT&T Mobility LLC*, 877 F.3d 833, 843 (9th Cir. 2017). Therefore, when exchange participants choose to act independently, they are not state actors.

However, this case raises an issue involving *Manhattan's* second branch that was not considered in the cases cited above. Namely, do private entity exchange participants become public actors as limited agents of the SEC "when the government compels the private entity to take a particular action"? *Manhattan*, 139 S. Ct. 1921. As the challenged

order notes, "the Commission adopted Rule 613 of Regulation NMS, which required the SROs to submit a national market system ('NMS') plan to create, implement and maintain a consolidated audit trail." Joint Industry Plan; Order Approving an Amendment to the National Market System Plan Governing the Consolidated Audit Trail; Notice, 88 FR 62628 (Sept. 12, 2023). These are not independent actions by the private exchange participants; rather, these are actions that are driven by the requirements of the SEC.

In its creation of such requirements for exchange participants, the SEC is limited to the authority that was provided to it by Congress. The SEC can't force the exchanges to perform tasks that it lacks the authority to order, because "[w]hat the state may not do directly it may not do indirectly." *Lebron v. Sec'y, Fla. Dep't of Child. & Fams.*, 710 F.3d 1202, 1217 (11th Cir. 2013) (quoting *Bailey v. State of Alabama*, 219 U.S. 219, 244 (1911)). In short, the SEC's actions consist of impermissible state action.

## III. Congress Cannot Be Presumed to Have Implicitly Delegated This Massive Authority.

The spark that ignited the American Revolution, the Boston Tea Party, was not just a regulation of commerce in tea; rather, it was a tax on citizens. Parliament had forced the colonists to pay indirect and special taxes on tea without the consent of their representatives in the legislature. The SEC is trying to exercise the same kind of improper

8

authority here: it is trying to force broker-dealers to pay for an enforcement tool without the involvement of their representatives in the legislature. Congress cannot be presumed to have implicitly authorized the SEC to do this.

The executive branch of government's desire to use the public's money to fund its preferred policies is nothing new. The English prohibition on bypassing the legislature to carry out the executive's aims goes back as far as The Petition of Right of 1628, which required that people "not be compelled to contribute to any tax, tallage, aid, or other like charge not set by common consent, in parliament." 3 Car., c. 1, § 1 (Eng). The U.S. Constitution gave Congress—and only Congress—the "power to lay and collect taxes, duties, imposts and excises," Art. I § 8 cl. 1, and further required that "all bills for raising revenue shall originate in the House of Representatives." Art. I § 7 cl. 1. The "House of Representatives cannot only refuse, but they alone can propose, the supplies requisite for the support of government." Federalist No. 58.

In Article I, Section 8, "we find the great powers to lay and collect taxes; to borrow money; to regulate commerce; to declare and conduct a war; and to raise and support armies and navies." *McCulloch v. Maryland*, 17 U.S. 316, 407 (1819). These great powers are given only to Congress, but Congress can delegate to the executive those "implied as incidental to other powers, or used as a means of executing them." *Id.*

9

All the powers that Congress gave to the SEC in the Act at issue rest on Congress's power to regulate commerce among the states. The scope of the SEC's authority is thus also limited to that power. That power cannot be used to force private parties to pay additional money without additional authority from Congress.

If Congress wants broker-dealers to pay additional money to create and maintain the CAT system, nothing prevents it from expressly declaring that they must do so. However, the SEC cannot create such obligations for broker-dealers unilaterally—it is Congress, and only Congress, that can authorize such a process.

Allowing the SEC to require private parties to fund its enforcement mechanism raises multiple constitutional concerns. The primary problem is that this funding scheme jeopardizes political accountability, because it appears to jettison the traditional mechanism for congressional control over the agency. Traditionally, Congress exercises control over agencies by tying congressional funding decisions to the policy directives that Congress delivers to the agency. If agencies have unilateral discretion to exercise their own power of the purse, this is a recipe for those politically unaccountable agencies to wrest powers away from Congress and upset the constitutional balance.

Furthermore, given the extensive power the SEC claims, such powers must be clearly authorized under the major questions doctrine. The SEC is creating a massive surveillance apparatus it didn't previously

10

require, a "transformative expansion in [its] regulatory authority." *See W. Virginia v. Env't Prot. Agency*, 597 U.S. 697, 724 (2022) (quoting *Util. Air Regul. Grp. v. E.P.A.*, 573 U.S. 302 (2014)). It "located that newfound power" in notably "vague language," see *id.*—a power that had never been used in this way before. *See Id.* This has created a politically and economically significant issue costing "$2.4 billion in initial aggregate implementation costs and recurring annual costs of $1.7 billion" Joint Industry Plan; Order Approving the National Market System Plan Governing the Consolidated Audit Trail, 81 FR 84696, 84801 (Nov. 23, 2016); *See Id.* at 700, *See also Id.* at 944 (Gorsuch, J. concurring) (The "agency must point to clear congressional authorization when it seeks to regulate a significant portion of the American economy or *require billions of dollars in spending by private persons or entities.*" (internal quotation marks and citations removed) (emphasis added)).

If the SEC can force broker-dealers to pay for this enforcement mechanism, what else can they be compelled to pay for? Might salary hikes for SEC officers be next? Once the SEC has seized the power of the purse, there is no limiting principle on what the SEC can do with that power. Preserving the exclusive authority of Congress over the power of the purse, which necessarily contradicts the program that the SEC has mandated here, is crucial for upholding the separation of powers. *See* Joe Biden, S. Rep. No. 104-5, at 27 (1995) ("The founders also intended the power of the purse to be one of the legislative branch's strongest bulwarks

11

against incursions by the executive, and the key to maintaining an enduring balance of powers.").

## CONCLUSION

For the foregoing reasons, the Court should vacate the order of the SEC.

Dated: February 15, 2024                    Respectfully submitted,

                                            /s/ Devin Watkins
                                            Devin Watkins
                                            Dan Greenberg
                                            COMPETITIVE ENTERPRISE
                                                INSTITUTE
                                            1310 L St. NW, 7th Floor
                                            Washington, D.C. 20005
                                            (202) 331-1010
                                            devin.watkins@cei.org
                                            *Attorneys for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

I certify that this Brief complies with (1) the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7) because it contains 2,675 words excluding the portions exempted by Rule 32(f); and (2) the typeface and type-style requirements of Rule 32(a)(5)-(6) because it has been prepared in 14-point Century Schoolbook (a proportionally spaced typeface) using Microsoft Word.


Dated: February 15, 2024             Respectfully submitted,

                                     */s/ Devin Watkins*
                                     Devin Watkins
                                     *Attorney for Amicus Curiae*

## CERTIFICATE OF SERVICE

I certify that on February 15, 2024, the foregoing brief was electronically filed with the United States Court of Appeals for the Eleventh Circuit using the CM/ECF system. I certify that all participants other than Yaakov M. Roth and Securities and Exchange Commission Office of the Secretary in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system. I certify that I mailed via First-Class Mail to:

Securities and Exchange Commission
Office of the Secretary
100 F ST NE MAIL STOP 1090
WASHINGTON, DC 20549

Yaakov M. Roth
Jones Day
51 LOUISIANA AVE NW
WASHINGTON, DC 20001

Dated: February 15, 2024

Respectfully submitted,

*/s/ Devin Watkins*
Devin Watkins
*Attorney for Amicus Curiae*

14