U.S. Court of Appeals
Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia 30303



Case No.: **23-13396** – DD

---

## Amicus Curiae Brief

---

Bubbie Gunter, Amicus Curiae, V. American Securities Association; & Citadel Securities
May 3, 2024

I, Bubbie Gunter, submit this Amicus Brief as a retail investor with a vested interest in transparency and fairness in the U.S. equity markets. Forgive me for any formatting issues in that I am not a practicing lawyer.

The case at hand involves Citadel Securities and American Securities Association challenging the Securities and Exchange Commission's (SEC) implementation of the Consolidated Audit Trail (CAT) and its cost. This system is designed to track every stock trade from its origin to its execution, ensuring accountability, transparency and a fair market place for all retail investors.

Citadel, along with several other Amicus Curiae would like to convince the court that Rule 613, known as the Consolidated Audit Trail ("The CAT System") is "government overreach" and the cost of the CAT System is a burden. However, as the court will see, the CAT System is not government overreach but an attempt to establish confidence back into our American securities market system. And, as the court will see, several audit trails already exist paid for by the SROs as a cost of doing business.

# Summary of the Argument

The SEC's implementation of the Consolidated Audit Trail (CAT) is crucial for promoting transparency in stock trading and preventing market manipulation. Citadel and American Securities Association's lawsuit against the SEC is no more than a frivolous attempt to avoid scrutiny, allowing Citadel, along with other market makers, to continue to undermine the integrity of the market. This brief supports the SEC's position and opposes Citadel's attempt to escape accountability.

## Argument

### 1. Market Manipulation and Public Outcry

Millions of voices cried out to the Securities and Exchange Commision (the "SEC") about market manipulation by market makers, who openly admit to "setting the price of securities" instead of allowing the natural law of supply and demand to do so. However, the "first line of defense", that is to say the Securities Exchanges such as the New York Stock Exchange (NYSE) and FINRA, acting as Self-Regulatory Organizations (SROs)—was not policing the market as they should and letting market makers run wild, selling securities they did not own, mismarking tens of millions of bought orders as sold and  orders that were sold were marked as bought. These practices and more have gone on for years without the Exchanges taking action. Finally, due to public outcry, the SEC, acting as the "second line of defense", had to step in and pass Rule 613 (the CAT system) to restore order and protect the market.

### 2. Prior Audit Trails Compared to The CAT System

Prior to the passage of Rule 613, one of the primary systems used by the U.S. securities industry for monitoring and auditing trading activities was called the Order Audit Trail System (OATS). OATS was established in 1998 and is funded by the Financial Industry Regulatory

Authority (FINRA),[1] a Self Regulatory Organization (SRO) and was primarily used to record orders, quotes, and trades in National Market System (NMS) and OTC equity securities.    -

OATS required FINRA members to record and report detailed information about the handling or execution of orders, including the time an order is received, the price, the size of the order, and how and when it was executed.[2] This data was used by FINRA for regulatory purposes, such as surveillance and investigation of trading activity to detect potential manipulative behaviors or regulatory violations.  And, as the regulatory arm of the government to ensure transparency and a fair market.  It should be noted,  the SEC had authority and access to review data from the Order Audit Trail System (OATS) as part of its oversight and regulatory functions.

Furthermore, Exchanges such as the New York Stock Exchange, among others, had their own audit systems and surveillance mechanisms in place to monitor trading activities and ensure compliance with their specific rules and regulations, as well as with federal securities laws.  These systems were designed to oversee the trading activities that occur within each exchange's platform and help detect and prevent irregularities such as market manipulation and trading violations.  Some examples of how exchanges currently implement their own audit systems are:

1. **NASDAQ and NYSE:** *Major stock exchanges like NASDAQ and the New York Stock Exchange (NYSE) have sophisticated audit trail systems in place to monitor trading activities. These systems track all orders, trades, modifications, and cancellations to ensure compliance with market rules and to detect potential instances of market manipulation or insider trading.*

2. **Commodity Exchanges:** *Commodity exchanges, such as the Chicago Mercantile Exchange (CME) and the New York Mercantile Exchange (NYMEX), use similar audit trail systems to monitor futures and options trading, ensuring that traders comply with exchange rules and federal regulations.*

---

[1] https://www.investopedia.com/terms/o/order_audit_trail_system.asp#:~:text=The%20order%20audit%20trail%20system%20(OATS)%20is%20a%20computerized%20regulatory,detailed%20records%20of%20securities%20transactions.&text=OATS%20was%20established%20so%20that,error%20or%20suspected%20market%20manipulation.

