**No. 23-13396**

---

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

AMERICAN SECURITIES ASSOCIATION AND CITADEL SECURITIES LLC,

*Petitioners*,

v.

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

*Respondent*,

THE NASDAQ STOCK MARKET, LLC, NASDAQ BX, INC., NASDAQ GEMX, LLC, NASDAQ ISE, LLC, NASDAQ MRX, LLC, ET AL.,

*Intervenors.*

---

Petition for Review of an Order of
the Securities and Exchange Commission
Release No. 34-98290; File No. 4-698

---

## OPPOSED TIME-SENSITIVE MOTION
## FOR STAY AND INJUNCTIVE RELIEF
## (RELIEF REQUESTED NO LATER THAN NOVEMBER 17, 2024)

---

J. Michael Connolly
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
mike@consovoymccarthy.com

*Counsel for Petitioner*
*American Securities Association*

Noel J. Francisco
Yaakov M. Roth
Brian C. Rabbitt
Brinton Lucas
Joshua T. Hoyt
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
(202) 879-3939
njfrancisco@jonesday.com

David Phillips
JONES DAY
4655 Executive Dr., Ste. 1500
San Diego, CA 92121

*Counsel for Petitioner*
*Citadel Securities LLC*

# CERTIFICATE OF INTERESTED PERSONS

1.    **Alternative Investment Management Association**, *Amicus Curiae*.

2.    **Altman, Jennifer G.**, Pillsbury Winthrop Shaw Pittman LLP, counsel for NYSE Intervenors.

3.    **American Free Enterprise Chamber of Commerce**, *Amicus Curiae*.

4.    **American Securities Association**, Petitioner.

5.    **ArentFox Schiff LLP**, counsel for Intervenors Cboe BYX Exchange, Inc., Cboe BZX Exchange, Inc., Cboe EDGA Exchange, Inc., Cboe EDGX Exchange, Inc., Cboe C2 Exchange, Inc., and Cboe Exchange, Inc.

6.    **Ashbrook Byrne Kresge LLC**, counsel for *Amici Curiae* James Overdahl and S.P Kothari.

7.    **Bailey, Andrew**, counsel for *Amicus Curiae* State of Missouri.

8.    **Ballard Spahr LLP**, counsel for Intervenors The Nasdaq Stock Market LLC, Nasdaq BX, Inc., Nasdaq GEMX, LLC, Nasdaq ISE, LLC, Nasdaq MRX, LLC, and Nasdaq PHLX LLC.

9.    **Baltz, Brian J.**, Willkie Farr & Gallagher LLP, counsel for *Amicus Curiae* Futures Industry Association.

10.    **Barbero, Megan**, counsel for Respondent United States Securities and Exchange Commission.

11.    **Barr, William P.**, Torridon Law PLLC, counsel for *Amicus Curiae* American Free Enterprise Chamber of Commerce.

12.    **Bash, John F.**, Quinn Emanuel Urquhart & Sullivan, LLP, counsel for *Amici Curiae* Senator Tom Cotton et al.

13.    **Berman, Ari M.**, Pillsbury Winthrop Shaw Pittman LLP, counsel for NYSE Intervenors.

14.    **Berry, Jonathan**, Boyden Gray PLLC, counsel for *Amicus Curiae* American Free Enterprise Chamber of Commerce.

15. **Bird, Brenna**, counsel for *Amicus Curiae* State of Iowa.

16. **Blask, Ariel**, Willkie Farr & Gallagher LLP, counsel for *Amicus Curiae* Futures Industry Association.

17. **Boden, Anastasia**, counsel for *Amici Curiae* Cato Institute and Investor Choice Advocates Network.

18. **Borse Dubai Limited**, owner of more than 10% of Nasdaq, Inc.'s shares.

19. **BOX Exchange LLC**, member and participant of Consolidated Audit Trail, LLC.

20. **Boyle, Gregory**, Jenner & Block LLP, counsel for Intervenor Consolidated Audit Trail, LLC.

21. **Boyden Gray PLLC**, counsel for *Amicus Curiae* American Free Enterprise Chamber of Commerce.

22. **Bronni, Nicholas J.**, counsel for *Amicus Curiae* State of Arkansas.

23. **Cato Institute**, *Amicus Curiae*.

24. **Carr, Chris**, counsel for *Amicus Curiae* State of Georgia

25. **Cboe BYX Exchange, Inc.**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

26. **Cboe BZX Exchange, Inc.**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

27. **Cboe C2 Exchange, Inc.**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

28. **Cboe EDGA Exchange, Inc.**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

29. **Cboe EDGX Exchange, Inc.**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

30. **Cboe Exchange, Inc.**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

31. **Cboe Global Markets, Inc. (BATS: CBOE)**, direct or indirect parent company of Intervenors Cboe BYX Exchange, Inc., Cboe BZX Exchange, Inc., Cboe

EDGA Exchange, Inc., Cboe EDGX Exchange, Inc., Cboe C2 Exchange, Inc., and Cboe Exchange, Inc.

32.  **Chenoweth, Mark S.**, counsel for *Amicus Curiae* New Civil Liberties Alliance.

33.  **Citadel Securities GP LLC**, parent company of Petitioner Citadel Securities LLC.

34.  **Citadel Securities LLC**, Petitioner.

35.  **Coleman, Russell**, counsel for *Amicus Curiae* Commonwealth of Kentucky.

36.  **Committee on Capital Markets Regulation**, *Amicus Curiae*.

37.  **Commonwealth of Kentucky**, *Amicus Curiae*.

38.  **Commonwealth of Virginia**, *Amicus Curiae*.

39.  **Competitive Enterprise Institute**, *Amicus Curiae*.

40.  **Conley, Michael A.**, counsel for Respondent United States Securities and Exchange Commission.

41.  **Connolly, J. Michael**, Consovoy McCarthy PLLC, counsel for Petitioner American Securities Association.

42.  **Consolidated Audit Trail, LLC**, Intervenor.

43.  **Consovoy McCarthy PLLC**, counsel for Petitioner American Securities Association.

44.  **Deutsch, Elizabeth**, Jenner & Block LLP, counsel for Intervenor Consolidated Audit Trail, LLC.

45.  **Financial Industry Regulatory Authority, Inc.**, member and participant of Intervenor Consolidated Audit Trail, LLC.

46.  **Fitch, Lynn**, counsel for *Amicus Curiae* State of Mississippi.

47.  **Flowers, Benjamin M.**, Ashbrook Byrne Kresge LLC, counsel for *Amici Curiae* James Overdahl and S.P. Kothari.

48.  **Formella, John M.**, counsel for *Amicus Curiae* State of New Hampshire.

49.  **Francisco, Noel J.**, Jones Day, counsel for Petitioner Citadel Securities LLC.

50.  **Futures Industry Association**, *Amicus Curiae*.

