**C.A. No. 23-13396**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

AMERICAN SECURITIES ASSOCIATION AND CITADEL SECURITIES LLC,

*Petitioners*,

v.

U.S. SECURITIES AND EXCHANGE COMMISSION,

*Respondent*,

THE NASDAQ STOCK MARKET, LLC, ET AL., AND
CONSOLIDATED AUDIT TRAIL, LLC,

*Intervenors*.

On Petition for Review of an Order of the
United States Securities and Exchange Commission
SEC Release No. 34-98290

## INTERVENOR CONSOLIDATED AUDIT TRAIL, LLC'S
## OPPOSITION TO PETITIONERS' MOTION
## FOR STAY AND INJUNCTIVE RELIEF

Gregory M. Boyle
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
(312) 527-0484

Ian Heath Gershengorn
*Counsel of Record*
Adam G. Unikowsky
Elizabeth B. Deutsch
Jonathan J. Marshall
JENNER & BLOCK LLP
1099 New York Avenue, NW,
Suite 900
Washington, DC 20001
(202) 639-6000
igershengorn@jenner.com

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Undersigned counsel represents Intervenor Consolidated Audit Trail, LLC. Pursuant to Eleventh Circuit Rule 26.1-1 through -3 and Federal Rule of Appellate Procedure 26.1, undersigned counsel hereby certifies that, to the best of his knowledge, the following persons and entities have an interest in this case:

1. Alford, Rep. Mark, *Amicus Curiae*;

2. Alternative Investment Management Association, *Amicus Curiae*;

3. Altman, Jennifer G., *Counsel of Record for Intervenors New York Stock Exchange LLC, NYSE American LLC, NYSE Arca, Inc., NYSE Chicago, Inc., and NYSE National, Inc.*;

4. American Free Enterprise Chamber of Commerce, *Amicus Curiae*;

5. American Securities Association, *Petitioner*;

6. ArentFox Schiff LLP, *Counsel for Intervenors Cboe BYX Exchange, Inc., Cboe BZX Exchange, Inc., Cboe C2 Exchange, Inc., Cboe EDGA Exchange, Inc., Cboe EDGX Exchange, Inc., and Cboe Exchange, Inc.*;

7. Ashbrook Byrne Kresge LLC, *Counsel for Amici Curiae S.P. Kothari and James Overdahl*;

8. Bacon, Rep. Don, *Amicus Curiae*;

9. Bailey, Andrew, *Counsel for Amicus Curiae State of Missouri*;

10. Ballard Spahr LLP, *Counsel for Intervenors Nasdaq BX, Inc., Nasdaq GEMX, LLC, Nasdaq ISE, LLC, Nasdaq MRX, LLC, Nasdaq PHLX LLC, and The Nasdaq Stock Market LLC*;

11. Baltz, Brian J., *Counsel for Amicus Curiae Futures Industry Association*;

12. Barbero, Megan, *Counsel for Respondent*;

13. Barr, William P., *Counsel for Amicus Curiae American Free Enterprise Chamber of Commerce*;

14. Bash, John F., *Counsel for Amici Curiae Senator Tom Cotton and 21 Other Members of Congress*;

15. Berman, Ari M., *Counsel for Intervenors New York Stock Exchange LLC, NYSE American LLC, NYSE Arca, Inc., NYSE Chicago, Inc., and NYSE National, Inc.*;

16. Berry, Jonathan, *Counsel for Amicus Curiae American Free Enterprise Chamber of Commerce*;

17. Bird, Brenna, *Counsel for Amicus Curiae State of Iowa*;

18. Blask, Ariel, *Counsel for Amicus Curiae Futures Industry Association*;

19. Boden, Anastasia, *Counsel for Amici Curiae Cato Institute and Investor Choice Advocates Network*;

20. Boozman, Sen. John, *Amicus Curiae*;

21. Borse Dubai Limited, *Owner of 10% or Greater Interest in Nasdaq, Inc.*;

22. BOX Exchange LLC, *Plan Participant of Intervenor Consolidated Audit Trail, LLC*;

23. Boyden Gray PLLC, *Counsel for Amicus Curiae American Free Enterprise Chamber of Commerce*;

24. Boyle, Gregory M., *Counsel for Intervenor Consolidated Audit Trail, LLC*;

25. Braun, Sen. Mike, *Amicus Curiae*;

26. Bronni, Nicholas J., *Counsel of Record for Amici Curiae 23 States*;

27. Carr, Chris, *Counsel for Amicus Curiae State of Georgia*;

28. Cato Institute, *Amicus Curiae and Counsel for Amicus Curiae Investor Choice Advocates Network*;

29. Cboe BYX Exchange, Inc., *Intervenor and Plan Participant of Intervenor Consolidated Audit Trail, LLC*;

30. Cboe BZX Exchange, Inc., *Intervenor and Plan Participant of Intervenor Consolidated Audit Trail, LLC*;

31. Cboe C2 Exchange, Inc., *Intervenor and Plan Participant of Intervenor Consolidated Audit Trail, LLC*;

32. Cboe EDGA Exchange, Inc., *Intervenor and Plan Participant of Intervenor Consolidated Audit Trail, LLC*;

33. Cboe EDGX Exchange, Inc., *Intervenor and Plan Participant of Intervenor Consolidated Audit Trail, LLC*;

34. Cboe Exchange, Inc., *Intervenor and Plan Participant of Intervenor Consolidated Audit Trail, LLC*;

35. Cboe Global Markets, Inc. (BATS: CBOE), *Indirect Owner of 10% or Greater Interest in Intervenor Consolidated Audit Trail, LLC, and Direct or Indirect Parent Company of Intervenors Cboe BYX Exchange, Inc., Cboe BZX Exchange, Inc., Cboe C2 Exchange, Inc., Cboe EDGA Exchange, Inc., Cboe EDGX Exchange, Inc., and Cboe Exchange, Inc.*;

36. Chenoweth, Mark S., *Counsel for Amicus Curiae New Civil Liberties Alliance*;

37. Citadel Securities GP LLC, *Parent Company of Petitioner Citadel Securities LLC*;

38. Citadel Securities LLC, *Petitioner*;

39. Coleman, Russell, *Counsel for Amicus Curiae Commonwealth of Kentucky*;

40. Collins, Rep. Mike, *Amicus Curiae*;

41. Committee on Capital Markets Regulation, *Amicus Curiae*;

42. Commonwealth of Kentucky, *Amicus Curiae*;

43. Commonwealth of Virginia, *Amicus Curiae*;

44. Competitive Enterprise Institute, *Amicus Curiae*;

45. Conley, Michael A., *Counsel for Respondent*;

46. Connolly, J. Michael, *Counsel of Record for Petitioner American Securities Association*;

47. Consolidated Audit Trail, LLC, *Intervenor*;

48. Consovoy McCarthy PLLC, *Counsel for Petitioner American Securities Association*;

49. Cotton, Sen. Tom, *Amicus Curiae*;

50. Cramer, Sen. Kevin, *Amicus Curiae*;

51. Daines, Sen. Steve, *Amicus Curiae*;

52. Deutsch, Elizabeth B., *Counsel for Intervenor Consolidated Audit Trail, LLC*;

53. Financial Industry Regulatory Authority, Inc., *Plan Participant of Intervenor Consolidated Audit Trail, LLC*;

54. Fitch, Lynn, *Counsel for Amicus Curiae State of Mississippi*;

55. Fitzgerald, Rep. Scott, *Amicus Curiae*;

56. Flowers, Benjamin M., *Counsel of Record for Amici Curiae S.P. Kothari and James Overdahl*;

57. Formella, John M., *Counsel for Amicus Curiae State of New Hampshire*;

58. Francisco, Noel J., *Counsel of Record for Petitioner Citadel Securities LLC*;

59. Futures Industry Association, *Amicus Curiae*;

60. Gershengorn, Ian Heath, *Counsel of Record for Intervenor Consolidated Audit Trail, LLC*;

61. Greenberg, Dan, *Counsel for Amicus Curiae Competitive Enterprise Institute*;

62. Greenwalt, Paul E. III, *Counsel of Record for Intervenors Cboe BYX Exchange, Inc., Cboe BZX Exchange, Inc., Cboe C2 Exchange, Inc., Cboe EDGA Exchange, Inc., Cboe EDGX Exchange, Inc., and Cboe Exchange, Inc.*;

