No. 23-13396

UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

AMERICAN SECURITIES ASSOCIATION;
CITADEL SECURITIES LLC,
*Petitioners*,

v.

SECURITIES AND EXCHANGE COMMISSION,
*Respondent*,

CONSOLIDATED AUDIT TRAIL, LLC; THE NASDAQ STOCK
MARKET, LLC; ET AL.,
*Intervenors.*

On Petition for Review of an Order of the Securities and Exchange Commission

**SECURITIES AND EXCHANGE COMMISSION'S OPPOSITION TO
PETITIONERS' MOTION FOR STAY AND INJUNCTIVE RELIEF**

MICHAEL A. CONLEY
Solicitor

TRACEY A. HARDIN
Assistant General Counsel

DANIEL E. MATRO
Senior Appellate Counsel

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
(202) 551-8248 (Matro)

*American Securities Association et al. v. United States Securities and Exchange Commission*,
No. 23-13396

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit

Rule 26.1-1, the undersigned counsel for Respondent Securities and Exchange

Commission hereby certifies that the following listed persons and entities have an

interest in the outcome of this case:

1) Alternative Investment Management Association, Amicus.

2) Altman, Jennifer G., Pillsbury Winthrop Shaw Pittman LLP, counsel for NYSE Intervenors.

3) American Free Enterprise Chamber of Commerce, Amicus.

4) American Securities Association, Petitioner.

5) ArentFox Schiff LLP, counsel for Intervenors Cboe BYX Exchange, Inc., Cboe BZX Exchange, Inc., Cboe EDGA Exchange, Inc., Cboe EDGX Exchange, Inc., Cboe C2 Exchange, Inc., and Cboe Exchange, Inc.

6) Ashbrook Byrne Kresge LLC, counsel for Amici James Overdahl and S.P. Kothari.

7) Baltz, Brian J., counsel for Amicus Future Industry Association.

8) Barbero, Megan, counsel for Respondent Securities and Exchange Commission.

9) Barr, William P., counsel for amicus American Free Enterprise Chamber of Commerce.

10) Bash, John F., counsel for amici Senator Tom Cotton et al.

11) Berman, Ari M., Pillsbury Winthrop Shaw Pittman LLP, counsel for NYSE Intervenors.

12) Berry, Jonathan, counsel for amicus American Free Enterprise Chamber of Commerce.

13) Bird, Brenna, counsel for Amicus State of Iowa.

*American Securities Association et al. v. United States Securities and Exchange Commission*,
No. 23-13396

14)　　Blask, Ariel, counsel for Amicus Future Industry Association.

15)　　Boden, Anastasia, counsel for Amici Cato Institute and Investor Choice Advocates Network.

16)　　Borse Dubai Limited, owner of more than 10% of Nasdaq, Inc.'s shares.

17)　　BOX Exchange LLC, member and participant of Intervenor CAT LLC.

18)　　Boyle, Gregory, Jenner & Block LLP, counsel for Intervenor Consolidated Audit Trail, LLC.

19)　　Boyden Gray PLLC, counsel for Amicus American Free Enterprise Chamber of Commerce.

20)　　Bronni, Nicholas J., counsel for Amicus State of Arkansas.

21)　　Cato Institute, Amicus.

22)　　Carr, Chris, counsel for Amicus State of Georgia.

23)　　Cboe BYX Exchange, Inc., Intervenor and member and participant of Intervenor CAT LLC.

24)　　Cboe BZX Exchange, Inc., Intervenor and member and participant of CAT LLC.

25)　　Cboe C2 Exchange, Inc., Intervenor and member and participant of CAT LLC.

26)　　Cboe EDGA Exchange, Inc., Intervenor and member and participant of CAT LLC.

27)　　Cboe EDGX Exchange, Inc., Intervenor and member and participant of CAT LLC.

28)　　Cboe Exchange, Inc., Intervenor and member and participant of CAT LLC.

29)　　Cboe Global Markets, Inc. (BATS: CBOE), direct or indirect parent company of Intervenors Cboe BYX Exchange, Inc., Cboe BZX Exchange, Inc., Cboe EDGA Exchange, Inc., Cboe EDGX Exchange, Inc., Cboe C2 Exchange, Inc., and Cboe Exchange, Inc.

*American Securities Association et al. v. United States Securities and Exchange Commission*,
No. 23-13396

30) Chenoweth, Markham S., counsel for Amicus New Civil Liberties Alliance.

31) Citadel Securities GP LLC, parent company of Petitioner Citadel Securities LLC.

32) Citadel Securities LLC, Petitioner.

33) Coleman, Russell, counsel for Amicus Commonwealth of Kentucky.

34) Committee on Capital Markets Regulation, Amicus.

35) Commonwealth of Kentucky, Amicus.

36) Commonwealth of Virginia, Amicus.

37) Competitive Enterprise Institute, Amicus.

38) Conley, Michael A., counsel for Respondent Securities and Exchange Commission.

39) Connolly, J. Michael, Consovoy McCarthy PLLC, counsel for Petitioner American Securities Association.

40) Consolidated Audit Trail, LLC, Intervenor, a jointly owned limited liability company formed under Delaware state law through which the participants conduct the activities of the CAT NMS Plan.

41) Deutsch, Elizabeth, Jenner & Block LLP, counsel for Intervenor Consolidated Audit Trail, LLC.

42) Financial Industry Regulatory Authority, Inc., member and participant of Intervenor CAT LLC.

43) Fitch, Lynn, counsel for Amicus State of Mississippi.

44) Formela, John M., counsel for Amicus State of New Hampshire.

45) Francisco, Noel J., Jones Day, counsel for Petitioner Citadel Securities LLC.

46) Hardin, Tracey A., counsel for Respondent Securities and Exchange Commission.

47) Hilgers, Michael T., counsel for Amicus State of Nebraska.

*American Securities Association et al. v. United States Securities and Exchange Commission*,
No. 23-13396

48) Hopen, David A., Paul, Weiss, Rifkin, Wharton & Garrison LLP, counsel for Amici Securities Industry and Financial Markets Association et al.

49) Hoyt, Joshua T., Jones Day, counsel for Petitioner Citadel Securities LLC.

50) Flowers, Benjamin M., Ashbrook Byrne Kresge LLC, counsel for Amici James Overdahl and S.P. Kothari.

51) Future Industry Association, Amicus.

52) Gershengorn, Ian Heath, Jenner & Block LLP, counsel for Intervenor Consolidated Audit Trail, LLC.

53) Greenberg, Dan, counsel for Amicus Competitive Enterprise Institute.

