**No. 23-13396**

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

AMERICAN SECURITIES ASSOCIATION AND CITADEL SECURITIES LLC,

*Petitioners*,

v.

U.S. SECURITIES AND EXCHANGE COMMISSION,

*Respondent*,

CONSOLIDATED AUDIT TRAIL, LLC, *ET AL.*,

*Intervenors*.

---

On Petition for Review of an Order of the
United States Securities and Exchange Commission
SEC Release No. 34-98290

---

## INTERVENOR EXCHANGES' RESPONSE TO PETITIONERS' MOTION FOR STAY AND INJUNCTIVE RELIEF

---

<table>
<tr>
<td>

Stephen J. Kastenberg
Paul Lantieri III
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone: (215) 665-8500

*Counsel for Intervenors The Nasdaq Stock Market LLC, Nasdaq BX, Inc., Nasdaq GEMX, LLC, Nasdaq ISE, LLC, Nasdaq MRX, LLC, and Nasdaq PHLX LLC*

</td>
<td>

Jennifer G. Altman
PILLSBURY WINTHROP SHAW PITTMAN LLP
600 Brickell Avenue, Suite 3100
Miami, FL 33131
Telephone: (786) 913-4831

Matthew J. MacLean
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street NW
Washington, DC 20036
Telephone: (202) 663-8000

</td>
</tr>
</table>

Paul E. Greenwalt III
Michael K. Molzberger
ARENTFOX SCHIFF LLP
223 S. Wacker Dr., Suite 7100
Chicago, IL 60606
Telephone: (312) 258-5500

*Counsel for Intervenors Cboe BYX Exchange, Inc., Cboe BZX Exchange, Inc., Cboe C2 Exchange, Inc., Cboe EDGA Exchange, Inc., Cboe EDGX Exchange, Inc., and Cboe Exchange, Inc.*

Ari M. Berman
David Oliwenstein
PILLSBURY WINTHROP SHAW PITTMAN LLP
31 West 52nd Street
New York, NY 10019
Telephone: (202) 663-8000

*Counsel for Intervenors New York Stock Exchange LLC, NYSE American LLC, NYSE Arca, Inc., NYSE Chicago, Inc., and NYSE National, Inc.*

*Am. Sec. Assoc., et al. v. U.S. Sec. and Exch. Comm'n*, No. 23-13396

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Intervenors The Nasdaq Stock Market LLC, Nasdaq BX, Inc., Nasdaq GEMX, LLC, Nasdaq ISE, LLC, Nasdaq MRX, LLC, Nasdaq PHLX LLC, New York Stock Exchange LLC, NYSE American LLC, NYSE Arca, Inc., NYSE Chicago, Inc., NYSE National, Inc., Cboe BYX Exchange, Inc., Cboe BZX Exchange, Inc., Cboe EDGA Exchange, Inc., Cboe EDGX Exchange, Inc., Cboe C2 Exchange, Inc., and Cboe Exchange, Inc., provide the following certificate of interested persons.

The undersigned counsel of record certifies that the following listed persons and entities as described in Eleventh Circuit Rule 26.1-2 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. **Alternative Investment Management Association**, *Amicus Curiae*

2. **Altman, Jennifer G.**, Pillsbury Winthrop Shaw Pittman LLP, counsel for Intervenors New York Stock Exchange LLC, NYSE American LLC, NYSE Arca, Inc., NYSE Chicago, Inc., and NYSE National, Inc.

3. **American Free Enterprise Chamber of Commerce**, *Amicus Curiae*

4. **American Securities Association**, Petitioner

5. **ArentFox Schiff LLP**, counsel for Intervenors Cboe BYX Exchange, Inc., Cboe BZX Exchange, Inc., Cboe EDGA Exchange, Inc., Cboe EDGX Exchange, Inc., Cboe C2 Exchange, Inc., and Cboe Exchange, Inc.

*Am. Sec. Assoc., et al. v. U.S. Sec. and Exch. Comm'n*, No. 23-13396

6.    **Ashbrook Byrne Kresge LLC**, counsel for *Amici Curiae* James Overdahl and S.P Kothari

7.    **Bailey, Andrew**, counsel for *Amicus Curiae* State of Missouri

8.    **Ballard Spahr LLP**, counsel for Intervenors The Nasdaq Stock Market LLC, Nasdaq BX, Inc., Nasdaq GEMX, LLC, Nasdaq ISE, LLC, Nasdaq MRX, LLC, and Nasdaq PHLX LLC

9.    **Baltz, Brian J.**, Willkie Farr & Gallagher LLP, counsel for *Amicus Curiae* Futures Industry Association

10.    **Barbero, Megan**, counsel for Respondent United States Securities and Exchange Commission

11.    **Barr, William P.**, Torridon Law PLLC, counsel for *Amicus Curiae* American Free Enterprise Chamber of Commerce

12.    **Bash, John F.**, Quinn Emanuel Urquhart & Sullivan, LLP, counsel for *Amici Curiae* Senator Tom Cotton *et al.*

13.    **Berman, Ari M.**, Pillsbury Winthrop Shaw Pittman LLP, counsel for Intervenors New York Stock Exchange LLC, NYSE American LLC, NYSE Arca, Inc., NYSE Chicago, Inc., and NYSE National, Inc.

14.    **Berry, Jonathan**, Boyden Gray PLLC, counsel for *Amicus Curiae* American Free Enterprise Chamber of Commerce

15.    **Bird, Brenna**, counsel for *Amicus Curiae* State of Iowa

16.    **Blask, Ariel**, Willkie Farr & Gallagher LLP, counsel for *Amicus Curiae* Futures Industry Association

17.    **Boden, Anastasia**, counsel for *Amici Curiae* Cato Institute and Investor Choice Advocates Network

18.    **Borse Dubai Limited**, owner of more than 10% of Nasdaq, Inc.'s shares

19.    **BOX Exchange LLC**, member and participant of CAT LLC

20.    **Boyden Gray PLLC**, counsel for *Amicus Curiae* American Free Enterprise Chamber of Commerce

*Am. Sec. Assoc., et al. v. U.S. Sec. and Exch. Comm'n*, No. 23-13396

21.  **Boyle, Gregory**, counsel for Consolidated Audit Trail, LLC

22.  **Bronni, Nicholas J.**, counsel for *Amicus Curiae* State of Arkansas

23.  **Cato Institute**, *Amicus Curiae*

24.  **Carr, Chris**, counsel for *Amicus Curiae* State of Georgia

25.  **Cboe BYX Exchange, Inc.**, Intervenor

26.  **Cboe BZX Exchange, Inc.**, Intervenor

27.  **Cboe C2 Exchange, Inc.**, Intervenor

28.  **Cboe EDGA Exchange, Inc.**, Intervenor

29.  **Cboe EDGX Exchange, Inc.**, Intervenor

30.  **Cboe Exchange, Inc.**, Intervenor

31.  **Cboe Global Markets, Inc. (BATS: CBOE)**, direct or indirect parent company of Cboe BYX Exchange, Inc., Cboe BZX Exchange, Inc., Cboe EDGA Exchange, Inc., Cboe EDGX Exchange, Inc., Cboe C2 Exchange, Inc., and Cboe Exchange, Inc.

