**No. 23-13396**

---

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

AMERICAN SECURITIES ASSOCIATION AND CITADEL SECURITIES LLC,

*Petitioners*,

v.

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

*Respondent*,

THE NASDAQ STOCK MARKET, LLC, NASDAQ BX, INC., NASDAQ GEMX, LLC, NASDAQ ISE, LLC, NASDAQ MRX, LLC, ET AL.,

*Intervenors.*

---

Petition for Review of an Order of
the Securities and Exchange Commission
Release No. 34-98290; File No. 4-698

---

## REPLY IN SUPPORT OF OPPOSED TIME-SENSITIVE
## MOTION FOR STAY AND INJUNCTIVE RELIEF
## (RELIEF REQUESTED NO LATER THAN NOVEMBER 17, 2024)

---

J. Michael Connolly
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
mike@consovoymccarthy.com

*Counsel for Petitioner*
*American Securities Association*

Noel J. Francisco
Yaakov M. Roth
Brian C. Rabbitt
Brinton Lucas
Joshua T. Hoyt
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
(202) 879-3939
njfrancisco@jonesday.com

David Phillips
JONES DAY
4655 Executive Dr., Ste. 1500
San Diego, CA 92121

*Counsel for Petitioner*
*Citadel Securities LLC*

# CERTIFICATE OF INTERESTED PERSONS

1. **Alternative Investment Management Association**, *Amicus Curiae*.

2. **Altman, Jennifer G.**, Pillsbury Winthrop Shaw Pittman LLP, counsel for NYSE Intervenors.

3. **American Free Enterprise Chamber of Commerce**, *Amicus Curiae*.

4. **American Securities Association**, Petitioner.

5. **ArentFox Schiff LLP**, counsel for Intervenors Cboe BYX Exchange, Inc., Cboe BZX Exchange, Inc., Cboe EDGA Exchange, Inc., Cboe EDGX Exchange, Inc., Cboe C2 Exchange, Inc., and Cboe Exchange, Inc.

6. **Ashbrook Byrne Kresge LLC**, counsel for *Amici Curiae* James Overdahl and S.P Kothari.

7. **Bailey, Andrew**, counsel for *Amicus Curiae* State of Missouri.

8. **Ballard Spahr LLP**, counsel for Intervenors The Nasdaq Stock Market LLC, Nasdaq BX, Inc., Nasdaq GEMX, LLC, Nasdaq ISE, LLC, Nasdaq MRX, LLC, and Nasdaq PHLX LLC.

9. **Baltz, Brian J.**, Willkie Farr & Gallagher LLP, counsel for *Amicus Curiae* Futures Industry Association.

10. **Barbero, Megan**, counsel for Respondent United States Securities and Exchange Commission.

11. **Barr, William P.**, Torridon Law PLLC, counsel for *Amicus Curiae* American Free Enterprise Chamber of Commerce.

12. **Bash, John F.**, Quinn Emanuel Urquhart & Sullivan, LLP, counsel for *Amici Curiae* Senator Tom Cotton et al.

13. **Berman, Ari M.**, Pillsbury Winthrop Shaw Pittman LLP, counsel for NYSE Intervenors.

14. **Berry, Jonathan**, Boyden Gray PLLC, counsel for *Amicus Curiae* American Free Enterprise Chamber of Commerce.

15. **Bird, Brenna**, counsel for *Amicus Curiae* State of Iowa.

16. **Blask, Ariel**, Willkie Farr & Gallagher LLP, counsel for *Amicus Curiae* Futures Industry Association.

17. **Boden, Anastasia**, counsel for *Amici Curiae* Cato Institute and Investor Choice Advocates Network.

18. **Borse Dubai Limited**, owner of more than 10% of Nasdaq, Inc.'s shares.

19. **BOX Exchange LLC**, member and participant of Consolidated Audit Trail, LLC.

20. **Boyden Gray PLLC**, counsel for *Amicus Curiae* American Free Enterprise Chamber of Commerce.

21. **Boyle, Gregory**, Jenner & Block LLP, counsel for Intervenor Consolidated Audit Trail, LLC.

22. **Bronni, Nicholas J.**, counsel for *Amicus Curiae* State of Arkansas.

23. **Carr, Chris**, counsel for *Amicus Curiae* State of Georgia

24. **Cato Institute**, *Amicus Curiae*.

25. **Cboe BYX Exchange, Inc.**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

26. **Cboe BZX Exchange, Inc.**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

27. **Cboe C2 Exchange, Inc.**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

28. **Cboe EDGA Exchange, Inc.**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

29. **Cboe EDGX Exchange, Inc.**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

30. **Cboe Exchange, Inc.**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

31. **Cboe Global Markets, Inc. (BATS: CBOE)**, direct or indirect parent company of Intervenors Cboe BYX Exchange, Inc., Cboe BZX Exchange, Inc., Cboe

EDGA Exchange, Inc., Cboe EDGX Exchange, Inc., Cboe C2 Exchange, Inc., and Cboe Exchange, Inc.

32. **Chenoweth, Mark S.**, counsel for *Amicus Curiae* New Civil Liberties Alliance.

