No. 23-13396

---

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

AMERICAN SECURITIES ASSOCIATION AND CITADEL SECURITIES LLC,

*Petitioners*,

v.

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

*Respondent*,

THE NASDAQ STOCK MARKET, LLC, NASDAQ BX, INC., NASDAQ GEMX, LLC, NASDAQ ISE, LLC, NASDAQ MRX, LLC, ET AL.,

*Intervenors*.

---

Petition for Review of an Order of
the Securities and Exchange Commission
Release No. 34-98290; File No. 4-698

---

## RESPONSE TO PETITION FOR PANEL REHEARING

---

J. Michael Connolly
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
mike@consovoymccarthy.com

*Counsel for Petitioner*
*American Securities Association*

Noel J. Francisco
Brian C. Rabbitt
Brinton Lucas
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
(202) 879-3939
njfrancisco@jonesday.com

David Phillips
Kyle Gantz
JONES DAY
4655 Executive Dr., Ste. 1500
San Diego, CA 92121

*Counsel for Petitioner*
*Citadel Securities LLC*

## CERTIFICATE OF INTERESTED PERSONS

1. **Alternative Investment Management Association**, *Amicus Curiae*.

2. **Altman, Jennifer G.**, Pillsbury Winthrop Shaw Pittman LLP, counsel for NYSE Intervenors.

3. **American Free Enterprise Chamber of Commerce**, *Amicus Curiae*.

4. **American Securities Association**, Petitioner.

5. **ArentFox Schiff LLP**, counsel for Intervenors Cboe BYX Exchange, Inc., Cboe BZX Exchange, Inc., Cboe EDGA Exchange, Inc., Cboe EDGX Exchange, Inc., Cboe C2 Exchange, Inc., and Cboe Exchange, Inc.

6. **Ashbrook Byrne Kresge LLC**, counsel for *Amici Curiae* James Overdahl and S.P Kothari.

7. **Bailey, Andrew**, counsel for *Amicus Curiae* State of Missouri.

8. **Ballard Spahr LLP**, counsel for Intervenors The Nasdaq Stock Market LLC, Nasdaq BX, Inc., Nasdaq GEMX, LLC, Nasdaq ISE, LLC, Nasdaq MRX, LLC, and Nasdaq PHLX LLC.

9. **Baltz, Brian J.**, Willkie Farr & Gallagher LLP, counsel for *Amicus Curiae* Futures Industry Association.

10. **Barbero, Megan**, formerly counsel for Respondent United States Securities and Exchange Commission.

11. **Barr, William P.**, Torridon Law PLLC, counsel for *Amicus Curiae* American Free Enterprise Chamber of Commerce.

12. **Bash, John F.**, Quinn Emanuel Urquhart & Sullivan, LLP, counsel for *Amici Curiae* Senator Tom Cotton et al.

13. **Berman, Ari M.**, Pillsbury Winthrop Shaw Pittman LLP, counsel for NYSE Intervenors.

14. **Berry, Jonathan**, Boyden Gray PLLC, counsel for *Amicus Curiae* American Free Enterprise Chamber of Commerce.

15. **Bird, Brenna**, counsel for *Amicus Curiae* State of Iowa.

16. **Blask, Ariel**, Willkie Farr & Gallagher LLP, counsel for *Amicus Curiae* Futures Industry Association.

17. **Boden, Anastasia**, counsel for *Amici Curiae* Cato Institute and Investor Choice Advocates Network.

18. **Borse Dubai Limited**, owner of more than 10% of Nasdaq, Inc.'s shares.

19. **BOX Exchange LLC**, member and participant of Consolidated Audit Trail, LLC.

20. **Boyle, Gregory**, Jenner & Block LLP, counsel for Intervenor Consolidated Audit Trail, LLC.

21. **Boyden Gray PLLC**, counsel for *Amicus Curiae* American Free Enterprise Chamber of Commerce.

22. **Bronni, Nicholas J.**, counsel for *Amicus Curiae* State of Arkansas.

23. **Cato Institute**, *Amicus Curiae*.

24. **Carr, Chris**, counsel for *Amicus Curiae* State of Georgia

25. **Cboe BYX Exchange, Inc.**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

26. **Cboe BZX Exchange, Inc.**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

27. **Cboe C2 Exchange, Inc.**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

28. **Cboe EDGA Exchange, Inc.**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

29. **Cboe EDGX Exchange, Inc.**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

30. **Cboe Exchange, Inc.**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

31. **Cboe Global Markets, Inc. (BATS: CBOE)**, direct or indirect parent company of Intervenors Cboe BYX Exchange, Inc., Cboe BZX Exchange, Inc., Cboe

EDGA Exchange, Inc., Cboe EDGX Exchange, Inc., Cboe C2 Exchange, Inc., and Cboe Exchange, Inc.

32. **Chenoweth, Mark S.**, counsel for *Amicus Curiae* New Civil Liberties Alliance.

33. **Citadel Securities GP LLC**, parent company of Petitioner Citadel Securities LLC.

34. **Citadel Securities LLC**, Petitioner.

35. **Coleman, Russell**, counsel for *Amicus Curiae* Commonwealth of Kentucky.

36. **Committee on Capital Markets Regulation**, *Amicus Curiae*.

37. **Commonwealth of Kentucky**, *Amicus Curiae*.

38. **Commonwealth of Virginia**, *Amicus Curiae*.

39. **Competitive Enterprise Institute**, *Amicus Curiae*.

40. **Conley, Michael A.**, counsel for Respondent United States Securities and Exchange Commission.

41. **Connolly, J. Michael**, Consovoy McCarthy PLLC, counsel for Petitioner American Securities Association.

42. **Consolidated Audit Trail, LLC**, Intervenor.

43. **Consovoy McCarthy PLLC**, counsel for Petitioner American Securities Association.