[2] i.d.

3. **Electronic Communication Networks (ECNs) and Alternative Trading Systems (ATSs):** *These platforms also have mechanisms to monitor trades and report suspicious activities to regulatory bodies like FINRA and the SEC.*

The funding for these audit trails and surveillance systems used by individual exchanges like NASDAQ, NYSE, CME, NYMEX, and various Electronic Communication Networks (ECNs) and Alternative Trading Systems (ATSs) is primarily the responsibility of the exchanges themselves.

## 3. Breakdown of how these systems are typically financed:

- **Paid for by the Exchanges:** *Major stock and commodity exchanges are self-regulatory organizations (SROs), which means they have the authority to enforce compliance with their own rules as well as federal securities laws. These exchanges operate as business entities that generate revenue through a variety of sources, such as trading fees, listing fees, and services related to trading. A portion of this revenue is allocated to develop, maintain, and operate their audit trail systems to ensure market integrity and regulatory compliance.*

- **Membership Fees:** *Exchanges charge membership fees to the firms that trade on their platforms. These fees contribute to the overall budget, which includes funding for the audit trail surveillance and monitoring systems that oversee trading activities.*

- **Regulatory Fees:** *Some exchanges impose regulatory fees on trades or on the registered firms themselves. These fees are specifically earmarked to fund the regulatory functions of the exchange, including their audit and monitoring systems.*

Overall, the exchanges themselves currently bear the financial responsibility for ensuring they have adequate audit trail systems in place to monitor trading, detect irregularities, and maintain compliance with both their internal rules and applicable federal regulations. This setup helps ensure that the exchanges have a direct interest in maintaining robust and effective surveillance capabilities to protect market integrity and investor confidence.

Each of these systems are crucial for maintaining the integrity of financial markets. However, they have become outdated due to technological advancements and the rise of

high-speed algorithmic trading. To address this, the SEC introduced Rule 613, the CAT System. This new and up to date audit trail system enhances and expands upon the capabilities of the outdated OATS System and individual exchange audit trail.

As the Court will see, the Consolidated Audit Trail (CAT) System aims to provide a more complete and efficient system for monitoring market activity across all U.S. exchanges and trading venues, ultimately replacing OATS and other similar systems to centralize and streamline regulatory oversight.

The Consolidated Audit Trail (CAT), like its predecessors, provides critical transparency in stock trading, tracking every transaction from purchase order to execution. However, due to the outdated systems, the SEC, as a regulatory body, was forced to pass Rule 613 (The CAT System), instructing Exchanges, Market Makers, and broker dealers to establish one consolidated audit database to track all transactions. The plan was approved in 2016, but its implementation faced years of relentless delays due to repeated requests from Exchanges for amendments to their own plan. Despite these delays, the CAT system is expected to be fully operational by May 28, 2024. Therefore, market makers and their friends are now flooding the court with frivolous lawsuits hoping to stop the "consolidated" database.

It's important to note that the SEC does not request information from the CAT system for itself. Instead, the system is set up to assist FINRA and the Exchanges (Self Regulatory Organizations) as the "first line of defense" to protect investors. It assists in identifying market manipulation. And, allows the SEC to oversee and regulate these entities more effectively by reviewing their audit trails and compliance measures in one "consolidated" database.

## 4. Citadel's Pattern of Violations

This Court should know, the Plaintiff, Citadel's hands are not clean when it comes to manipulating our stock market. Far from the victim they wish this Court to believe they are, they have a history of violating securities laws which were established to protect retail investors.

1. In 2007, Citadel Securities was fined $22,500 by FINRA for failing to properly report short interest positions.

2. In 2009, Citadel Securities was fined $3 million by the SEC for allegedly engaging in improper trading practices that artificially impacted the price of securities.