51.  **Gershengorn, Ian Heath**, Jenner & Block LLP, counsel for Intervenor Consolidated Audit Trail, LLC.

52.  **Greenberg, Dan**, counsel for *Amicus Curiae* Competitive Enterprise Institute.

53.  **Greenwalt III, Paul E.**, ArentFox Schiff LLP, counsel for Intervenors Cboe BYX Exchange, Inc., Cboe BZX Exchange, Inc., Cboe EDGA Exchange, Inc., Cboe EDGX Exchange, Inc., Cboe C2 Exchange, Inc., and Cboe Exchange, Inc.

54.  **Griffin, Tim**, counsel for *Amicus Curiae* State of Arkansas.

55.  **Hardin, Tracey A.**, counsel for Respondent United States Securities and Exchange Commission.

56.  **Hilgers, Michael T.**, counsel for *Amicus Curiae* State of Nebraska.

57.  **Hopen, David A.**, Paul, Weiss, Rifkind, Wharton & Garrison LLP, counsel for *Amici Curiae* Securities Industry and Financial Markets Association et al.

58.  **Hoyt, Joshua T.**, Jones Day, counsel for Petitioner Citadel Securities LLC.

59.  **Intercontinental Exchange, Inc. (NYSE: ICE)**, indirect parent of NYSE Intervenors.

60.  **International Securities Exchange Holdings, Inc.**, sole LLC member of Intervenors Nasdaq GEMX LLC, Nasdaq ISE LLC, and Nasdaq MRX LLC.

61.  **Investment Company Institute**, *Amicus Curiae*.

62.  **Investor AB (Nasdaq Stockholm: INVEB)**, owner of more than 10% of Nasdaq, Inc.'s shares.

63.  **Investor Choice Advocates Network**, *Amicus Curiae*.

64.  **Investors' Exchange, LLC**, member and participant of Intervenor Consolidated Audit Trail, LLC.

65.  **Jackley, Marty**, counsel for *Amicus Curiae* State of South Dakota.

66.  **Jacobs, Dylan, L.**, counsel for *Amicus Curiae* State of Arkansas.

67. **Jenner & Block LLP**, counsel for Intervenor Consolidated Audit Trail, LLC.

68. **Jones Day**, counsel for Petitioner Citadel Securities LLC.

69. **Kastenberg, Stephen J.**, Ballard Spahr LLP, counsel for Intervenors The Nasdaq Stock Market LLC, Nasdaq BX, Inc., Nasdaq GEMX, LLC, Nasdaq ISE, LLC, Nasdaq MRX, LLC, and Nasdaq PHLX LLC.

70. **Katsiff, Timothy D.**, Ballard Spahr LLP, counsel for Intervenors The Nasdaq Stock Market LLC, Nasdaq BX, Inc., Nasdaq GEMX, LLC, Nasdaq ISE, LLC, Nasdaq MRX, LLC, and Nasdaq PHLX LLC.

71. **Kennedy, Jordan**, counsel for Respondent United States Securities and Exchange Commission.

72. **Knudsen, Austin**, counsel for *Amicus Curiae* State of Montana.

73. **Kobach, Kris W.**, counsel for *Amicus Curiae* State of Kansas.

74. **Kothari, S.P.**, *Amicus Curiae*.

75. **Kumar, Neal**, Willkie Farr & Gallagher LLP, counsel for *Amicus Curiae* Futures Industry Association.

76. **Labrador, Raúl R.**, counsel for *Amicus Curiae* State of Idaho.

77. **Lantieri III, Paul**, Ballard Spahr LLP, counsel for Intervenors The Nasdaq Stock Market LLC, Nasdaq BX, Inc., Nasdaq GEMX, LLC, Nasdaq ISE, LLC, Nasdaq MRX, LLC, and Nasdaq PHLX LLC.

78. **Little, Margaret A.**, counsel for *Amicus Curiae* New Civil Liberties Alliance.

79. **Lipshutz, Brian M.**, Paul, Weiss, Rifkind, Wharton & Garrison LLP, counsel for *Amici Curiae* Securities Industry and Financial Markets Association et al.

80. **Long-Term Stock Exchange, Inc.**, member and participant of Intervenor Consolidated Audit Trail, LLC.

81. **Lucas, Brinton**, Jones Day, counsel for Petitioner Citadel Securities LLC.

82. **MacLean, Matthew J.**, Pillsbury Winthrop Shaw Pittman LLP, counsel for NYSE Intervenors.

83. **Managed Funds Association**, *Amicus Curiae*.

84. **Marshall, Jonathan J.**, Jenner & Block LLP, counsel for Intervenor Consolidated Audit Trail, LLC.

85. **Marshall, Steve**, counsel for *Amicus Curiae* State of Alabama.

86. **Matro, Daniel E.**, counsel for Respondent United States Securities and Exchange Commission.

87. **McCotter, R. Trent**, Boyden Gray PLLC, counsel for *Amicus Curiae* American Free Enterprise Chamber of Commerce.

88. **MEMX LLC**, member and participant of Intervenor Consolidated Audit Trail, LLC.

89. **Miami International Securities Exchange LLC**, member and participant of Intervenor Consolidated Audit Trail, LLC.

90. **MIAX Emerald, LLC**, member and participant of Intervenor Consolidated Audit Trail, LLC.

91. **MIAX Pearl, LLC**, member and participant of Intervenor Consolidated Audit Trail, LLC.

92. **MIAX Sapphire, LLC**, member and participant of Intervenor Consolidated Audit Trail, LLC.

93. **Michel, Christopher G.**, Quinn Emanuel Urquhart & Sullivan, LLP, counsel for *Amici Curiae* Senator Tom Cotton et al.

94. **Miyares, Jason**, counsel for *Amicus Curiae* Commonwealth of Virginia.

95. **Modern Markets Initiative, Inc.**, sponsor of funding for brief for *Amici Curiae* James Overdahl and S.P. Kothari disclosed pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E).

96. **Molzberger, Michael**, ArentFox Schiff LLP, counsel for Intervenors Cboe BYX Exchange, Inc., Cboe BZX Exchange, Inc., Cboe EDGA Exchange, Inc., Cboe EDGX Exchange, Inc., Cboe C2 Exchange, Inc., and Cboe Exchange, Inc.

97. **Montgomery, Sophia W.**, Jenner & Block LLP, counsel for Intervenor Consolidated Audit Trail, LLC.

98. **Moody, Ashley**, counsel for *Amicus Curiae* State of Florida.

99.   **Morris, Andrew, J.**, counsel for *Amicus Curiae* New Civil Liberties Alliance.

100.   **Morrisey, Patrick**, counsel for *Amicus Curiae* State of West Virginia.

101.   **Murrill, Liz**, counsel for *Amicus Curiae* State of Louisiana.

102.   **Nabors, David A.**, Quinn Emanuel Urquhart & Sullivan, LLP, counsel for *Amici Curiae* Tom Cotton et al.