63. Griffin, Tim, *Counsel for Amicus Curiae State of Arkansas*;

64. Hagerty, Sen. Bill, *Amicus Curiae*;

65. Hardin, Tracey A., *Counsel for Respondent*;

66. Hilgers, Michael T., *Counsel for Amicus Curiae State of Nebraska*;

67. Hill, Rep. French, *Amicus Curiae*;

68. Hopen, David A., *Former Counsel for Amici Curiae Alternative Investment Management Association, Committee on Capital Markets Regulation, Investment Company Institute, Managed Funds Association, Securities Industry and Financial Markets Association, and Virtu Financial, Inc.*;

69. Hoyt, Joshua T., *Counsel for Petitioner Citadel Securities LLC*;

70. Intercontinental Exchange, Inc. (NYSE: ICE), *Indirect Owner of 10% or Greater Interest in Intervenor Consolidated Audit Trail, LLC, and Indirect Parent Company of Intervenors New York Stock Exchange LLC, NYSE American LLC, NYSE Arca, Inc., NYSE Chicago, Inc., and NYSE National, Inc.*;

71. International Securities Exchange Holdings, Inc., *Parent Company of Intervenors Nasdaq GEMX, LLC, Nasdaq ISE, LLC, and Nasdaq MRX, LLC*;

72. Investment Company Institute, *Amicus Curiae*;

73. Investor AB (Nasdaq Stockholm: INVE B), *Owner of 10% or Greater Interest in Nasdaq, Inc.*;

74. Investor Choice Advocates Network, *Amicus Curiae*;

75. Investors Exchange LLC, *Plan Participant of Intervenor Consolidated Audit Trail, LLC*;

76. Jackley, Marty, *Counsel for Amicus Curiae State of South Dakota*;

77. Jacobs, Dylan L., *Counsel for Amicus Curiae State of Arkansas*;

78. Jenner & Block LLP, *Counsel for Intervenor Consolidated Audit Trail, LLC*;

79. Jones Day, *Counsel for Petitioner Citadel Securities LLC*;

80. Kastenberg, Stephen J., *Counsel of Record for Intervenors Nasdaq BX, Inc., Nasdaq GEMX, LLC, Nasdaq ISE, LLC, Nasdaq MRX, LLC, Nasdaq PHLX LLC, and The Nasdaq Stock Market LLC*;

81. Katsiff, Timothy D., *Counsel for Intervenors Nasdaq BX, Inc., Nasdaq GEMX, LLC, Nasdaq ISE, LLC, Nasdaq MRX, LLC, Nasdaq PHLX LLC, and The Nasdaq Stock Market LLC*;

82. Kennedy, Sen. John, *Amicus Curiae*;

83. Kennedy, Jordan A., *Counsel for Respondent*;

84. Knudsen, Austin, *Counsel for Amicus Curiae State of Montana*;

85. Kobach, Kris W., *Counsel for Amicus Curiae State of Kansas*;

86. Kothari, S.P., *Amicus Curiae*;

87. Kumar, Neal, *Counsel of Record for Amicus Curiae Futures Industry Association*;

88. Labrador, Raúl R., *Counsel for Amicus Curiae State of Idaho*;

89. Lantieri, Paul III, *Counsel for Intervenors Nasdaq BX, Inc., Nasdaq GEMX, LLC, Nasdaq ISE, LLC, Nasdaq MRX, LLC, Nasdaq PHLX LLC, and The Nasdaq Stock Market LLC*;

90. Lipshutz, Brian M., *Former Counsel for Amici Curiae Alternative Investment Management Association, Committee on Capital Markets*

*Regulation, Investment Company Institute, Managed Funds Association, Securities Industry and Financial Markets Association, and Virtu Financial, Inc.*;

91. Little, Margaret A., *Counsel for Amicus Curiae New Civil Liberties Alliance*;

92. Long-Term Stock Exchange, Inc., *Plan Participant of Intervenor Consolidated Audit Trail, LLC*;

93. Loudermilk, Rep. Barry, *Amicus Curiae*;

94. Lucas, Brinton, *Counsel for Petitioner Citadel Securities LLC*;

95. MacLean, Matthew J., *Counsel for Intervenors New York Stock Exchange LLC, NYSE American LLC, NYSE Arca, Inc., NYSE Chicago, Inc., and NYSE National, Inc.*;

96. Managed Funds Association, *Amicus Curiae*;

97. Marks, William T., *Counsel for Amici Curiae Securities Industry and Financial Markets Association and Virtu Financial, Inc.*;

98. Marshall, Jonathan J., *Counsel for Intervenor Consolidated Audit Trail, LLC*;

99. Marshall, Steve, *Counsel for Amicus Curiae State of Alabama*;

100. Matro, Daniel E., *Counsel of Record for Respondent U.S. Securities and Exchange Commission*;

101. McCotter, R. Trent, *Counsel of Record for Amicus Curiae American Free Enterprise Chamber of Commerce*;

102. MEMX LLC, *Plan Participant of Intervenor Consolidated Audit Trail, LLC*;

103. Miami International Securities Exchange LLC, *Plan Participant of Intervenor Consolidated Audit Trail, LLC*;

104. MIAX Emerald, LLC, *Plan Participant of Intervenor Consolidated Audit Trail, LLC*;

105. MIAX PEARL, LLC, *Plan Participant of Intervenor Consolidated Audit Trail, LLC*;

106. MIAX Sapphire, LLC, *Plan Participant of Intervenor Consolidated Audit Trail, LLC*;

107. Michael, Christopher G., *Counsel of Record for Amici Curiae Senator Tom Cotton and 21 Other Members of Congress*;

108. Miyares, Jason, *Counsel for Amicus Curiae Commonwealth of Virginia*;

109. Modern Markets Initiative, Inc., *Sponsor of Funding for Brief of Amici Curiae S.P. Kothari and James Overdahl*;

110. Molzberger, Michael K., *Counsel for Intervenors Cboe BYX Exchange, Inc., Cboe BZX Exchange, Inc., Cboe C2 Exchange, Inc., Cboe EDGA Exchange, Inc., Cboe EDGX Exchange, Inc., and Cboe Exchange, Inc.*;