54) Greenwalt, Paul, III, counsel for Intervenors Cboe BYX Exchange, Inc., Cboe BZX Exchange, Inc., Cboe EDGA Exchange, Inc., Cboe EDGX Exchange, Inc., Cboe C2 Exchange, Inc., and Cboe Exchange, Inc.

55) Griffin, Tim, counsel for Amicus State of Arkansas.

56) Intercontinental Exchange, Inc. (NYSE: ICE), indirect parent of NYSE Intervenors.

57) International Securities Exchange Holdings, Inc., sole LLC member of Intervenors Nasdaq GEMX LLC, Nasdaq ISE LLC, and Nasdaq MRX LLC.

58) Investment Company Institute, Amicus.

59) Investor AB (Nasdaq Stockholm: INVEB), owner of more than 10% of Nasdaq, Inc.'s shares.

60) Investor Choice Advocates Network, Amicus.

61) Investors' Exchange, LLC, member and participant of Intervenor CAT LLC.

62) Jackley, Marty, counsel for Amicus South Dakota.

63) Jacobs, Dylan L., counsel for Amicus State of Arkansas.

*American Securities Association et al. v. United States Securities and Exchange Commission*,
No. 23-13396

64) Jenner & Block LLP, counsel for Intervenor Consolidated Audit Trail, LLC.

65) Kastenberg, Stephen J., Ballard Spahr LLP, counsel for Intervenors The Nasdaq Stock Market LLC, Nasdaq BX, Inc., Nasdaq GEMX, LLC, Nasdaq ISE, LLC, Nasdaq MRX, LLC, and Nasdaq PHLX LLC.

66) Katsiff, Timothy D., Ballard Spahr LLP, counsel for Intervenors The Nasdaq Stock Market LLC, Nasdaq BX, Inc., Nasdaq GEMX, LLC, Nasdaq ISE, LLC, Nasdaq MRX, LLC, and Nasdaq PHLX LLC.

67) Kennedy, Jordan A., counsel for Respondent Securities and Exchange Commission.

68) Knudsen, Austin, counsel for Amicus State of Montana.

69) Kobach, Kris W., counsel for Amicus State of Kansas.

70) Kothari, S.P., Amicus.

71) Kumar, Neal, counsel for Amicus Future Industry Association.

72) Labrador, Raúl R., counsel for Amicus State of Idaho.

73) Lantieri, Paul, Ballard Spahr LLP, counsel for Intervenors The Nasdaq Stock Market LLC, Nasdaq BX, Inc., Nasdaq GEMX, LLC, Nasdaq ISE, LLC, Nasdaq MRX, LLC, and Nasdaq PHLX LLC.

74) Little, Margaret A., counsel for Amicus New Civil Liberties Alliance.

75) Lipshutz, Brian M., Paul, Weiss, Rifkin, Wharton & Garrison LLP, counsel for Amici Securities Industry and Financial Markets Association et al.

76) Long-Term Stock Exchange, Inc., member and participant of Intervenor CAT LLC.

77) Lucas, Brinton, Jones Day, counsel for Petitioner Citadel Securities LLC.

78) MacLean, Matthew J., Pillsbury Winthrop Shaw Pittman LLP, counsel for NYSE Intervenors.

79) Managed Funds Association, Amicus.

*American Securities Association et al. v. United States Securities and Exchange Commission*,
No. 23-13396

80)   Marks, William T., Paul, Weiss, Rifkin, Wharton & Garrison LLP, counsel for Amici Securities Industry and Financial Markets Association et al.

81)   Marshall, Jonathan J., Jenner & Block LLP, counsel for Intervenor Consolidated Audit Trail, LLC.

82)   Marshall, Steve, counsel for Amicus State of Alabama.

83)   Matro, Daniel E., counsel for Respondent Securities and Exchange Commission.

84)   MEMX LLC, member and participant of Intervenor CAT LLC.

85)   Miami International Securities Exchange LLC, member and participant of Intervenor CAT LLC.

86)   MIAX Emerald, LLC, member and participant of Intervenor CAT LLC.

87)   MIAX PEARL, LLC, member and participant of Intervenor CAT LLC.

88)   Michel, Christopher G., Quinn Emanuel Urquhart & Sullivan, LLP, counsel for amici Senator Tom Cotton et al.

89)   Miyares, Jason, counsel for Amicus Commonwealth of Virginia.

90)   Modern Markets Initiative, Inc., sponsor of funding disclosed pursuant to Rule 29(a)(4)(E) of the Federal Rules of Appellate Procedure.

91)   Molzberger, Michael, ArentFox Schiff LLP, counsel for Intervenors Cboe BYX Exchange, Inc., Cboe BZX Exchange, Inc., Cboe EDGA Exchange, Inc., Cboe EDGX Exchange, Inc., Cboe C2 Exchange, Inc., and Cboe Exchange, Inc.

92)   Montgomery, Sophia W., Jenner & Block LLP, counsel for Intervenor Consolidated Audit Trail, LLC.

93)   Moody, Ashley, counsel for Amicus State of Florida.

94)   Morris, Andrew J., counsel for Amicus New Civil Liberties Alliance.

95)   Morrisey, Patrick, counsel for Amicus State of West Virginia.

96)   Murrill, Liz, counsel for Amicus State of Louisiana.

97)   Nabors, David A., Quinn Emanuel Urquhart & Sullivan, LLP, counsel for amici Senator Tom Cotton et al.

98)   Nasdaq BX, Inc., Intervenor.

99)   Nasdaq GEMX, LLC, Intervenor.

100)  Nasdaq, Inc. (Nasdaq: NDAQ), sole owner of LLC interest in The Nasdaq Stock Market LLC and Nasdaq PHLX LLC and parent company of Nasdaq BX, Inc.

101)  Nasdaq ISE, LLC, Intervenor.

102)  Nasdaq MRX, LLC, Intervenor.

103)  Nasdaq PHLX LLC, Intervenor.

104)  New Civil Liberties Alliance, Amicus.

105)  New York Stock Exchange LLC, Intervenor.

106)  NYSE American LLC, Intervenor.

107)  NYSE Arca, Inc., Intervenor.

108)  NYSE Chicago, Inc., Intervenor.

109)  NYSE National, Inc., Intervenor.

110)  Oliwenstein, David, Pillsbury Winthrop Shaw Pittman LLP, counsel for NYSE Intervenors.

111)  Orr, Caleb, Boyden Gray PLLC, counsel for Amicus American Free Enterprise Chamber of Commerce.

112)  Overdahl, James, Amicus.

113)  Paul, Weiss, Rifkin, Wharton & Garrison LLP, counsel for Amici Securities Industry and Financial Markets Association et al.