32.  **Chenoweth, Mark S.**, counsel for *Amicus Curiae* New Civil Liberties Alliance

33.  **Citadel Securities GP LLC**, parent company of Citadel Securities LLC

34.  **Citadel Securities LLC**, Petitioner

35.  **Coleman, Russell**, counsel for *Amicus Curiae* Commonwealth of Kentucky

36.  **Committee on Capital Markets Regulation**, *Amicus Curiae*

37.  **Commonwealth of Kentucky**, *Amicus Curiae*

38.  **Commonwealth of Virginia**, *Amicus Curiae*

39.  **Competitive Enterprise Institute**, *Amicus Curiae*

*Am. Sec. Assoc., et al. v. U.S. Sec. and Exch. Comm'n*, No. 23-13396

40. **Conley, Michael A.**, counsel for Respondent United States Securities and Exchange Commission

41. **Connolly, J. Michael**, Consovoy McCarthy PLLC, counsel for Petitioner American Securities Association

42. **Consolidated Audit Trail, LLC**, a jointly owned limited liability company formed under Delaware state law through which the participants conduct the activities of the CAT NMS Plan

43. **Consovoy McCarthy PLLC**, counsel for Petitioner American Securities Association

44. **Deutsch, Elizabeth**, Jenner & Block LLP, counsel for Intervenor Consolidated Audit Trail, LLC

45. **Financial Industry Regulatory Authority, Inc.**, member and participant of CAT LLC

46. **Fitch, Lynn**, counsel for *Amicus Curiae* State of Mississippi

47. **Flowers, Benjamin M.**, Ashbrook Byrne Kresge LLC, counsel for *Amici Curiae* James Overdahl and S.P. Kothari

48. **Formella, John M.**, counsel for *Amicus Curiae* State of New Hampshire

49. **Francisco, Noel J.**, Jones Day, counsel for Petitioner Citadel Securities LLC

50. **Futures Industry Association**, *Amicus Curiae*

51. **Gershengorn, Ian Heath**, counsel for Consolidated Audit Trail, LLC

52. **Greenberg, Dan**, counsel for *Amicus Curiae* Competitive Enterprise Institute

53. **Greenwalt III, Paul E.**, ArentFox Schiff LLP, counsel for Intervenors Cboe BYX Exchange, Inc., Cboe BZX Exchange, Inc., Cboe EDGA Exchange, Inc., Cboe EDGX Exchange, Inc., Cboe C2 Exchange, Inc., and Cboe Exchange, Inc.

54. **Griffin, Tim**, counsel for *Amicus Curiae* State of Arkansas

*Am. Sec. Assoc., et al. v. U.S. Sec. and Exch. Comm'n*, No. 23-13396

55.    **Hardin, Tracey A.**, counsel for Respondent United States Securities and Exchange Commission

56.    **Hilgers, Michael T.**, counsel for *Amicus Curiae* State of Nebraska

57.    **Hopen, David A.**, Paul, Weiss, Rifkind, Wharton & Garrison LLP, counsel for *Amici Curiae* Securities Industry and Financial Markets Association *et al.*

58.    **Hoyt, Joshua T.**, Jones Day, counsel for Petitioner Citadel Securities LLC

59.    **Intercontinental Exchange, Inc. (NYSE: ICE)**, indirect parent of for Intervenors New York Stock Exchange LLC, NYSE American LLC, NYSE Arca, Inc., NYSE Chicago, Inc., and NYSE National, Inc.

60.    **International Securities Exchange Holdings, Inc.**, sole LLC member of Intervenors Nasdaq GEMX LLC, Nasdaq ISE LLC, and Nasdaq MRX LLC

61.    **Investment Company Institute**, *Amicus Curiae*

62.    **Investor AB (Nasdaq Stockholm: INVEB)**, owner of more than 10% of Intervenor Nasdaq, Inc.'s shares

63.    **Investor Choice Advocates Network**, *Amicus Curiae*

64.    **Investors' Exchange, LLC**, member and participant of CAT LLC

65.    **Jackley, Marty**, counsel for *Amicus Curiae* State of South Dakota

66.    **Jacobs, Dylan, L.**, counsel for *Amicus Curiae* State of Arkansas

67.    **Jenner & Block LLP**, counsel for Consolidated Audit Trail, LLC

68.    **Jones Day**, counsel for Petitioner Citadel Securities LLC

69.    **Kastenberg, Stephen J.**, Ballard Spahr LLP, counsel for Intervenors The Nasdaq Stock Market LLC, Nasdaq BX, Inc., Nasdaq GEMX, LLC, Nasdaq ISE, LLC, Nasdaq MRX, LLC, and Nasdaq PHLX LLC

70.    **Kennedy, Jordan**, counsel for Respondent United States Securities and Exchange Commission

*Am. Sec. Assoc., et al. v. U.S. Sec. and Exch. Comm'n*, No. 23-13396

71.  **Knudsen, Austin**, counsel for *Amicus Curiae* State of Montana

72.  **Kobach, Kris W.**, counsel for *Amicus Curiae* State of Kansas

73.  **Kothari, S.P.**, *Amicus Curiae*

74.  **Kumar, Neal**, Willkie Farr & Gallagher LLP, counsel for *Amicus Curiae* Futures Industry Association

75.  **Labrador, Raúl R.**, counsel for *Amicus Curiae* State of Idaho

76.  **Lantieri III, Paul**, Ballard Spahr LLP, counsel for Intervenors The Nasdaq Stock Market LLC, Nasdaq BX, Inc., Nasdaq GEMX, LLC, Nasdaq ISE, LLC, Nasdaq MRX, LLC, and Nasdaq PHLX LLC

77.  **Little, Margaret A.**, counsel for *Amicus Curiae* New Civil Liberties Alliance

78.  **Lipshutz, Brian M.**, Paul, Weiss, Rifkind, Wharton & Garrison LLP, counsel for *Amici Curiae* Securities Industry and Financial Markets Association *et al.*

79.  **Long-Term Stock Exchange, Inc.**, member and participant of CAT LLC

80.  **Lucas, Brinton**, Jones Day, counsel for Petitioner Citadel Securities LLC

81.  **MacLean, Matthew J.**, Pillsbury Winthrop Shaw Pittman LLP, counsel for Intervenors New York Stock Exchange LLC, NYSE American LLC, NYSE Arca, Inc., NYSE Chicago, Inc., and NYSE National, Inc.

82.  **Managed Funds Association**, *Amicus Curiae*

83.  **Marshall, Jonathan J.**, Jenner & Block LLP, counsel for Intervenor Consolidated Audit Trail, LLC

84.  **Marshall, Steve**, counsel for *Amicus Curiae* State of Alabama

85.  **Matro, Daniel E.**, counsel for Respondent United States Securities and Exchange Commission

*Am. Sec. Assoc., et al. v. U.S. Sec. and Exch. Comm'n*, No. 23-13396

86.  **McCotter, R. Trent**, Boyden Gray PLLC, counsel for *Amicus Curiae* American Free Enterprise Chamber of Commerce

87.  **MEMX LLC**, member and participant of CAT LLC

88.  **Miami International Securities Exchange LLC**, member and participant of CAT LLC

89.  **MIAX Emerald, LLC**, member and participant of CAT LLC

90.  **MIAX PEARL, LLC**, member and participant of CAT LLC

91.  **MIAX Sapphire, LLC**, member and participant of CAT LLC

92.  **Michel, Christopher G.**, Quinn Emanuel Urquhart & Sullivan, LLP, counsel for *Amici Curiae* Senator Tom Cotton *et al.*

93.  **Miyares, Jason**, counsel for *Amicus Curiae* Commonwealth of Virginia

94.  **Modern Markets Initiative, Inc.**, sponsor of funding for brief for *Amici Curiae* James Overdahl and S.P. Kothari disclosed pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E)

95.  **Molzberger, Michael**, ArentFox Schiff LLP, counsel for Intervenors Cboe BYX Exchange, Inc., Cboe BZX Exchange, Inc., Cboe EDGA Exchange, Inc., Cboe EDGX Exchange, Inc., Cboe C2 Exchange, Inc., and Cboe Exchange, Inc.