33. **Citadel Securities GP LLC**, parent company of Petitioner Citadel Securities LLC.

34. **Citadel Securities LLC**, Petitioner.

35. **Coleman, Russell**, counsel for *Amicus Curiae* Commonwealth of Kentucky.

36. **Committee on Capital Markets Regulation**, *Amicus Curiae.*

37. **Commonwealth of Kentucky**, *Amicus Curiae.*

38. **Commonwealth of Virginia**, *Amicus Curiae.*

39. **Competitive Enterprise Institute**, *Amicus Curiae.*

40. **Conley, Michael A.**, counsel for Respondent United States Securities and Exchange Commission.

41. **Connolly, J. Michael**, Consovoy McCarthy PLLC, counsel for Petitioner American Securities Association.

42. **Consolidated Audit Trail, LLC**, Intervenor.

43. **Consovoy McCarthy PLLC**, counsel for Petitioner American Securities Association.

44. **Deutsch, Elizabeth**, Jenner & Block LLP, counsel for Intervenor Consolidated Audit Trail, LLC.

45. **Financial Industry Regulatory Authority, Inc.**, member and participant of Intervenor Consolidated Audit Trail, LLC.

46. **Fitch, Lynn**, counsel for *Amicus Curiae* State of Mississippi.

47. **Flowers, Benjamin M.**, Ashbrook Byrne Kresge LLC, counsel for *Amici Curiae* James Overdahl and S.P. Kothari.

48. **Formella, John M.**, counsel for *Amicus Curiae* State of New Hampshire.

49. **Francisco, Noel J.**, Jones Day, counsel for Petitioner Citadel Securities LLC.

50. **Futures Industry Association**, *Amicus Curiae*.

51. **Gershengorn, Ian Heath**, Jenner & Block LLP, counsel for Intervenor Consolidated Audit Trail, LLC.

52. **Greenberg, Dan**, counsel for *Amicus Curiae* Competitive Enterprise Institute.

53. **Greenwalt III, Paul E.**, ArentFox Schiff LLP, counsel for Intervenors Cboe BYX Exchange, Inc., Cboe BZX Exchange, Inc., Cboe EDGA Exchange, Inc., Cboe EDGX Exchange, Inc., Cboe C2 Exchange, Inc., and Cboe Exchange, Inc.

54. **Griffin, Tim**, counsel for *Amicus Curiae* State of Arkansas.

55. **Hardin, Tracey A.**, counsel for Respondent United States Securities and Exchange Commission.

56. **Hilgers, Michael T.**, counsel for *Amicus Curiae* State of Nebraska.

57. **Hopen, David A.**, Paul, Weiss, Rifkind, Wharton & Garrison LLP, counsel for *Amici Curiae* Securities Industry and Financial Markets Association et al.

58. **Hoyt, Joshua T.**, Jones Day, counsel for Petitioner Citadel Securities LLC.

59. **Intercontinental Exchange, Inc. (NYSE: ICE)**, indirect parent of NYSE Intervenors.

60. **International Securities Exchange Holdings, Inc.**, sole LLC member of Intervenors Nasdaq GEMX LLC, Nasdaq ISE LLC, and Nasdaq MRX LLC.

61. **Investment Company Institute**, *Amicus Curiae*.

62. **Investor AB (Nasdaq Stockholm: INVEB)**, owner of more than 10% of Nasdaq, Inc.'s shares.

63. **Investor Choice Advocates Network**, *Amicus Curiae*.

64. **Investors' Exchange, LLC**, member and participant of Intervenor Consolidated Audit Trail, LLC.

65. **Jackley, Marty**, counsel for *Amicus Curiae* State of South Dakota.

66. **Jacobs, Dylan, L.**, counsel for *Amicus Curiae* State of Arkansas.

67. **Jenner & Block LLP**, counsel for Intervenor Consolidated Audit Trail, LLC.

68. **Jones Day**, counsel for Petitioner Citadel Securities LLC.

69. **Kastenberg, Stephen J.**, Ballard Spahr LLP, counsel for Intervenors The Nasdaq Stock Market LLC, Nasdaq BX, Inc., Nasdaq GEMX, LLC, Nasdaq ISE, LLC, Nasdaq MRX, LLC, and Nasdaq PHLX LLC.

70. **Katsiff, Timothy D.**, Ballard Spahr LLP, counsel for Intervenors The Nasdaq Stock Market LLC, Nasdaq BX, Inc., Nasdaq GEMX, LLC, Nasdaq ISE, LLC, Nasdaq MRX, LLC, and Nasdaq PHLX LLC.

71. **Kennedy, Jordan**, counsel for Respondent United States Securities and Exchange Commission.

72. **Knudsen, Austin**, counsel for *Amicus Curiae* State of Montana.

73. **Kobach, Kris W.**, counsel for *Amicus Curiae* State of Kansas.

74. **Kothari, S.P.**, *Amicus Curiae*.

75. **Kumar, Neal**, Willkie Farr & Gallagher LLP, counsel for *Amicus Curiae* Futures Industry Association.

76. **Labrador, Raúl R.**, counsel for *Amicus Curiae* State of Idaho.