44. **Deutsch, Elizabeth**, Jenner & Block LLP, counsel for Intervenor Consolidated Audit Trail, LLC.

45. **Financial Industry Regulatory Authority, Inc.**, member and participant of Intervenor Consolidated Audit Trail, LLC.

46. **Fitch, Lynn**, counsel for *Amicus Curiae* State of Mississippi.

47. **Flowers, Benjamin M.**, Ashbrook Byrne Kresge LLC, counsel for *Amici Curiae* James Overdahl and S.P. Kothari.

48. **Formella, John M.**, counsel for *Amicus Curiae* State of New Hampshire.

49. **Francisco, Noel J.**, Jones Day, counsel for Petitioner Citadel Securities LLC.

50. **Futures Industry Association**, *Amicus Curiae*.

51. **Gantz, Kyle**, Jones Day, counsel for Petitioner Citadel Securities LLC.

52. **Gershengorn, Ian Heath**, Jenner & Block LLP, counsel for Intervenor Consolidated Audit Trail, LLC.

53. **Greenberg, Dan**, counsel for *Amicus Curiae* Competitive Enterprise Institute.

54. **Greenwalt III, Paul E.**, ArentFox Schiff LLP, counsel for Intervenors Cboe BYX Exchange, Inc., Cboe BZX Exchange, Inc., Cboe EDGA Exchange, Inc., Cboe EDGX Exchange, Inc., Cboe C2 Exchange, Inc., and Cboe Exchange, Inc.

55. **Griffin, Tim**, counsel for *Amicus Curiae* State of Arkansas.

56. **Hardin, Tracey A.**, counsel for Respondent United States Securities and Exchange Commission.

57. **Hilgers, Michael T.**, counsel for *Amicus Curiae* State of Nebraska.

58. **Hopen, David A.**, Paul, Weiss, Rifkind, Wharton & Garrison LLP, counsel for *Amici Curiae* Securities Industry and Financial Markets Association et al.

59. **Hoyt, Joshua T.**, Jones Day, formerly counsel for Petitioner Citadel Securities LLC.

60. **Intercontinental Exchange, Inc. (NYSE: ICE)**, indirect parent of NYSE Intervenors.

61. **International Securities Exchange Holdings, Inc.**, sole LLC member of Intervenors Nasdaq GEMX LLC, Nasdaq ISE LLC, and Nasdaq MRX LLC.

62. **Investment Company Institute**, *Amicus Curiae*.

63. **Investor AB (Nasdaq Stockholm: INVEB)**, owner of more than 10% of Nasdaq, Inc.'s shares.

64. **Investor Choice Advocates Network**, *Amicus Curiae*.

65. **Investors' Exchange, LLC**, member and participant of Intervenor Consolidated Audit Trail, LLC.

66.  **Jackley, Marty**, counsel for *Amicus Curiae* State of South Dakota.

67.  **Jacobs, Dylan, L.**, counsel for *Amicus Curiae* State of Arkansas.

68.  **Jenner & Block LLP**, counsel for Intervenor Consolidated Audit Trail, LLC.

69.  **Jones Day**, counsel for Petitioner Citadel Securities LLC.

70.  **Kastenberg, Stephen J.**, Ballard Spahr LLP, counsel for Intervenors The Nasdaq Stock Market LLC, Nasdaq BX, Inc., Nasdaq GEMX, LLC, Nasdaq ISE, LLC, Nasdaq MRX, LLC, and Nasdaq PHLX LLC.

71.  **Katsiff, Timothy D.**, Ballard Spahr LLP, counsel for Intervenors The Nasdaq Stock Market LLC, Nasdaq BX, Inc., Nasdaq GEMX, LLC, Nasdaq ISE, LLC, Nasdaq MRX, LLC, and Nasdaq PHLX LLC.

72.  **Kennedy, Jordan**, counsel for Respondent United States Securities and Exchange Commission.

73.  **Knudsen, Austin**, counsel for *Amicus Curiae* State of Montana.

74.  **Kobach, Kris W.**, counsel for *Amicus Curiae* State of Kansas.

75.  **Kothari, S.P.**, *Amicus Curiae*.

76.  **Kumar, Neal**, Willkie Farr & Gallagher LLP, counsel for *Amicus Curiae* Futures Industry Association.

77.  **Labrador, Raúl R.**, counsel for *Amicus Curiae* State of Idaho.

78.  **Lantieri III, Paul**, Ballard Spahr LLP, counsel for Intervenors The Nasdaq Stock Market LLC, Nasdaq BX, Inc., Nasdaq GEMX, LLC, Nasdaq ISE, LLC, Nasdaq MRX, LLC, and Nasdaq PHLX LLC.

79.  **Little, Margaret A.**, counsel for *Amicus Curiae* New Civil Liberties Alliance.

80.  **Lipshutz, Brian M.**, Paul, Weiss, Rifkind, Wharton & Garrison LLP, counsel for *Amici Curiae* Securities Industry and Financial Markets Association et al.

81.  **Long-Term Stock Exchange, Inc.**, member and participant of Intervenor Consolidated Audit Trail, LLC.

82.  **Lucas, Brinton**, Jones Day, counsel for Petitioner Citadel Securities LLC.

83. **MacLean, Matthew J.**, Pillsbury Winthrop Shaw Pittman LLP, counsel for NYSE Intervenors.

84. **Managed Funds Association**, *Amicus Curiae*.

85. **Marshall, Jonathan J.**, Jenner & Block LLP, counsel for Intervenor Consolidated Audit Trail, LLC.

86. **Marshall, Steve**, counsel for *Amicus Curiae* State of Alabama.

87. **Matro, Daniel E.**, counsel for Respondent United States Securities and Exchange Commission.

88. **McCotter, R. Trent**, Boyden Gray PLLC, counsel for *Amicus Curiae* American Free Enterprise Chamber of Commerce.