3. In 2014, Citadel faced two $800,000 penalties for trading irregularities spanning three years.

4. In 2015, Citadel Securities was fined $1.5 million by FINRA for violating various rules related to trading activities.

5. In 2016, Citadel Securities was fined $3.5 million by the SEC for violating the National Market System Plan governing the consolidated data feeds that disseminate stock prices and trades to the public.

6. In 2017, Citadel paid a $22.6 million penalty by the SEC for misrepresenting customer trades.

7. In 2018, Citadel was fined another $3.5 million by the SEC for illegal market activities.

8. And, in 2020, Citadel received a $700,000 fine from FINRA for trading ahead of its clients. And, more.[3]

Furthermore, I would bring to this Court's attention that **the SEC and FINRA had to bring charges for the crimes committed by Citadel** because Exchanges like the New York Stock Exchanges and NASDAQ refused to act in their government appointed regulatory function. In other words, because the Exchanges, with the exception of the Commodities Futures Trading Commission(CFTC), refused to regulate the market using their individual audit trails. Therefore, the Securities Exchange Commission, the government's regulatory arm, aimed at protecting retail investors in just such a case, had to step in.

The actions taken by the SEC to address these crimes using the Exchange's outdated audit trails, which the Exchanges paid for, were not considered government overreach at the time.

---

[3] A list of fines incurred by Citadel Securities and Citadel Advisors for market manipulation, https://news.investorturf.com/a-list-of-fines-incurred-by-citadel-securities-and-citadel-advisors-for-market-manipula tion

## 5. Is the CAT Government Overreach?

According to the Amici Curiae in support of Citadel, including statements from The CATO Institute and Investor Choice Advocates Network, the new Consolidated Audit Trail (CAT) system is labeled as "government overreach." These claims also falsely accuse the SEC of desiring to collect personal information from individual investors. However, this assertion could not be further from the truth.

In response to privacy concerns, the SEC has implemented an amendment to the CAT data requirements, mandating that all participants use a unique customer ID number, rather than personal data, for every trader. This measure ensures that privacy is maintained while still allowing the SEC to effectively monitor and regulate market activities.

Furthermore, just as health inspectors are empowered to enter restaurants to ensure compliance with health standards, the SEC also functions as the regulatory arm of the government, overseeing market activities to ensure they meet legal and ethical standards. This oversight is crucial for maintaining public trust in the financial markets, just as health inspections are vital for public confidence in the food industry. Similarly, like the health inspector, the SEC does not require a warrant to regulate our markets because it operates within its mandate as a regulatory agency, not as a law enforcement body.

However, if there were a need for a criminal investigation into market activities, such as the Department of Justice (DOJ) looking into illegal actions, then, akin to police needing a warrant to search a restaurant, the DOJ would be required to obtain a warrant to access data from the CAT system. This distinction underscores that the CAT system is designed for regulatory oversight and not for criminal investigations, aligning with its role as part of the government's regulatory framework rather than its law enforcement arm.

## 6. Admissions of Market Manipulation

Ken Griffin, CEO of Citadel Securities, openly admitted that markets are efficient because of active managers "SETTING THE PRICES OF SECURITIES."[4] This admission raises

---

[4] Business of America: Democracy and Capitalism, @34:20

concerns about how these firms impact the market's supply and demand dynamics. Practices like these, especially with large amounts of securities sold but not yet purchased, threaten market stability and investor trust.

## 7. Virtu Financial - The Liquidity Fairy

Citadel isn't the only Market Maker with a history of violations. Virtu Financial, has also faced regulatory penalties for violating U.S. financial laws as well.

1. In September 2019, Virtu was ordered to pay a $1.5 million penalty for willful violations of policy and procedure, reporting, and recordkeeping provisions of various SEC rules.[5]
2. In 2020, FINRA fined Virtu Americas for failing to implement policies and procedures that could have prevented discrepancies.
3. In September 2023, the SEC filed charges against Virtu Financial for false and misleading disclosures relating to information barriers.

Virtu Financial, the second largest market maker in America is also known in the securities industry as the "Liquidity Fairy" attempts to justify their market manipulation in a recent CNBC interview, when "liquidity" on an Exchange isn't available, market makers such as themselves provide it. This on the surface may sound honorable and they wish to be patted on the back for their actions and told, "Good job." However, the devil is in the details.