103.   **Nasdaq BX, Inc.**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

104.   **Nasdaq GEMX, LLC**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

105.   **Nasdaq, Inc. (Nasdaq: NDAQ)**, sole owner of LLC interest in The Nasdaq Stock Market LLC and Nasdaq PHLX LLC and parent company of Nasdaq BX, Inc.

106.   **Nasdaq ISE, LLC**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

107.   **Nasdaq MRX, LLC**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

108.   **Nasdaq PHLX LLC**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

109.   **New York Stock Exchange LLC**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

110.   **New Civil Liberties Alliance**, *Amicus Curiae*.

111.   **NYSE American LLC**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

112.   **NYSE Arca, Inc.**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

113.   **NYSE Chicago, Inc.**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

114. **NYSE National, Inc.**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

115. **Oliwenstein, David**, Pillsbury Winthrop Shaw Pittman LLP, counsel for NYSE Intervenors.

116. **Orr, Caleb**, Boyden Gray PLLC, counsel for *Amicus Curiae* American Free Enterprise Chamber of Commerce.

117. **Overdahl, James**, *Amicus Curiae*.

118. **Paul, Weiss, Rifkind, Wharton & Garrison LLP**, counsel for *Amici Curiae* Securities Industry and Financial Markets Association et al.

119. **Paxton, Ken**, counsel for *Amicus Curiae* State of Texas.

120. **Phillips, David**, Jones Day, counsel for Petitioner Citadel Securities LLC.

121. **Pillsbury Winthrop Shaw Pittman LLP**, counsel for NYSE Intervenors.

122. **Quinn Emanuel Urquhart & Sullivan, LLP**, counsel for *Amici Curiae* Senator Tom Cotton et al.

123. **Rabbitt, Brian C.**, Jones Day, counsel for Petitioner Citadel Securities LLC.

124. **Reisner, Lorin L.**, Paul, Weiss, Rifkind, Wharton & Garrison LLP, counsel for *Amici Curiae* Securities Industry and Financial Markets Association et al.

125. **Representatives Mark Alford, Don Bacon, Michael Collins, Scott Fitzgerald, French Hill, Barry Loudermilk, Alex X. Mooney, Ralph Norman, John Rose, Keith Self, Randy Weber, and Steve Womack**, *Amici Curiae*.

126. **Reyes, Sean**, counsel for *Amicus Curiae* State of Utah.

127. **Rokita, Theodore E.**, counsel for *Amicus Curiae* State of Indiana.

128. **Roth, Yaakov M.**, Jones Day, counsel for Petitioner Citadel Securities LLC.

129. **Schulp, Jennifer**, counsel for *Amici Curiae* Cato Institute and Investor Choice Advocates Network.

130. **Schwartz, Yishai**, Paul, Weiss, Rifkind, Wharton & Garrison LLP, counsel for *Amici Curiae* Securities Industry and Financial Markets Association et al.

131. **Securities Industry and Financial Markets Association**, *Amicus Curiae.*

132. **Senators Tom Cotton, John Boozman, Make Braun, Kevin Kramer, Steve Daines, Bill Hagerty, John Kennedy, Jerry Moran, Pete Ricketts, and Tim Scott**, *Amici Curiae.*

133. **Shanmugam, Kannon K.**, Paul, Weiss, Rifkind, Wharton & Garrison LLP, counsel for *Amici Curiae*, Securities Industry and Financial Markets Association et al.

134. **Skorup, Brent**, counsel for *Amici Curiae* Cato Institute and Investor Choice Advocates Network.

135. **Sobel, Zachary J.**, Quinn Emanuel Urquhart & Sullivan, LLP, counsel for *Amici Curiae* Senator Tom Cotton et al.

136. **State of Alabama**, *Amicus Curiae.*

137. **State of Arkansas**, *Amicus Curiae.*

138. **State of Florida**, *Amicus Curiae.*

139. **State of Georgia**, *Amicus Curiae.*

140. **State of Idaho**, *Amicus Curiae.*

141. **State of Indiana**, *Amicus Curiae.*

142. **State of Iowa**, *Amicus Curiae.*

143. **State of Kansas**, *Amicus Curiae.*

144. **State of Louisiana**, *Amicus Curiae.*

145. **State of Mississippi**, *Amicus Curiae.*

146. **State of Missouri**, *Amicus Curiae.*

147. **State of Montana**, *Amicus Curiae.*

148. **State of Nebraska**, *Amicus Curiae.*

149. **State of New Hampshire**, *Amicus Curiae.*

150. **State of North Dakota**, *Amicus Curiae.*

151. **State of Ohio**, *Amicus Curiae.*

152. **State of South Carolina**, *Amicus Curiae.*

153. **State of South Dakota**, *Amicus Curiae.*

154. **State of Texas**, *Amicus Curiae.*

155. **State of Utah**, *Amicus Curiae.*

156. **State of West Virginia**, *Amicus Curiae.*

157. **The Nasdaq Stock Market LLC**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

158. **The Vanguard Group, Inc.**, owned 10% or more of Cboe Global Markets, Inc.'s common stock as of June 30, 2023.

159. **Thoma Bravo UGP, LLC**, owner of more than 10% of Nasdaq, Inc.'s shares.

160. **Torridon Law PLLC**, counsel for *Amicus Curiae* American Free Enterprise Chamber of Commerce.

161. **Unikowsky, Adam G.**, Jenner & Block LLP, counsel for Intervenor Consolidated Audit Trail, LLC.

162. **United States Securities and Exchange Commission**, Respondent.

163. **Virtu Financial, Inc.**, *Amicus Curiae.*

164. **Watkins, Devin**, counsel for *Amicus Curiae* Competitive Enterprise Institute.

165. **Willkie Farr & Gallagher LLP**, counsel for *Amicus Curiae* Futures Industry Association.

166. **Wilson, Alan**, counsel for *Amicus Curiae* State of South Carolina.

167. **Wrigley, Drew H.**, counsel for *Amicus Curiae* State of North Dakota.

168. **Yost, Dave**, counsel for *Amicus Curiae* State of Ohio.

Dated: September 13, 2024

/s/ *J. Michael Connolly*
J. Michael Connolly
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
mike@consovoymccarthy.com

*Counsel for Petitioner*
*American Securities Association*

Respectfully submitted,

/s/ *Noel J. Francisco*
Noel J. Francisco
Yaakov M. Roth
Brian C. Rabbitt
Brinton Lucas
Joshua T. Hoyt
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
(202) 879-3939
njfrancisco@jonesday.com

David Phillips
JONES DAY
4655 Executive Dr., Ste. 1500
San Diego, CA 92121

*Counsel for Petitioner*
*Citadel Securities LLC*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 26.1-2, the undersigned counsel hereby certify that no parent corporation, and no publicly held corporation has a 10% or greater ownership interest in the American Securities Association (ASA).