111. Montgomery, Sophia W., *Counsel for Intervenor Consolidated Audit Trail, LLC*;

112. Moody, Ashley, *Counsel for Amicus Curiae State of Florida*;

113. Mooney, Rep. Alex X., *Amicus Curiae*;

114. Moran, Sen. Jerry, *Amicus Curiae*;

115. Morris, Andrew J., *Counsel of Record for Amicus Curiae New Civil Liberties Alliance*;

116. Morrisey, Patrick, *Counsel for Amicus Curiae State of West Virginia*;

117. Murrill, Liz, *Counsel for Amicus Curiae State of Louisiana*;

118. Nabors, David A., *Counsel for Amici Curiae Senator Tom Cotton and 21 Other Members of Congress*;

119. Nasdaq BX, Inc., *Intervenor and Plan Participant of Intervenor Consolidated Audit Trail, LLC*;

120. Nasdaq GEMX, LLC, *Intervenor and and Plan Participant of Intervenor Consolidated Audit Trail, LLC*;

121. Nasdaq, Inc. (Nasdaq: NDAQ), *Parent Company of Intervenors Nasdaq BX, Inc., Nasdaq PHLX LLC, and The Nasdaq Stock Market LLC*;

122. Nasdaq ISE, LLC, *Intervenor and Plan Participant of Intervenor Consolidated Audit Trail, LLC*;

123. Nasdaq MRX, LLC, *Intervenor and Plan Participant of Intervenor Consolidated Audit Trail, LLC*;

124. Nasdaq PHLX LLC, *Intervenor and Plan Participant of Intervenor Consolidated Audit Trail, LLC*;

125. Nasdaq Stock Market LLC, The, *Intervenor and Plan Participant of Intervenor Consolidated Audit Trail, LLC*;

126. New Civil Liberties Alliance, *Amicus Curiae*;

127. New York Stock Exchange LLC, *Intervenor and Plan Participant of Intervenor Consolidated Audit Trail, LLC*;

128. Norman, Rep. Ralph, *Amicus Curiae*;

129. NYSE American LLC, *Intervenor and Plan Participant of Intervenor Consolidated Audit Trail, LLC*;

130. NYSE Arca, Inc., *Intervenor and Plan Participant of Intervenor Consolidated Audit Trail, LLC*;

131. NYSE Chicago, Inc., *Intervenor and Plan Participant of Intervenor Consolidated Audit Trail, LLC*;

132. NYSE National, Inc., *Intervenor and Plan Participant of Intervenor Consolidated Audit Trail, LLC*;

133. Oliwenstein, David, *Counsel for Intervenors New York Stock Exchange LLC, NYSE American LLC, NYSE Arca, Inc., NYSE Chicago, Inc., and NYSE National, Inc.*;

134. Orr, Caleb, *Counsel for Amicus Curiae American Free Enterprise Chamber of Commerce*;

135. Overdahl, James, *Amicus Curiae*;

136. Paul, Weiss, Rifkind, Wharton & Garrison LLP, *Counsel for Amici Curiae Alternative Investment Management Association, Committee on Capital Markets Regulation, Investment Company Institute, Managed Funds Association, Securities Industry and Financial Markets Association, and Virtu Financial, Inc.*;

137. Paxton, Ken, *Counsel for Amicus Curiae State of Texas*;

138. Phillips, David, *Counsel for Petitioner Citadel Securities LLC*;

139. Pillsbury Winthrop Shaw Pittman LLP, *Counsel for Intervenors New York Stock Exchange LLC, NYSE American LLC, NYSE Arca, Inc., NYSE Chicago, Inc., and NYSE National, Inc.*;

140. Quinn Emanuel Urquhart & Sullivan, LLP, *Counsel for Amici Curiae Senator Tom Cotton and 21 Other Members of Congress*;

141. Rabbitt, Brian C., *Counsel for Petitioner Citadel Securities LLC*;

142. Reisner, Lorin L., *Counsel for Amici Curiae Alternative Investment Management Association, Committee on Capital Markets Regulation, Investment Company Institute, Managed Funds Association, Securities Industry and Financial Markets Association, and Virtu Financial, Inc.*;

143. Reyes, Sean, *Counsel for Amicus Curiae State of Utah*;

144. Ricketts, Sen. Pete, *Amicus Curiae*;

145. Rokita, Theodore E., *Counsel for Amicus Curiae State of Indiana*;

146. Rose, Rep. John, *Amicus Curiae*;

147. Roth, Yaakov M., *Counsel for Petitioner Citadel Securities LLC*;

148. Schulp, Jennifer, *Counsel for Amici Curiae Cato Institute and Investor Choice Advocates Network*;

149. Schwartz, Yishai, *Former Counsel for Amici Curiae Alternative Investment Management Association, Committee on Capital Markets Regulation, Investment Company Institute, Managed Funds Association, Securities Industry and Financial Markets Association, and Virtu Financial, Inc.*;

150. Scott, Sen. Tim, *Amicus Curiae*;

151. Securities Industry and Financial Markets Association, *Amicus Curiae*;

152. Self, Rep. Keith, *Amicus Curiae*;

153. Shanmugam, Kannon K., *Counsel of Record for Amici Curiae Alternative Investment Management Association, Committee on Capital Markets Regulation, Investment Company Institute, Managed Funds Association, Securities Industry and Financial Markets Association, and Virtu Financial, Inc.*;

154. Skorup, Brent, *Counsel of Record for Amici Curiae Cato Institute and Investor Choice Advocates Network*;

155. Sobel, Zachary J., *Counsel for Amici Curiae Senator Tom Cotton and 21 Other Members of Congress*;

156. State of Alabama, *Amicus Curiae*;

157. State of Arkansas, *Amicus Curiae*;

158. State of Florida, *Amicus Curiae*;

159. State of Georgia, *Amicus Curiae*;

160. State of Idaho, *Amicus Curiae*;

161. State of Indiana, *Amicus Curiae*;

162. State of Iowa, *Amicus Curiae*;

163. State of Kansas, *Amicus Curiae*;

164. State of Louisiana, *Amicus Curiae*;

165. State of Mississippi, *Amicus Curiae*;

166. State of Missouri, *Amicus Curiae*;

167. State of Montana, *Amicus Curiae*;

168.  State of Nebraska, *Amicus Curiae*;

169.  State of New Hampshire, *Amicus Curiae*;

170.  State of North Dakota, *Amicus Curiae*;

171.  State of Ohio, *Amicus Curiae*;

172.  State of South Carolina, *Amicus Curiae*;

173.  State of South Dakota, *Amicus Curiae*;

174.  State of Texas, *Amicus Curiae*;

175.  State of Utah, *Amicus Curiae*;

176.  State of West Virginia, *Amicus Curiae*;

177.  Stern, Eric E., *Counsel for Amici Curiae Securities Industry and Financial Markets Association and Virtu Financial, Inc.*;