114)  Paxton, Ken, counsel for Amicus State of Texas.

115)  Phillips, David, Jones Day, counsel for Petitioner Citadel Securities LLC.

116)  Quinn Emanuel Urquhart & Sullivan, LLP, counsel for Amici Senator

*American Securities Association et al. v. United States Securities and Exchange Commission*,
No. 23-13396

Tom Cotton et al.

117)  Rabbitt, Brian C., Jones Day, counsel for Petitioner Citadel Securities LLC.

118)  Reisner, Lorin L., Paul, Weiss, Rifkin, Wharton & Garrison LLP, counsel for Amici Securities Industry and Financial Markets Association et al.

119)  Representatives Mark Alford, Don Bacon, Michael Collins, Scott Fitzgerald, French Hill, Barry Loudermilk, Alex X. Mooney, Ralph Norman, John Rose, Keith Self, Randy Weber, and Steve Womack, Amici.

120)  Reyes, Sean, counsel for Amicus State of Utah.

121)  Rokita, Theodore E., counsel for Amicus State of Indiana.

122)  Roth, Yaakov M., Jones Day, counsel for Petitioner Citadel Securities LLC.

123)  Schulp, Jennifer, counsel for Amici Cato Institute and Investor Choice Advocates Network.

124)  Schwartz, Yishai, Paul, Weiss, Rifkin, Wharton & Garrison LLP, counsel for Amici Securities Industry and Financial Markets Association et al.

125)  Securities Industry and Financial Markets Association, Amicus.

126)  Senator Tom Cotton, John Boozman, Mike Braun, Kevin Cramer, Steve Daines, Bill Hagerty, John Kennedy, Jerry Moran, Pete Ricketts, and Tim Scott, Amici.

127)  Shanmugam, Kannon K., Paul, Weiss, Rifkin, Wharton & Garrison LLP, counsel for Amici Securities Industry and Financial Markets Association et al.

128)  Skorup, Brent, counsel for Amici Cato Institute and Investor Choice Advocates Network.

129)  Sobel, Zachary J., counsel for Amici Senator Tom Cotton et al.

130)  State of Alabama, Amicus.

131)  State of Arkansas, Amicus.

*American Securities Association et al. v. United States Securities and Exchange Commission*,
No. 23-13396

132)  State of Florida, Amicus.

133)  State of Georgia, Amicus.

134)  State of Indiana, Amicus.

135)  State of Iowa, Amicus.

136)  State of Kansas, Amicus.

137)  State of Louisiana, Amicus.

138)  State of Mississippi, Amicus.

139)  State of Missouri, Amicus.

140)  State of Montana, Amicus.

141)  State of Nebraska, Amicus.

142)  State of New Hampshire, Amicus.

143)  State of North Dakota, Amicus.

144)  State of Ohio, Amicus.

145)  State of South Carolina, Amicus.

146)  State of South Dakota, Amicus.

147)  State of Texas, Amicus.

148)  State of Utah, Amicus.

149)  State of West Virginia, Amicus.

150)  Stern, Eric E., Paul, Weiss, Rifkin, Wharton & Garrison LLP, counsel for Amici Securities Industry and Financial Markets Association et al.

151)  The Nasdaq Stock Market LLC, Intervenor.

152)  The Vanguard Group, Inc., owned 10% or more of Cboe Global Markets, Inc.'s common stock as of June 30, 2023.

153)  Thoma Bravo UGP, LLC, owner of more than 10% of Nasdaq, Inc.'s shares.

*American Securities Association et al. v. United States Securities and Exchange Commission*,
No. 23-13396

154) Torridon Law PLLC, counsel for Amicus American Free Enterprise Chamber of Commerce.

155) Unikowsky, Adam, Jenner & Block LLP, counsel for Intervenor Consolidated Audit Trail, LLC.

156) United States Securities and Exchange Commission, Respondent.

157) Virtu Financial, Inc., Amicus.

158) Watkins, Devin, counsel for Amicus Competitive Enterprise Institute.

159) Wilson, Alan, counsel for Amicus State of South Carolina.

160) Wrigley, Drew H., counsel for Amicus State of North Dakota.

161) Yost, Dave, counsel for Amicus State of Ohio.

/s/ Daniel E. Matro

Daniel E. Matro
Securities and Exchange Commission
100 F Street N.E.
Washington, D.C. 20549
matrod@sec.gov
(202) 551-8248 (Matro)

Dated: September 30, 2024

**TABLE OF CONTENTS**

Page

CERTIFICATE OF INTERESTED PERSONS ......................................................... C-1

TABLE OF AUTHORITIES ...............................................................................................ii

INTRODUCTION ...............................................................................................................1

BACKGROUND...................................................................................................................4

ARGUMENT .......................................................................................................................9

I.       Petitioners are unlikely to succeed on the merits  ...................................................10

II.      The remaining factors do not favor a stay ...............................................................18

CONCLUSION ...................................................................................................................22

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**                                                                   **Page(s)**

*ACLU of Fla., Inc. v. Miami-Dade Cty. Sch. Bd.*,
  557 F.3d 1177 (11th Cir. 2009) ...................................................................... 9

*Biden v. Missouri*, 595 U.S. 87 (2022) ................................................... 13

*Biden v. Nebraska*, 143 S. Ct. 2355 (2023) ............................................ 13

*Bloomberg L.P. v. SEC*, 45 F.4th 462 (D.C. Cir. 2022) ...................... 15, 16

*Callahan v. U.S. Dep't of Health & Hum. Servs.*,
  939 F.3d 1251 (11th Cir. 2019) ...................................................................... 9

*Chamber of Com. v. SEC*, 85 F.4th 760 (5th Cir. 2023) ........................ 17

*Chamber of Com. v. SEC*,
  -- F.4th --, 2024 WL 4132206 (6th Cir. Sept. 10, 2024) ............................ 18

*Consumers' Rsch. v. FCC*, 67 F.4th 773 (6th Cir. 2023) ....................... 11

*Consumers' Rsch. v. FCC*, 88 F.4th 917 (11th Cir. 2023) ................ 10, 11

*Florida v. Dep't of Health & Hum. Servs.*,
  19 F.4th 1271 (11th Cir. 2021) ........................................................... 9, 13, 18

*Garcia-Mir v. Meese*, 781 F.2d 1450 (11th Cir. 1986) ........................ 2, 9

*Lindeen v. SEC*, 825 F.3d 646 (D.C. Cir. 2016) .................................... 18

*Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024) ................. 13

*Mayfield v. U.S. Dep't of Labor*,
  -- F.4th --, 2024 WL 4142760 (5th Cir. Sept. 11, 2024) ............................ 13