96.  **Montgomery, Sophia W.**, Jenner & Block LLP, counsel for Intervenor Consolidated Audit Trail, LLC

97.  **Moody, Ashley**, counsel for *Amicus Curiae* State of Florida

98.  **Morris, Andrew, J.**, counsel for *Amicus Curiae* New Civil Liberties Alliance

99.  **Morrisey, Patrick**, counsel for *Amicus Curiae* State of West Virginia

100. **Murrill, Liz**, counsel for *Amicus Curiae* State of Louisiana

101. **Nabors, David A.**, Quinn Emanuel Urquhart & Sullivan, LLP, counsel for *Amici Curiae* Tom Cotton *et al.*

*Am. Sec. Assoc., et al. v. U.S. Sec. and Exch. Comm'n*, No. 23-13396

102.    **Nasdaq BX, Inc.**, Intervenor

103.    **Nasdaq GEMX, LLC**, Intervenor

104.    **Nasdaq, Inc. (Nasdaq: NDAQ)**, sole owner of LLC interest in The Nasdaq Stock Market LLC and Nasdaq PHLX LLC and parent company of Nasdaq BX, Inc.

105.    **Nasdaq ISE, LLC**, Intervenor

106.    **Nasdaq MRX, LLC**, Intervenor

107.    **Nasdaq Options**, member and participant of CAT LLC

108.    **Nasdaq PHLX LLC**, Intervenor

109.    **New Civil Liberties Alliance**, *Amicus Curiae*

110.    **New York Stock Exchange LLC**, Intervenor

111.    **NYSE American LLC**, Intervenor

112.    **NYSE Arca, Inc.**, Intervenor

113.    **NYSE Chicago, Inc.**, Intervenor

114.    **NYSE National, Inc.**, Intervenor

115.    **Oliwenstein, David**, Pillsbury Winthrop Shaw Pittman LLP, counsel for Intervenors New York Stock Exchange LLC, NYSE American LLC, NYSE Arca, Inc., NYSE Chicago, Inc., and NYSE National, Inc.

116.    **Orr, Caleb**, Boyden Gray PLLC, counsel for *Amicus Curiae* American Free Enterprise Chamber of Commerce

117.    **Overdahl, James**, *Amicus Curiae*

118.    **Paul, Weiss, Rifkind, Wharton & Garrison LLP**, counsel for *Amici Curiae* Securities Industry and Financial Markets Association *et al.*

119.    **Paxton, Ken**, counsel for *Amicus Curiae* State of Texas

120.    **Phillips, David**, Jones Day, counsel for Petitioner Citadel Securities LLC

*Am. Sec. Assoc., et al. v. U.S. Sec. and Exch. Comm'n*, No. 23-13396

121. **Pillsbury Winthrop Shaw Pittman LLP**, counsel for Intervenors New York Stock Exchange LLC, NYSE American LLC, NYSE Arca, Inc., NYSE Chicago, Inc., and NYSE National, Inc.

122. **Quinn Emanuel Urquhart & Sullivan, LLP**, counsel for *Amici Curiae* Senator Tom Cotton *et al.*

123. **Rabbitt, Brian C.**, Jones Day, counsel for Petitioner Citadel Securities LLC

124. **Reisner, Lorin L.**, Paul, Weiss, Rifkind, Wharton & Garrison LLP, counsel for *Amici Curiae* Securities Industry and Financial Markets Association *et al.*

125. **Representatives Mark Alford, Don Bacon, Michael Collins, Scott Fitzgerald, French Hill, Barry Loudermilk, Alex X. Mooney, Ralph Norman, John Rose, Keith Self, Randy Weber, and Steve Womack**, *Amici Curiae*

126. **Reyes, Sean**, counsel for *Amicus Curiae* State of Utah

127. **Rokita, Theodore E.**, counsel for *Amicus Curiae* State of Indiana

128. **Roth, Yaakov M.**, Jones Day, counsel for Petitioner Citadel Securities LLC

129. **Schulp, Jennifer**, counsel for *Amici Curiae* Cato Institute and Investor Choice Advocates Network

130. **Schwartz, Yishai**, Paul, Weiss, Rifkind, Wharton & Garrison LLP, counsel for *Amici Curiae* Securities Industry and Financial Markets Association *et al.*

131. **Securities Industry and Financial Markets Association**, *Amicus Curiae*

132. **Senators Tom Cotton, John Boozman, Make Braun, Kevin Kramer, Steve Daines, Bill Hagerty, John Kennedy, Jerry Moran, Pete Ricketts, and Tim Scott**, *Amici Curiae*

133. **Shanmugam, Kannon K.**, Paul, Weiss, Rifkind, Wharton & Garrison LLP, counsel for *Amici Curiae*, Securities Industry and Financial Markets Association *et al.*

*Am. Sec. Assoc., et al. v. U.S. Sec. and Exch. Comm'n*, No. 23-13396

134. **Skorup, Brent**, counsel for *Amici Curiae* Cato Institute and Investor Choice Advocates Network

135. **Sobel, Zachary J.**, Quinn Emanuel Urquhart & Sullivan, LLP, counsel for *Amici Curiae* Senator Tom Cotton *et al.*

136. **State of Alabama**, *Amicus Curiae*

137. **State of Arkansas**, *Amicus Curiae*

138. **State of Florida**, *Amicus Curiae*

139. **State of Georgia**, *Amicus Curiae*

140. **State of Idaho**, *Amicus Curiae*

141. **State of Indiana**, *Amicus Curiae*

142. **State of Iowa**, *Amicus Curiae*

143. **State of Kansas**, *Amicus Curiae*

144. **State of Louisiana**, *Amicus Curiae*

145. **State of Mississippi**, *Amicus Curiae*

146. **State of Missouri**, *Amicus Curiae*

147. **State of Montana**, *Amicus Curiae*

148. **State of Nebraska**, *Amicus Curiae*

149. **State of New Hampshire**, *Amicus Curiae*

150. **State of North Dakota**, *Amicus Curiae*

151. **State of Ohio**, *Amicus Curiae*

152. **State of South Carolina**, *Amicus Curiae*

153. **State of South Dakota**, *Amicus Curiae*

154. **State of Texas**, *Amicus Curiae*

155. **State of Utah**, *Amicus Curiae*

*Am. Sec. Assoc., et al. v. U.S. Sec. and Exch. Comm'n*, No. 23-13396

156. **State of West Virginia**, *Amicus Curiae*

157. **The Nasdaq Stock Market LLC**, Intervenor

158. **The Vanguard Group, Inc.**, owned 10% or more of Cboe Global Markets, Inc.'s common stock as of June 30, 2023

159. **Thoma Bravo UGP, LLC**, owner of more than 10% of Nasdaq, Inc.'s shares

160. **Torridon Law PLLC**, counsel for *Amicus Curiae* American Free Enterprise Chamber of Commerce

161. **Unikowsky, Adam G.**, Jenner & Block LLP, counsel for Consolidated Audit Trail, LLC

162. **United States Securities and Exchange Commission**, Respondent

163. **Virtu Financial, Inc.**, *Amicus Curiae*

164. **Watkins, Devin**, counsel for *Amicus Curiae* Competitive Enterprise Institute

165. **Willkie Farr & Gallagher LLP**, counsel for *Amicus Curiae* Futures Industry Association

166. **Wilson, Alan**, counsel for *Amicus Curiae* State of South Carolina

167. **Wrigley, Drew H.**, counsel for *Amicus Curiae* State of North Dakota

168. **Yost, Dave**, counsel for *Amicus Curiae* State of Ohio

*Am. Sec. Assoc., et al. v. U.S. Sec. and Exch. Comm'n*, No. 23-13396

Dated: September 30, 2024

Respectfully submitted,

Stephen J. Kastenberg
Paul Lantieri III
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone: (215) 665-8500