77. **Lantieri III, Paul**, Ballard Spahr LLP, counsel for Intervenors The Nasdaq Stock Market LLC, Nasdaq BX, Inc., Nasdaq GEMX, LLC, Nasdaq ISE, LLC, Nasdaq MRX, LLC, and Nasdaq PHLX LLC.

78. **Lipshutz, Brian M.**, Paul, Weiss, Rifkind, Wharton & Garrison LLP, counsel for *Amici Curiae* Securities Industry and Financial Markets Association et al.

79. **Little, Margaret A.**, counsel for *Amicus Curiae* New Civil Liberties Alliance.

80. **Long-Term Stock Exchange, Inc.**, member and participant of Intervenor Consolidated Audit Trail, LLC.

81. **Lucas, Brinton**, Jones Day, counsel for Petitioner Citadel Securities LLC.

82. **MacLean, Matthew J.**, Pillsbury Winthrop Shaw Pittman LLP, counsel for NYSE Intervenors.

83. **Managed Funds Association**, *Amicus Curiae*.

84. **Marks, William T.**, Paul, Weiss, Rifkind, Wharton & Garrison LLP, counsel for *Amici Curiae* Securities Industry and Financial Markets Association et al.

85. **Marshall, Jonathan J.**, Jenner & Block LLP, counsel for Intervenor Consolidated Audit Trail, LLC.

86. **Marshall, Steve**, counsel for *Amicus Curiae* State of Alabama.

87. **Matro, Daniel E.**, counsel for Respondent United States Securities and Exchange Commission.

88. **McCotter, R. Trent**, Boyden Gray PLLC, counsel for *Amicus Curiae* American Free Enterprise Chamber of Commerce.

89. **MEMX LLC**, member and participant of Intervenor Consolidated Audit Trail, LLC.

90. **Miami International Securities Exchange LLC**, member and participant of Intervenor Consolidated Audit Trail, LLC.

91. **MIAX Emerald, LLC**, member and participant of Intervenor Consolidated Audit Trail, LLC.

92. **MIAX Pearl, LLC**, member and participant of Intervenor Consolidated Audit Trail, LLC.

93. **MIAX Sapphire, LLC**, member and participant of Intervenor Consolidated Audit Trail, LLC.

94. **Michel, Christopher G.**, Quinn Emanuel Urquhart & Sullivan, LLP, counsel for *Amici Curiae* Senator Tom Cotton et al.

95. **Miyares, Jason**, counsel for *Amicus Curiae* Commonwealth of Virginia.

96. **Modern Markets Initiative, Inc.**, sponsor of funding for brief for *Amici Curiae* James Overdahl and S.P. Kothari disclosed pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E).

97. **Molzberger, Michael**, ArentFox Schiff LLP, counsel for Intervenors Cboe BYX Exchange, Inc., Cboe BZX Exchange, Inc., Cboe EDGA Exchange, Inc., Cboe EDGX Exchange, Inc., Cboe C2 Exchange, Inc., and Cboe Exchange, Inc.

98.   **Montgomery, Sophia W.**, Jenner & Block LLP, counsel for Intervenor Consolidated Audit Trail, LLC.

99.   **Moody, Ashley**, counsel for *Amicus Curiae* State of Florida.

100.  **Morris, Andrew, J.**, counsel for *Amicus Curiae* New Civil Liberties Alliance.

101.  **Morrisey, Patrick**, counsel for *Amicus Curiae* State of West Virginia.

102.  **Murrill, Liz**, counsel for *Amicus Curiae* State of Louisiana.

103.  **Nabors, David A.**, Quinn Emanuel Urquhart & Sullivan, LLP, counsel for *Amici Curiae* Tom Cotton et al.

104.  **Nasdaq BX, Inc.**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

105.  **Nasdaq GEMX, LLC**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

106.  **Nasdaq, Inc. (Nasdaq: NDAQ)**, sole owner of LLC interest in The Nasdaq Stock Market LLC and Nasdaq PHLX LLC and parent company of Nasdaq BX, Inc.

107.  **Nasdaq ISE, LLC**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

108.  **Nasdaq MRX, LLC**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

109.  **Nasdaq PHLX LLC**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

110.  **New Civil Liberties Alliance**, *Amicus Curiae*.

111.  **New York Stock Exchange LLC**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

112.  **NYSE American LLC**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

113.  **NYSE Arca, Inc.**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

114. **NYSE Chicago, Inc.**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

115. **NYSE National, Inc.**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

116. **Oliwenstein, David**, Pillsbury Winthrop Shaw Pittman LLP, counsel for NYSE Intervenors.

117. **Orr, Caleb**, Boyden Gray PLLC, counsel for *Amicus Curiae* American Free Enterprise Chamber of Commerce.

118. **Overdahl, James**, *Amicus Curiae*.

119. **Paul, Weiss, Rifkind, Wharton & Garrison LLP**, counsel for *Amici Curiae* Securities Industry and Financial Markets Association et al.

120. **Paxton, Ken**, counsel for *Amicus Curiae* State of Texas.

121. **Phillips, David**, Jones Day, counsel for Petitioner Citadel Securities LLC.