89. **MEMX LLC**, member and participant of Intervenor Consolidated Audit Trail, LLC.

90. **Miami International Securities Exchange LLC**, member and participant of Intervenor Consolidated Audit Trail, LLC.

91. **MIAX Emerald, LLC**, member and participant of Intervenor Consolidated Audit Trail, LLC.

92. **MIAX Pearl, LLC**, member and participant of Intervenor Consolidated Audit Trail, LLC.

93. **MIAX Sapphire, LLC**, member and participant of Intervenor Consolidated Audit Trail, LLC.

94. **Michel, Christopher G.**, Quinn Emanuel Urquhart & Sullivan, LLP, counsel for *Amici Curiae* Senator Tom Cotton et al.

95. **Miyares, Jason**, counsel for *Amicus Curiae* Commonwealth of Virginia.

96. **Modern Markets Initiative, Inc.**, sponsor of funding for brief for *Amici Curiae* James Overdahl and S.P. Kothari disclosed pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E).

97. **Molzberger, Michael**, ArentFox Schiff LLP, counsel for Intervenors Cboe BYX Exchange, Inc., Cboe BZX Exchange, Inc., Cboe EDGA Exchange, Inc., Cboe EDGX Exchange, Inc., Cboe C2 Exchange, Inc., and Cboe Exchange, Inc.

98. **Montgomery, Sophia W.**, Jenner & Block LLP, counsel for Intervenor Consolidated Audit Trail, LLC.

99. **Moody, Ashley**, counsel for *Amicus Curiae* State of Florida.

100. **Morris, Andrew, J.**, counsel for *Amicus Curiae* New Civil Liberties Alliance.

101. **Morrisey, Patrick**, counsel for *Amicus Curiae* State of West Virginia.

102. **Murrill, Liz**, counsel for *Amicus Curiae* State of Louisiana.

103. **Nabors, David A.**, Quinn Emanuel Urquhart & Sullivan, LLP, counsel for *Amici Curiae* Tom Cotton et al.

104. **Nasdaq BX, Inc.**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

105. **Nasdaq GEMX, LLC**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

106. **Nasdaq, Inc. (Nasdaq: NDAQ)**, sole owner of LLC interest in The Nasdaq Stock Market LLC and Nasdaq PHLX LLC and parent company of Nasdaq BX, Inc.

107. **Nasdaq ISE, LLC**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

108. **Nasdaq MRX, LLC**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

109. **Nasdaq PHLX LLC**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

110. **New York Stock Exchange LLC**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

111. **New Civil Liberties Alliance**, *Amicus Curiae*.

112. **NYSE American LLC**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

113. **NYSE Arca, Inc.**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

114. **NYSE Chicago, Inc.**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

115. **NYSE National, Inc.**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

116. **Oliwenstein, David**, Pillsbury Winthrop Shaw Pittman LLP, counsel for NYSE Intervenors.

117. **Orr, Caleb**, Boyden Gray PLLC, counsel for *Amicus Curiae* American Free Enterprise Chamber of Commerce.

118. **Overdahl, James**, *Amicus Curiae*.

119. **Paul, Weiss, Rifkind, Wharton & Garrison LLP**, counsel for *Amici Curiae* Securities Industry and Financial Markets Association et al.

120. **Paxton, Ken**, counsel for *Amicus Curiae* State of Texas.

121. **Phillips, David**, Jones Day, counsel for Petitioner Citadel Securities LLC.

122. **Pillsbury Winthrop Shaw Pittman LLP**, counsel for NYSE Intervenors.

123. **Quinn Emanuel Urquhart & Sullivan, LLP**, counsel for *Amici Curiae* Senator Tom Cotton et al.

124. **Rabbitt, Brian C.**, Jones Day, counsel for Petitioner Citadel Securities LLC.

125. **Reisner, Lorin L.**, Paul, Weiss, Rifkind, Wharton & Garrison LLP, counsel for *Amici Curiae* Securities Industry and Financial Markets Association et al.

126. **Representatives Mark Alford, Don Bacon, Michael Collins, Scott Fitzgerald, French Hill, Barry Loudermilk, Alex X. Mooney, Ralph Norman, John Rose, Keith Self, Randy Weber, and Steve Womack**, *Amici Curiae*.

127. **Reyes, Sean**, counsel for *Amicus Curiae* State of Utah.

128. **Rokita, Theodore E.**, counsel for *Amicus Curiae* State of Indiana.

129. **Roth, Yaakov M.**, Jones Day, formerly counsel for Petitioner Citadel Securities LLC.

130. **Schulp, Jennifer**, counsel for *Amici Curiae* Cato Institute and Investor Choice Advocates Network.

131. **Schwartz, Yishai**, Paul, Weiss, Rifkind, Wharton & Garrison LLP, counsel for *Amici Curiae* Securities Industry and Financial Markets Association et al.

132. **Securities Industry and Financial Markets Association**, *Amicus Curiae*.

133. **Senators Tom Cotton, John Boozman, Make Braun, Kevin Kramer, Steve Daines, Bill Hagerty, John Kennedy, Jerry Moran, Pete Ricketts, and Tim Scott**, *Amici Curiae*.

134. **Shanmugam, Kannon K.**, Paul, Weiss, Rifkind, Wharton & Garrison LLP, counsel for *Amici Curiae*, Securities Industry and Financial Markets Association et al.

135. **Skorup, Brent**, counsel for *Amici Curiae* Cato Institute and Investor Choice Advocates Network.

136. **Sobel, Zachary J.**, Quinn Emanuel Urquhart & Sullivan, LLP, counsel for *Amici Curiae* Senator Tom Cotton et al.

137. **State of Alabama**, *Amicus Curiae*.

138. **State of Arkansas**, *Amicus Curiae*.

139. **State of Florida**, *Amicus Curiae*.

140. **State of Georgia**, *Amicus Curiae*.