In 2020, the SEC passed Rule 605. This new rule was an attempt by the regulatory arm to expand public disclosure of "order execution quality" and help the retail investors compare and evaluate execution quality among national securities exchanges, national securities associations, market makers, and alternative trading systems.

Mr. Cifu during the CNBC interview[6] explained why he disagreed with proposed amendments to Rule 605 as such:

---

[5] https://www.sec.gov/enforce/34-87155-s
[6] Virtu Financial CEO weighs in on payment for order flow regulation, https://www.youtube.com/watch?v=K064hJQ7fdI

*"What that means is…to the extent there isn't "liquidity" on the Lit Exchange fundamentally the wholesalers (like himself) provide infinite liquidity at the NBBO (National Best Bid Offer price) or the inside price. So, if we get an order for 1000 shares…and there are [only] 200 shares on Nasdaq, we fill out a 1000 shares at that inside price. That's meaningful liquidity. 55% of the orders we receive…we provide size improvement."*

## 8. The Law of Supply and Demand

Understanding the Law of Supply and Demand is crucial to recognizing why the actions of market makers like Virtu Financial and Citadel, often referred to as "liquidity fairies," can be problematic. Traditionally, this law dictates that the price of an asset, such as a company's stock, is directly related to the availability of the company's outstanding float (i.e. the supply) and the market's desire for them (i.e. the demand). The "outstanding float" refers to the number of shares actually available for trading in the public market. And, prices naturally adjust based on the real-time interaction of supply and demand, which helps determine the fair market value of the shares.

As mentioned, Virtu Financial lays claim to "size improvement", that is to say they warp the natural balance of supply and demand, leading to skewed price discovery. When market makers like Virtu fill orders for a larger quantity of shares than what is available (the Outstanding Float of a company) on the market — for example, filling an order for 1,000 shares when only 200 are available—they effectively hyperinflate the perception of a stock's available shares. This distortion has misled investors about the true supply and demand dynamics and results in pricing that may not accurately reflect genuine market conditions.

This artificial inflation of supply has misled investors who rely on accurate market indicators to make informed investment decisions. It introduces a potential for price manipulation, significantly deviating from the fundamental principles that underpin fair and transparent markets.

Furthermore, I would remind the court of Citadel's admission to the modern day pricing of securities under their control when he stated, "...Markets are efficient because of active managers "SETTING THE PRICES OF SECURITIES."

These repeated violations year after year indicate that Citadel, along with other market makers will only continue their dubious operations with impunity due to these old worn outdated systems despite fines from regulatory authorities. Therefore, the need for a more comprehensive consolidated database is obvious.

## 9. The Need for Market Reform

Historically, the SEC has been forced to rely on old outdated audit trails provided by multiple Self-Regulatory Organizations (SROs), which fragmented the regulatory oversight and made it challenging to efficiently monitor market manipulations across different platforms. The CAT system will introduce a unified and comprehensive tracking framework that provides regulators and market participants with the advanced tools necessary to ensure that deceptive practices do not destabilize market operations.

Implementing the Consolidated Audit Trail (CAT) system therefore is crucial for maintaining transparency and integrity within the U.S. equity markets in today's modern world.

The CAT system introduces a unified and comprehensive tracking framework that provides regulators and market participants with the advanced tools necessary to ensure that deceptive practices do not destabilize market operations again like in 2008. By centralizing the audit trail, the CAT system will enable more robust monitoring of transactions, helping to identify and prevent manipulative behaviors in real-time.

Given the limitations mentioned of the previous systems and the ongoing concerns about market manipulations, supporting the SEC's initiative to implement the CAT system is indispensable. Opposing Citadel's lawsuit is crucial not merely as a response to one firm's objections but as a fundamental step towards safeguarding the stability and fairness of the entire market infrastructure.

By ensuring that the CAT system is fully operational and supported, we uphold the integrity of financial markets, protect investor interests, and promote a fair and transparent trading environment. This commitment is essential for maintaining investor confidence and ensuring the efficient functioning of financial markets in the digital age.