Petitioner Citadel Securities LLC is a wholly owned, indirect subsidiary of Citadel Securities GP LLC. Counsel further certify that no publicly held corporation has a 10% or greater ownership interest in Citadel Securities GP LLC.

Dated: September 13, 2024

/s/ J. Michael Connolly
J. Michael Connolly
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
mike@consovoymccarthy.com

*Counsel for Petitioner*
*American Securities Association*

Respectfully submitted,

/s/ Noel J. Francisco
Noel J. Francisco
Yaakov M. Roth
Brian C. Rabbitt
Brinton Lucas
Joshua T. Hoyt
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
(202) 879-3939
njfrancisco@jonesday.com

David Phillips
JONES DAY
4655 Executive Dr., Ste. 1500
San Diego, CA 92121

*Counsel for Petitioner*
*Citadel Securities LLC*

C-12 of 12

# TABLE OF CONTENTS

**Page(s)**

CERTIFICATE OF INTERESTED PERSONS ........................................................ C-1

CORPORATE DISCLOSURE STATEMENT........................................................ C-12

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION......................................................................................................... 1

BACKGROUND........................................................................................................... 5

ARGUMENT .............................................................................................................. 10

I.    THIS COURT SHOULD STAY THE ORDER.................................................. 10

    A.    A Stay Will Protect Petitioners From Irreparable Harm While Causing No Cognizable Injury To The SEC, SROs, Or Public............. 10

    B.    Petitioners Are Likely To Succeed On The Merits .................................. 14

II.   THIS COURT SHOULD ALSO ENJOIN THE SROS FROM ATTEMPTING TO COLLECT FEES UNDER THE ALL WRITS ACT ................................................................................................................ 17

CONCLUSION .......................................................................................................... 19

CERTIFICATE OF COMPLIANCE ........................................................... Certificate 1

CERTIFICATE OF ELECTRONIC SUBMISSION ................................... Certificate 2

CERTIFICATE OF SERVICE ..................................................................... Certificate 3

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alabama Ass'n of Realtors v. HHS,*
    594 U.S. 758 (2021) ......................................................................11, 12, 14

*Klay v. United Healthgroup, Inc.,*
    376 F.3d 1092 (11th Cir. 2004) .................................................................. 18

*LabMD, Inc. v. FTC,*
    678 F. App'x 816 (11th Cir. 2016) ........................................................ 10, 14

*League of Women Voters of Fla., Inc. v. Fla. Sec'y of State,*
    32 F.4th 1363 (11th Cir. 2022) ................................................................... 10

*Loper Bright Enterprises v. Raimondo,*
    144 S. Ct. 2244 (2024) ............................................................................... 15

*Merrill v. Milligan,*
    142 S. Ct. 879 (2022) ................................................................................. 12

*NetCoalition v. SEC,*
    715 F.3d 342 (D.C. Cir. 2013) ..................................................................... 9

*Nken v. Holder,*
    556 U.S. 418 (2009) ................................................................................... 12

*Odebrecht Const., Inc. v. Sec'y Fla. Dep't of Transp.,*
    715 F.3d 1268 (11th Cir. 2013) .................................................................. 11

*Ohio v. EPA,*
    144 S. Ct. 2040 (2024) .......................................................................... 10, 11

*Philip Morris USA Inc. v. Scott,*
    561 U.S. 1301 (2010) ................................................................................. 11

*Weissman v. NASD, Inc.*,
   500 F.3d 1293 (11th Cir. 2007) (en banc) ........................................................ 11

*Whitney Nat. Bank v. Bank of New Orleans & Tr. Co.*,
   379 U.S. 411 (1965) ......................................................................................... 17

**STATUTES**

15 U.S.C. § 78c .................................................................................................... 16

15 U.S.C. § 78k-1 ........................................................................................ 5, 14, 15

15 U.S.C. § 78s ................................................................................................... 7, 9

28 U.S.C. § 1651 ................................................................................................... 17

**OTHER AUTHORITIES**

17 C.F.R. § 240.19b-4 ............................................................................................ 7

81 Fed. Reg. 84696 (2016) ..................................................................................... 5

88 Fed. Reg. 62628 (2023) ...................................................................................... 1

89 Fed. Reg. 10544 (2024) ..................................................................................... 7

89 Fed. Reg. 45715 (2024) ..................................................................................... 7

CAT Reporter Agreement ..................................................................................... 11

Letter from B. Becker to V. Countryman (June 13, 2024) ............................. 4-5, 16

Letter from Citadel Securities to V. Countryman (Mar. 5, 2024) ........................... 7

Letter from Citadel Securities to V. Countryman (Aug. 28, 2024) ......................... 9

## INTRODUCTION

This Court is currently considering a challenge to an order of the Securities and Exchange Commission (Commission or SEC) establishing the funding model for an unprecedented government surveillance system known as the Consolidated Audit Trail (CAT). Yet now, with this case fully briefed, the Commission and the self-regulatory organizations (SROs) that administer the CAT on the SEC's behalf have decided to disrupt a status quo that has been in place for nearly a decade. In a transparent effort to implement the challenged order before this Court has a chance to decide its fate, the SROs, with the SEC's tacit blessing, have suddenly begun assessing hundreds of millions in CAT fees to broker-dealers, with the first invoices due as early as November 24, 2024. If the SEC and the SROs are allowed to proceed, those funds will be unrecoverable, threatening to sap any future vacatur of the challenged order of much of its practical force. To ensure the integrity of this Court's review and prevent irreparable injury, this Court should therefore stay the order and enjoin the SROs from collecting CAT fees until this challenge has been resolved.

The CAT is a multibillion-dollar database that collects the transaction history and sensitive personally identifiable information of everyone who trades equities or options in the United States. Last year, the SEC laid the keystone of this massive apparatus—an order that would fund the Commission's CAT project through a transaction tax on every share traded in the country. 88 Fed. Reg. 62628 (2023) (Order) (Ex. A). Petitioners promptly challenged the Order in this Court and finished briefing in May 2024.

As petitioners explained, the Order, and the regime it implements, are unlawful several times over. For one, the CAT itself—and hence the Order governing its funding—exceeds the SEC's statutory authority, as the Commission crafted this Orwellian regime without any authorization, direction, or appropriation from Congress. For another, while the Order pays lip service to the Exchange Act by purporting to allocate its CAT tax between transacting broker-dealers and the SROs on which trades are executed, it lets the SROs offload their entire share onto broker-dealers, exposing this "allocation" as an unlawful façade. And for a third, the Order's economic analysis is deficient under the Administrative Procedure Act (APA), as it accounts for neither the CAT's spiraling costs nor the portion likely borne by investors.