178.  Thoma Bravo LP, *Owner of 10% or Greater Interest in Nasdaq, Inc.*;

179.  Torridon Law PLLC, *Counsel for Amicus Curiae American Free Enterprise Chamber of Commerce*;

180.  Unikowsky, Adam G., *Counsel for Intervenor Consolidated Audit Trail, LLC*;

181.  U.S. Securities and Exchange Commission, *Respondent*;

182.  Vanguard Group, Inc., The, *Owner of 10% or Greater Interest in Cboe Global Markets, Inc.*;

183.  Virtu Financial, Inc., *Amicus Curiae*;

184.  Watkins, Devin, *Counsel of Record for Amicus Curiae Competitive Enterprise Institute*;

185.  Weber, Rep. Randy, *Amicus Curiae*;

186.  Willkie Farr & Gallagher LLP, *Counsel for Amicus Curiae Futures Industry Association*;

187.  Wilson, Alan, *Counsel for Amicus Curiae State of South Carolina*;

188.  Womack, Rep. Steve, *Amicus Curiae*;

189.  Wrigley, Drew H., *Counsel for Amicus Curiae State of North Dakota*;

190.  Yost, Dave, *Counsel for Amicus Curiae State of Ohio*.

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through -3, undersigned counsel for Proposed Intervenor Consolidated Audit Trail, LLC, hereby certifies that Consolidated Audit Trail, LLC, has no parent corporation, and that the following three publicly held companies have an indirect ownership interest in Consolidated Audit Trail, LLC, of 10% or more: Cboe Global Markets, Inc. (BATS: CBOE); Intercontinental Exchange, Inc. (NYSE: ICE); and Nasdaq, Inc. (Nasdaq: NDAQ).

Date:  September 30, 2024

 */s/ Ian Heath Gershengorn*
Ian Heath Gershengorn

*Counsel of Record for Intervenor
  Consolidated Audit Trail, LLC*

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT ...........................................CIP-1

TABLE OF AUTHORITIES ...........................................................................ii

INTRODUCTION ........................................................................................ 1

BACKGROUND ......................................................................................... 4

ARGUMENT .............................................................................................. 7

I.      The Relief Petitioners Seek Is Inconsistent With The Exchange Act ............ 7

        A.      The SEC's Decision Whether To Suspend Fee Filings Is
                Unreviewable.................................................................... 7

        B.      Petitioners Seek To Circumvent The Exchange Act's
                Jurisdictional Limits ......................................................... 9

                1.      This Court lacks jurisdiction to enjoin the SROs from
                        acting upon the SEC's unreviewable fee-filing
                        determinations ...................................................... 10

                2.      This Court should not enter a stay that would likewise
                        nullify Congress's limitations on judicial review .................... 13

II.     Petitioners Cannot Establish An Entitlement To Emergency Relief............ 13

        A.      Petitioners Have Not Established Irreparable Harm .......................... 15

        B.      The Balance Of The Equities Strongly Counsels Against
                Relief ............................................................................ 18

CONCLUSION............................................................................................21

CERTIFICATE OF COMPLIANCE.....................................................................22

CERTIFICATE OF SERVICE ...........................................................................23

# TABLE OF AUTHORITIES

CASES

*Catharsis on the Mall, LLC v. Jewell*, 217 F. Supp. 3d 154
(D.D.C. 2016) ........................................................................................... 19

*Clinton v. Goldsmith*, 526 U.S. 529 (1999) ...................................................... 12

*Democratic Executive Committee of Florida v. Lee*, 915 F.3d 1312
(11th Cir. 2019) ....................................................................................... 14

*DTCC Data Repository (U.S.) LLC v. United States CFTC*,
25 F. Supp. 3d 9 (D.D.C. 2014) ............................................................... 9

*Klay v. United Healthgroup, Inc.*, 376 F.3d 1092 (11th Cir. 2004)................... 11

*Miracle v. Hobbs*, 808 F. App'x 470 (9th Cir. 2020) (per curiam) ................... 19

*Nasdaq Stock Market, LLC v. SEC*, 961 F.3d 421 (D.C. Cir. 2020) ............. 7, 12

*NetCoalition v. SEC*, 715 F.3d 342 (D.C. Cir. 2013) .................................... 8-9

*Nken v. Holder*, 556 U.S. 418 (2009) ................................................................ 14

*Norton v. Southern Utah Wilderness Alliance*, 524 U.S. 55 (2004).................... 9

*Ohio v. EPA*, 144 S. Ct. 2040 (2024).................................................................. 14

*Sprint Nextel Corp. v. FCC*, 508 F.3d 1129 (D.C. Cir. 2007) ........................... 9

*Virginia Railway Co. v. United States*, 272 U.S. 658 (1926) ............................ 14

*Weissman v. National Ass'n of Securities Dealers*, 500 F.3d 1293
(11th Cir. 2007) ....................................................................................... 17


STATUTES

5 U.S.C. § 704.......................................................................................................... 8

15 U.S.C. § 78s(b)(1) (2006) ................................................................................... 8

15 U.S.C. § 78s(b)(3)(A) (2011) .............................................................................. 8

15 U.S.C. § 78s(b)(3)(C) ..............................................................2-3, 8-11

15 U.S.C. § 78s(c)............................................................................. 12

28 U.S.C. § 1651.............................................................................. 11

28 U.S.C. § 1651(a) ......................................................................11-12

REGULATIONS

17 C.F.R. § 242.613 .......................................................................... 4

17 C.F.R. § 242.613(a)(1)(vii)(D) ...................................................... 5

OTHER AUTHORITIES

*About FINRA*, FINRA, https://www.finra.org/about (last visited
Sept. 30, 2024)............................................................................ 15

Becker, Brandon, Chair, CAT NMS Plan Operating Committee,
Letter to Vanessa Countryman, Secretary, SEC 2-3 (June 13,
2024), https://www.sec.gov/comments/sr-finra-2024-002
/srfinra2024002-482411-1380614.pdf........................................6-7, 18

Consolidated Audit Trail, Exchange Act Release No. 67,457,
77 Fed. Reg. 45,722 (Aug. 1, 2012) ............................................. 4

Consolidated Audit Trail, LLC, 2024 Financial and Operating
Budget—Mid-Year Update—July 2024 (July 31, 2024),
https://www.catnmsplan.com/sites/default/files/2024-08
/07.31.24-CAT-LLC-2024-Financial_and_Operating-Budget.pdf ................ 6

Order Approving an Amendment to the National Market System Plan
Governing the Consolidated Audit Trail, Exchange Act Release
No. 98,290, 88 Fed. Reg. 62,628 (Sept. 12, 2023) .............................. 1, 6, 18

Order Approving the National Market System Plan Governing the
Consolidated Audit Trail, Exchange Act Release No. 79,318,
81 Fed. Reg. 84,696 (Nov. 23, 2016) .......................................... 5

## INTRODUCTION

In 2012, in the aftermath of the "Flash Crash," the SEC directed the self-regulatory organizations (SROs) to submit a plan to consolidate their longstanding independent audit-trail functions. A detailed proposal—the Consolidated Audit Trail, or the "CAT"—was approved in 2016. Since the CAT's inception, all interested parties (including petitioners here) understood that the significant costs of building and maintaining the program would ultimately be shared by the responsible SROs (*i.e.*, those SROs that participate in the CAT, also called "Participants") and their broker-dealer members (also called "Industry Members").[1]

Notwithstanding that promise, the SROs have so far financed the CAT solo— to the tune of over $900 million. In 2023, the SEC approved a funding model that equitably allocates CAT costs between the SROs and broker-dealers. *See* Order Approving an Amendment to the National Market System Plan Governing the Consolidated Audit Trail, Exchange Act Release No. 98,290, 88 Fed. Reg. 62,628 (Sept. 12, 2023) (2023 Funding Order). But to date, broker-dealers like petitioners have *still* paid not one penny.