*Nasdaq Stock Mkt. LLC v. SEC*, 34 F.4th 1105 (D.C. Cir. 2022) ........ 18

*NetCoalition v. SEC*, 715 F.3d 342 (D.C. Cir. 2013) ........................... 15

*Nken v. Holder*, 556 U.S. 418 (2009) ................................................................ 9

*Ohio v. EPA*, 144 S. Ct. 2040 (2024) ........................................................ 19-20

*Siegel v. LePore*, 234 F.3d 1163 (11th Cir. 2000) (en banc) .............................. 18

*Touchston v. McDermott*, 234 F.3d 1130 (11th Cir. 2000) (en banc)................... 20

*Weissman v. NASD, Inc.*, 500 F.3d 1293 (11th Cir. 2007) (en banc)................... 19

## **Statutes**

Securities Exchange Act of 1934, 15 U.S.C. 78a, *et seq.*

Section 11A(a)(1), 15 U.S.C. 78k-1(a)(1) ...................................................... 12

Section 11A(a)(2), 15 U.S.C. 78k-1(a)(2) ...................................................... 12

Section 11A(a)(3), 15 U.S.C. 78k-1(a)(3) ...................................................... 12

Section 11A(a)(3)(B), 15 U.S.C. 78k-1(a)(3)(B) ............................................ 12

Section 17(a), 15 U.S.C. 78q(a) ............................................................... 11-12

Section 17(b), 15 U.S.C. 78q(b) .............................................................. 11-12

Section 19(b), 15 U.S.C. 78s(b) ..................................................................... 6

Section 19(b)(3)(C), 15 U.S.C. 78s(b)(3)(C) ................................................. 15

Section 25(a)(1), 15 U.S.C. 78y(a)(1) ............................................................ 10

Section 25(b)(1), 15 U.S.C. 78y(b)(1) ............................................................ 10

## **Rules and Regulations**

17 C.F.R. 201.700(b)(3)(i) ...................................................................... 6, 14

17 C.F.R. 240.19b-4(f)(2) ........................................................................... 6

## Commission Releases

77 Fed. Reg. 45722 (2012) ................................................................................... 4, 5, 20

81 Fed. Reg. 84696 (2016) ......................................................................................... 5

85 Fed. Reg. 8968 (2020).............................................................................................. 8

88 Fed. Reg. 17086 (2023) ........................................................................................... 8

89 Fed. Reg. 10850 (2024) ..................................................................................... 7, 15

89 Fed. Reg. 11153 (2024) ........................................................................................... 7

89 Fed. Reg. 21312 (2024) ........................................................................................... 8

89 Fed. Reg. 71724 (2024) ........................................................................................... 8

89 Fed. Reg. 73457 (2024) ........................................................................................... 9

89 Fed. Reg. 73852 (2024) ........................................................................................... 7

89 Fed. Reg. 76545 (2024) ........................................................................................... 8

## Other Authorities

CAT Fee Alert 2024-2 ...................................................................................................8

Letter from B. Becker to V. Countryman (June 13, 2024)........................................... 7

Letter from Citadel Securities to V. Countryman (Mar. 5, 2024) ...................................7

## INTRODUCTION

Petitioners challenge a Securities and Exchange Commission order approving amendments to the framework for funding the Consolidated Audit Trail (CAT). Nearly a year into this litigation, petitioners seek a stay of the order and additional injunctive relief. But they cannot establish any of the factors necessary to justify such extraordinary relief. Their motion should be denied.

CAT integrates into a single database regulatory data previously available from disparate sources. The Commission and the self-regulatory organizations (SROs) it oversees rely on that data to effectively regulate the U.S. securities markets, thereby ensuring market integrity and efficiency. Both the rule mandating CAT's creation (adopted in 2012) and the National Market System Plan governing CAT (approved in 2016) provide that the substantial costs to build and operate CAT are to be shared by the SROs and their broker-dealer members. Thus far, the SROs have fronted those costs—more than $700 million to date—on the universal understanding that broker-dealers like petitioners would ultimately pay their share. Petitioners now seek relief from this court to forestall the payment of their contribution.

But the order under review does not impose fees on petitioners or any other broker-dealers; rather, it approves an amended framework for determining and allocating CAT costs. CAT fees are subject to a distinct fee filing process before the Commission in which the SROs must demonstrate that any proposed fees are consistent with the requirements of the Securities Exchange Act of 1934. By statute,

1

those fee filings take effect immediately upon filing, but they are subject to notice and comment and review by the Commission. And the Commission may in its discretion suspend the effectiveness of the fees within 60 days and institute regulatory proceedings to approve or disapprove them.

In January 2024, the SROs submitted fee filings to recover a portion of the CAT costs they have incurred. The Commission suspended the fees and received comments. In August 2024, the SROs withdrew the January filings and submitted revised filings that address various concerns raised by commenters. The new filings seek to recover nearly $20 million less in CAT costs and provide additional explanation and support for the resulting transaction fees, which amount to less than 1/1000 of a penny per executed share. The SROs also submitted filings to collect some of CAT's 2024 costs.

To prevent the SROs from collecting any fees pursuant to these filings, petitioners ask for a stay of the approval order and an injunction. But they have not come close to justifying such relief. For starters, petitioners flunk the "most important" factor in the stay analysis, *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986)—they are unlikely to succeed on the merits of their challenge. Petitioners' arguments for a stay are primarily rooted in their claim that the Commission lacked authority to adopt Rule 613 or to approve the CAT NMS Plan. The Court need not decide whether that claim raises "serious legal questions" (Mot. 4) because it comes

2

years too late, leaving *no* serious question that it is time-barred. In any event, CAT falls well within the Commission's Exchange Act authority. And petitioners' arguments under the Administrative Procedure Act (APA) are both similarly meritless and insufficient to independently justify a stay.

Nor can petitioners show an imminent risk of irreparable harm. They argue that a stay is necessary to prevent the expenditure of "significant sums of irretrievable funds" if they prevail. Mot. 12. But there is no prospect that winning either of their APA arguments could result in such harm because any overpayment of fees under the current funding model could be addressed by adjusting future fee filings. And even if CAT were found to be unlawful, regulatory immunity—if it applied at all—would not bar any future regulatory initiatives to fairly allocate past CAT expenditures.

Finally, the equities weigh against a stay. Petitioners elide the reality that the costs of developing and maintaining CAT have *already* been incurred, and funds will continue to be expended regardless of whether a stay is granted or the fees that prompted petitioners' stay motion are paid. Petitioners could have challenged CAT in 2012 or 2016 but, content to reap CAT's market security benefits while paying nothing, they chose to wait until their own contributions came due, years later, thereby ballooning the potential fallout from their belated claim. And they now ask this Court to require the SROs to continue bearing 100% of CAT's costs and 100% of

3

any risk of non-recovery in direct contravention of the premise from CAT's inception that those costs would be shared. That would not be an equitable outcome.