*Counsel for Intervenors The Nasdaq Stock Market LLC, Nasdaq BX, Inc., Nasdaq GEMX, LLC, Nasdaq ISE, LLC, Nasdaq MRX, LLC, and Nasdaq PHLX LLC*

Paul E. Greenwalt III
Michael K. Molzberger
ARENTFOX SCHIFF LLP
223 S. Wacker Dr., Suite 7100
Chicago, IL 60606
Telephone: (312) 258-5500

*Counsel for Intervenors Cboe BYX Exchange, Inc., Cboe BZX Exchange, Inc., Cboe C2 Exchange, Inc., Cboe EDGA Exchange, Inc., Cboe EDGX Exchange, Inc., and Cboe Exchange, Inc.*

Jennifer G. Altman
PILLSBURY WINTHROP SHAW PITTMAN LLP
600 Brickell Avenue, Suite 3100
Miami, FL 33131
Telephone: (786) 913-4831

Matthew J. MacLean
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street NW
Washington, DC 20036
Telephone: (202) 663-8000

Ari M. Berman
David Oliwenstein
PILLSBURY WINTHROP SHAW PITTMAN LLP
31 West 52nd Street
New York, NY 10019
Telephone: (202) 663-8000

*Counsel for Intervenors New York Stock Exchange LLC, NYSE American LLC, NYSE Arca, Inc., NYSE Chicago, Inc., and NYSE National, Inc.*

# TABLE OF CONTENTS

***Page***

Certificate of Interested Persons and Corporate Disclosure Statement.................C-1

Table of Contents ............................................................................................. i

Table of Authorities ........................................................................................ iii

Introduction .......................................................................................................1

Background ........................................................................................................3

    A.    The Commission Mandated in 2016 that the SROs Create and Temporarily Finance the CAT Pending Later Adoption of a Cost-Sharing Funding Model ...............................................................................................3

    B.    The Commission Approved a Cost-Sharing Funding Model in 2023.........5

    C.    Participants Have Submitted to the Commission Filings for CAT-Related Fees in Accordance with the Exchange Act.........................................................6

    D.    The Participants Have Borne the Entire Cost of the CAT .........................8

    E.    Petitioners Seek a Stay of the Order and an Injunction Prohibiting the Participants from Collecting CAT-Related Fees from Industry Members........10

Argument...........................................................................................................11

I.   Petitioners' Request for an Injunction under the All Writs Act Should Be Denied ...............................................................................................................11

   A.    The All Writs Act Does Not Supersede the Exchange Act Scheme Governing the Review of SRO Fees..................................................................11

   B.    Even Setting Aside the Jurisdictional Bar, No Injunction Is Appropriate Under the All Writs Act ...................................................................................13

II.    Petitioners' Request to Stay the Order Should be Denied .............................14

   A.    Petitioners Effectively Seek a Mandatory Injunction Without Basis...........14

B.    Petitioners Fail to Satisfy Their Evidentiary Burden for a Stay....................15

1.    Petitioners Have Not Established a Likelihood of Success.......................16

2.    Petitioners Have Not Established Irreparable Harm ................................18

3.    The Balance of the Equities Militates Against a Stay ..............................20

4.    A Stay Would Not Be in the Public Interest.............................................22

Conclusion .......................................................................................................23

Certificate of Service .......................................................................................24

Certificate of Compliance ................................................................................24

# TABLE OF AUTHORITIES

*Page(s)*

**CASES**

*A.O. Smith Corp. v. FTC*,
530 F.2d 515 (3d Cir. 1976) ......................................................................19–20

*Barber v. Governor of Alabama*,
73 F.4th 1306 (11th Cir. 2023) ........................................................................20

*Black v. Jackson*,
177 U.S. 349 (1900)..........................................................................................14

*Democratic Exec. Comm. of Fla. v. Lee*,
915 F.3d 1312 (11th Cir. 2019) .......................................................................15

*Doe v. Snyder*,
28 F.4th 103 (9th Cir. 2022) ............................................................................14

*Florida v. United States*,
Nos. 23-11528, 23-11644, 2023 U.S. App. LEXIS 13863 (11th Cir.
Jun. 5, 2023)......................................................................................................15

*Freedom Holdings, Inc. v. Spitzer*,
408 F.3d 112 (2d Cir. 2005) .............................................................................19

*Garcia-Mir v. Meese*,
781 F.2d 1450 (11th Cir. 1986) .......................................................................15

*Hill v. McDonough*,
464 F.3d 1256 (11th Cir. 2006), *cert. denied*, 549 U.S. 987 (2006) .................13

*Klay v. United Healthgroup, Inc.*,
376 F.3d 1092 (11th Cir. 2004) ..................................................................11, 12

*LabMD, Inc. v. FTC*,
678 F. App'x 816 (11th Cir. 2016)....................................................................19

*NetCoalition & Sec. Indus. & Fin. Mkts. Ass'n v. SEC*,
715 F.3d 342 (D.C. Cir. 2013).........................................................................12

*Parker v. Alcon Mgmt. S.A.*,
　No. 21-14068, 2022 U.S. App. LEXIS 24523 (11th Cir. Aug. 1,
　2022) ........................................................................................................20

*Penn. Bureau of Corr. v. U.S. Marshals Serv.*,
　474 U.S. 34 (1985)....................................................................................12

*Sampson v. Murray*,
　415 U.S. 61 (1974)....................................................................................19

*Sierra Club v. United States Army Corps of Eng'rs*,
　295 F.3d 1209 (11th Cir. 2002) ...............................................................22

**STATUTES**

Administrative Procedure Act, 5 U.S.C. § 704.......................................................12

Securities Exchange Act, 15 U.S.C. § 78a *et seq.* ...............................................*passim*

All Writs Act, 28 U.S.C. § 1651 ..........................................................................*passim*

**OTHER AUTHORITIES**

17 C.F.R § 240.19b-4.............................................................................................6

17 C.F.R. § 242.613 .......................................................................................*passim*

17 C.F.R. § 201.192 .............................................................................................12

Order Approving the National Market System Plan Governing the
　Consolidated Audit Trail, Rel. No. 34-79318, 81 Fed. Reg. 84696
　(Nov. 23, 2016) .....................................................................................*passim*

Order Approving an Amendment to the National Market System Plan
　Governing the Consolidated Audit Trail, Rel. No. 34-98290, 88
　Fed. Reg. 62628 (Sept. 12, 2023) .........................................................*passim*

Suspension of and Order Instituting Proceedings to Determine
　Whether to Approve or Disapprove the Proposed Rule Change,
　Rel. No. 34-99360, 89 Fed. Reg. 10812 (Feb. 13, 2024) ...................................7

Rule Establishing Fees for Prospective CAT Costs, Rel. No. 34-
　100871, 89 Fed. Reg. 72669 (Sep. 5, 2024) ....................................................8, 9

Rule Establshing Fees for Historical CAT Costs, Rel. No. 34-100950,
89 Fed. Reg. 74680 (Sep. 12, 2024) ......................................................................8

Fed. R. App. P. 18(b) .................................................................................................22

## <u>INTRODUCTION</u>

Eleven months after initiating this action, Petitioners now seek a stay of the order of the U.S. Securities and Exchange Commission (the "Commission") approving an allocation of costs to fund the Consolidated Audit Trail ("CAT") (the "Order") and an injunction under the All Writs Act to avoid paying fees due under fee filings that are distinct from the Order under appeal, involve parties not before the Court, and are already operative pursuant to the Exchange Act even as they remain subject to potential Commission action.  There are several fundamental flaws with Petitioners' request for extraordinary relief.