122. **Pillsbury Winthrop Shaw Pittman LLP**, counsel for NYSE Intervenors.

123. **Quinn Emanuel Urquhart & Sullivan, LLP**, counsel for *Amici Curiae* Senator Tom Cotton et al.

124. **Rabbitt, Brian C.**, Jones Day, counsel for Petitioner Citadel Securities LLC.

125. **Reisner, Lorin L.**, Paul, Weiss, Rifkind, Wharton & Garrison LLP, counsel for *Amici Curiae* Securities Industry and Financial Markets Association et al.

126. **Representatives Mark Alford, Don Bacon, Michael Collins, Scott Fitzgerald, French Hill, Barry Loudermilk, Alex X. Mooney, Ralph Norman, John Rose, Keith Self, Randy Weber, and Steve Womack**, *Amici Curiae*.

127. **Reyes, Sean**, counsel for *Amicus Curiae* State of Utah.

128. **Rokita, Theodore E.**, counsel for *Amicus Curiae* State of Indiana.

129. **Roth, Yaakov M.**, Jones Day, counsel for Petitioner Citadel Securities LLC.

130. **Schulp, Jennifer**, counsel for *Amici Curiae* Cato Institute and Investor Choice Advocates Network.

131. **Schwartz, Yishai**, Paul, Weiss, Rifkind, Wharton & Garrison LLP, counsel for *Amici Curiae* Securities Industry and Financial Markets Association et al.

132. **Securities Industry and Financial Markets Association**, *Amicus Curiae*.

133. **Senators Tom Cotton, John Boozman, Make Braun, Kevin Kramer, Steve Daines, Bill Hagerty, John Kennedy, Jerry Moran, Pete Ricketts, and Tim Scott**, *Amici Curiae*.

134. **Shanmugam, Kannon K.**, Paul, Weiss, Rifkind, Wharton & Garrison LLP, counsel for *Amici Curiae*, Securities Industry and Financial Markets Association et al.

135. **Skorup, Brent**, counsel for *Amici Curiae* Cato Institute and Investor Choice Advocates Network.

136. **Sobel, Zachary J.**, Quinn Emanuel Urquhart & Sullivan, LLP, counsel for *Amici Curiae* Senator Tom Cotton et al.

137. **State of Alabama**, *Amicus Curiae*.

138. **State of Arkansas**, *Amicus Curiae*.

139. **State of Florida**, *Amicus Curiae*.

140. **State of Georgia**, *Amicus Curiae*.

141. **State of Idaho**, *Amicus Curiae*.

142. **State of Indiana**, *Amicus Curiae*.

143. **State of Iowa**, *Amicus Curiae*.

144. **State of Kansas**, *Amicus Curiae*.

145. **State of Louisiana**, *Amicus Curiae*.

146. **State of Mississippi**, *Amicus Curiae*.

147. **State of Missouri**, *Amicus Curiae*.

148. **State of Montana**, *Amicus Curiae*.

149. **State of Nebraska**, *Amicus Curiae*.

150.    **State of New Hampshire**, *Amicus Curiae*.

151.    **State of North Dakota**, *Amicus Curiae*.

152.    **State of Ohio**, *Amicus Curiae*.

153.    **State of South Carolina**, *Amicus Curiae*.

154.    **State of South Dakota**, *Amicus Curiae*.

155.    **State of Texas**, *Amicus Curiae*.

156.    **State of Utah**, *Amicus Curiae*.

157.    **State of West Virginia**, *Amicus Curiae*.

158.    **Stern, Eric E.** Paul, Weiss, Rifkind, Wharton & Garrison LLP, counsel for *Amici Curiae* Securities Industry and Financial Markets Association et al.

159.    **The Nasdaq Stock Market LLC**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

160.    **The Vanguard Group, Inc.**, owned 10% or more of Cboe Global Markets, Inc.'s common stock as of June 30, 2023.

161.    **Thoma Bravo UGP, LLC**, owner of more than 10% of Nasdaq, Inc.'s shares.

162.    **Torridon Law PLLC**, counsel for *Amicus Curiae* American Free Enterprise Chamber of Commerce.

163.    **Unikowsky, Adam G.**, Jenner & Block LLP, counsel for Intervenor Consolidated Audit Trail, LLC.

164.    **United States Securities and Exchange Commission**, Respondent.

165.    **Virtu Financial, Inc.**, *Amicus Curiae*.

166.    **Watkins, Devin**, counsel for *Amicus Curiae* Competitive Enterprise Institute.

167.    **Willkie Farr & Gallagher LLP**, counsel for *Amicus Curiae* Futures Industry Association.

168.    **Wilson, Alan**, counsel for *Amicus Curiae* State of South Carolina.

169.    **Wrigley, Drew H.**, counsel for *Amicus Curiae* State of North Dakota.

170.    **Yost, Dave**, counsel for *Amicus Curiae* State of Ohio.