141. **State of Idaho**, *Amicus Curiae*.

142. **State of Indiana**, *Amicus Curiae*.

143. **State of Iowa**, *Amicus Curiae*.

144. **State of Kansas**, *Amicus Curiae*.

145. **State of Louisiana**, *Amicus Curiae*.

146. **State of Mississippi**, *Amicus Curiae*.

147. **State of Missouri**, *Amicus Curiae*.

148. **State of Montana**, *Amicus Curiae*.

149. **State of Nebraska**, *Amicus Curiae*.

150. **State of New Hampshire**, *Amicus Curiae*.

151. **State of North Dakota**, *Amicus Curiae*.

152. **State of Ohio**, *Amicus Curiae*.

153. **State of South Carolina**, *Amicus Curiae*.

154. **State of South Dakota**, *Amicus Curiae*.

155. **State of Texas**, *Amicus Curiae*.

156. **State of Utah**, *Amicus Curiae*.

157. **State of West Virginia**, *Amicus Curiae*.

158. **The Nasdaq Stock Market LLC**, Intervenor and member and participant of Intervenor Consolidated Audit Trail, LLC.

159. **The Vanguard Group, Inc.**, owned 10% or more of Cboe Global Markets, Inc.'s common stock as of June 30, 2023.

160. **Thoma Bravo UGP, LLC**, owner of more than 10% of Nasdaq, Inc.'s shares.

161. **Torridon Law PLLC**, counsel for *Amicus Curiae* American Free Enterprise Chamber of Commerce.

162. **Unikowsky, Adam G.**, Jenner & Block LLP, counsel for Intervenor Consolidated Audit Trail, LLC.

163. **United States Securities and Exchange Commission**, Respondent.

164. **Virtu Financial, Inc.**, *Amicus Curiae*.

165. **Watkins, Devin**, counsel for *Amicus Curiae* Competitive Enterprise Institute.

166. **Willkie Farr & Gallagher LLP**, counsel for *Amicus Curiae* Futures Industry Association.

167. **Wilson, Alan**, counsel for *Amicus Curiae* State of South Carolina.

168. **Wrigley, Drew H.**, counsel for *Amicus Curiae* State of North Dakota.

169. **Yost, Dave**, counsel for *Amicus Curiae* State of Ohio.

Dated: September 16, 2025

Respectfully submitted,

*/s/ J. Michael Connolly*
J. Michael Connolly
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
mike@consovoymccarthy.com

*Counsel for Petitioner*
*American Securities Association*

*/s/ Noel J. Francisco*
Noel J. Francisco
Brian C. Rabbitt
Brinton Lucas
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
(202) 879-3939
njfrancisco@jonesday.com

David Phillips
Kyle Gantz
JONES DAY
4655 Executive Dr., Ste. 1500
San Diego, CA 92121

*Counsel for Petitioner*
*Citadel Securities LLC*

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 26.1-2, the undersigned counsel hereby certify that no parent corporation, and no publicly held corporation has a 10% or greater ownership interest in the American Securities Association.

Petitioner Citadel Securities LLC is a wholly owned, indirect subsidiary of Citadel Securities GP LLC. Counsel further certify that no publicly held corporation has a 10% or greater ownership interest in Citadel Securities GP LLC.

Dated: September 16, 2025

Respectfully submitted,

*/s/ J. Michael Connolly*
J. Michael Connolly
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
mike@consovoymccarthy.com

*Counsel for Petitioner*
*American Securities Association*

*/s/ Noel J. Francisco*
Noel J. Francisco
Brian C. Rabbitt
Brinton Lucas
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
(202) 879-3939
njfrancisco@jonesday.com

David Phillips
Kyle Gantz
JONES DAY
4655 Executive Dr., Ste. 1500
San Diego, CA 92121

*Counsel for Petitioner*
*Citadel Securities LLC*

# TABLE OF CONTENTS

**Page(s)**

CERTIFICATE OF INTERESTED PERSONS ...................................................... C-1

CORPORATE DISCLOSURE STATEMENT ...................................................... C-12

TABLE OF CONTENTS .............................................................................. i

TABLE OF AUTHORITIES ......................................................................... ii

INTRODUCTION ....................................................................................... 1

BACKGROUND ........................................................................................ 3

ARGUMENT ............................................................................................ 5

I.  THE SROS' REHEARING PETITION IS A MERITLESS
    ATTEMPT TO RELITIGATE THE APPROPRIATE REMEDY. ............... 5

II.  THE SROS' ARGUMENTS FOR PANEL REHEARING FAIL. ................. 8

CONCLUSION ........................................................................................ 14

CERTIFICATE OF COMPLIANCE ......................................................... Certificate 1

CERTIFICATE OF ELECTRONIC SUBMISSION ................................. Certificate 2

CERTIFICATE OF SERVICE ................................................................. Certificate 3

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alabama Ass'n of Realtors v. HHS,*
    594 U.S. 758 (2021) ............................................................... 13

*Chamber of Commerce v. SEC,*
    88 F.4th 1115 (5th Cir. 2023) ................................................ 7

*Johnson v. Bechtel Assocs. Pro. Corp., D.C.,*
    801 F.2d 412 (D.C. Cir. 1986) ............................................... 14

*Pittman by Pope v. Sec'y, Fla. Dep't of Health & Rehab. Servs.,*
    998 F.2d 887 (11th Cir. 1993) ............................................... 14

*United States v. Johnson,*
    399 F.3d 1297 (11th Cir. 2005) ............................................. 14

STATUTES

15 U.S.C. § 78s .......................................................................... 14

OTHER AUTHORITIES

11th Cir. R. 40 I.O.P. 2. ........................................................... 2, 5

17 C.F.R. § 242.608 .................................................................. 7

81 Fed. Reg. 84696 (2016) ....................................................... 10

88 Fed. Reg. 62628 (2023) ....................................................... 7

P. Atkins, *Prepared Remarks Before SEC Speaks* (May 19, 2025) .................. 1, 8

CAT Alert 2025-03 (Aug. 14, 2025) ......................................... 4, 11

Letter from CAT LLC to V. Countryman (June 13, 2024) ........... 3

Letter from CAT LLC to V. Countryman (Sept. 5, 2025) ........... 7

## INTRODUCTION

This Court should promptly deny the SROs' procedurally improper rehearing petition, which is little more than a transparent attempt to delay the inevitable effect of this Court's ruling and further prolong their efforts to continue collecting tens of millions of dollars per month in unrecoverable fees from broker-dealers.