## Conclusion

Considering the above, this Court can now see clearly the frivolous nature of Citadel's lawsuit against the SEC. Existing audit trails, while maintained by various Self-Regulatory Organizations (SROs), are outdated and dispersed across multiple databases. This fragmentation makes it exceedingly difficult for the SEC to effectively monitor and regulate the market. The introduction of the Consolidated Audit Trail (CAT) system is a necessary evolution to address these deficiencies, enabling more efficient oversight and comprehensive market surveillance.

Also, as each and every exchange and other SROs pay for their current audit trail databases. Then, to complain of the cost of one consolidated audit trail is frivolous as well.

I urge the court to support the SEC's implementation of the Consolidated Audit Trail (CAT). This system is crucial for maintaining market transparency, ensuring fair practices, and protecting investors' interests. It represents a significant step forward in adapting our regulatory framework to the complexities of today's financial markets, thus enhancing the ability to detect and prevent manipulative and deceptive practices.

Thank you for your time and attention to this matter. By supporting the implementation of the CAT system, the court will help ensure that our markets remain fair and transparent, safeguarding the interests of all investors and the integrity of our financial system.

Sincerely,

Bubbie Gunter

(225) 364-5061

bg.bubbiegunter@gmail.com

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

**PRIORITY MAIL EXPRESS**

FLAT RATE ENVELOPE

FLAT RATE ENVELOPE

RATE ■ ANY WEIGHT

schedule free Package Pickup, scan the QR code.

USPS.COM/PICKUP



PS10001000006    EP13F May 2020

WRITE FIRMLY WITH BALL POINT PEN ON HARD SURFACE TO MAKE ALL COPIES LEGIBLE.

**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT)    PHONE ( )

Bubbie Gunter
26229 Walker South Rd #33
Denham Spring LA 70726

**PAYMENT BY ACCOUNT (if applicable)**

USPS® Corporate Acct. No.    Federal Agency Acct. No. or Postal Service™ Acct. No.

**DELIVERY OPTIONS (Customer Use Only)**

☐ SIGNATURE REQUIRED *Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.*

**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
☐ 10:30 AM Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)    PHONE ( )

US Court of Appeals
11th Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

ZIP + 4® (U.S. ADDRESSES ONLY)

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 insurance included.

CLEARED SECURITY



Retail    U.S. POSTAGE PAID
PME 1-Day
WALKER, LA 70785
MAY 06, 2024

30303    **$30.45**

RDC 07    R2304M113755-9



EL 887877175 US

**PRIORITY MAIL EXPRESS™**

UNITED STATES POSTAL SERVICE®

**ORIGIN (POSTAL SERVICE USE ONLY)**

☐ 1-Day    ☐ 2-Day    ☐ Military    ☐ DPO

| PO ZIP Code | Scheduled Delivery Date (MM/DD/YY) | Postage |
|---|---|---|
| 70745 | 5/7 | $30.45 |

| Date Accepted (MM/DD/YY) | Scheduled Delivery Time | Insurance Fee | COD Fee |
|---|---|---|---|
| 5/6 | ☐ 10:30 AM ☐ 3:00 PM ☐ 12 NOON | $ | $ |

| Time Accepted | 10:30 AM Delivery Fee | Return Receipt Fee | Live Animal Transportation Fee |
|---|---|---|---|
| 9:29 ☐ AM ☐ PM | $ | $ | $ |

| Special Handling/Fragile | Sunday/Holiday Premium Fee | Total Postage & Fees |
|---|---|---|
| 4.10 | $ | 30.45 |

| Weight | ☐ Flat Rate | Acceptance Employee Initials | |
|---|---|---|---|
| lbs. ozs. | ap | $ | |

**DELIVERY (POSTAL SERVICE USE ONLY)**

| Delivery Attempt (MM/DD/YY) | Time | Employee Signature |
|---|---|---|
| | ☐ AM ☐ PM | |
| Delivery Attempt (MM/DD/YY) | Time | Employee Signature |
| | ☐ AM ☐ PM | |

LABEL 11-B, OCTOBER 2016    PSN 7690-02-000-9996    1-ORIGIN POST OFFICE COPY

MAY 08 2024





 **UNITED STATES**

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express® shipments. Misuses may be a violation of federal law. This package is not for resale. EP13F © U.S. Postal Service; May 2020; All rights reserved.