This Court is thus poised to decide whether the SROs can pass through up to 100% of the costs of the CAT's historical development and future operations to broker dealers (and investors). While this litigation was ongoing, the SROs nevertheless pressed forward to fully implement the Order, submitting fee filings in January 2024 that would have allowed them to demand funds from broker-dealers for the CAT's development costs. The SEC exercised its authority to suspend the effectiveness of those filings, seemingly allowing it and this Court to conduct an orderly review before any bills actually came due. Indeed, that suspension became the centerpiece of the SEC's (and SROs') defense of the Order before this Court: In their telling, this challenge to the Order's "allocation" was premature because the legality of an SRO pass-through of its share could be addressed once its fee filing was suspended.

It turns out that was all a sham, and an easily circumvented one at that. In August 2024, over three months after briefing was completed, the SROs withdrew the suspended January filings and resubmitted them in nearly identical form. This tactic allowed them to sidestep the SEC's suspension and review of their initial filings—proposed SRO pass-throughs included. At the same time, the SROs submitted yet *another* set of filings to collect CAT fees for the system's 2024 costs, including one that sought to foist 100% of the largest SRO's costs onto its broker-dealer members. Even though the Commission had yet to complete its review of the initially suspended filings—and this Court has yet to consider the legality of the entire regime—the SROs claimed that both sets of new filings were immediately effective, with fees beginning to be assessed on September 3, 2024 and bills due as early as November 24, 2024.

To ensure that the SEC could review this new salvo of filings—and that this Court could complete its review of the underlying Order itself—petitioners asked the Commission to do what it had done before: suspend the filings within 15 days. But the SEC inexplicably ignored that request. As a result—in the absence of any intervening relief—broker-dealers, including Citadel Securities LLC and ASA's members, will be forced to pay *hundreds of millions of dollars* in CAT fees to the SROs *before* this Court can decide whether the legal predicate for that tax is lawful. Once paid, those nine-figure sums will be gone forever, as the SROs enjoy absolute immunity under this Court's precedent.

3

The SROs have been quite up front about this grab-the-money-and-run strategy: Recognizing that CAT fees extracted from broker-dealers "may not be repaid" even if petitioners win, the SROs admit they want to secure as many millions as possible now—before this case is resolved—precisely *because* they fear "the Funding Model Litigation [will be] successful." Letter from B. Becker to V. Countryman 45 (June 13, 2024), https://tinyurl.com/28dc58p2 (CAT Letter).

This Court should not tolerate this blatant attempt to end-run its review. It should stay the Order pending resolution of petitioners' challenge, thereby making clear that broker-dealers (and the rest of the industry) should not be on the hook for hundreds of millions in CAT fees until this Court has decided whether these novel transaction taxes—and the CAT itself—are lawful. Such relief is necessary to protect broker-dealers (and investors) from imminent irreparable harm and to ensure this Court's review of the entire CAT funding structure is not frustrated. It would also preserve, for just a little while longer, a status quo that has existed for the eight years the CAT has been under development. And it is amply justified by petitioners' likelihood of success on the merits. At the very least, this case raises serious legal questions, as confirmed by the *amicus* briefs filed by nearly half the States, dozens of Members of Congress, and a host of industry associations—not to mention the vocal presence of the intervening SROs, who tellingly have declined to defend the legality of the CAT. There is no good reason to allow this Court's resolution of what so many agree are weighty issues to be thwarted by the SROs' desire to hedge against a loss.

While a stay ought to be sufficient, the SROs' open scheme to evade judicial review may require even stronger medicine to ensure they do not try to collect on their current batch of fee filings (or rerun their withdraw-and-resubmit play). To guarantee the SROs pause long enough to permit review of the Order in an orderly fashion, this Court should enjoin them from collecting CAT fees until this case is resolved. And to shield broker-dealers from the impossible choice of paying millions in unrecoverable fees or violating the SROs' rules, petitioners respectfully ask this Court to act on this motion by November 17, 2024, a week before the first invoices come due.

## BACKGROUND

**1.**     In 2010, the SEC repurposed a 35-year-old statute meant to facilitate development of a national *market* system, 15 U.S.C. § 78k-1, to direct the creation of a national *surveillance* system for the SEC's benefit. Pet. Br. 6-8. Finalized two years later, the SEC's order called for the creation of the CAT, a massive regime that would provide the Commission with a trove of data on all orders across U.S. securities markets—and further directed the SROs to build, fund, and run it. *Id.* at 8.

In 2015, the SROs—24 securities exchanges and the Financial Industry Regulatory Authority (FINRA)—submitted a plan for the CAT and proposed creating a company, now known as intervenor CAT LLC, through which they would run it. *Id.* The SEC approved both submissions the next year. *Id.* Under this plan, the SROs agreed to fund the CAT's development until a lawful funding scheme was implemented. *See* 81 Fed. Reg. 84696, 84793-95 (2016); CAT Letter 45.

**2.**    In 2023, the Commission adopted the challenged Order, which funds the CAT through a tax on every share traded in the U.S. equities and options markets. Pet. Br. 10. Separate taxes (in SEC-speak, "fees") will be applied (1) to reimburse CAT LLC for the nearly $1 billion spent to build the CAT; and (2) to cover CAT LLC's budget each year in perpetuity. *Id.*

In an attempt to comply with the Exchange Act and the APA, which require an "equitable" and "reasonable" allocation of fees between broker-dealers and SROs, the Order theoretically provides that the tax on each trade will be split into thirds: two-thirds are to be borne by broker-dealers (and investors), while the remaining third will be payable by the SRO on which a trade is executed. *Id.* The Order also provides, however, that SROs may pass "their CAT fees onto their members in full," meaning broker-dealers (and the investors they represent) may actually "bear 100%" of the costs—in addition to the billions of dollars they have already spent on internal systems to feed the CAT its mandated data. *Id.* at 11, 22.

In October 2023, petitioners timely challenged the Order in this Court, contending that the CAT itself—and hence the Order implementing it—exceeds the SEC's statutory authority and that the Order independently violates the Exchange Act and the APA. Pet. Br. 13-48. CAT LLC and many of its constituent SROs intervened, consenting to this Court's jurisdiction and acknowledging that this was an appropriate forum to address the Order's legality. Order (Jan. 17, 2024). Notably, none of the intervenors disputed petitioners' argument that the CAT itself is unlawful.

**3.**    Perhaps reading the writing on the wall, the SROs began trying to collect hundreds of millions of dollars in CAT fees from broker-dealers in the meantime by submitting fee filings to the SEC in January 2024. Letter from Citadel Securities to V. Countryman 1 n.1 (Mar. 5, 2024), https://tinyurl.com/av6a8bbd (March Letter); *see* 15 U.S.C. § 78s(b); 17 C.F.R. § 240.19b-4. FINRA also submitted an additional filing to pass through to broker-dealers 100% of the CAT fees supposedly allocated to it under the Order. March Letter 2. The filings purported to be immediately effective. *Id.* at n.13.