Since the 2023 Funding Order was issued, the SROs have begun to take steps to collect part of broker-dealers' share of CAT's historical and ongoing costs.

---

[1] Though the Financial Industry Regulatory Authority (FINRA) is a Participant, it was not involved in the preparation of this opposition. This opposition should not be construed to reflect the position of any individual Participant.

Petitioners have requested that the Securities and Exchange Commission (SEC) suspend the SROs' August 2024 fee filings, which authorize Intervenor Consolidated Audit Trail, LLC (CAT LLC), to collect CAT fees.  Thus far, the SEC—which is vested by the Securities Exchange Act with exclusive, unreviewable authority to halt the operation of fee filings—has declined to suspend the operative August 2024 filings, allowing them to take effect by operation of law (though no CAT fees are due until November 2024).[2]  Rather than abide the process prescribed by the Exchange Act for challenging the SROs' fee filings before the SEC, petitioners have come to this Court seeking a stay of the 2023 Funding Order.  Their request should be rejected for three reasons.

*First*, petitioners' ask is inappropriate given the Exchange Act's review scheme, including its preclusion of judicial review of the SEC's decision whether to suspend fee filings.  Petitioners are clear that the harm they suffer stems from the SROs' recent fee filings.  And petitioners are clear that they believe the SEC has behaved unwisely in not suspending these fee filings.  But the SEC's failure to suspend the filings is not subject to review.  In general, when Congress provides that a

_____

[2] The 60-day period in which the SEC may suspend SROs' fee filings has not elapsed, so the SEC may yet suspend the filings before the date by which petitioners have requested relief.  15 U.S.C. § 78s(b)(3)(C); *see* ECF No. 112-1, at 5 (Stay Mot.) (requesting a ruling by November 17, 2024).  If the SEC suspends the fee filings, petitioners' motion would become moot.  This opposition therefore proceeds from the premise (shared by petitioners' motion) that the SEC will decline to suspend the relevant fee filings.

filing takes effect by operation of law absent agency objection, the agency's failure to object is not final agency action, and is thus not reviewable under the Administrative Procedure Act (APA). And here, Congress specifically legislated to make that nonreviewability even clearer—the Exchange Act explicitly states that the SEC's decision whether or not to suspend fee filings "shall not be reviewable." 15 U.S.C. § 78s(b)(3)(C). Petitioners attempt a blatant workaround by purporting to seek a stay of a *different* SEC action and an associated *injunction* against the SROs. This Court should reject that creative reframing for what it is: an end-run around the statute's express limits.

*Second*, petitioners have not shown irreparable harm. Petitioners' theory of irreparable injury proceeds from the premises that, if they obtain a ruling that the CAT is unlawful, (1) petitioners cannot be responsible for any already-incurred CAT costs; and (2) petitioners will be unable to recoup any fees paid in the interim. Neither premise is justified. As CAT LLC has explained, were the CAT as a whole deemed unlawful, the SEC must work out a plan to enable the SROs to recover historical CAT costs; any payments (or even any "overpayments") petitioners make now can be addressed through a revised funding model or adjustments to future fee filings. *See* ECF No. 97, at 51-52 (CAT LLC Br.). There is thus no reason to believe petitioners' assertion that if the CAT were invalidated, no mechanism is available to make them whole. And if petitioners succeed on their other arguments—regarding

3

the reasonableness of the 2023 Funding Order's one-third/one-third/one-third cost allocation and the sufficiency of its economic analysis—that would require, at most, minor adjustments to the allocation of CAT costs (or the justification thereof).  Here, too, any overpayments could be accounted for in setting broker-dealers' contributions under a future funding model.

*Third*, the balance of the equities tips strongly against emergency relief.  Even assuming petitioners would be irreparably harmed if they paid fees today and the CAT were later invalidated, the SROs have already spent close to a *billion* dollars funding the CAT on the expectation that such costs would be shared.  Petitioners' true ask is that they be allowed to continue to free-ride in perpetuity while the SROs bear 100% of CAT's costs, but there is nothing equitable about that arrangement.  Moreover, if petitioners succeed in invalidating the CAT, the extent of CAT's purportedly unrecoverable costs (which have accrued since 2016) would be largely due to petitioners' own delay in asserting their challenge to the program.  Under these circumstances, preliminary relief that would force the SROs to continue to carry the water alone is unwarranted.

## BACKGROUND

A.    In 2012, the SEC promulgated Rule 613 of Regulation NMS, 17 C.F.R. § 242.613, which required the SROs to file a national market system (NMS) plan for designing, implementing, and maintaining the CAT.  *See* Consolidated Audit Trail,

Exchange Act Release No. 67,457, 77 Fed. Reg. 45,722 (Aug. 1, 2012). As part of the proposed plan, Rule 613 directed that the SROs specify how the CAT would be funded, "including the proposed allocation" of CAT costs between the major players to securities transactions: the SROs and broker-dealers. 17 C.F.R. § 242.613(a)(1)(vii)(D).

The SEC approved the CAT NMS Plan in 2016. *See* Order Approving the National Market System Plan Governing the Consolidated Audit Trail, Exchange Act Release No. 79,318, 81 Fed. Reg. 84,696 (Nov. 23, 2016) (2016 CAT Order). Neither petitioners nor any other party challenged the 2016 CAT Order (at least not before this case, brought seven years later).

Pursuant to Rule 613, the CAT NMS Plan provided that costs for constructing and maintaining the CAT would be shared between the SROs and broker-dealers. *See* 2016 CAT Order, 81 Fed. Reg. at 84,710. The original plan did not fix those groups' respective shares, instead providing that the SROs would later "establish an allocation of [CAT LLC's] related costs among Participants and Industry Members that is consistent with the Exchange Act." *Id.* During the period in which the CAT was constructed and brought online, the SROs footed the entire bill (by providing funding to CAT LLC in exchange for zero-interest promissory notes); again, they did so based on the unequivocal agreement that a portion of those costs would be shared through the imposition of CAT fees on broker-dealers. *See id.* at 84,794. To

this point, the participating SROs have expended over $900 million on the CAT. *See* Letter from Brandon Becker, Chair, CAT NMS Plan Operating Comm., to Vanessa Countryman, Sec'y, SEC 2-3 (June 13, 2024), https://www.sec.gov/comments/sr-finra-2024-002/srfinra2024002-482411-1380614.pdf (CAT Letter); Consol. Audit Trail, LLC, 2024 Financial and Operating Budget—Mid-Year Update—July 2024 (July 31, 2024), https://www.catnmsplan.com/sites/default/files/2024-08/07.31.24-CAT-LLC-2024-Financial_and_Operating-Budget.pdf.

B.    The order under review fulfilled the promise of sharing CAT costs, allocating one-third of the costs for each transaction to the SRO, one-third to the buy-side broker-dealer, and one-third to the sell-side broker-dealer. 2023 Funding Order, 88 Fed. Reg. at 62,629-30. The order operationalized that split by assigning a fee to be assessed by CAT LLC to the SROs and to the buy- and sell-side broker-dealers based on the number of executed shares. *Id.*

Petitioners—a broker-dealer (Citadel Securities LLC) and a broker-dealer association (American Securities Association)—sought review of the 2023 Funding Order. ECF No. 1-2. This Court permitted CAT LLC's intervention to defend it. ECF Nos. 30, 48.