## BACKGROUND

1. *Development of CAT.* The Exchange Act assigns the SROs—24 national securities exchanges and the Financial Industry Regulatory Authority (FINRA)— frontline responsibility to regulate their markets and members, subject to Commission oversight. SEC Br. 6-10. Before CAT, the SROs and the Commission carried out their regulatory responsibilities using (1) customer and transactional data maintained by individual broker-dealers and (2) transactional data reported to the audit trails of individual SROs. 77 Fed. Reg. 45722, 45727-30 (2012). By 2010, however, a broad consensus had formed that this fragmented regulatory data infrastructure was "outdated and inadequate to effectively oversee a complex, dispersed, and highly automated national market system." *Id.* at 45723; SEC Br. 12-14.

The Commission thus adopted Rule 613 in 2012, directing the SROs to jointly file a National Market System ("NMS") plan to create, implement, and maintain a consolidated audit trail allowing for the integration of regulatory data previously available from disparate sources into a single database. 77 Fed. Reg. at 45722. The Commission explained that a consolidated audit trail would "substantially enhance the ability of the SROs and the Commission to oversee today's securities markets and fulfill their responsibilities under the federal securities laws." *Id.* at 45726. The

Commission recognized that the SROs "may seek to recover some or all" of the costs to build and operate CAT from their broker-dealer members—just as they have always funded their self-regulatory activities—and directed the SROs to address the allocation of costs among themselves and their members. *Id.* at 45794-95. No commenter questioned the Commission's authority to adopt Rule 613 and nobody sought judicial review.

The Commission unanimously approved the SROs' proposed CAT NMS Plan in November 2016, concluding that it would "significantly improve regulatory efforts by the SROs and the Commission" and thus "strengthen the integrity and efficiency of the markets." 81 Fed. Reg. 84696, 84727 (2016). The participating SROs (the "Participants") operate CAT through CAT LLC, a jointly owned company whose limited liability agreement serves as the Plan. SEC Br. 16. Consistent with Rule 613, the Plan proposed to split the costs of CAT between the Participants and their broker-dealer members ("Industry Members") through a fixed tier fee system. 81 Fed. Reg. at 84793-95. But the Plan did not yet fix the percentage allocation of fees to be borne by each group. *Id.* at 84710, 84795. Once again, nobody questioned the Commission's authority to approve the Plan or sought judicial review.

Since then, the Participants have fronted the costs to build and operate CAT— more than $700 million to date—pending finalization of a funding model allocating those costs. SEC Br. 20. CAT has been operational since 2020, and it now processes

5

hundreds of billions of records per day. SEC Br. 19. The primary pre-CAT audit trail system was retired in 2021, and the SROs now rely on CAT to carry out critical market surveillance activities. SEC Br. 19; CAT Br. 15.

2. *CAT Funding Model.* In September 2023, the Commission approved the CAT NMS Plan funding model amendment at issue in this case. A205 (Order). The amendment provides for the funding of historical and prospective CAT costs through transaction fees based on executed equivalent share volume, divided evenly between the executing broker for the buyer, the executing broker for the seller, and the Participant in the transaction. SEC Br. 20-21. Petitioners brought this challenge to the Order in October 2023. Pet. Br. 5.

3. *CAT Fee Filings.* Pursuant to the CAT NMS Plan and statutory procedures, before assessing any CAT fees, the Participants must submit fee filings pursuant to Section 19(b) of the Exchange Act and Rule 19b-4 thereunder. SEC Br. 21; CAT Br. 11. Under Section 19(b), such fees take effect "upon filing," but they are subject to notice and comment and the Commission may, within 60 days, temporarily suspend their effectiveness and institute proceedings to determine whether they are consistent with the requirements of the Act, including that they are reasonable, equitable, and not unfairly discriminatory. 15 U.S.C. 78s(b); 17 C.F.R. 240.19b-4(f)(2); A214. The Participants bear the burden of demonstrating that their fees meet those requirements. 17 C.F.R. 201.700(b)(3)(i).

On January 2, 2024, each of the twenty-five Participants submitted immediately effective fee filings to recover Industry Members' share of certain historical CAT costs incurred before January 1, 2022, in accordance with the funding model. Letter from B. Becker to V. Countryman 2 n.3 (June 13, 2024), https://tinurl.com/28dc58p2 (CAT Letter). As anticipated in the Order, FINRA also submitted an additional fee filing to recover its own share of those historical costs. 89 Fed. Reg. 11153, 11154 (2024); *see* A261 (recognizing that FINRA, a non-profit entity funded by its members, would likely pass on its share of CAT costs).

On January 17, 2024, the Commission temporarily suspended these filings and instituted proceedings "to allow for additional analysis" of their consistency with statutory requirements. *See, e.g.*, 89 Fed. Reg. 10850, 10885 (2024). The Commission received six comments on the filings. CAT Letter 2 n.4. Among other objections, commenters argued that the Participants sought to recover historical costs that were either unreasonable or insufficiently explained and had failed to meet certain financial accountability milestones in the Plan. *See, e.g.*, Letter from Citadel Securities to V. Countryman 4-13 (Mar. 5, 2024), https://tinyurl.com/av6a8bbd.

The Participants withdrew the January 2024 fee filings in August 2024 and submitted modified filings that address concerns raised by commenters. *See, e.g.*, 89 Fed. Reg. 73852 (2024). Although petitioners deride these actions, nothing in the Exchange Act prohibits SROs from withdrawing fees and submitting modified filings.

7

Indeed, withdrawing and refiling fees with changes in response to concerns raised by commenters or the Commission is a common occurrence, including after a suspension. *See, e.g.*, 89 Fed. Reg. 76545 (2024); 89 Fed. Reg. 21312 (2024); 85 Fed. Reg. 8968 (2020).

Among other changes, the new filings exclude from the fee calculation an additional $19.6 million in costs incurred during the tenure of the initial Plan Processor, who was terminated in 2019. 89 Fed. Reg. at 73888. They also provide extensive additional explanation and support for various challenged costs. *Id.* at 73881-91. And they explain why, in the Participants' view, commenters erred in asserting that applicable financial milestones had not been met. *Id.* at 73880-81. In total, the new filings provide for the recovery over two years of a portion of the historical costs incurred in the development of CAT. *Id.* at 73854. These costs are shared by CAT's 683 executing brokers and paid through a fee of $0.000013 per executed equivalent share. *Id.*; CAT Fee Alert 2024-2 at 1-2; 88 Fed. Reg. 17086, 17131-41 (2023).