*First*, the All Writs Act does not supply jurisdiction for a court to act when another federal statute addresses the matters at issue.  Because the Exchange Act governs the review process, the scope of appeal rights pertaining to fee filings, and provides that there is no appellate jurisdiction in the current context, the All Writs Act does not apply.  Even if it did, no writ is necessary or appropriate to aid in the Court's consideration of the merits, and the balance of the harms here tilts heavily in favor of denying the writ.

*Second,* none of the elements for a stay pending appeal are present. As a threshold matter, Petitioners' request to stay the Order is based on the false premise that doing so would preserve the *status quo ante*.  The opposite is true.  The fee filings submitted by the Participant exchanges to the Commission in August 2024

(the "Fee Filings") were immediately effective and are currently in force. It is Petitioners who seek to upend that *status quo*. Moreover, as explained in the parties' merits briefing, there is no good basis to interfere with the CAT's fundamentally fair allocation of costs among all relevant market participants—an allocation that was years in the making, the subject of extensive public comment, revised in response to those comments, and ultimately approved by the Commission. In any event, Petitioners' complaint is of classic reparable harm: money damages from the payment of fees. If the Order's fee model is ultimately rejected, which it should not be, any overpayment of fees can be accounted for via fee adjustments or other mechanisms once an alternative funding model is approved, if not before—assuming any eventual new funding model requires smaller and not larger payments from Petitioners. In other words, the issue is not whether Petitioners or Industry Members will pay for a portion of the CAT, but when and how much. That is plainly not irreparable harm.

Contrary to Petitioner Citadel's complaints that it will pay some unspecified fraction of the total fees to be paid by Industry Members, any order enjoining the currently operative Fee Filings will cause far greater harm to the Intervenor Exchanges, which alone have borne the high financial costs of the CAT. Indeed, staying the Order undermines the public interest because it will leave CAT's future

2

funding uncertain, even while the CAT is currently used by Participants and the Commission to help regulate the securities markets.

For all of these reasons, this Court should deny Petitioners' Motion.

**BACKGROUND**

**A.    The Commission Mandated in 2016 that the SROs Create and Temporarily Finance the CAT Pending Later Adoption of a Cost-Sharing Funding Model**

In 2012, following several securities market crises, the Commission adopted Rule 613 of Regulation NMS, requiring self-regulatory organizations ("SROs") to submit a national market system (NMS) plan to create, implement, and maintain the CAT.[1]  Per the Commission, the CAT is intended to facilitate better regulation of the securities markets by tracking customer and order event information for securities orders.  *See* 17 C.F.R. § 242.613.

The Commission approved the original version of the CAT NMS Plan in 2016.  Order Approving the NMS Plan Governing the CAT, Rel. No. 34-79318, 81 Fed. Reg. 84696 (Nov. 23, 2016) ("2016 CAT Approval Order").  With that approval, the Commission adopted an interim funding model (the "Original Funding Model") that contemplated allocating CAT costs among the SROs that participate in the Plan (called "Participants") and the broker-dealer members of the Participants

---

[1]    The Intervenor Exchanges included a more detailed history of the CAT and its funding in their opening brief.  ECF 98 at 11–28.

(called "Industry Members") who traded securities. *Id.* at 84795; *see also* 17 C.F.R. § 242.613(a)(1)(vii)(D). The Original Funding Model was always meant to be supplemented because it left the specific allocation between Participants and Industry Members to be determined. In the absence of a final funding model, the Participants have had to temporarily foot all the bills for the CAT up-front, which they have done through a series of loans to Consolidated Audit Trail, LLC ("CAT LLC") (the entity—owned jointly by the Participants—created to conduct activities related to the CAT). They have done so with the understanding that these loans would be repaid, as Participants were never expected to provide 100% of the funding for the CAT indefinitely. Indeed, the 2016 CAT Approval Order recognized that Participants would shift some portion of incurred and continuing CAT costs to Industry Members, and that doing so would be consistent with the Exchange Act. *See* 81 Fed. Reg. at 84794–95. Neither Petitioners, the amici supporting Petitioners, nor anyone else petitioned for judicial review of the 2016 CAT Approval Order or objected to the joint funding requirement set forth therein.

Given the rapid increase in the volume of data generated by Industry Members trading on Participants' exchanges, building, operating, and maintaining the CAT has proven to be a massive and costly undertaking. Without a mechanism to effectuate the cost sharing contemplated by the 2016 CAT Approval Order,

4

Participants have spent more than $775 million through the end of 2023 on the CAT, with no contribution from Industry Members.

**B.     The Commission Approved a Cost-Sharing Funding Model in 2023**

After years of discussions with the Commission and the filing and withdrawing of amendments proposing various revised funding models, in March 2023, Participants submitted a proposed amendment to the CAT Plan that would realize the Original Funding Model's intended allocation.  Following notice and comment, the Commission approved the amendment in September 2023.  *See* Order, Exchange Act Release No. 98920, 88 Fed. Reg. 62628 (Sept. 12, 2023).  This Order is the Commission action under review in this proceeding.

The Order did not alter the 2016 CAT Approval Order's framework establishing that CAT costs would be shared by Participants and Industry Members. Rather, it established the allocation of CAT costs between them: under this "Executed Share Model," one-third of CAT historical and prospective costs are to be borne by broker-dealers on the buy side of a transaction, one-third by broker-dealers on the sell side, and one-third by Participants.  *Id.*  The Order thus finally permitted Participants to recoup a portion of the amounts they have spent on the CAT, and funded the CAT moving forward.  The Order likewise contemplates that Participants and Industry Members may choose to pass on to their customers the CAT fees they each respectively must pay.  But the Order did not provide the

5

mechanism for recoupment. Participants must amend their own respective rules to implement CAT-related fees charged by CAT LLC to Industry Members. Such amendments are accomplished through separate fee filings made pursuant to Section 19 of the Exchange Act.

## C. Participants Have Submitted to the Commission Filings for CAT-Related Fees in Accordance with the Exchange Act

To fund their regulatory and other operations, the SROs levy fees on their members for securities trading, related activities, and associated regulatory costs. Pursuant to Section 19 of the Exchange Act, each SRO must submit to the Commission separate fee filings establishing rules implementing and governing the SRO's fees. CAT NMS Plan, art. XI §§ 11.3(a)(i)(A)(I)–(II), 11.3(b)(i)(A).

Under the Exchange Act, such fee filings are the subject of distinct proceedings before the Commission and are separate from the many other rules regarding trading and other activity for which SROs must seek Commission approval. To facilitate the orderly and efficient operation of SROs, fee filings are effective upon filing if filed pursuant to Section 19(b)(3)(A)(ii) of the Exchange Act and Rule 19b-4(f)(2) thereunder. Nevertheless, they remain subject to notice and comment, and the Commission may, within 60 days, "temporarily suspend" them if it concludes "that such action is necessary or appropriate in the public interest, for the protection of investors, or otherwise in furtherance of the purposes of" the

Exchange Act. 15 U.S.C. § 78s(b)(3)(C). Upon suspension, the Commission must institute the same proceedings applicable to SRO-proposed rules that are not effective upon filing to determine whether the fee filing should be approved or disapproved. *Id.* (referencing 15 U.S.C. § 78s(b)(2)(B)).