Dated: October 7, 2024

Respectfully submitted,

*/s/ J. Michael Connolly*
J. Michael Connolly
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
mike@consovoymccarthy.com

*Counsel for Petitioner*
*American Securities Association*

*/s/ Noel J. Francisco*
Noel J. Francisco
Yaakov M. Roth
Brian C. Rabbitt
Brinton Lucas
Joshua T. Hoyt
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
(202) 879-3939
njfrancisco@jonesday.com

David Phillips
JONES DAY
4655 Executive Dr., Ste. 1500
San Diego, CA 92121

*Counsel for Petitioner*
*Citadel Securities LLC*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 26.1-2, the undersigned counsel hereby certify that no parent corporation, and no publicly held corporation has a 10% or greater ownership interest in the American Securities Association (ASA).

Petitioner Citadel Securities LLC is a wholly owned, indirect subsidiary of Citadel Securities GP LLC. Counsel further certify that no publicly held corporation has a 10% or greater ownership interest in Citadel Securities GP LLC.

Dated: October 7, 2024

/s/ J. Michael Connolly
J. Michael Connolly
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
mike@consovoymccarthy.com

*Counsel for Petitioner*
*American Securities Association*

Respectfully submitted,

/s/ Noel J. Francisco
Noel J. Francisco
Yaakov M. Roth
Brian C. Rabbitt
Brinton Lucas
Joshua T. Hoyt
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
(202) 879-3939
njfrancisco@jonesday.com

David Phillips
JONES DAY
4655 Executive Dr., Ste. 1500
San Diego, CA 92121

*Counsel for Petitioner*
*Citadel Securities LLC*

**TABLE OF CONTENTS**

**Page(s)**

CERTIFICATE OF INTERESTED PERSONS ........................................................... C-1

CORPORATE DISCLOSURE STATEMENT ........................................................... C-12

INTRODUCTION ................................................................................................... 1

ARGUMENT .......................................................................................................... 3

I.    THIS COURT SHOULD STAY THE ORDER. .................................................... 3

II.   THIS COURT SHOULD ENJOIN THE SROS FROM
      COLLECTING. ............................................................................................... 8

CONCLUSION ....................................................................................................... 10

CERTIFICATE OF COMPLIANCE ............................................................. Certificate 1

CERTIFICATE OF ELECTRONIC SUBMISSION ................................... Certificate 2

CERTIFICATE OF SERVICE ....................................................................... Certificate 3

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alabama Ass'n of Realtors v. HHS,*
    594 U.S. 758 (2021) ...............................................................................5

*Berger v. Zeghibe,*
    666 F. App'x 119 (3d Cir. 2016) ...........................................................10

*Clinton v. Goldsmith,*
    526 U.S. 529 (1999) ........................................................................... 9, 10

*Epic Sys. Corp. v. Lewis,*
    584 U.S. 497 (2018) ...............................................................................9

*Klay v. United Healthgroup, Inc.,*
    376 F.3d 1092 (11th Cir. 2004) ...........................................................10

*NASDAQ Stock Mkt., LLC v. SEC,*
    961 F.3d 421 (D.C. Cir. 2020) ...............................................................9

*NetCoalition v. SEC,*
    715 F.3d 342 (D.C. Cir. 2013) ...............................................................8

*Starbucks Corp. v. McKinney,*
    144 S. Ct. 1570 (2024) ............................................................................9

*United States v. Askins & Miller Orthopaedics, P.A.,*
    924 F.3d 1348 (11th Cir. 2019) ..........................................................4, 5

**STATUTES**

15 U.S.C. § 78q ...........................................................................................3

15 U.S.C. § 78s ........................................................................................8, 9

15 U.S.C. § 78y ...........................................................................................8

**OTHER AUTHORITIES**

88 Fed. Reg. 62628 (2023)......................................................................................3

Clayton Testimony (Dec. 10, 2019) ......................................................................7

**INTRODUCTION**

In January, this Court will hear argument on petitioners' challenge to an SEC Order. Yet with the finish line in sight, the SROs, backed by a pliant SEC, have suddenly decided to irrevocably implement the challenged Order before this Court can determine its lawfulness. Specifically, the SROs seek to collect over $320 million in CAT fees from broker-dealers pursuant to the Order, with $60 million due before year's end and over $30 million each month thereafter. Petitioners therefore asked this Court for a brief stay to preserve the status quo for a few months while the case is considered.

The SEC and SROs oppose this modest request. In doing so, they do not deny that if petitioners *lose*, the SROs can collect every cent in a few months' time. Nor do they seriously dispute that if petitioners *win*, any funds collected now will not be returned, even with the regime declared unlawful. And they never deny that petitioners have raised substantial merits questions. Given this, one might wonder why they so adamantly oppose a brief stay.

Remarkably, the only reason the SROs can muster to explain their sudden haste to collect hundreds of millions is that they want to hedge against the "risk" the Order will be "invalidated." CAT.Opp.19. But the SROs' candor just proves the point: Broker-dealers should not be forced to permanently transfer nine-figure sums *now* under an Order that everyone, SROs included, recognizes could soon be held unlawful. Take-the-money-and-run is a hallmark of banditry, not equity.