The SROs' petition offers no good reason for this Court to disturb its judgment. Acting through CAT LLC, the SROs do not claim *any* error—factual or legal—in this Court's analysis of the merits. Op. 13-24. Nor do they point to any defect in this Court's remedy—vacatur of the Funding Order and a stay of the judgment for 60 days. Op. 24-29. Instead, the SROs seek rehearing solely for the supposedly "limited purpose" of having this Court "modify" its remedy by "extend[ing] the stay" for another 90 days to give them more time "to address the Court's ruling." Pet. 1. But that is just a dressed-up request for remand without vacatur—a remedy this Court rejected the last time the SROs asked for it. Op. 25-27. For good reason: Among other things, this Court declined to pass on petitioners' argument that the CAT itself is unlawful and found that the Funding Order suffers from multiple flaws that will take substantial time for the SEC to address and resolve. Op. 13-14. It makes no sense for broker-dealers to continue spending tens of millions per month to bankroll a legally dubious enterprise under the terms of a concededly unlawful Funding Order while the SEC launches "a comprehensive review" of the entire system. P. Atkins, *Prepared Remarks Before SEC Speaks* (May 19, 2025), https://tinyurl.com/4pez7he9.

1

The SROs' request therefore flouts this Court's standard for panel-rehearing petitions. It does not "bring to the attention of the panel claimed errors of fact or law in the opinion"; indeed, it does not assert that this Court made any errors at all. 11th Cir. R. 40 I.O.P. 2. Instead, it merely smuggles in a warmed-over "reargument of the issues previously presented"—the propriety of remand without vacatur—which this Court has warned these petitions are "*not* to be used for." *Id.*

This Court therefore should swiftly deny the SROs' petition and confirm that it will not give dissatisfied litigants a second bite at the apple. For the SROs, however, time is money. Despite this Court's ruling and their duty as quasi-governmental regulators to scrupulously follow the law, the SROs have admitted that they intend to continue collecting tens of millions in CAT fees from broker-dealers every month for as long as they can—even while acquiescing to this Court's judgment that the Order is unlawful. Now, they appear to be counting on this Court giving them 90 extra days (plus the time it takes to resolve this meritless petition) to try to fleece broker-dealers for nearly a 100 million more in unrecoverable fees under an order that *no one*—not this Court, not the SROs, not CAT LLC, and not the SEC itself—maintains is lawful.

This Court should decline to play along with this transparent money grab. Especially now that the SROs have abandoned any defense of the Funding Order's lawfulness, this Court should make clear they do not get extra time to use it to run the meter on broker-dealers.

## BACKGROUND

**1.** This Court is well-acquainted with the CAT, the Funding Order, and the SROs' imposition of CAT fees on broker-dealers. Op. 4-12, 20. In brief, the Order purported to settle the allocation of CAT costs between the SROs and their broker-dealer members, giving the SROs the green light to begin collecting fees. Op. 9-11.

Petitioners timely challenged the Order, arguing that the CAT itself exceeds the SEC's authority and that the Order independently violates the APA. Pet. Br. 5. The SROs intervened to defend the Funding Order but not the lawfulness of the CAT itself. CAT LLC Br. 51. In the meantime, they began trying to collect hundreds of millions of dollars in CAT costs from broker-dealers. As the SROs admitted, they wanted to secure as many millions in CAT fees as possible from broker-dealers *before* this "litigation" was "resolved" in case petitioners' challenge was "successful." Letter from CAT LLC to V. Countryman 45 (June 13, 2024), https://tinyurl.com/28dc58p2. The SROs have now extracted hundreds of millions from broker-dealers, and monthly bills continue today.

**2.** On July 25, 2025, this Court unanimously vacated the Funding Order as unlawful under the APA. Op. 29. The Court saw no need to address whether "the CAT itself is unlawful" because it agreed that the "Funding Order's allocation of costs and its economic analysis are arbitrary and capricious." Op. 13-14. It then rejected the SROs' request for "remand without vacatur," explaining that vacatur of the Funding Order "will minimally affect the status quo," as the CAT "has operated without a funding order since 2016." Op. 24, 27-28.

3

On the other side of the balance, the Court recognized that if it "were to remand without vacatur," the SROs could "pass on their share of CAT costs to the broker-dealers while the Commission revises its order," thereby leaving the broker-dealers "without a remedy" due to the SROs' "'immunity'" as quasi-governmental actors. Op. 27. But to give "the Commission and the industry… some time to adjust and react," the Court granted the unusual remedy of a "short stay" of 60 days following the issuance of the mandate. Op. 27-28; *see* Op. 24 (explaining vacatur is the "'ordinary'" remedy).

Rather than suspend payment of CAT fees in light of the Funding Order's unlawfulness, however, the SROs (via CAT LLC) doubled down, announcing that this Court's stay of its judgment "temporarily preserves the status quo for CAT funding and CAT billing." CAT Alert 2025-03 (Aug. 14, 2025), https://perma.cc/3YTP-3PZW. "As a result," they asserted, "CAT fees remain in effect and will continue to be invoiced and collected while the stay is in effect." *Id.*

In short, the SROs have used this Court's original 60-day stay—and will likewise use any stay extension—to continue demanding fees pursuant to a Funding Order that this Court has declared unlawful. To that end, on September 8, 2025, the SROs (through CAT LLC) filed a rehearing petition asking this Court to extend its 60-day stay of the judgment for yet another 90 days "to give the SEC time to act on" their latest proposal—a revised funding model that is essentially identical but for a prohibition on SRO pass-throughs of CAT fees to broker-dealers. Pet. iii.