Fifteen days after publication, however, the Commission suspended the filings and sought comments, thereby halting collection of any CAT fees. 89 Fed. Reg. 10544, 10581-82 (2024). Joined by many others, Citadel Securities submitted comments flagging specific defects with the filings and asking the SEC to await this Court's resolution of petitioners' challenge before approving them. March Letter 1-14. That process seemed headed toward its natural and orderly conclusion: this Court's resolution of the pending challenge—which has been fully briefed since May 2024— and a reasoned SEC order accepting or rejecting the SRO fee filings. *See* 17 C.F.R. § 240.19b-4(g).[1]

---

[1] After briefing ended, the SEC adopted another order that removed a lingering obstacle to these pass-throughs by exempting the SROs from settled sanctions for past failures to meet a key CAT-development deadline. 89 Fed. Reg. 45715, 45717 (2024). Citadel Securities timely challenged that order before this Court as both arbitrary and contrary to law. *Citadel Securities v. SEC*, No. 24-12300. Last month, this Court—with the express agreement or tacit approval of the SEC and the SROs—granted Citadel Securities' motion to stay the case until this challenge to the Order funding the CAT is resolved. 24-12300 Order (Aug. 1, 2024); *see* 24-12300 CAT Intervention Mot. 11 (Aug. 15, 2024).

4.      In August 2024, however, the SROs suddenly withdrew their earlier filings for historical CAT costs and filed virtually identical ones to override the SEC's suspension. *See, e.g.*, SR-CboeBZX-2024-78, https://perma.cc/Y77X-2P2H. At the same time, the SROs submitted *yet another* set of filings seeking to extract hundreds of millions in additional CAT costs for fiscal year 2024. *See, e.g.*, SR-CboeBZX-2024-76, https://perma.cc/F6RM-267V. And once again, the largest SRO (FINRA) submitted a new filing to pass through *all* of the CAT costs purportedly allocated to it under the Order. *See* SR-FINRA-2024-12, https://perma.cc/SR72-QV36.

Because the SROs' new round of filings purport to be immediately effective, these fees began to be assessed just days later, on September 3, 2024, with bills starting to come due on November 24, 2024. *See, e.g.*, SR-Box-2024-20 at 50, 68-69, https://perma.cc/5UTR-V93P; CAT Alert 2023-02 at 4, https://perma.cc/HK6K-ZKUM. Thus, in the absence of intervening relief, broker-dealers (and investors) will be forced to pay hundreds of millions of dollars in unrecoverable CAT fees before this Court has an opportunity to resolve petitioners' challenge to the Order.

That is no accident. As the SROs have explained, they want the fees "collected" *before* this "litigation has been resolved" to ensure petitioners "share the risk" of "funding … a project that is no longer viable" under law. CAT Letter 45. The current filings do just that, imposing on broker-dealers the obligation to begin paying CAT invoices this November.

Given this timeline, Citadel Securities turned first to the Commission, asking it on August 28 to suspend the fee filings by September 12—just as it had done for the now-withdrawn January fee filings. Letter from Citadel Securities to V. Countryman (Aug. 28, 2024), https://tinyurl.com/8m8d49dx. But the SEC ignored that request, leaving petitioners with no choice but to seek immediate relief from this Court to preserve the status quo and ensure that their pending challenge can be resolved in the ordinary course. While the Commission may suspend SRO fee filings and institute notice-and-comment review within 60 days upon concluding it is "necessary or appropriate" to do so, inaction amounts to tacit SEC approval, which the D.C. Circuit has held is immune from judicial review. 15 U.S.C. § 78s(b)(3)(C); *see NetCoalition v. SEC*, 715 F.3d 342, 350-51 (D.C. Cir. 2013). Thus, in order to avoid the need for emergency filings in this Court between the end of the 60-day period in late October and the due date for fees in November, petitioners are moving for relief now. Because the first set of invoices are due no later than November 24, 2024, petitioners respectfully request relief no later than November 17, 2024. The SEC, CAT LLC, and the individual intervenor SROs all oppose this motion.[2]

---

[2] In the unlikely event that the SEC suspends the current fee filings, petitioners will promptly notify this Court.

9

## ARGUMENT

### I.    THIS COURT SHOULD STAY THE ORDER.

A stay traditionally turns on four considerations: "(1) whether the applicant is likely to succeed on the merits, (2) whether it will suffer irreparable injury without a stay, (3) whether the stay will substantially injure the other parties interested in the proceedings, and (4) where the public interest lies." *Ohio v. EPA*, 144 S. Ct. 2040, 2052 (2024). When "the balance of equities weighs heavily in favor of granting the stay," however, this Court will "relax the likely-to-succeed-on-the-merits requirement" and grant a stay "upon a lesser showing of a 'substantial case on the merits.'" *League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 32 F.4th 1363, 1370 (11th Cir. 2022) (cleaned up). Put differently, a stay preserving "the status quo" is warranted when "'a serious legal question is presented'" and "'little if any harm will befall other interested persons or the public.'" *LabMD, Inc. v. FTC*, 678 F. App'x 816, 819 (11th Cir. 2016). As the SROs appear to recognize, petitioners are more than likely to succeed on the merits of their challenge to the Order, thus easily satisfying either formulation of the test.

### A.    A Stay Will Protect Petitioners From Irreparable Harm While Causing No Cognizable Injury To The SEC, SROs, Or Public.

**1.** The equities here are not even close. Without a stay, broker-dealers (and investors) will be forced to transfer over $320 million to the SROs, including over $60 million by the end of this calendar year alone. *See* SR-CboeBZX-2024-76 at 10; SR-FINRA-2024-12 at 8-9, 12; SR-FINRA-2024-13, at 10-11, https://perma.cc/5VNX-

10

85F7; SR-FINRA-2024-14, at 12-13, https://perma.cc/W6PX-DGWY. And once those sums are in the SROs' hands, they are not going to be returned, even if the Order is later held unlawful. That is because this Court has held that SROs are vested with "absolute immunity when they perform their statutorily delegated adjudicatory, regulatory, and prosecutorial functions," and thereby "enjoy the same level of immunity as the government itself'" in that capacity. *Weissman v. NASD, Inc.*, 500 F.3d 1293, 1296 (11th Cir. 2007) (en banc). The SROs (speaking through CAT LLC) have thus admitted "the fees paid for the CAT by [broker-dealers] may not be repaid," even if the CAT "is no longer viable" as a matter of law. CAT Letter 45; *see also* CAT Reporter Agreement, https://perma.cc/2WZE-KAE8 (requiring broker-dealers to promise "[a]ny fees … paid" will be "non-refundable"). Thus, by any metric, the effect of denying a stay will be "massive." *Philip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1302 (2010) (Scalia, J., in chambers) (issuing stay to prevent over $250 million in irrevocable expenditures).