C.    In January 2024, the SROs submitted filings to the SEC indicating that they would finally begin to collect CAT-related fees from broker-dealers. *See* ECF No. 112-1, at 7 (Stay Mot.). The SEC suspended those filings, and they were

ultimately withdrawn.

In August 2024, the SROs submitted new filings seeking to collect a smaller amount of CAT fees than previously proposed. The fees outlined in the August 2024 filings would cover broker-dealers' share of CAT historical costs incurred prior to 2022, as well as broker-dealers' share of CAT operational costs for part of 2024. *See* Stay Mot. 8 (collecting URLs of fee filings).

Petitioners filed comments with the SEC requesting that the agency suspend the August 2024 fee filings. *See* CAT Letter 2 & n.4. As of this filing, the SEC has not suspended the filings.

## ARGUMENT

## I.    The Relief Petitioners Seek Is Inconsistent With The Exchange Act.

Petitioners make clear that the requested emergency relief is intended to halt the operation of the SROs' August 2024 fee filings. The Exchange Act, however, vests review of these filings solely with the SEC and precludes judicial review of the SEC's suspension (or nonsuspension) decision. This Court should decline petitioners' request to circumvent the statutory regime.

### A.    The SEC's Decision Whether To Suspend Fee Filings Is Unreviewable.

If an SRO "wishes to impose or change a fee for its services or products," it must first "file a rule change with the [SEC]." *Nasdaq Stock Market, LLC v. SEC*, 961 F.3d 421, 424 (D.C. Cir. 2020). (Rule changes related to fees are often called

"fee filings.") Fee filings once required SEC approval, following notice and comment, before going into effect. *See NetCoalition v. SEC*, 715 F.3d 342, 344 (D.C. Cir. 2013) (citing 15 U.S.C. § 78s(b)(1) (2006)). However, Congress "abandoned the approval requirement" in the Dodd-Frank Act, amending the Exchange Act to provide that "[c]hanges to rules setting fees … now 'take effect upon filing with the [SEC].'" *Id.* at 344 (quoting 15 U.S.C. § 78s(b)(3)(A) (2011)). Section 19(b)(3)(C) of the Exchange Act gives the SEC discretion, within 60 days of an SRO's fee filing, to suspend the new rule "if it appears to the [SEC] that such action is necessary or appropriate in the public interest, for the protection of investors, or otherwise in furtherance of the purposes of" the Act. 15 U.S.C. § 78s(b)(3)(C) (current). This provision also states that "[SEC] action pursuant to [Section 19(b)(3)(C)] shall not be reviewable" under the Exchange Act's usual review scheme for SEC rules and orders "nor deemed to be 'final agency action' for purposes" of the APA. *Id.* (quoting 5 U.S.C. § 704).

The text is clear: There is no judicial review of the SEC's decision whether to suspend a fee filing. As the D.C. Circuit explained in *NetCoalition*, not only is it undeniable that the SEC's decision to suspend a fee filing is unreviewable, the statute likewise makes clear that the SEC's decision *not* to suspend a fee filing—thus permitting the fee to take effect by operation of law—is *also* not subject to judicial review. *See* 715 F.3d at 348-53. The court explained that Section 19(b)(3)(C)'s text

8

differentiates between the term "such action" (which refers to the SEC's decision to suspend a fee filing) and the broader term "action" (which encompasses the SEC's decision to suspend or not to suspend a fee filing) in the provision's nonreviewability clause. *Id.* at 349-50. The court "assume[d] that the Congress's decision not to modify '[SEC] action' so as to indicate that the phrase is limited to suspension was intentional," and it therefore "appl[ied] the jurisdictional bar of section 19(b)(3)(C) to any [SEC] decision thereunder." *Id.* at 350 (quoting 15 U.S.C. § 78s(b)(3)(C)). The text is so clear, the D.C. Circuit noted, that it overcomes the presumption of judicial review of agency decisionmaking. *Id.* at 348, 351-52. *NetCoalition* thus accords with the general blackletter principle that, when a statute provides for some action to take effect unless the agency steps in to stop it, the agency's inaction is unreviewable. *See, e.g.*, *Norton v. S. Utah Wilderness All.*, 524 U.S. 55, 62-65 (2004); *Sprint Nextel Corp. v. FCC*, 508 F.3d 1129, 1131 (D.C. Cir. 2007); *DTCC Data Repository (U.S.) LLC v. U.S. CFTC*, 25 F. Supp. 3d 9, 15-18 (D.D.C. 2014).

**B.     Petitioners Seek To Circumvent The Exchange Act's Jurisdictional Limits.**

The unambiguous nonreviewability of SRO fee filings is critical to unpacking petitioners' request for relief. By petitioners' (and their *amici*'s) own lights, the harm they seek to redress is attributable to the SROs' fee filings, and their principal objection is to the SEC's failure to suspend these filings to date. *See* Stay Mot. 9; *see also* ECF No. 116-2, at 4 (SIFMA Br.) (complaining that the SEC "has given no

9

reasoned explanation for why it has declined temporarily to suspend the new filings").  But first and fundamentally, Congress has precluded judicial review of the SEC's decision whether to suspend fee filings, so this Court lacks jurisdiction to enter the full scope of relief petitioners seek.  And second, this Court should decline petitioners' request to skirt Congress's clear directive.

> 1.    *This Court lacks jurisdiction to enjoin the SROs from acting upon the SEC's unreviewable fee-filing determinations.*

For starters, this Court lacks jurisdiction to issue the injunctive relief petitioners seek.  Asserting it would be "remarkable" to submit fee filings seeking to recover a portion of CAT costs in the absence of a funding order that has already overcome all challenges, petitioners ask this Court to "enjoin[] the SROs"—some of which are not even parties in this case—"from trying to collect any CAT fees from broker-dealers," including fees assessed under the August 2024 fee filings.  Stay Mot. 17.  This is an unabashed ask for this Court to ignore the Exchange Act's limits on review.

As explained, the Exchange Act commits to the SEC's unreviewable discretion the decision whether to suspend a fee filing or to let it take effect; when the SEC chooses the latter, the filing becomes an operative rule of the SRO.  15 U.S.C. § 78s(b)(3)(C).  If courts lack jurisdiction to review the SEC's decision not to suspend a fee filing, it follows *a fortiori* that courts lack jurisdiction to enjoin an SRO from effectuating a fee filing—*i.e.*, to issue the very relief that would result from the

10

prohibited review process.  Petitioners suggest that this Court may enjoin the August 2024 fee filings "without having to wade into the merits."  Stay Mot. 18.  But in fact, courts lack power to suspend the operation of fee filings *even if the merits are clear* because the Exchange Act entrusts that decision to the SEC alone.  Adhering to the Exchange Act's jurisdictional limits requires this Court to abstain from obstructing the operation of the SROs' fee filings.

Petitioners rest their request to nullify the Exchange Act's jurisdictional provisions on the All Writs Act, 28 U.S.C. § 1651, asserting that collection of a small portion of the share of CAT costs incurred by broker-dealers would "threaten[]" the "integrity" of this proceeding to review the 2023 Funding Order.  Stay Mot. 18 (quoting *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1100 (11th Cir. 2004)).  That request fails for three fundamental reasons.