The Participants also recently submitted fee filings to recover prospective CAT costs incurred between July 16, 2024, through December 31, 2024. *See, e.g.*, 89 Fed. Reg. 71724 (2024). The filings provide for the recovery of these costs over four months through a fee on executing brokers of $0.000035 per executed equivalent share. *Id.* at 71727, 71736. In addition, FINRA submitted a fee filing to recover its

own share of these costs. 89 Fed. Reg. 73457 (2024). FINRA is the only Participant that has sought to pass on its costs. The deadlines by which the Commission may suspend the new filings and institute proceedings fall between October 14 and November 8, 2024, depending on the date of submission.

## ARGUMENT

"A stay is not a matter of right, even if irreparable injury might result." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quotation omitted). To obtain that "extraordinary and drastic remedy," petitioners must "clearly establish[]" "(1) a substantial likelihood that [they] will prevail on the merits of the appeal; (2) a substantial risk of irreparable injury to [themselves] unless the injunction is granted; (3) no substantial harm to other interested persons; and (4) no harm to the public interest." *Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1279 (11th Cir. 2021) (cleaned up). "Failure to show any of the four factors is fatal." *ACLU of Fla., Inc. v. Miami-Dade Cty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009); *see also Callahan v. U.S. Dep't of Health & Hum. Servs.*, 939 F.3d 1251, 1265 n.13 (11th Cir. 2019).

Petitioners cannot get past the first factor in the stay analysis because they are unlikely to succeed on the merits. *Garcia-Mir*, 781 F.2d at 1453. And even if the Court were to consider the remaining factors, they weigh against—not "heavily" in favor of—a stay. *Id.*

9

## I.    Petitioners are unlikely to succeed on the merits.

Petitioners contend that the approval Order unlawfully "allow[s] the SROs to pass through *all* CAT costs" and that its economic analysis is deficient. Mot. 15-16. These arguments are meritless, and in any event, petitioners make no effort to show that they independently justify a stay of the Order. Instead, petitioners' case for a stay hinges on their argument that CAT itself exceeds the Commission's authority. Yet petitioners simply ignore the threshold reason that argument is unlikely to succeed: the statutory deadline to challenge CAT expired many years ago, and the funding model amendment did not restart the clock. And regardless, CAT falls squarely within the Commission's Exchange Act authority.

**Authority Arguments.** A timely challenge to the Commission's authority to adopt Rule 613 (in 2012) or approve the CAT NMS Plan (in 2016) had to be brought within 60 days. 15 U.S.C. 78y(a)(1), (b)(1). The allocation of a share of CAT costs to broker-dealers was expressly contemplated in Rule 613 and formalized in the 2016 approval order, but petitioners failed to challenge either of those Commission actions. In their reply brief, petitioners argue that they may now challenge the Commission's authority years later because the Order "re-applies" Rule 613 or the CAT NMS Plan, restarting the 60-day clock. Reply Br. 4 (quoting *Consumers' Rsch. v. FCC*, 88 F.4th 917, 922 (11th Cir. 2023)). But *Consumers' Research* is plainly inapposite.

10

There, the Court concluded that the FCC "reapplie[d]" a regulatory program to determine certain fees in an order that both "determine[d] the amount" of the fee and triggered the challengers' obligation to pay it. 88 F.4th at 921-23; *see also Consumers' Rsch. v. FCC*, 67 F.4th 773, 786 (6th Cir. 2023) (FCC order triggered challengers' "legal obligation to pay" specific charges). The Order here, by contrast, does neither. It "merely establishes the framework under which [CAT] costs will be allocated, not the amount to be allocated." A236. Petitioners have no obligation to pay any CAT fees unless and until the Commission approves (or declines to suspend) specific fee filings submitted by the Participants.

More fundamentally, the challenge in *Consumers' Research* was to the validity of the process for determining the fees; it therefore stands to reason that an order making that determination constitutes a re-application of that process. But petitioners' statutory challenge is to the regulatory requirement to *create* CAT, not the determination of its fees. And the Commission did not, in approving the funding model, reevaluate or reapply *that* requirement. SEC Br. 42-43. Nothing in *Consumers' Research* suggests that merely adjusting one aspect of a longstanding regulatory program restarts the clock for challenging the creation of the program.

In any event, the Exchange Act clearly authorizes CAT. Petitioners do not dispute that, under Section 17 of the Act, the Commission may require that broker-dealers and SROs "make," "keep," and "furnish" customer and transactional data for

11

regulatory purposes, and to "examin[e]" that data as it "deems necessary or appropriate." 15 U.S.C. 78q(a)-(b); *see also* SEC Br. 44-45 (describing the Commission's use of this authority to require that broker-dealers maintain detailed customer information and that SROs develop audit trails capable of facilitating effective market surveillance). Nor do they dispute that the collection of regulatory data is a "matter[] as to which [the SROs] share authority under [the Act] in . . . regulating" the national market system. 15 U.S.C. 78k-1(a)(3)(B).

Section 11A thus authorizes the Commission to "require [the SROs] to act jointly" in collecting customer and transactional data—*i.e.*, to jointly operate a *consolidated* audit trail—if doing so would advance Congress's findings and objectives in "establish[ing]" a national market system. *Id.* 78k-1(a)(2)-(3). It does. Among other things, CAT "preserve[s] and strengthen[s] the securities markets," "assure[s] . . . fair competition," "protect[s] . . . investors," and "maintain[s] . . . fair and orderly markets." *Id.* 78k-1(a)(1)-(2); *see* SEC Br. 46-47. It also helps ensure that the SROs have the capacity to carry out their regulatory responsibilities in the context of the national market system, as Congress intended. SEC Br. 44, 46-48. While this straightforward application of the statutory text authorizes joint SRO action with respect to regulatory data collection for use by the SROs, petitioners are simply incorrect that it applies equally to "all SEC projects." *Contra* Mot. 15.

12

Because CAT "fits neatly within the language" of the Act, *Biden v. Missouri*, 595 U.S. 87, 93 (2022), petitioners' reliance on *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), is misplaced. *Loper* affirms that when, as here, "the best reading of a statute is that it delegates discretionary authority to an agency"—including through broad "term[s] or phrase[s]"—the reviewing court's role is simply to interpret "the boundaries of the delegated authority" and "ensur[e] the agency has engaged in reasoned decisionmaking within those boundaries." 144 S. Ct. at 2263 (cleaned up).