On January 2, 2024, Participants submitted to the Commission the first fee filings on behalf of CAT LLC to recoup historical CAT costs. Certain Industry Members and others submitted comments. On January 17, the Commission suspended the proposed fees, stating suspension was necessary "to further consider whether" the fee filings provided for "reasonable" fees and included "sufficient detail to demonstrate" reasonableness. *E.g.*, Suspension of and Ord. Instituting Proceedings to Determine Whether to Approve or Disapprove the Proposed Rule Change, Rel. No. 34-99360, 89 Fed. Reg. 10812, 10848–49 (Feb. 13, 2024) (suspending Nasdaq filing).

In such circumstances, SROs commonly withdraw the filings under consideration and replace them with modified versions that address the stated concerns of the Commission or commenters. That is what the Participants did. In August 2024, Participants withdrew their original, January fee filings and replaced them with new, modified Fee Filings to implement historical CAT cost assessments

on behalf of CAT LLC.[2]   These new Fee Filings include not only the detailed information required by the CAT NMS Plan, but also additional detail addressing the Commission's and Industry Members'—including Petitioners'—concerns about the original fee filings.   In further response, the historical Fee Filings reflect a concession by Participants, reducing by about $19 million the amount of historical CAT costs being recouped from Industry Members.[3]   Participants also, for the first time, submitted fee filings to establish fees on behalf of CAT LLC for Industry Members (and Participants) for CAT fees budgeted for the second half of 2024.[4]

It is these Fee Filings that are the true subject of Petitioners' Motion, but they are not properly before this Court.   As explained below, the Exchange Act governs the specific timing and manner in which an appellate court can properly review them.

**D.    The Participants Have Borne the Entire Cost of the CAT**

To date, Intervenor Exchanges and other Participants have borne all of the costs to design, build, operate, and maintain the CAT.   Through 2023, those costs

---

[2]    *See, e.g.*, Nasdaq Stock Market Rule Establishing Fees for Historical CAT Costs, Rel. No. 34-100950, 89 Fed. Reg. 74680, 74681 (Sep. 12, 2024).

[3]    The Participants are no longer seeking to recoup a portion of their payments made to the CAT's initial plan processor after November 15, 2018.   *See, e.g.*, 89 Fed. Reg. at 74698 n.62.

[4]    *See, e.g.*, Nasdaq Stock Market Rule Establishing Fees for Prospective CAT Costs, Rel. 34-100871, 89 Fed. Reg. 72669 (Sep. 5, 2024).

have exceeded $775 million,[5] and the Participants have paid every penny. As the largest exchange Participants, the Intervenor Exchanges have shouldered most of this financial burden. Notwithstanding the 2016 CAT Approval Order contemplating cost-sharing, Petitioners, amici, and all other Industry Members have contributed nothing.

These costs continue to mount, and without the benefit of the Fee Filings, will fall only on the Participants if CAT is to continue to operate. Under the CAT NMS Plan, Participants *and* Industry Members are subject to fees designed to cover the ongoing budgeted costs of the CAT (in addition to historical costs that have been incurred to date). CAT NMS Plan, art. XI § 11.3(a). For example, the prospective Fee Filings seek to recover Industry Members' share of the CAT's budgeted costs from July 16, 2024, through December 31, 2024. *See e.g.*, 89 Fed. Reg. at 72670. CAT LLC anticipates that CAT costs during this period will total approximately $138.5 million. *Id.* at 72672.

While Petitioners assert that "broker-dealers (and investors) will be forced to transfer over $320 million to the SROs" by virtue of the Fee Filings, Mot. at 10, they do not state what fraction of that total the single Industry Member Petitioner

---

[5]    This figure represents the direct costs of the CAT, and does not include the separate costs that *both* Participants and Industry Members have incurred, and will continue to incur, to comply with their CAT reporting requirements, and other indirect expenses incurred by the Participants.

(Citadel) would be expected to owe. In any event, Citadel and the other Industry Members are broker-dealers that voluntarily trade on Participants' exchanges and profit handsomely from such trading. The large number of Industry Members dwarfs the small group of Participants, which are only 27 entities, and within that small group, the Intervenor Exchanges have borne, for more than a decade, the lion's share of the financial burden for the CAT.

**E.  Petitioners Seek a Stay of the Order and an Injunction Prohibiting the Participants from Collecting CAT-Related Fees from Industry Members**

With their Motion, Petitioners—a single Industry Member and an association whose own members may well have varying individual views on this matter—seek to reverse operative fees that ensure that the Industry Members meet their obligations, approved eight years ago, to fund their share of CAT expenses. They ask the Court to stay the Commission's 2023 Order approving the Executed Share Model on the grounds that a stay would protect Petitioners from irreparable harm while supposedly causing no harm to anyone else, and that they are likely to succeed on the merits of their Petition challenging the Order. Mot. at 10–17, ECF 112. Presumably because they also recognize that the Fee Filings are stand-alone, currently operational rules not before this Court, Petitioners make the extraordinary request that the Court "take the further step of enjoining the SROs under the All Writs Act from trying to collect any CAT fees from broker-dealers." *Id.* at 17. By

"the SROs," Petitioners would sweep in those Participants that are not parties to this appeal and that have their own Fee Filings.

## ARGUMENT

### I.    PETITIONERS' REQUEST FOR AN INJUNCTION UNDER THE ALL WRITS ACT SHOULD BE DENIED

#### A.    The All Writs Act Does Not Supersede the Exchange Act Scheme Governing the Review of SRO Fees

Recognizing that the Order under review in this Court does not impose the fees they wish to avoid paying, Petitioners seek not only a stay of the Order, but also an injunction against Participants' Fee Filings under the All Writs Act.  That Act, however, does not alchemize this action challenging the Order into a vehicle to challenge the separate Fee Filings.  The requested injunction would contravene the Exchange Act's exclusive mechanism for challenging the Fee Filings, and therefore would not be an appropriate exercise of the All Writs Act.

The All Writs Act permits extraordinary relief in limited circumstances: it empowers courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). It "does not," however, "create any substantive federal jurisdiction." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1099 (11th Cir. 2004) (citation omitted).  Rather, "'[it] is a residual source of authority to issue writs that are not otherwise covered by statute.  Where a statute specifically addresses the particular issue at hand, it is

11

that authority, and not the All Writs Act, that is controlling.'" *Id*. at 1100 (quoting *Penn. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985)). These limitations render the All Writs Act inapplicable here because the Exchange Act specifically addresses how purportedly aggrieved parties may—and may not—seek relief from the Fee Filings.

The Exchange Act authorizes, but does not require, the Commission to "temporarily suspend" the Fee Filings within 60 days of filing. 15 U.S.C. § 78s(b)(3)(C). While the 60 days continues to run, so far the Commission has not suspended Participants' effective-upon-filing Fee Filings. The Commission's decision to suspend or not suspend an effective-on-filing rule change is not reviewable under the Exchange Act's direct review provision, 15 U.S.C. § 78y(a)(1), or as "final agency action" for the purposes of review under the Administrative Procedure Act, 5 U.S.C. § 704. Indeed, Section 19(b)(3)(C) of the Exchange Act "imposes a *jurisdictional* bar to . . . review of the Commission's decision not to suspend a proposed rule change" that is effective upon filing. *NetCoalition & Sec. Indus. & Fin. Mkts. Ass'n v. SEC*, 715 F.3d 342, 353 (D.C. Cir. 2013) (rejecting the petitioners' request for a writ under the All Writs Act). Nevertheless, at any time, even after the 60-day period during which the Commission may suspend the Fee Filings, any person—including Petitioners—may petition the Commission to modify, suspend, or abrogate them. *See* 15 U.S.C. § 78s(c); 17 C.F.R. § 201.192.

12

Petitioners' proper means of recourse from the Fee Filings is thus prescribed by the Exchange Act, and therefore not through the All Writs Act.