1

To justify this money grab, the SEC and SROs blame their broker-dealer victims, forgetting how we got here. While the SROs have discovered a new concern that the CAT "is unauthorized," they made not a peep when ordered to build that unprecedented surveillance program 12 years ago. CAT.Opp.14. Nor did they squeak in 2016, when they agreed to fund the CAT's development until they could settle on a full funding scheme with the SEC. And for the next seven years, it was the SROs who unilaterally ran up a billion-dollar tab while dilly-dallying with finalizing the funding framework. Pet.Br.8-10. When they finally did so in late 2023, petitioners promptly sued. At any point, the SROs could have raised the "statutory challenge" they now fear or accelerated the funding regime, as they were sustaining cognizable pocketbook harms. CAT.Opp.20. Instead, they played along, perhaps assuming the SEC would ultimately let them offload their costs onto broker-dealers, as the challenged Order unlawfully permits them to do. In short, the SROs made this bed. They must lie in it.

While a stay should be enough to maintain an eight-year status quo for just a few more months, the SROs' remarkable refusal to commit to respecting such a ruling, CAT.Opp.13—coupled with the SEC's hollow assurance that it "could" take action in the event of a stay, SEC.Opp.21—also warrants an injunction preventing the SROs from collecting. While the SROs insist the Dodd-Frank Act stripped this Court of its inherent authority to issue such relief, nothing in that law, which concerns the SEC's review of fee filings not challenged here, eliminates this Court's power to preserve the status quo while it considers an Order undeniably within its purview.

2

## ARGUMENT

## I.    THIS COURT SHOULD STAY THE ORDER.

Much of the stay analysis is uncontested. All agree that this Court has "the *power* to stay" the Order. CAT.Opp.13. There is likewise no dispute that such relief is warranted when the equities heavily favor a stay and there is a serious merits question. Mot.10. And no one denies that such questions exist here. Indeed, the SROs remain unwilling to defend the CAT's lawfulness at all, observing only that this issue "is fully briefed." CAT.Opp.15. And while the SEC tries to smuggle a merits surreply into its opposition, it is telling that its lead authority is now 15 U.S.C. § 78q, a provision its Order never cites and its merits brief mentions only in passing. *Compare* SEC.Opp.11-12, *with* 88 Fed. Reg. 62628, 62671-73 & n.958 (2023), *and* SEC.Br.10, 44. In any event, it is enough for now that the long roster of parties and *amici* all accept that the merits questions are substantial. The only real issue is whether the equities justify preserving the status quo until this Court resolves the merits in a few months. They do.

**A.**    On irreparable harm, the SROs admit that, without a stay, broker-dealers must pay around "$60 million" to the SROs in the final five weeks of 2024, and then over $30 million each month after that. CAT.Opp.12; *see* Mot.10-11. And those losses would be on top of the *billions* already spent by broker-dealers like Citadel Securities in CAT reporting implementation costs, Pet.Br.21; Exch.Opp.9 n.5—putting paid to the lie that broker-dealers are "free-riding." CAT.Opp.18.

3

The SROs nevertheless try to minimize these losses, emphasizing they will be shared by "broker-dealers *collectively*." CAT.Opp.12. But the SROs recognize Citadel Securities alone will pay a huge portion given its position as the largest market maker, Exch.Opp.9-10, 21, while ASA and SIFMA members will pay hundreds of millions during this case, too, *see* Pet.Br.Ex.A.3-4; SIFMA.Stay.Br.1, 5-6. There is no need to parse firm by firm the precise "share of this $320 million" (which only the SROs can do using non-public data) to grasp that petitioners face substantial immediate harms. Exch.Opp.20 n.9.

Once transferred, those princely sums will not be returned, as the SROs tacitly concede that they are under no obligation to repay if petitioners win. Mot.11-12. The SROs do not even mention broker-dealers' contractual commitment that any fees paid will be "'non-refundable.'" Mot.11. And the SROs admit their "regulatory immunity" would shield them from refund suits. CAT.Opp.17. They nevertheless suggest petitioners might receive "adjust[ments]" in some "postmortem proceeding before the SEC." *Id.*; *see* SEC.Opp.19 (invoking "potential regulatory resolutions"). But tellingly, they never specify *how* the SEC could compel the SROs to refund petitioners. Petitioners are unaware of any authority that would let the SEC spread around the costs of its unlawful conduct by robbing Peter to pay Paul. And even if one existed, such a byzantine framework would plainly not be "'as practical and as efficient to the ends of justice and its prompt administration'" as the equitable remedy of a stay. *United States v. Askins & Miller Orthopaedics, P.A.*, 924 F.3d 1348, 1359 (11th Cir. 2019).

In any event, petitioners need only show the lack of a stay would put them "at *risk* of irreparable harm by depriving them of [money] with no *guarantee* of eventual recovery." *Alabama Ass'n of Realtors v. HHS*, 594 U.S. 758, 765 (2021) (emphases added); *see Askins & Miller*, 924 F.3d at 1359 ("the likelihood that a defendant will never pay" suffices). If certainty were required, agencies could evade a stay just by speculating about "potential regulatory resolutions" later—such as a waiver of sovereign immunity. SEC.Opp.19. At any rate, if the SROs were serious about refunding petitioners "[i]f the CAT were invalidated," they could start by waiving their immunity and amending the contract all broker-dealers were compelled to sign, instead of floating a non-existent administrative "postmortem proceeding." CAT.Opp.17. Of course, the SROs will not do that, for as they eventually confirm, the whole point of this exercise is to spread the "risk" of the CAT's invalidation to the "broker-dealers" challenging it. CAT.Opp.19. Any fees collected now must be unrecoverable for that scheme to work.