## ARGUMENT

## I.    THE SROS' REHEARING PETITION IS A MERITLESS ATTEMPT TO RELITIGATE THE APPROPRIATE REMEDY.

This Court has made clear that a "petition for panel rehearing" should be filed only "to bring to the attention of the panel claimed errors of fact or law in the opinion"; it "is *not* to be used for reargument of the issues previously presented." 11th Cir. R. 40 I.O.P. 2. Yet the SROs' petition does exactly that. It does not claim *any* error—factual or legal, on the merits or as to the remedy—in this Court's analysis.

Instead, the SROs try to use their petition to relitigate the appropriate remedy. In their merits brief, the SROs (through CAT LLC) urged this Court to grant "[r]emand without vacatur" if it agreed with petitioners "that the SEC was required to anticipatorily prohibit SROs from passing through their one-third share of CAT costs" or had failed to update "its 2016 economic analysis." CAT LLC Br. 50. In the SROs' view, petitioners should not get a "reprieve from paying" for the CAT while the SEC addresses "the issue of future pass-throughs" or any "procedural error." *Id.* at 50-51.

This Court squarely rejected that request. Observing that CAT LLC claimed it had "two other options" apart from vacatur—"remand without vacatur" or a "stay" of the "vacatur"—this Court settled on a "limited" version of the latter. Op. 24, 27; *see* Pet. 5. In doing so, the Court recognized that the SROs should not be permitted to "pass on their share of CAT costs to the broker-dealers while the Commission revises its order." Op. 27.

The SROs nevertheless return to the Court with the same request this Court rejected: They ask for a stay of the vacatur to allow "a seamless transition to a new funding model" while they continue "to collect fees" under the Funding Order this Court already has found to be unlawful. Pet. 11-12. That is materially indistinguishable from the remand without vacatur they proposed—and this Court rejected—before.

Moreover, the SROs' petition provides no basis for this Court to conclude that the SEC will even attempt "a seamless transition to a new funding model" within an additional 90 days, as the SEC has instead announced a comprehensive review of the CAT itself. Pet. 12. Perhaps for that reason, the SEC has not filed a petition asking this Court to extend the stay (or do anything else). Nor has it joined in the SROs' claims that a "gap between funding models" could harm "the public interest in comprehensive, continuous oversight of the securities markets." Pet. 11. And even by the SROs' account, the SEC tellingly has not committed to *completing* any "process" within 150 days—an apparently arbitrary period with no basis in the Exchange Act or the CAT NMS plan—let alone *deciding* "whether to approve the [new SRO] proposal." *Id.*

The SEC's refusal to commit to the SROs' proposed timeline is unsurprising given the magnitude of the task before it. The SROs' request conveniently downplays that pass-throughs were not the only flaw this Court identified in the Funding Order. The Court also held that the SEC violated the APA by relying on a "seven-year-old economic analysis that (1) left many important details blank and (2) underestimated the costs of the CAT by hundreds of millions of dollars." Op. 23.

6

The SEC has said nothing on how it intends to resolve this issue. And the SROs' petition never even attempts to explain how the SEC could remedy its "deficient" "economic analysis," let alone estimate how long that massive undertaking might last. Pet. 5; *see, e.g.*, *Chamber of Commerce v. SEC*, 88 F.4th 1115, 1118 (5th Cir. 2023) (vacating order after the SEC "failed to conduct a proper cost-benefit analysis" within remand period). Neither does the SROs' latest funding proposal, which they concede is just "the same" as their 2023 one save for a new "paragraph" barring SRO pass-throughs. Letter from CAT LLC to V. Countryman 4 (Sept. 5, 2025), https://perma.cc/7KJD-UPM9.

When the SEC finally turns to revising its flawed and outdated economic analysis, it may well find that the events of the past nine years require any number of revisions to the funding model, including a different allocation of fees altogether. Among other things, the SEC's 2016 analysis "underestimated the costs of the CAT by hundreds of millions of dollars." Op. 23. The notion that the Commission will now be able to "conduct a new economic analysis" within 150 days beggars belief, especially as it took the SEC even *longer* to approve the 2023 Funding Order lacking that examination. Op. 24; *see* 88 Fed. Reg. 62628, 62628 (2023); 17 C.F.R. § 242.608(b)(2)(ii) (giving SEC up to 300 days from notice of publication to approve CAT LLC's proposals).

The SROs' implausible suggestion that a new funding model will emerge in just 150 days also ignores other key issues the SEC will need to tackle. For example, the SROs say nothing about how the SEC or its new economic analysis will account for the

millions in unlawful fees FINRA has already passed through to broker-dealers under the vacated Funding Order. Nor do they explain how the SEC will reconcile their latest proposal—which they describe as largely the "same" as their 2023 one—with the "comprehensive review of the CAT" the SEC has now ordered. Atkins, *supra*.

The SROs therefore will likely be back three months from now to request yet *another* extension of what was supposed to be just a "short stay." Op. 28; *see* Pet. 1 n.2. But remand without vacatur via seriatim stays of the judgment is remand without vacatur all the same. There is nothing "modest" about such a request—one this Court rejected just two months ago. Pet. 12.

The problems with that remedy likewise have not changed since this Court's decision. As the Court explained, if it "were to remand without vacatur," the SROs would be able to extract payments for "CAT costs" from "broker-dealers while the Commission revises its order"—sums the Court found broker-dealers could not recover later thanks to the SROs' "'immunity.'" Op. 27. That would leave broker-dealers "without a remedy." *Id.* Indeed, that is the point of the SRO's request—to continue collecting unrecoverable fees under an unlawful order. The Court should reject that take-the-money-and-run strategy.