For that reason, the lack of a stay would not only place petitioners "at risk of irreparable harm by depriving them of [funds] with no guarantee of eventual recovery," it would guarantee such a loss. *Alabama Ass'n of Realtors v. HHS*, 594 U.S. 758, 765 (2021). If *the SEC* were directly collecting these fees, petitioners would obviously face "irreparable" harm given their "inability to recover monetary damages because of sovereign immunity." *Odebrecht Const., Inc. v. Sec'y Fla. Dep't of Transp.*, 715 F.3d 1268, 1289 (11th Cir. 2013); *see Ohio*, 144 S. Ct. at 2053 (costs of complying with federal regulation are "'nonrecoverable'"). It makes no difference that *the SROs* are seizing the

11

money under the auspices of the SEC's Order, as those organizations will also be protected from any subsequent suits for recovery. *See Alabama Ass'n of Realtors*, 594 U.S. at 765 (tenants' refusal to pay rent under shield of the CDC's eviction moratorium threatened "irreparable harm" to landlords).

In addition to irreparably harming petitioners, allowing the SROs to collect CAT fees now would undermine this Court's ability to grant full relief. The imminent seizure of hundreds of millions in CAT fees from broker-dealers (and investors) would deprive a victory by petitioners of much of its practical force, as significant sums of irretrievable funds would already have been paid under an unlawful regime. A "stay," by contrast, would "allow this Court to decide the merits in an orderly fashion—after full briefing, oral argument, and … internal deliberations"—rather than in an "emergency" posture by, say, expediting resolution of this case to reach a decision by November 24. *Merrill v. Milligan*, 142 S. Ct. 879, 879 (2022) (Kavanaugh, J., concurring in grant of stays).

**2.**	By contrast, the SEC cannot point to any cognizable harms to itself or the public from a stay. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) (final two factors "merge when the Government is the opposing party"). A stay of the Order, which has yet to "be implemented," SEC Br. 17, will have no effect on the SEC's budget, as it does not fund the CAT. Pet. Br. 10-12, 22-24. And far from impeding any regulatory goals or harming the public, a stay would just temporarily maintain the status quo that has existed for nearly a decade, with the CAT continuing to operate without a final funding scheme. Reply Br. 23. Indeed, it now collects around 500 billion records per day.

12

By the same token, a stay would leave the SROs where they have been for the past eight years. While the SROs now wish to hurry up and offload their costs onto broker-dealers (and investors) before the Court can review the Order, that is no reason to upset the status quo, especially as broker-dealers have already spent billions on reporting systems and compliance to satiate the data-hungry CAT. Pet. Br. 22. If petitioners' challenge ultimately fails, there will be ample opportunity for the SROs to collect their bills in the regular course.

Finally, the conduct of the SROs (and the acquiescence of the SEC to date) confirm that the equities favor a stay. Once the SEC suspended the SROs' January fee filings, this case was set to proceed in an orderly manner. Indeed, in defending the Order, the SEC and SROs repeatedly touted the suspension-and-review process for fee filings as enabling petitioners to present objections to specific fees, including efforts by the SROs to pass through their purported share. *See* SEC Br. 9-10, 21, 26-27, 30, 32; CAT Br. 21-24, 28. But if "suspending the effectiveness" of the SROs' fee filings was "appropriate" in January, there is no logical reason why a stay from this Court now— which would effectively do the same thing to virtually identical filings—could cause any cognizable harm. SEC Br. 26-27; *see* CAT Br. 28. Yet rather than await the SEC's formal scrutiny of their filings and this Court's judgment on the legality of the CAT's funding regime, the SROs are attempting to end-run this Court's review by withdrawing and resubmitting virtually identical fee filings in order to override the SEC's suspension (while at the same time, submitting new filings for 2024 costs).

The Commission's failure to suspend these filings in the face of requests from petitioners and others reveals that it is, at the very least, complicit in the SROs' ploy to collect hundreds of millions of dollars while this Court's review is ongoing, all without providing any response to the comments submitted on the now-withdrawn filings or granting formal approval. Given that, neither the SEC nor the SROs can complain that preserving the status quo would cause them unfair prejudice or harm the public. The public plainly has no interest in allowing "agencies to act unlawfully even in pursuit of desirable ends," let alone in letting them conspire to shield *ultra vires* actions from meaningful (and ongoing) judicial review. *Alabama Ass'n of Realtors*, 594 U.S. at 766. The old saw cuts both ways: He who seeks to avoid equity must do equity, and that alone should put an end to any objections from the other side.

### B.     Petitioners Are Likely To Succeed On The Merits.

Given the lopsided nature of the equities, a stay "maintain[ing] the status quo pending appeal 'is appropriate when a serious legal question is presented.'" *LabMD*, 678 F. App'x at 819. That is the certainly the case here. Petitioners' merits briefs demonstrate that they have not only raised substantial questions concerning the Order's validity, but are likely to succeed on the merits outright. Pet. Br. 13-48; Reply Br. 1-23.

*First*, relying on both the plain text of 15 U.S.C. § 78k-1 and the major questions doctrine, petitioners explained why the CAT itself—and thus the Order establishing its funding—fall far outside the Commission's statutory authority. Pet. Br. 13-31; Reply Br. 3-11. That has become even more apparent since the Supreme Court's decision in

*Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), which held that if an agency's "interpretation" of its own statutory authority is "not the best, it is not permissible." *Id.* at 2266. The SEC's virtually limitless reading of § 78k-1—which would allow it to "require joint SRO action" to create and fund essentially all SEC projects as long as the Commission deems them necessary "to 'protect investors,'" SEC Br. 47—cannot be described as "the best" one. Still less can it qualify as the "'express[]'" delegation of authority necessary for the SEC to resolve a question "of deep economic and political significance"—such as whether to create and fund a multibillion-dollar surveillance database that collects sensitive personal information on every American who trades in the U.S. securities markets. *Loper*, 144 S. Ct. at 2269. Indeed, even the SEC admits that. SEC Br. 55 (conceding "the lack of 'express authorization for CAT' in the Exchange Act"); *accord* Order 62673.

*Second*, wholly apart from this foundational defect, petitioners also demonstrated that by allowing the SROs to pass through *all* CAT costs, the Order runs afoul of the Exchange Act and the APA, which require an equitable and reasonable allocation of costs. A scheme in which broker-dealers (and investors) can end up bearing 100% of the costs is not even an "allocation" at all, let alone an equitable or reasonable one. Pet. Br. 32-39; Reply Br. 12-17. Indeed, the SEC's refusal to suspend FINRA's pass-through filing alone ensures that broker-dealers (and their investor customers) will bear around "77% of CAT costs" (far more than the two-thirds wrongly claimed by the SEC) and there is nothing that will stop the other SROs from following suit. Order 62684.

15

*Third*, petitioners showed that the Order's economic analysis is wholly deficient, as it fails to account for the massive increase in CAT costs since 2016 (and their new allocation) and to estimate what portion of its new taxes would be borne by investors. Especially given that Congress tasked the SEC with addressing the economic effects of its decisions, the Order's reliance on stale data or no data at all to set the funding model for this giant database is arbitrary. Pet. Br. 39-48; Reply Br. 18-21; *see* 15 U.S.C. § 78c(f).