For starters, petitioners' invocation of general equitable principles embodied in the All Writs Act is improper given the Exchange Act's more specific provision unambiguously stripping courts of power to scrutinize the SEC's decisionmaking as to fee-filing suspension.  *See* 15 U.S.C. § 78s(b)(3)(C).  Specifically, the All Writs Act permits only relief that is "necessary" and "appropriate," 28 U.S.C. § 1651(a). It cannot possibly be "appropriate" for this Court to enjoin the operation of fee filings when the Exchange Act vests that authority solely in the SEC.

Moreover, "resort to the All Writs Act" is "out of bounds, being unjustifiable

either as 'necessary' or as 'appropriate' in light of alternative remedies available" to petitioners. *Clinton v. Goldsmith*, 526 U.S. 529, 537 (1999) (quoting 28 U.S.C. § 1651(a)). In particular, as the D.C. Circuit has explained, if petitioners (or any broker-dealers) believe that any aspect of the August 2024 fee filings is unlawful, they "may petition the [SEC]" under Section 19(c) of the Exchange Act "to amend an SRO's fee rule through notice-and-comment rulemaking," and "[i]f the [SEC] denies the petition to amend, the party may petition [the D.C. Circuit] for review." *Nasdaq*, 961 F.3d at 430. Given that alternative avenue for "review of the action challenged," the All Writs Act plays no role. *Goldsmith*, 526 U.S. at 537-38.

In any event, nothing about the August 2024 fee filings threatens this Court's jurisdiction or the integrity of these proceedings. Petitioners suggest that broker-dealers *collectively* will pay about $60 million in CAT fees during the remainder of 2024, Stay Mot. 10, a relatively small percentage of their overall share of CAT costs.[3] Collection of this fraction of the CAT costs owed by petitioners under the 2023 Funding Order would neither moot this case nor deprive this Court of jurisdiction over any issue raised by the parties. Indeed, petitioners never argue otherwise. Petitioners simply ask this Court to exceed the bounds of its equitable power to protect their wallets.

---

[3] This case is calendared for oral argument during the week of January 13, 2025. ECF No. 114.

2. *This Court should not enter a stay that would likewise nullify Congress's limitations on judicial review.*

For similar reasons, this Court should deny petitioners' request for a stay. Though petitioners are careful to purport to target the 2023 Funding Order rather than the SEC's unreviewable fee-filing determination, petitioners are transparent that the *reason* they seek such relief is to effectively stay the August 2024 fee filings. *See* Stay Mot. 9. This Court should reject petitioners' attempt to accomplish indirectly what this Court lacks jurisdiction to do directly.

To be sure, this Court does not lack the *power* to stay the 2023 Funding Order. But the only rationale petitioners provide for staying the 2023 Funding Order—and the only harm petitioners here identify—stems from the August 2024 fee filings. Petitioners apparently believe that if the 2023 Funding Order were vacated, the August 2024 fee filings would *per se* be invalid. But SRO fee filings are *automatically* valid unless suspended by the SEC. Petitioners' argument thus reduces to their judgment that the SROs would not or should not have submitted the August 2024 fee filings without the 2023 Funding Order, or that the SEC would not or should not have declined to suspend the filings in the absence of that order. But the Exchange Act leaves these decisions to the SROs and the SEC to make, not to petitioners and this Court to speculate about or second-guess.

## II. Petitioners Cannot Establish An Entitlement To Emergency Relief.

Even if the relief petitioners seek were available, they have not demonstrated

an entitlement to a stay or preliminary injunction. This Court must consider whether petitioners are likely to succeed on the merits; whether they will suffer irreparable injury absent relief; whether other interested parties will be harmed by the relief sought; and where the public interest lies. *Ohio v. EPA*, 144 S. Ct. 2040, 2052 (2024). To meet their burden, petitioners "must show more than the mere possibility of success on the merits or of irreparable injury." *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1317 (11th Cir. 2019). And under no circumstances is there an automatic entitlement to a stay: "A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quoting *Va. Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)). Petitioners cannot establish these elements as to any of their three theories of relief.

On the merits, the arguments are fully briefed, and CAT LLC will not rehash them. In short: Petitioners' primary criticisms of the 2023 Funding Order are that it failed to preemptively prohibit the SROs from passing on some of their one-third share of CAT costs to broker-dealers, *see* ECF No. 49, at 32-39 (Petitioners' Br.), and that it failed to redo from whole cloth the economic analysis the SEC undertook back in 2016, *see id.* at 39-47. For the reasons CAT LLC, the SEC, and the other intervenors have explained, these arguments are weak. *See* CAT LLC Br. 19-48; ECF No. 96, at 24-40 (SEC Br.); ECF No. 98, at 30-50 (Intervenor Exchanges Br.). Petitioners also argue that the entire CAT program is unauthorized by the Exchange

14

Act—that argument, too, is fully briefed. *See* Petitioners' Br. 13-31; SEC Br. 40-56.

Even assuming petitioners could make the requisite strong showing as to their likelihood of success, none of their merits theories justifies emergency relief. As to none of these theories do petitioners demonstrate irreparable injury absent a stay. And the balance of the equities tips decisively against relief.

## A.  Petitioners Have Not Established Irreparable Harm.

Petitioners must show that, as to at least one of their theories for vacatur of the 2023 Funding Order, a stay of the order is necessary to avoid irreparable injury stemming from the August 2024 fee filings that petitioners effectively seek to block. Petitioners have failed to make the required showing.

1. Start with petitioners' argument that the SEC was required to anticipatorily prohibit the SROs from passing through to broker-dealers any of their one-third share of CAT costs. Even if petitioners were *certain* to win this argument, it would not justify a stay. With the exception of the Financial Industry Regulatory Authority (FINRA), which chose to submit a separate fee filing seeking to pass through the CAT fees it is assessed,[4] the August 2024 fee filings that petitioners seek to block do not implicate pass-through of the SROs' share at all. These fee filings only

---

[4] That FINRA would pass through its CAT costs has never been in doubt because it is a not-for-profit entity funded entirely via pass-through of its costs. *See About FINRA*, FINRA, https://www.finra.org/about (last visited Sept. 30, 2024).

operationalize the one-third/one-third/one-third allocation adopted by the 2023 Funding Order—an allocation that petitioners never challenged as unreasonable. *See* CAT LLC Br. 50.

2. Next, consider petitioners' argument that the SEC was required to undertake afresh its 2016 economic analysis before approving the equitable allocation of CAT costs. Petitioners' Br. 39-47. If petitioners were to succeed on this argument, the result would be a remand to the SEC either to re-justify the same funding allocation with a new analysis, or to modify the allocation to account for the new analysis. In neither scenario would petitioners be irreparably harmed. In the former case, nothing practical would change, so petitioners will have suffered no injury by beginning to pay their one-third share now. And even in the latter case, future fee filings could be set to account for any theoretical overpayment under a modified funding allocation, thus negating any harm to petitioners and other broker-dealers.

3. Petitioners do not make any serious effort to show irreparable harm as to these two theories. Instead, they rest their request almost entirely on the harm they say would result if the entire CAT were deemed unauthorized by the Exchange Act. Stay Mot. 1-4; *see* Petitioners' Br. 13-31. Here, too, petitioners have not made the necessary showing of irreparable harm.