The major questions doctrine is similarly inapplicable. SEC Br. 52-55. Notably, unlike in prior major questions cases, there was no public controversy over CAT's creation and CAT does not "involve[] hundreds of billions of dollars of impact" or "regulate a significant portion of the American economy." *Mayfield v. U.S. Dep't of Labor*, -- F.4th --, 2024 WL 4142760, at *3 (5th Cir. Sept. 11, 2024). But even if the doctrine applied, it is satisfied here by "text directly authorizing [CAT]" and "context demonstrating that the [Commission's] interpretation is convincing." *Biden v. Nebraska*, 143 S. Ct. 2355, 2381 (2023) (Barrett, J., concurring); *see also Florida*, 19 F.4th at 1288 ("a broad grant of authority" that "plainly encompasses" an agency action "does not require an indication that specific activities are permitted").

**Pass-through Arguments.** Petitioners contend that the Commission was required to preemptively determine that it would be unreasonable and inequitable for the Participants to pass through any portion of their one-third share of CAT costs.

13

But as the Order explains, there is a distinct "statutory process" for assessing whether any such future fee filings would be "consistent with applicable statutory standards under the Exchange Act, including being reasonable, equitable and not unfairly discriminatory." A213-14; *see* SEC Br. 25-27. If the Participants' fail in that process to demonstrate that a proposed fee is consistent with the Exchange Act, that would be grounds for suspension and disapproval of the fee. A214; *see* 17 C.F.R. 201.700(b)(3)(i). The Commission reasonably declined to prejudge the outcome of those future proceedings in the Order.

A cursory review of the Order refutes petitioners' argument that, rather than reserving judgment, the Order in fact "blessed" the Participants to pass through "all" costs "in their sole discretion." Reply Br. 14. For one thing, the Commission's reliance on the fee filing process as a cost-control incentive would make no sense if it was preemptively *approving* future filings. A213-14. Nor does the Commission's discussion of the implications "*[i]f*" pass-through were to occur amount to approval of any particular pass-through attempt. A261 & n.1135 (emphasis added). And it is precisely because pass-through fees would have to be "reasonable, equitable and not unfairly discriminatory" (A214) that the reasonableness of the two-thirds/one-third allocation "does not depend" on whether pass-through occurs. Reply Br. 14.

Petitioners err in asserting that the Commission's non-suspension of the August 2024 fee filings proves that its review is a "sham." Mot. 3, 16. The

Commission suspended the January filings "to allow for additional analysis" of their consistency with the Act. 89 Fed. Reg. at 10885. After interested parties submitted comments challenging the amount of and basis for various historical costs, the Participants withdrew the filings and submitted new ones that seek to recover nearly 10% less costs and provide additional explanation and support for the remaining costs. *Supra* 7-8. It is not unusual for the SROs to withdraw and resubmit fees after public comment, and the changes in the filings here bear directly on the Participants' burden to demonstrate consistency with the Act. *Supra* 8.

There is thus no basis to conclude that the Commission has disregarded its "obligation to ensure that [each fee filing] is consistent with the Exchange Act." *Bloomberg L.P. v. SEC*, 45 F.4th 462, 476 (D.C. Cir. 2022). And while the Commission's non-suspension of a fee is unreviewable, *see* 15 U.S.C. 78s(b)(3)(C); *NetCoalition v. SEC*, 715 F.3d 342, 350-52 (D.C. Cir. 2013), that does not mean the Commission was required to decide the permissibility of pass-through fees in the Order. *Contra* Reply Br. 15-16. Indeed, in *Bloomberg*, the D.C. Circuit rejected the argument that a Commission order approving a FINRA data service but deferring consideration of the associated fees "arbitrarily allowed FINRA to evade review of the

15

fee[s]" because the Commission "retain[ed] the authority to suspend" the fees and "order proceedings to assess" their consistency with the Act. 45 F.4th at 476.[1]

Nor do petitioners' arguments regarding pass-through provide a basis for a stay; indeed, only FINRA's pending fee filings even address pass through of Participant costs. And the Order reasonably considered the likelihood that FINRA—a non-profit membership organization—would pass through its share of costs to its members. A261. The Commission concluded that many Industry Members would be able "to offset fees that FINRA assesses them by passing [such] fees through to their customers," and that the resulting "additional costs borne by investors are likely small relative to current transaction costs." A214; *see also* A259-60 (explaining that "while Industry Members may pass through CAT fees to their customers, the customers also receive a benefit from the CAT").

***Economic Analysis Arguments.*** Petitioners' challenge to the Order's economic analysis is equally unlikely to succeed. The Commission thoroughly analyzed the economic effects of the new funding model against the baseline of the original using the most recent information available. SEC Br. 33-40. While the Commission did not redo its 2016 economic analysis of the whole CAT NMS Plan,

---

[1] The Court in *Bloomberg* held that the Commission could not defer its analysis of the new service's costs—remanding without vacatur for the Commission to conduct the missing analysis—but here the Commission thoroughly analyzed CAT's potential costs in the 2016 approval order. 45 F.4th at 477; *see* SEC Br. 18.

that is because it did not reconsider CAT itself in evaluating the Plan amendment before it. SEC Br. 35; CAT Br. 39-40; A253.

In arguing that the Commission failed "to account for" CAT costs "as they stood in 2023" (Reply Br. 18), petitioners ignore broad swaths of the Commission's analysis. The Commission considered recent cost and cost-related data in analyzing incentive effects (A254-55), the relative costs of equity and options order linkage (A257), and the drivers of CAT costs (A232, 258). The Commission also used data on actual CAT costs through 2022 to estimate the likely size of CAT fees on a per-share basis (A259 & n.1102), which it found to be orders of magnitude smaller than existing transaction costs and fees and thus unlikely to have a significant impact on efficiency, competition, or capital formation (A240, 259, 261-62, 263).

Petitioners respond that the Commission should also have estimated the "trajectory" of future CAT costs and an "upper-bound" of CAT fees that might be passed on to investors. Reply Br. 18, 20. But there is "no textual basis" for mandating such quantification—the Commission's "mode of analysis" need only be reasonable. *Chamber of Com. v. SEC*, 85 F.4th 760, 773-74 & n.14 (5th Cir. 2023). Here, the Commission reasonably addressed the uncertainties that make it "difficult[]" to reliably project CAT costs over an extended period. A258; *see* SEC Br. 38; CAT Br. 47-48. And the Commission reasonably explained that it could not "determine in advance the extent to which Industry Members" other than proprietary trading firms

17

"can or will pass-through their CAT fees to investors." A214. The Commission's qualitative analysis of economic effects, in conjunction with its quantitative analysis of per-share costs, was thus reasonable. SEC Br. 36-39; *see, e.g.*, *Chamber of Com. v. SEC*, -- F.4th --, 2024 WL 4132206, at *9 (6th Cir. Sept. 10, 2024); N*asdaq Stock Mkt. LLC v. SEC*, 34 F.4th 1105, 1113 (D.C. Cir. 2022); *Lindeen v. SEC*, 825 F.3d 646, 658 (D.C. Cir. 2016).