### B.    Even Setting Aside the Jurisdictional Bar, No Injunction Is Appropriate Under the All Writs Act

Even if the Court could properly invoke the All Writs Act, Petitioners' request should be denied on its merits.  Petitioners cannot establish that an injunction is "necessary or appropriate to aid" in the Court's jurisdiction.  The Participants' exercise of their rights under the Fee Filings has no bearing on the Court's consideration of the merits of Petitioners' challenge of the Order.

Moreover, the Court looks to the balance of the equities in considering an injunction under the All Writs Act, *see, e.g.*, *Hill v. McDonough*, 464 F.3d 1256, 1259 (11th Cir. 2006), *cert. denied*, 549 U.S. 987 (2006), and the equities weigh heavily in favor of denying the requested injunction.  Participants—a small group relative to Industry Members—have borne all the costs of the CAT, while Citadel specifically, and Industry Members generally, have contributed nothing, despite earning substantial profits from their trading.  *See* Order at 62629 ("[A]llocating the costs for the CAT among the three parties who play significant roles in transactions reportable to the CAT [brokers for buyers; brokers for sellers; and the Participant] in this manner represents a reasonable method of allocating costs among the parties who . . . benefit from those markets.").

13

Enjoining the Fee Filings would unfairly upend the current termination of a grossly inequitable funding arrangement and ignore the longstanding principle underlying the CAT NMS Plan that Participants and Industry Members would equitably share the regulatory costs associated with monitoring Industry Members' trading. From its inception, and without legal challenge from Petitioners, the CAT NMS Plan has contemplated an equitable cost allocation. 2016 CAT Approval Order at 84795; *see also* 17 C.F.R. § 242.613(a)(1)(vii)(D). There is nothing inequitable about Citadel paying its share, indeed *any share*, of those costs when Participants have been covering 100% of the CAT's costs for nearly a decade.

## II. PETITIONERS' REQUEST TO STAY THE ORDER SHOULD BE DENIED

### A. <u>Petitioners Effectively Seek a Mandatory Injunction Without Basis</u>

While Petitioners frame the requested stay as a means of maintaining the status quo, what they effectively seek is affirmative action rescinding the Fee Filings. The Court should not allow such extraordinary relief. "In general, mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." *Doe v. Snyder*, 28 F.4th 103, 111 (9th Cir. 2022) (citations omitted); *see also Black v. Jackson*, 177 U.S. 349, 363 (1900) (mandatory injunction is an "extraordinary remedy"). Petitioners have not shown any such

"extreme" conditions.  The only harm Petitioners complain of is the payment of fees that might later be offset if the CAT is invalidated—an injury eminently "capable of compensation in damages."

### B.    Petitioners Fail to Satisfy Their Evidentiary Burden for a Stay

Petitioners have not satisfied any of the traditional elements for a stay pending appeal.  This Court considers "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the stay applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other persons interested in the proceeding; and (4) where the public interest lies." *Florida v. United States*, Nos. 23-11528, 23-11644, 2023 U.S. App. LEXIS 13863, at *4–5 (11th Cir. Jun. 5, 2023).  The first two factors are "the most critical"; the party seeking the stay "must show more than the mere possibility of success on the merits or of irreparable injury." *Id.* at *5 (quoting *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1317 (11th Cir. 2019)).  A stay "is not a matter of right" but rather "an exercise of judicial discretion," and the moving party "bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* (cleaned up).  Indeed, a stay is "exceptional" because the Court "must always be diffident in interposing the power of an appellate court into the province of the trial court and its orders save upon full briefing and mature reflection." *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986).  This

reasoning must apply to Petitioners' motion asking the Court to interfere with an order issued by a federal agency pursuant to a Congressionally-mandated review process after a considerable public notice and comment period.

### 1.    *Petitioners Have Not Established a Likelihood of Success*

Petitioners argue that "[w]hen 'the balance of equities weighs heavily in favor of granting the stay,' . . . this Court will 'relax the likely-to-succeed-on-the-merits requirement' and grant a stay 'upon a lesser showing of a substantial case on the merits.'" Mot. at 10 (citation omitted).  But, as further discussed below, the balance of the equities here *does not* weigh in Petitioners' favor, much less heavily.  Accordingly, there is no basis for the Court to relax the requirement that Petitioners "strongly" show a likelihood of success on the merits.

Petitioners cannot show a likelihood of success anyway as discussed in the opening briefs of the Commission, the Intervenor Exchanges, and Intervenor CAT LLC.  *See generally* ECF 96, 97, 98.  Among other things, the allocation of costs approved in the Order is reasonable, and the Commission's economic analysis was sufficient.

Rule 613,[6] the CAT Plan, and the 2016 CAT Approval Order[7] each contemplated that CAT fees would be allocated among Industry Members and Participants, and the Order solely determined *how* to do this allocation.  *See* ECF 98 at 31.  The Commission reasonably exercised its discretion in approving the Executed Share Model after considering several alternative approaches and seeking extensive feedback from Industry Members over eight years.  *Id.* at 33.  The Commission determined that it was reasonable to allocate "costs evenly among the three parties who have primary roles related to the transaction."  *Id.* at 35 (quoting Order at 62645).

Moreover, in approving the Order, the Commission undertook a detailed cost-benefit analysis, made factual findings, and concluded that the Executed Share Model would not have an adverse effect on market efficiency, competition, or capital formation.  *Id.* at 47.  The Commission also reasonably estimated the economic

---

[6]    Rule 613 requires that the CAT Plan drafted and filed by Participants include a proposed allocation of costs to "build, operate and administer . . . among the plan sponsors, and between the plan sponsors and members of the plan sponsors."  17 C.F.R. 242.613(a)(1)(vii)(D).

[7]    The CAT Operating Committee shall seek "to establish an allocation of [CAT LLC's] related costs among Participants and Industry Members that is consistent with the Exchange Act taking into account the timeline for implementation of the CAT and distinctions in the securities trading operations of Participants and Industry Members and their relative impact upon Company resources and operations."  2016 CAT Approval Order at 84967.

17

impact of the Executed Share Model across the required statutory criteria. *Id.* at 49.

Therefore, the Commission's economic analysis of the Executed Share Model was

not arbitrary and capricious. *See id.* at 49-50.

Petitioners are therefore unlikely to succeed on the merits.

### 2. Petitioners Have Not Established Irreparable Harm

Petitioners' claims of irreparable harm do not withstand scrutiny.

First, Petitioners claim that "once those sums [pursuant to the Fee Filings] are

in the SROs' hands, they are not going to be returned, even if the Order is later held

unlawful," because the SROs are entitled to immunity in connection with their

regulatory functions. Mot. at 11; *see also* Amici Br. at 5–6. The applicability of

immunity here—which Petitioners and amici have in the past and would in the future

surely contest[8]—is not before this Court and should not be litigated in connection

---

[8]    Indeed, in 2022, Citadel and proposed amicus SIFMA submitted comments to the Commission in connection with the then-proposed amendments to the CAT NMS Plan approved in the Order stating that "grants of immunity are narrowly construed, meaning that courts must be careful not to extend the scope of protection further than it's purposes," and that regulatory immunity should not apply to the SROs' commercial actions. Citadel Comment Letter at 5 (Feb. 23, 2021), https://www.sec.gov/comments/4-698/4698-8411798-229501.pdf; *see* SIFMA Comment Letter at 7 (Jun. 30, 2022), https://www.sec.gov/comments/4-698/4698-8411798-229501.pdf.

with a stay motion, much less in the context of a hypothetical dispute with Participants—many of which are non-parties—that may never come to pass.