**B.**    A stay, by contrast, would produce no cognizable harm. The SEC does not argue a stay would cause it (or the public) any fiscal or regulatory injury. Mot.12. Instead, because the CAT will "continue to run" at no cost to the Commission, CAT.Opp.19, the SEC focuses solely on the stay's impact on the SROs, SEC.Opp.19-21. But when it comes to the SROs, no one suggests they will be left "holding the bag" if petitioners lose in a few months, as they can collect then. CAT.Opp.17. That risk would materialize only if petitioners win, but in that case, the SROs would never have had a right to collect at all. Mot.14. Either way, the SROs will have no basis to complain.

Indeed, neither the SROs nor the SEC ever articulate why, after all these years of their dickering over a funding model, they simply must be paid *right now*, on the eve of argument. Nor do they explain why a short stay would harm them any more than the SEC's suspension of the prior round of fee filings in January 2024, which they did nothing about for eight months. Mot.13. Nor do they offer any convincing justification for their sly withdraw-and-resubmit strategy. Mot.13-14. The SEC claims this is "common," SEC.Opp.8, but the SROs could have just as easily amended their filings to allow the SEC to finish its review. That, of course, would have exposed the specific fee filings to additional judicial scrutiny—something they are desperate to avoid. In fact, the SROs are quite candid that they chose this strategy to prevent "this Court" from "second-guess[ing]" the SEC's decision to help them collect fees now. CAT.Opp.13.

In an attempt to obscure their chicanery, the SROs, backed by the SEC, claim the equities favor them because they "sunk costs" into the CAT over the last eight years only because petitioners did not "challeng[e] [its] legality … in 2016." CAT.Opp.20; *see* SEC.Opp.20. Nonsense. Had petitioners attempted to bring a similar challenge then, their suit surely would have been tossed as premature. Indeed, the SEC and SROs argue that even *this* challenge is unripe because the Order does not "determine the amount" of CAT fees or "trigger[] the … obligation to pay" them. SEC.Opp.11 (cleaned up); *see* CAT.Br.20. They cannot have it both ways. Petitioners had no duty to charge into court nearly a decade before any "bill came due." CAT.Opp.20.

The SROs, by contrast, could have challenged the SEC's authority anytime, as they, unlike petitioners, were funding the CAT's development from the get-go. CAT.Opp.5. Yet even though the SROs were not shy about suing the Commission over *other* aspects of the CAT, Pet.Br.9, they made no attempt to challenge its legality or control its costs, likely because they assumed these expenses could one day be shunted off "through the imposition of CAT fees on broker-dealers," CAT.Opp.5.

Indeed, the promise of pass-throughs freed the SROs to take their time in devising a funding model and to run up costs in the interim. Rather than offer a funding model in 2016, the SROs left it "to be determined." Exch.Opp.4. It then took them seven years to concoct a framework the SEC could stomach. Pet.Br.10. All the while, they ran up a billion-dollar bill—20 times initial predictions—and squandered years engaging a feckless contractor and blowing deadlines. Pet.Br.9, 38; *see* Clayton Testimony (Dec. 10, 2019), https://tinyurl.com/59dmk4be (the SEC was working with the SROs to "ensure that project management, resource and governance deficiencies are addressed"). It is passing strange for the SROs and SEC to now claim that *petitioners*, who had no say in any of this, are "responsible" for the "risk" here. SEC.Opp.20.

Instead, the SROs just miscalculated. Despite their concerns over the SEC's lack of authority, the SROs played along, perhaps hoping no one would ever call the SEC on it. Whatever modest effect a loss on that gamble may have on the for-profit SROs' multibillion-dollar bottom lines, it is not *petitioners'* fault. And it certainly does not mean that the SROs must be paid *right now*, before this Court can even hear argument.

7

## II.   THIS COURT SHOULD ENJOIN THE SROS FROM COLLECTING.

While staying the Order *should* be enough—as it creates the very "framework for determining and allocating [the] CAT costs" under which the SROs seek to collect, SEC.Opp.1—the SROs glaringly decline to commit to standing down if this Court issues that relief. CAT.Opp.13. Given this uncertainty, this Court should also enjoin them from collecting CAT fees until this case ends. Mot.17-18. While the SROs raise a grab-bag of objections, they all fail.