## II.    THE SROS' ARGUMENTS FOR PANEL REHEARING FAIL.

In any event, the SROs' recycled request for what is functionally a remand without vacatur fails on its own terms. Each of their arguments for this inequitable remedy is no more persuasive this time around.

8

**A.** The SROs first suggest that this Court *always* intended to stay the judgment until the SEC replaced the Funding Order—it just was "unclear" in July "what exactly the next steps and timeline would be." Pet. 9. Now that the SROs have proposed a replacement model, they insist that a 150-day stay is necessary to allow the SEC's process to conclude. Pet. 9-10.

Nonsense. If this Court wanted that result, it would have simply remanded without vacatur. But it squarely rejected that remedy. Instead, the Court recognized that its vacatur "leaves the CAT without a [funding] mechanism," and it gave the SEC and the industry "time to adjust and react to this reality." Op. 27. It also noted that the CAT "will presumably continue" to operate "without a funding order." Op. 26-27. In short, the Court saw vacatur as a certainty, not a hypothetical.

Nor was the Court's choice of a 60-day stay merely an opening bid to be renegotiated over time. To the contrary, that carefully chosen period—now extended indefinitely by the filing of the rehearing petition—already gives the SROs and the SEC a more-than-generous measure of time to "adjust and react" to this Court's decision in any number of ways. Op. 27. It gives the Commission's new leadership months to continue their comprehensive review of the CAT. It gives the SEC an opportunity to begin folding the CAT's funding into its own budget, or to ask Congress to bankroll the enterprise. And it gives the SROs time to prepare to run the CAT without an operative funding model, just as they have done since 2016. Op. 26-27.

Denying the SROs' request for more time also "will minimally affect the status quo." Op. 27. While the SROs insist that any "gap" between the regime of the vacated Funding Order and its replacement would hurt the public by fostering "uncertainty" and threatening "a lack of funding of the CAT altogether," the SEC has not endorsed those claims. Pet. 10-11. Moreover, this Court considered, and rejected, such fearmongering before. Pet. 2, 11. As it explained, "[t]he CAT has operated without a funding order since 2016 and will presumably continue to do so." Op. 26-27. So sticking to the schedule "likely will not trigger serious 'disruptive consequences.'" Op. 26.

The SROs identify nothing that calls that judgment into question. Nor could they as a practical matter, given their legal obligation under the CAT NMS Plan to continue operating the CAT regardless of whether there is a funding regime in place. *See* 81 Fed. Reg. 84696, 84963 (2016). The only thing that will cause "uncertainty" is creating an even longer period in which the concededly unlawful Funding Order—and the fee demands based on it—remain in a judicial-administrative limbo and can be exploited by the SROs to demand tens of millions more from broker-dealers. Pet. 10.

**B.** The SROs fare no better in renewing their claim that allowing petitioners to "free-ride" while a replacement model is developed would be "deeply inequitable" because the SROs have spent nearly $1 billion on the CAT "on the expectation that such costs would be shared." Pet. 11. This argument is wrong at each step, as the "equitable considerations" here still "favor" petitioners. Op. 14.

To begin, the SROs omit that broker-dealers already have forked over hundreds of millions in fees under the concededly unlawful Funding Order (including FINRA's pass-through of its entire share). And that is on top of the billions in internal costs broker-dealers have incurred complying with the CAT's requirements. *See* Pet. Br. 21. This is not "free-riding," especially where petitioners oppose the entire system as unlawful.

In any event, the SROs have no one but themselves to blame for their current situation. They could have challenged the lawfulness of the CAT at any point, but they chose instead to play along for years (and do not defend the CAT even now). Then, they persuaded the SEC to adopt an unlawful Funding Order that purported to allow them to shunt all of their costs onto broker-dealers. Whatever the wisdom of the SROs' go-for-broke strategy, its fallout is not *petitioners'* fault, as they took on the CAT as soon as the SEC issued an order requiring *broker-dealers* to pay. The only thing that is "deeply inequitable" here is the SROs' gamesmanship in trying to shift the costs of their bad bet onto broker-dealers based on an order they now accept is unlawful. Pet. 11.

**C.**     Most incredibly, the SROs claim a "90-day extension of th[e] stay will not pose any further harm to petitioners." Pet. 10. That makes no sense given the SROs' position that "CAT fees … will continue to be invoiced and collected while the stay is in effect." CAT Alert 2025-03. The SROs try to square that circle by suggesting this Court cared only about a "pass through" of their CAT costs to broker-dealers. Pet. 10. But that is false, as the Court held that the SEC's failure to conduct an adequate

11

economic analysis independently doomed the Funding Order. Op. 21. Indeed, if the Court had cared only about the unlawful pass-throughs permitted by the order, it would have accepted the SROs' request to "vacate only part of the Order" rather than the "wholesale vacatur" it opted for. CAT LLC Br. 48-51.

That deliberate choice reflects both that this Court viewed the "economic analysis" underlying the entire Funding Order as "deficient," Op. 21, and that it declined to address "the CAT's lawfulness," Op. 14. Each of those defects renders the Order unlawful in its entirety. And that makes the SROs' seizure of broker-dealers' funds under that impermissible regime a classic harm. After all, petitioners maintain that the CAT itself exceeds the SEC's authority, and *no* funding model can be permissible if *the project being funded* is unlawful to begin with. Pet. Br. 13-31. The Court concluded it was unnecessary to address that argument because it could "resolve this appeal on administrative law grounds." Op. 14. And so it did, by providing the exact same relief it would have granted had it concluded the CAT was unlawful—vacatur of the Order. Op. 27; *see* Pet. Br. 31.