At a minimum, these arguments raise serious legal questions, as corroborated by the raft of intervenor and *amicus* briefs on the docket and the SROs' remarkable decision not to defend the CAT's lawfulness and instead plead for a narrow remedy. Reply Br. 1. Indeed, the SROs' fear that the "Funding Model Litigation [will be] successful" is *why* they are trying to get hundreds of millions in "fees … collected from" broker-dealers *before* this "litigation has been resolved." CAT Letter 45. In fact, the SROs' recent maneuvers have, if anything, only *increased* petitioners' likelihood of success on the merits, as they expose the Commission's (and SROs') promise of meaningful review through the fee-filing process to be nothing more than a hollow litigating position. *See supra* at 13. Put differently, unless this Court issues a stay, the SROs can—and in FINRA's case, will—"unilaterally pass on" "their share" of CAT costs to broker-dealers (and investors) without having to obtain any formal "*approval* from the SEC," much less this Court, proving the Order establishes an "allocation" in name alone. CAT Br. 21. If that is enough to qualify as "an appropriate process," it is frightening to imagine the type of review the Commission would deem unfair. SEC Br. 26.

16

\*    \*    \*

Given the substantial questions raised by this challenge (to say the least), the irreparable harm to petitioners and the judicial process if the SROs are permitted to plow ahead with fee collection now, and the absence of any good reason to upset an eight-year status quo, this Court should stay the Order until this challenge is resolved.

## II.    THIS COURT SHOULD ALSO ENJOIN THE SROS FROM ATTEMPTING TO COLLECT FEES UNDER THE ALL WRITS ACT.

A stay of the Order *ought* to be enough to maintain the status quo and protect petitioners from irreparable harm. If the legal predicate for the fee filings were stayed, it would be remarkable for the SROs to persist in their efforts to collect in the interim. Given the SROs' conduct to date, however, there is a material risk they might try to do just that. Absent a firm commitment otherwise from the SEC and CAT LLC on behalf of all its member SROs not to collect or permit the collection of any fees if the Order is stayed, this Court should therefore take the further step of enjoining the SROs under the All Writs Act from trying to collect any CAT fees from broker-dealers (or taking adverse action against them for failure to pay) until the challenge to the Order is resolved—including any fees assessed under their purportedly immediately effective filings. 28 U.S.C. § 1651(a); *see, e.g.*, *Whitney Nat. Bank v. Bank of New Orleans & Tr. Co.*, 379 U.S. 411, 425-26 (1965) (assuming federal officer "would not attempt" to take action in light of "a stay," but explaining that "if he did," the courts could "maintain the status quo" by enjoining others from proceeding further under the All Writs Act).

17

Because the "traditional four factors" governing stays or ordinary injunctions "do not apply to injunctions under the All Writs Act," this Court can issue this relief without having to wade into the merits at all. *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1100-01 (11th Cir. 2004) (cleaned up). Instead, petitioners need "simply point to some ongoing proceeding" whose "integrity … is being threatened by someone else's action" to secure this form of relief. *Id.* at 1100. This case easily fits the bill: The SROs' collection of CAT fees during this litigation would preempt large swaths of the pending challenge to the Order, which maintains that the Order's faux "allocation" of fees—as well as the CAT itself—are unlawful. *See supra* at 12. Permitting the exaction of irretrievable funds before those questions are resolved therefore would produce "'the practical effect of diminishing the court's power to bring the litigation to a natural conclusion.'" *Klay*, 376 F.3d at 1102. An All Writs Act injunction prohibiting the SROs from collecting any CAT fees during this litigation would also eliminate any concern about the effect of a stay on the few SROs that are not formally parties—including the largest one, FINRA—as such relief "may be directed to … 'persons who, though not parties to the original action … , are in a position to frustrate the implementation of a court order or the proper administration of justice.'" *Id.* at 1100.[3]

---

[3] The following nine SROs have not yet intervened in their individual capacities, although they are represented by CAT LLC in this litigation: (1) BOX Exchange LLC; (2) FINRA, (3) Investors' Exchange LLC; (4) Long-Term Stock Exchange, Inc; (5) MEMX LLC; (6) Miami International Securities Exchange LLC; (7) MIAX Emerald, LLC; (8) MIAX Pearl, LLC; and (9) MIAX Sapphire, LLC. Petitioners will provide notice of this Motion to each non-intervenor SRO consistent with Appellate Rule 21.

## CONCLUSION

The Court should stay the Order. Further, at least in the absence of a firm commitment by the SEC and CAT LLC on behalf all of its SRO members not to collect or permit the collection of any fees if the Order is stayed, the Court should issue an injunction prohibiting any SRO or other entity that has submitted a fee filing to the Commission that purports to collect any fees related to the CAT from taking any steps to collect such fees, or from taking any adverse action against any member for failure to pay such fees, during the pendency of this matter.

Dated: September 13, 2024

J. Michael Connolly
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
mike@consovoymccarthy.com

*Counsel for Petitioner*
*American Securities Association*

Respectfully submitted,

*/s/ Noel J. Francisco*
Noel J. Francisco
Yaakov M. Roth
Brian C. Rabbitt
Brinton Lucas
Joshua T. Hoyt
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
(202) 879-3939
njfrancisco@jonesday.com

David Phillips
JONES DAY
4655 Executive Dr., Ste. 1500
San Diego, CA 92121

*Counsel for Petitioner*
*Citadel Securities LLC*

19

## CERTIFICATE OF COMPLIANCE

I certify that this Motion complies with (1) the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5123 words, excluding any parts exempted by Rule 27(a)(2)(B); and (2) the typeface and type-style requirements of Rule 27(d)(1)(E) because it has been prepared in 14-point Garamond (a proportionally spaced typeface) using Microsoft Word.

Dated: September 13, 2024

Respectfully submitted,

*/s/ Noel J. Francisco*

*Counsel of Record for Petitioner*
*Citadel Securities LLC*

Certificate 1

**CERTIFICATE OF ELECTRONIC SUBMISSION**

I certify that: (1) any required privacy redactions have been made; (2) the electronic submission of this document is an exact copy of any corresponding paper document; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free from viruses.

Dated: September 13, 2024                Respectfully submitted,

*/s/ Noel J. Francisco*

*Counsel of Record for Petitioner*
*Citadel Securities LLC*

Certificate 2

# CERTIFICATE OF SERVICE

I certify that on September 13, 2024, the foregoing Motion was electronically filed with the United States Court of Appeals for the Eleventh Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: September 13, 2024          Respectfully submitted,

*/s/ Noel J. Francisco*

*Counsel of Record for Petitioner*
*Citadel Securities LLC*

Certificate 3