To hear petitioners tell it, they would be irreparably harmed if this Court ruled that the CAT were unlawful because any CAT-related fees collected today would

16

become unrecoverable in the future (due to the SROs' regulatory immunity). Stay Mot. 11; *see Weissman v. Nat'l Ass'n of Sec. Dealers*, 500 F.3d 1293, 1296-97 (11th Cir. 2007). But simply invoking the concept of regulatory immunity is not a sufficient explanation as to why collected fees would be categorically unrecoverable. As CAT LLC explained in its principal brief, in the event the CAT were eliminated, there would be difficult questions as to the allocation and recovery of the program's sunk costs, and if this occurred, the SEC would need to work out a solution. *See* CAT LLC Br. 50-53. There can be no serious argument that petitioners should be categorically immune from shouldering CAT costs incurred before filing this suit— leaving the SROs holding the bag—especially given that petitioners have benefited from the CAT for years. If the CAT were invalidated, and petitioners were deemed to have overpaid as a result of the August 2024 fee filings, any overpayment could be adjusted in any CAT postmortem proceeding before the SEC, just like the SROs' own overpayments.

All petitioners cite to support their predictions of unrecoverable fees is a cherry-picked phrase quoted out of context from a letter sent by the CAT NMS Plan operating committee to the SEC in support of the August 2024 fee filings. *See* Stay Mot. 4, 11. In responding to comments on the fee filings, the letter summarized an argument raised by some commenters, explaining that "the commenters argue that no fees should be collected from Industry Members until after the Funding Model

litigation has been resolved because the fees paid for the CAT by Industry Members may not be repaid." CAT Letter 45. CAT LLC did not say that, as a factual matter, no recoupment is possible. Petitioners disingenuously attempt to put these words in CAT LLC's mouth, but, in fact, CAT LLC believes that the SEC is empowered to fashion a solution allocating sunk CAT costs if this Court holds the CAT unlawful.

## B. The Balance Of The Equities Strongly Counsels Against Relief.

Even assuming *arguendo* that petitioners could be at risk of losing any CAT fees they pay today, the balance of the equities strongly weighs against relief.

Petitioners assert that "a stay would leave the SROs where they have been for the past eight years." Stay Mot. 13. That is exactly why a stay should be *denied*. Of course petitioners are happy to maintain the state of affairs. They have, for years now, been free-riding—reaping the market-security benefits of the CAT without paying a penny. *See* 2023 Funding Order, 88 Fed. Reg. at 62,636; *see also* SIFMA Br. 7 (arguing that a stay would not injure anyone "because the CAT can continue to function—as it has for almost a decade—without a final funding plan"). This free-riding arrangement was supposed to be temporary under the CAT NMS Plan, and, indeed, broker-dealers funded the operation of the SROs' predecessor audit trails. There is nothing equitable about continuing indefinitely to force the SROs to shoulder 100% of the CAT's costs, an arrangement that was never supposed to stick.

What's more, petitioners neglect to mention that, if they get the temporary

relief they seek, the CAT will presumably continue to run—and continue to incur costs. Petitioners apparently believe that if the CAT were ultimately invalidated, they should get off scot-free and *never* be asked to contribute anything to the costs of a system from which they benefited for years (indeed, this is the premise of petitioners' irreparable-harm argument). On petitioners' (dubious) premise, the question on the equities boils down to the following: Given a risk that the funds paid to operate the CAT could be unrecoverable (a risk created because of petitioners' belated decision to attack the program's lawfulness), should that risk and those costs be borne entirely by the SROs, or should a small portion be borne by broker-dealers who also benefit from the CAT and were always supposed to help fund it?

Petitioners do not give an adequate answer to this question—they do not provide any reason why it is remotely fair for the SROs (but not petitioners) to fund a program with potentially unrecoverable money, or explain why their money is any greener than the SROs'. So petitioners fail to show that the equities favor them *at all*, a failure that itself requires denial of their request for emergency relief. *See, e.g.*, *Miracle v. Hobbs*, 808 F. App'x 470, 473 (9th Cir. 2020) (per curiam) (relief not justified when "balance of equities lies in equipoise"); *Catharsis on the Mall, LLC v. Jewell*, 217 F. Supp. 3d 154, 165 (D.D.C. 2016) (similar). And the truth here is that the equities are not even close to equipoise; they militate strongly against relief.

Since 2016, the SROs have footed the full bill for the CAT—over $900

million and counting. Petitioners note that the August 2024 fee filings would require broker-dealers to pay about $60 million in CAT costs during the remainder of 2024. Stay Mot. 10. To be sure, petitioners prefer that the SROs pay 100% of the money to fund the CAT and that petitioners continue to avoid contributing any portion. But that is not "equity" at all. Or, to put the equities point in more concrete (albeit approximate) terms: In a world in which the CAT might be invalidated, it is substantially *inequitable* for this Court to override the SEC and effectively mandate that CAT costs be borne 100% by the SROs and 0% by broker-dealers, rather than having 90% of that allocation be borne by the SROs and less than 10% (roughly, $60 million / $900 million) by broker-dealers.

All the more so because these sunk costs have been expended due to petitioners' delay in challenging the legality of the CAT. Petitioners have offered no explanation as to why they did not assert their main statutory challenge to the CAT in 2016. The reality is, they were happy to benefit from the CAT for years while allowing hundreds of millions in costs to accrue. They raised their hands to challenge the arrangement only once the bill came due. Had petitioners brought their challenge earlier and succeeded, these substantial costs—which petitioners are attempting to render sunk and unrecoverable—could have been avoided. There is nothing remotely inequitable about requiring petitioners (and other broker-dealers, who likewise did not challenge the CAT in 2016), to bear a small portion of the already-

incurred costs of the CAT in the event it is invalidated.  This Court should not reward petitioners' tactics with a financial windfall.  Nor should it—by virtue of emergency relief—impose additional financial burden on the SROs.

## CONCLUSION

Petitioners' motion for a stay and injunctive relief should be denied.

Respectfully submitted,

Date:  September 30, 2024

/s/ Ian Heath Gershengorn

Ian Heath Gershengorn
  *Counsel of Record*
Adam G. Unikowsky
Elizabeth B. Deutsch
Jonathan J. Marshall
JENNER & BLOCK LLP
1099 New York Avenue, NW,
  Suite 900
Washington, DC 20001
(202) 639-6000
igershengorn@jenner.com

Gregory M. Boyle
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
(312) 527-0484

*Counsel for Intervenor Consolidated
  Audit Trail, LLC*

# CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the word limit set forth in Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the parts of the document exempted by Federal Rules of Appellate Procedure 27(a)(2)(B) and 32(f), this document contains **5,092** words.

I further certify that this document complies with the typeface and type-style requirements set forth in Federal Rules of Appellate Procedure 27(d)(1)(E), 32(a)(5), and 32(a)(6) because it has been prepared using 14-point Times New Roman font in Microsoft Office Word 365.

Date:  September 30, 2024
 */s/ Ian Heath Gershengorn*
Ian Heath Gershengorn

*Counsel of Record for Intervenor
 Consolidated Audit Trail, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system, which will send notice to all the parties.

Date:  September 30, 2024

 */s/ Ian Heath Gershengorn*
Ian Heath Gershengorn

*Counsel of Record for Intervenor
  Consolidated Audit Trail, LLC*