## II.     The remaining factors do not favor a stay.

1.  On irreparable harm, petitioners point to the CAT fees broker-dealers may have to pay if a stay is not granted. But an injury is not irreparable if it "can be adequately remedied later." *Siegel v. LePore*, 234 F.3d 1163, 1177 (11th Cir. 2000) (en banc); *see also Florida*, 19 F.4th at 1311 ("An injury is 'irreparable' only if it cannot be undone through monetary remedies." (quotation omitted)). And any excess CAT fees broker-dealers pay would not be "irretrievable" (Mot. 12) were the Court to hold that the Commission was required to prohibit pass-through or to redo its 2016 economic analysis. Neither outcome would necessarily result in a change to the current allocation—the reasonableness of which petitioners do not dispute—in which case petitioners would have suffered no harm at all. And if the funding model were modified on remand, future fees could be adjusted to account for any overpayments.

Nor have petitioners met their burden to establish irreparable harm in the unlikely event this Court were to find CAT itself unlawful. Petitioners assert that their

18

recovery of CAT fees in that scenario would be barred by the Participants' regulatory immunity from suit.  Mot. 11 (citing *Weissman v. NASD, Inc.*, 500 F.3d 1293 (11th Cir. 2007) (en banc)).  But under *Weissman*, such immunity would apply only if recouping CAT costs were a "purely regulatory, adjudicatory, or prosecutorial function" that "would otherwise be performed by [the Commission.]"  500 F.3d at 1297.  *Weissman* itself does not resolve that question.  And regardless, regulatory immunity would not bar any potential regulatory resolutions to the allocation and recovery of the enormous sunk costs that would result if CAT were struck down.

2.  Even if fees paid by petitioners were unrecoverable, the balance of the equities weighs against a stay.  The risk of unrecoverable expenditures exists regardless of a stay.  The money to develop and operate CAT has already been spent—to the tune of more than $700 million since 2012—on the understanding that broker-dealers such as petitioners would ultimately share in the costs.  On petitioners' theory that CAT expenditures would be unrecoverable if it were shut down, the SROs' expenditures would be no less unrecoverable than broker-dealers'.  Thus the question presented by the stay motion is whether petitioners are entitled to an injunction mandating that the Participants continue to bear 100% of CAT costs and 100% of any risk of non-recovery.  For multiple reasons, they are not.

First, because CAT expenses have already been incurred, granting a stay would "substantially injure . . . other parties interested in th[is] proceeding[]."  *Ohio v. EPA*,

19

144 S. Ct. 2040, 2052 (2024); *see also Touchston v. McDermott*, 234 F.3d 1130, 1132 (11th Cir. 2000) (en banc) (stay movant must establish "no substantial harm to other interested persons").  Rule 613 and the CAT NMS Plan provide for CAT's costs to be split between the Participants and broker-dealers.  *Supra* 4-5.  The "initial[]" period in which the Participants would front those costs was meant to be a temporary aberration, *see* 77 Fed. Reg. at 45794-95—not a "status quo" to "preserve."  Mot. 4.  Requiring the Participants to continue shouldering the entirety of CAT's costs, and thus all of any non-recovery risk, runs contrary to this basic cost-sharing premise.

Second, petitioners are themselves responsible for the magnitude of that risk.  Petitioners were fully aware that broker-dealers would eventually have to contribute to CAT.  They could have, but did not, challenge the Commission's authority in 2012 or 2016.  The Participants (among others) relied on the apparent consensus that CAT was both lawful and essential to the integrity of the markets, devoting enormous resources to develop CAT, retire pre-existing audit trials, and integrate CAT data into their market surveillance systems.  SEC Br. 13-14, 19; CAT Br. 14-15.  It would not be equitable to shield petitioners from risk their delay greatly exacerbated.  *Cf.* Mot. 14 ("He who seeks . . . equity must do equity.").

Third, broker-dealers have benefited for years from the enhanced market oversight that CAT facilitates, while their profit-making trading activity has contributed to its costs.  A206, 213, 258, 259-60; SEC Br. 18; CAT Br. 32-33.  Yet

they have not contributed one cent to the "significant sums" that "already have been paid" to develop and operate CAT.  Mot. 12.

Finally, petitioners' objections to the withdrawal of the January 2024 fee filings and non-suspension of the modified filings do not shift the balance.  As discussed above, the Commission has neither engaged nor "acquiesce[d]" (Mot. 13) in any improper conduct in connection with the pending fee filing proceedings.  *Supra* 14-15.

*        *        *

Petitioners also ask the Court to enjoin the Participants under the All Writs Act from attempting to collect any CAT fees if the Order is stayed.  Mot. 17-18.  But a stay should be denied for the reasons already discussed, and petitioners' request for injunctive relief should be denied for the same reasons.  In any event, it is far from clear that the Court has jurisdiction to grant this additional injunctive relief.  *See* CAT Stay Opp. 10-12.  Any inappropriate attempts to collect fees should the Court enter a stay of the Order could be remedied by further Commission action.

21

## CONCLUSION

Petitioners' motion for a stay and injunctive relief should be denied.

Dated:  September 30, 2024                Respectfully submitted,

                                          /s/ Daniel E. Matro

MICHAEL A. CONLEY                         DANIEL E. MATRO
Solicitor                                 Senior Appellate Counsel

TRACEY A. HARDIN
Assistant General Counsel

                                          Securities and Exchange Commission
                                          100 F Street, N.E.
                                          Washington, D.C. 20549
                                          (202) 551-8248 (Matro)

22

## CERTIFICATE OF COMPLIANCE

I certify that this opposition complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 5,064 words, excluding the parts exempted by Fed. R. App. P. 27(a)(2)(B) and 32(f).

I also certify that this opposition complies with the typeface requirements of Fed. R. App. P. 27(d)(1)(E) and 32(a)(5) and the type-style requirements of Fed. R. App. P. 27(d)(1)(E) and 32(a)(6) because it has been prepared in a proportionally spaced typeface—Garamond, 14 point—using Microsoft Word.

                                                    /s/ *Daniel E. Matro*
September 30, 2024                                  Daniel E. Matro

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2024, I electronically filed the foregoing opposition with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system, which will send notice to all the parties.

/s/ *Daniel E. Matro*
Daniel E. Matro

September 30, 2024