Second, to the extent the Court vacates the Order, Participants will be obligated to arrive at a new funding model consistent with their statutory obligations, including to "provide for the equitable allocation of reasonable dues, fees, and other charges among its members and issuers and other persons using [their] facilities," 15 U.S.C. 78f(b)(4), and the Fee Filings would be revised accordingly. If in those circumstances CAT LLC or the Commission determines that CAT LLC over-assessed fees to Industry Members, Participants would submit filings on behalf of CAT LLC to adjust their CAT fee filings to conform to a future funding model.

Further, it is blackletter law that "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Sampson v. Murray*, 415 U.S. 61, 90 (1974). Specifically, "[o]rdinary compliance costs are typically insufficient to render harm irreparable." *LabMD, Inc. v. FTC*, 678 F. App'x 816, 821 (11th Cir. 2016) (citing *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 115 (2d Cir. 2005)); *A.O. Smith Corp. v. FTC*, 530 F.2d 515, 527–28 (3d Cir. 1976) ("Any time a corporation complies with a government regulation that requires corporation action, it spends money and loses profits; yet it

could hardly be contended that proof of such an injury, alone, would satisfy the requisite for a preliminary injunction.").[9]

### 3.    The Balance of the Equities Militates Against a Stay

From its inception eight years ago, the CAT NMS Plan provided, and the Commission contemplated, a funding model under which Participants and Industry Members would share the costs of developing and operating the CAT.  2016 CAT Approval Order at 84,795; *see also* 17 C.F.R. § 242.613(a)(1)(vii)(D).  It was never intended that Participants would bear the entire cost, or that Industry Members would pay nothing.  Yet that is what Petitioners seek with their Motion.  Proposed amici's suggestion that "the CAT can continue to function . . . without a final funding plan," Amicus Br. at 12, is founded on the blithe assumption of Petitioners and amici that the Participants can provide exclusive funding for the CAT in perpetuity.

---

[9] Petitioners' argument also fails because Petitioners have not, as they must, supported their Motion with evidence of any harm to Petitioners themselves.  They contend that "broker-dealers (and investors) will be forced to transfer over $320 million to the SROs," Mot. at 10.  Putting aside that the fee payments will be paid over time, Petitioners do not say what Citadel's share of this $320 million would be.  The extraordinary remedy of a stay requires more detail to support Petitioners' supposed harm.  *See Barber v. Governor of Alabama*, 73 F.4th 1306 (11th Cir. 2023) (movant failed to produce sufficient evidence in support of stay motion; conjecture and attorney argument was insufficient).  Nor may Petitioners cure this defect by introducing new evidence belatedly and strategically via a reply brief.  *See Parker v. Alcon Mgmt. S.A.*, No. 21-14068, 2022 U.S. App. LEXIS 24523, at *7 (11th Cir. Aug. 1, 2022) ("[N]ew evidence is not properly considered if offered for the first time in support of a reply brief . . . ." (citation omitted)).

To date, the Intervenor Exchanges are the parties that have suffered harm, while Industry Members, including Citadel and members of the American Securities Association, reap billions in profits from their voluntary trading on markets that they and their customers know to be protected by extensive regulatory oversight, including that facilitated by the CAT.  Yet Petitioners complain that one of the two of them will pay some unidentified fraction of "$320 million" that Industry Members will owe in CAT-related fees, Mot. at 10.  Whatever Citadel would pay, it certainly pales in comparison to the historical and ongoing costs being borne by the Intervenor Exchanges (and to the $2.76 billion in earnings by Citadel in 2023 from trading and other activities).[10]

Further, Petitioners' failure to challenge the CAT in 2016, when the SEC approved the Original Funding Model allocating CAT costs among Participants and Industry Members, further tips the balance of equities in Participants' favor.  Had Petitioners timely challenged their obligation to fund the CAT, Participants and Industry Members could have resolved this issue years before Participants incurred substantial costs to fund the CAT.  Petitioners should not be rewarded with continued

---

[10]    *See* Paula Seligson & Katherine Doherty, *Citadel Securities Revenue Reaches $2.3 Billion in First Quarter*, BLOOMBERG (May 15, 2024), https://www.bloomberg.com/news/articles/2024-05-15/citadel-securities-revenue-reaches-2-3-billion-in-first-quarter.

exemption from funding the CAT when they sat on their hands for years.  Equity does not reward laches.  *See Sierra Club v. United States Army Corps of Eng'rs*, 295 F.3d 1209, 1219-20 (11th Cir. 2002) ("The district court denied [plaintiff] a preliminary injunction, and we affirmed, on the grounds that the doctrine of laches precluded that extreme relief.").

### 4.    *A Stay Would Not Be in the Public Interest*

Petitioners make no argument that a stay would be in the public interest, and their assertion that a stay would *not harm* the public interest again rests on the unsupported assumption that the Participants can fund the CAT indefinitely.  Rather, denying the Participants equitable cost sharing will create uncertainty around the continued funding of the CAT, which the Commission mandated to improve upon prior market surveillance measures and to enhance the detection of abnormal or nefarious trading activity.  ECF 98 at 18.  A stay would therefore harm the public interest, and serve only the immediate financial interests of Citadel and the other Industry Members.[11]

---

[11]    If the Court nevertheless concludes a stay is warranted, the amount of the bond or other security required by F.R.A.P. 18(b) should be addressed in additional briefing.

22

## **CONCLUSION**

The Court should deny Petitioners' Motion.

Date: September 30, 2024

Respectfully submitted,

/s/ *Stephen J. Kastenberg*

Stephen J. Kastenberg
Paul Lantieri III
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone: (215) 665-8500

*Counsel for Intervenors The Nasdaq Stock Market LLC, Nasdaq BX, Inc., Nasdaq GEMX, LLC, Nasdaq ISE, LLC, Nasdaq MRX, LLC, and Nasdaq PHLX LLC*

/s/ *Paul E. Greenwalt III*

Paul E. Greenwalt III
Michael K. Molzberger
ARENTFOX SCHIFF LLP
223 S. Wacker Dr., Suite 7100
Chicago, IL 60606
Telephone: (312) 258-5500

*Counsel for Intervenors Cboe BYX Exchange, Inc., Cboe BZX Exchange, Inc., Cboe C2 Exchange, Inc., Cboe EDGA Exchange, Inc., Cboe EDGX Exchange, Inc., and Cboe Exchange, Inc.*

/s/ *Jennifer G. Altman*

Jennifer G. Altman
PILLSBURY WINTHROP SHAW PITTMAN LLP
600 Brickell Avenue, Suite 3100
Miami, FL 33131
Telephone: (786) 913-4831

Matthew J. MacLean
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street NW
Washington, DC 20036
Telephone: (202) 663-8000

Ari M. Berman
David Oliwenstein
PILLSBURY WINTHROP SHAW PITTMAN LLP
31 West 52nd Street
New York, NY 10019
Telephone: (202) 663-8000

*Counsel for Intervenors New York Stock Exchange LLC, NYSE American LLC, NYSE Arca, Inc., NYSE Chicago, Inc., and NYSE National, Inc.*

23

## CERTIFICATE OF SERVICE

I hereby certify that undersigned counsel served a true and correct copy of the foregoing to all parties of record through the Court's CM/ECF system.

*/s/ Stephen J. Kastenberg*
Stephen J. Kastenberg

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the word limit set forth in Federal Rule of Appellate Procedure 32(a)(7)(b)(i) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this brief contains 5,163 words.

I further certify that this brief complies with the typeface requirements set forth in Federal Rule of Appellate Procedure 32(a)(5)(A) and with the type-style requirements set forth in Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using 14-point Times New Roman font in Microsoft Office Word Version 16.

Date: September 30, 2024

*/s/ Stephen J. Kastenberg*
Stephen J. Kastenberg