**A.**   In an attempt to obscure the question at hand, the SROs principally claim Dodd-Frank "stripp[ed]" this Court of "jurisdiction[]" to enjoin them from collecting under the fee filings. CAT.Opp.11. But 15 U.S.C. § 78s(b)(3)(C) just says that "Commission action pursuant to this subparagraph … shall not be reviewable under section 78y." Even if "action" here could include "a *failure* to suspend" a fee filing, *NetCoalition v. SEC*, 715 F.3d 342, 350 (D.C. Cir. 2013)—an issue this Court has yet to, and need not, address—petitioners are *not* seeking review of "the SEC's failure to suspend these filings." CAT.Opp.9. Instead, they have asked this Court to review (and stay) *the Order*—"a *different* SEC action"—and temporarily enjoin the collection of fees authorized by the Order to prevent irreparable harm and ensure that review is meaningful. CAT.Opp.3; *see* Exch.Opp.1 (emphasizing that "fee filings … are distinct from the Order"). The SROs therefore do not, and cannot, contend § 78s(b)(3)(C) *expressly* divested this Court of its inherent equitable authority, long recognized in the All Writs Act, to briefly stop the collection of CAT fees. CAT.Opp.11.

8

Instead, the SROs claim Congress *impliedly* displaced the All Writs Act and its underlying "equitable principles" by prohibiting this Court from enjoining the "collection" of fees. *Id.* But that runs headlong into "the strong presumption that repeals by implication are disfavored," *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018) (cleaned up), and "the presumption that traditional equitable principles apply," *Starbucks Corp. v. McKinney*, 144 S. Ct. 1570, 1577 (2024). The SROs never identify the "plain," *id.*, or "clear" command in Dodd-Frank necessary to overcome them, *Epic*, 584 U.S. 510.

Moreover, the SROs' theory proves too much. If § 78s(b)(3)(C) ousts this Court of jurisdiction over any case where the "harm" the challenger "seek[s] to redress" is ultimately "attributable to the SROs' fee filings," then petitioners could not even have challenged the Order. CAT.Opp.9. But even the SROs do not go that far; rather, they *agree* this Court can stay the Order and vacate it. CAT.Opp.13; CAT.Br.6. This confirms that whatever Dodd-Frank says about review of an SEC refusal to suspend fee filings, it leaves the rest of this Court's powers intact.

**B.**    The SROs' other points fare no better. They profess concern over CAT LLC members who are not "parties," but never deny they can be enjoined. CAT.Opp.10; *see* Mot.18. They also proffer petitioning the SEC to amend the fee filings as an adequate "alternative," CAT.Opp.12, but the SEC's denial of such a petition—a foregone conclusion here—would likely enjoy "an 'extremely deferential standard of review,'" *NASDAQ Stock Mkt., LLC v. SEC*, 961 F.3d 421, 431 (D.C. Cir. 2020); *cf. Clinton v. Goldsmith*, 526 U.S. 529, 537-40 (1999) (plenary review by agency followed by

9

full APA review in court "adequate"). In any event, "'the action challenged'" here is not a filing, but the Order itself. CAT.Opp.12.

The SROs likewise quibble their collection of fees now may not fully "moot this case." *Id.* But the SROs never deny their conduct would "'diminish[] the court's power to bring the litigation to a natural conclusion,'" which is all the All Writs Act requires. *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1102 (11th Cir. 2004); *see Berger v. Zeghibe*, 666 F. App'x 119, 123 (3d Cir. 2016) ("enjoining the distribution of assets" under the All Writs Act to "maintain the status quo" without threat of mootness). Every dollar paid pursuant to an unlawful Order before this Court rules is one more dollar of irreparable harm and one less dollar of relief this Court's judgment can ensure. Mot.18.

## CONCLUSION

The Court should grant petitioners' motion.

Dated: October 7, 2024

J. Michael Connolly
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
mike@consovoymccarthy.com

*Counsel for Petitioner*
*American Securities Association*

Respectfully submitted,

*/s/ Noel J. Francisco*
Noel J. Francisco
Yaakov M. Roth
Brian C. Rabbitt
Brinton Lucas
Joshua T. Hoyt
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
(202) 879-3939
njfrancisco@jonesday.com

David Phillips
JONES DAY
4655 Executive Dr., Ste. 1500
San Diego, CA 92121

*Counsel for Petitioner*
*Citadel Securities LLC*

11

## CERTIFICATE OF COMPLIANCE

I certify that this Reply complies with (1) the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2599 words, excluding any parts exempted by Rule 27(a)(2)(B); and (2) the typeface and type-style requirements of Rule 27(d)(1)(E) because it has been prepared in 14-point Garamond (a proportionally spaced typeface) using Microsoft Word.

Dated: October 7, 2024                    Respectfully submitted,

                                          */s/ Noel J. Francisco*

                                          *Counsel of Record for Petitioner*
                                          *Citadel Securities LLC*

Certificate 1

**CERTIFICATE OF ELECTRONIC SUBMISSION**

I certify that: (1) any required privacy redactions have been made; (2) the electronic submission of this document is an exact copy of any corresponding paper document; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free from viruses.

Dated: October 7, 2024                Respectfully submitted,

*/s/ Noel J. Francisco*

*Counsel of Record for Petitioner*
*Citadel Securities LLC*

Certificate 2

## CERTIFICATE OF SERVICE

I certify that on October 7, 2024, the foregoing Reply was electronically filed with the United States Court of Appeals for the Eleventh Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: October 7, 2024                    Respectfully submitted,

*/s/ Noel J. Francisco*

*Counsel of Record for Petitioner*
*Citadel Securities LLC*