The SROs' request, by contrast, would provide *less* relief to petitioners by withholding any vacatur until there is "a seamless transition to a new funding model." Pet. 12. But that request is based on the unstated (and false) premise that the CAT itself is lawful, even though the SROs have steadfastly chosen not to defend its legality, and this Court decided not to reach that issue. The relief granted to petitioners should continue to reflect those choices. Op. 14.

12

Indeed, the SROs' assertion that this Court's adherence to its chosen remedy—vacatur accompanied by a 60-day stay—will cause *them* "harm" gives away the game. Pet. 7. The SROs want this Court "to revisit" its remedy precisely because that remedy creates an undeniable end-date for their cash grab. *Id.*

The SROs therefore retreat to their longstanding suggestion that the SEC may rectify any "'overpayments'" by broker-dealers through some byzantine administrative process in the future. Pet. 4, 11. But this Court has already discounted such speculation in crafting its remedy. *See* Op. 27 (noting that once CAT fees are paid, "broker-dealers" are "left without a remedy" because of the SROs' "'immunity'"). Rightly so. Even if such *post hoc* balancing were permissible, a 90-day extension of the stay would undeniably put broker-dealers "at *risk* of irreparable harm by depriving them of [money] with no *guarantee* of eventual recovery." *Alabama Ass'n of Realtors v. HHS*, 594 U.S. 758, 765 (2021) (emphases added). The tens of millions in unlawful pass-through costs that FINRA imposed under the unlawful Funding Order are a case in point. The SROs (conveniently) make no effort to explain how broker-dealers will be compensated for those overpayments, which FINRA has now "agree[d]" not to attempt to collect in the future but has not promised to pay back. Pet. 2; *see* Pet. 7, 10.

If the SEC were to approve a new funding model that was lawful, the SROs could then attempt to recoup appropriate CAT fees that went uncollected in the interim via invoices for back-payments—just as they have done for historical costs incurred before there was a funding model. Given the SROs' immunity, that option is unavailable

13

to petitioners. Of course, the SROs are unwilling to accept that alternative, because their admitted goal for over a year has been to extract as much money from broker-dealers as possible *right now* until the SEC or this Court tells them to stop.

As this Court correctly recognized in choosing the remedy of vacatur with a short stay, it is time to put an end to this unlawful funding scheme. The SROs' fee filings are enforceable only if they are "not inconsistent with … applicable Federal … law," the APA included. 15 U.S.C. § 78s(b)(3)(C). And it is now undisputed that under federal law, the Funding Order underlying the SROs' fee filings for CAT costs is unlawful. The lone panel-rehearing petition filed by CAT LLC—itself "limited" to relitigating the remedy—makes clear that the SROs' goal is to replace the Funding Order, not resurrect it. Pet. 1. The SROs (and SEC) have therefore abandoned any challenge to this Court's ruling that the Funding Order violates the APA. Having done so, the SROs cannot ask for more time to use that concededly unlawful order to line their pockets.

## CONCLUSION

The Court should deny the petition as soon as possible.*

---

* Petitioners urge the Court to issue the mandate as quickly as possible. *See* Fed. R. App. P. 41(b); 11th Cir. R. 41-2. Appellate courts will not hesitate to issue the mandate when either there is no realistic likelihood of further review or a prevailing party is suffering ongoing harm. *See, e.g.*, *United States v. Johnson*, 399 F.3d 1297, 1302 (11th Cir. 2005); *Pittman by Pope v. Sec'y, Fla. Dep't of Health & Rehab. Servs.*, 998 F.2d 887, 892 (11th Cir. 1993); *Johnson v. Bechtel Assocs. Pro. Corp., D.C.*, 801 F.2d 412, 415 (D.C. Cir. 1986). Here, both things are true: This Court's decision marks the end of the road for the Funding Order, and every day the mandate is withheld is another day the SROs can try to use that concededly unlawful order to extort payments from broker-dealers.

Dated: September 16, 2025

J. Michael Connolly
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
mike@consovoymccarthy.com

*Counsel for Petitioner*
*American Securities Association*

Respectfully submitted,

*/s/ Noel J. Francisco*
Noel J. Francisco
Brian C. Rabbitt
Brinton Lucas
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
(202) 879-3939
njfrancisco@jonesday.com

David Phillips
Kyle Gantz
JONES DAY
4655 Executive Dr., Ste. 1500
San Diego, CA 92121

*Counsel for Petitioner*
*Citadel Securities LLC*

## CERTIFICATE OF COMPLIANCE

I certify that this response complies with (1) the type-volume limitations of Federal Rule of Appellate Procedure 40(d)(3)(A) and 40(d)(4) because it contains 3,893 words, excluding any parts exempted by Eleventh Circuit Rule 40-4; and (2) the typeface and type-style requirements of Federal Rule of Appellate Procedure Rule 32(a)(5) and 32(a)(6) because it has been prepared in 14-point Garamond (a proportionally spaced typeface) using Microsoft Word.

Dated: September 16, 2025                Respectfully submitted,

*/s/ Noel J. Francisco*

*Counsel of Record for Petitioner*
*Citadel Securities LLC*

**CERTIFICATE OF ELECTRONIC SUBMISSION**

I certify that: (1) any required privacy redactions have been made; (2) the electronic submission of this document is an exact copy of any corresponding paper document; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free from viruses.

Dated: September 16, 2025                    Respectfully submitted,

                                             */s/ Noel J. Francisco*

                                             *Counsel of Record for Petitioner*
                                             *Citadel Securities LLC*

## CERTIFICATE OF SERVICE

I certify that on September 16, 2025, the foregoing response was electronically filed with the United States Court of Appeals for the Eleventh Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: September 16, 2025             Respectfully submitted,

                                     */s/ Noel J. Francisco*

                                     *Counsel of Record for Petitioner*
                                     *Citadel Securities LLC*